Joanna Ardalan (SBN 285384)
Email: jardalan@onellp.com
Peter R. Afrasiabi (SBN 193336)
Email: pafrasiabi@onellp.com
David W. Quinto (SBN 106232)
Email: dquinto@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:   (949) 258-5081

Attorneys for Defendants,
BACKGRID INC., BACKGRID USA, INC., and
SHUTTERSTOCK, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIBAULT MAUVILAIN, an individual; HENRI MAZARI, an individual; JEREMY DUPLAQUET, an individual; ROBERT CHRISTIAN WOLF, an individual; MICHEL BOUTEFEU, an individual; STEPHANE KYNDT, an individual; and JOSEPH MEHDI, an individual, | Case No.: 2:25-cv-2757-FLA-MAA<br>Hon. Fernando L. Aenlle-Rocha |
| Plaintiffs, | **DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND SHUTTERSTOCK, INC.'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION** |
| v. | |
| FLYNET PICTURES. LLC, a California limited liability company; FAMEFLYNET INC.. a California corporation: BACKGRID INC.. a California corporation: BACKGRID USA. INC.. a California corporation: SHUTTERSTOCK. INC.. a Delaware corporation and DOES 1–10, inclusive, | |
| Defendants. | |

DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND
SHUTTERSTOCK, INC.'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION

## I.    INTRODUCTION

Ex parte applications are requests made to the court outside the framework of the ordinary rules for notice of a hearing. *Baird v. Charter Comms., Inc.,* 2024 WL 4868257, 2:19-cv-10621-FLA (KSx) (C.D. Cal. 2024).  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). Ex parte applications do not offer the opposing party a fair opportunity to respond and are "rarely justified." Id. at 490–91. To obtain ex parte relief, a moving party must present evidence to show that the moving party's cause will be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and that "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id*. at 492.

Against this backdrop, Backgrid USA, Inc., BackGrid, Inc., and Shutterstock, Inc. oppose this ex parte application, and for the following reasons:

## II.    PLAINTIFFS DELAYED THIS EX PARTE APPLICATION AND FILED IT ON A WEEK WHEN (i) DEFENDANTS NOTICED AND ARE TAKING THREE OF PLAINTIFFS' DEPOSITIONS AND (ii) WHEN DEFENDANTS NEED TO RESPOND TO AN IMPROPER JOINT STIPULATION FOR DISCOVERY

Plaintiffs state that they met and conferred on this ex parte application on May 7, 2026. Sergenian Decl., ¶ 65. Knowing that Defendants are taking Plaintiff Thibault Mauvilain's deposition on May 18, Plaintiff Henri Mazari's deposition on May 20, and Plaintiff Robert Christian Wolf's deposition on May 22, and that they served a joint stipulation for a motion to compel on May 14 (making Defendants' response due May 21), Plaintiffs waited to file the ex parte application to give Defendants even less opportunity to respond than what is afforded under the rules, knowing that counsel is working on deposition preparation and the joint stipulation. Ardalan Decl., ¶¶ 2-3. For the reasons explained below, the joint stipulation was

1

**DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND SHUTTERSTOCK, INC.'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION**

improper to begin with and relates to issues for which Judge Audero said she was "not convinced" by Plaintiffs that they should prevail.

Given the very limited time available, Defendants cannot respond to every representation in Plaintiffs counsel's 21-page, 66-paragraph declaration, but provides the Court with some information on the larger issues that are raised by the application.

### III.    DURING THE MAY 7, 2026 MEET AND CONFER CALL, DEFENDANTS OFFERED TO PROVIDE PLAINTIFFS WITH THE AFFIRMATIVE DEFENSES AHEAD OF THE DEPOSITIONS

Plaintiffs contend that the deadlines need to be pushed because the pleadings are not yet closed with a pending motion to dismiss on file. Defendants asked Plaintiffs if their position on the continuance would change if they received the affirmative defenses before the answer is due. Ardalan Decl., ¶ 4. Plaintiffs said it would not change the need for the request. *Id.*

### IV.    DEFENDANTS, NOT PLAINTIFFS, HAVE BEEN DILIGENT WITH DISCOVERY IN THIS CASE

#### a.    Defendants Had to Request an IDC To Find Out The Works at Issue In this Case

This is a copyright infringement case. Plaintiffs filed this lawsuit without identifying the works they contend are at issue. Because they did not, discovery came to a stalemate—Plaintiffs served discovery on the "COPYRIGHTED WORKS" but without identifying the COPYRIGHTED WORKS in a way that was meaningful or searchable. Defendants who license millions of photos from hundreds of contributors—could not conduct meaningful discovery.

It was Defendants—not Plaintiffs—who requested an IDC with Judge Audero to find out what the COPYRIGHTED WORKS are so that its own discovery could proceed. Ardalan Decl., Ex. A (which includes an email, an IDC statement, a

2

declaration, and responses).  During the December 11 IDC, Defendants brought the head of BackGrid's IT and the architect of Backgrid's system for an all-day IDC to explain to Plaintiffs how to find the works and use their systems so that Plaintiffs could figure out the works at issue. Ardalan Decl. ¶ 5. During the IDC, BackGrid agreed to give and ultimately gave Defendants three weeks of access to a Confidential Client Portal so that Defendants could find their works. (Dkt. 66) That means Plaintiffs got answers to their questions from two of BackGrid's agents with superior knowledge of their internal systems for an entire day, as well as three weeks of access to BackGrid's confidential systems—all so that Plaintiffs could find the works at issue.

Significantly, this is not the first time Plaintiffs had access to BackGrid's Confidential Portal. At deposition on May 18, Thibault Mauvilain admitted that he made up an identity—Emily Carter—and requested access to the Confidential Client Portal, claiming to be a producer who wanted access to research photos for an upcoming documentary. The deposition transcript is not ready because it was taken yesterday and ended at about 8 pm.

Long before the IDC, from August 2024 to November 2025, Plaintiff Mauvilain posing as "Emily Carter" had  ***14 months*** of access to BackGrid's Confidential Client Portal even before the lawsuit was filed, and still did not identify the sets at issue. Ardalan Decl., ¶ 7.  That access was obtained through fraud and gave Plaintiffs months of free and illegal discovery on their claims.

In the end, BackGrid reviewed the licenses issued for each of the identified sets after Plaintiffs had access to the Confidential Portal through fraud and also through the IDC process—the ***total*** licensing revenue across all Plaintiffs is less than **$2,931.16,**  and has now been paid to Plaintiffs. Ardalan Decl., ¶ 8. Significantly, each of the licenses were issued before the copyright registrations issued, so there is no ability for Plaintiffs to receive statutory damages under Section 504, even

**DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND SHUTTERSTOCK, INC.'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION**

assuming they can prove infringement. And, they will never prove infringement when they submitted the photos to the Defendants for license.

### b. Defendants Had to Request an IDC to Get Deposition Dates; Plaintiffs Changed the Deponents at the Last Minute

Plaintiffs would not cooperate with scheduling depositions, forcing Defendants to request an IDC simply to get dates on calendar. (Dkt. 94.) After numerous emails on the topic, on April 28, Defendants stated to Plaintiffs:

"As you know, [counsel for Fameflynet and Flynet] has a trial starting soon. It is unfair to Defendants, especially [Fameflynet and Flynet], as [their counsel's] out-of-state trial is going to create some scheduling difficulties. I also explained to you that I have family obligations (a college graduation and surrounding festivities) that are going to interfere with my availability.  You disclosed that you intend to take 10 depositions, although only 5 have been noticed. You know we have 7—one for each plaintiff. How do you intend to move forward with 17 depositions between now and the cutoff if you don't give us dates given the scheduling conflicts coming up?" Ardalan Decl., Ex. B.

To make the deposition schedule have any chance of working, Defendants counsel skipped an out of state college graduation for her step-daughter, as it was apparent back in April that the schedule would be tight. Plaintiffs waited until the last minute to provide witnesses and dates, causing their emergency.

Plaintiffs changed their mind about who they wanted to depose on May 14, just five days ago. Ardalan Decl. Ex. C. They had originally wanted to depose Steve Ginsburg and Robert Gasperis (along with 30(b)(6) deponents for each of the 5 corporate defendants, Alex Kantif, Scott Cosman, and Boris Nizon, but changed their mind and decided they wanted to depose Justin Conway—a person never disclosed as a witness by either side, and BackGrid's litigation lawyer, Joanna Ardalan.

///

4

DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND SHUTTERSTOCK, INC.'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION

      **c.**      **Plaintiffs Manufactured Complaints about Discovery to Create a "Need" To Move the Deadline, but Defendants Have Been Diligent; Plaintiffs Admit at Deposition to Not Searching for Documents**

Defendants have done about 2300 searches for documents for Plaintiffs. Ardalan Decl., ¶ 11. The searches were based on search terms presented by Plaintiffs but were broken down to accommodate the discovery platform, which used a different syntax that the searches proposed by Plaintiffs. *Id.*

Defendants have made substantial efforts to cooperate with Plaintiffs, including meeting and conferring on a Saturday, so they have time to get another IDC in before the cutoff and attending a 3-hour IDC while counsel was visiting family in New York. Despite Defendants follow-up on the outstanding discovery issues resolved at the IDC, Plaintiffs rushed to serve a joint stipulation on May 14, 2026—knowing that it would be due on a week involving three Plaintiffs depositions and now this ex parte application.

After the joint stipulation was served, Plaintiffs realized that most of their joint stipulation should never have been included because Judge Audero did not give them permission to move forward with it. Ardalan Decl. Ex. D E. With respect to the outstanding disputes, Judge Audero told them she was not convinced that they should get discovery on those outstanding topics that may proceed in the joint stipulation, which include all depositions and declarations filed by BackGrid in any copyright infringement suit and discovery on discovery which has been denied a previous IDC 7. Plaintiffs raise here that they also concerned that Boris Nizon is not a custodian, but as explained at the IDC, Mr. Nizon's documents did not get transferred over when BackGrid was purchased by Shutterstock, before Defendants had any notice of this dispute in any way or form. *See* Dkt. 102 (Dispute 3.) That issue was resolved at the IDC. Still, Plaintiffs use this as an excuse to continue trial dates.

5

**DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND SHUTTERSTOCK, INC.'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION**

Judge Audero said at May 13 IDC that Plaintiffs had not shown that Defendants' document production was deficient overall. Ardalan Decl. Ex. D. As this IDC was not recorded, Defendants request, to the extent it is proper, that the Court contact Judge Audero to discuss Defendants' discovery efforts if that is helpful to the decision to move the dates.

Ironically, despite all of the complaints about Defendants' production, Plaintiff Mauvilain appeared at deposition on May 18 and testified he had not searched for documents in this case and that he has text messages about this case with the other Plaintiffs, without counsel included, that have not been produced and his text messages auto-destroy after 30 days. Ardalan Decl., 14.

## IV.    CONCLUSION

Defendants have diligently conducted and participated in discovery. They spent considerable resources—including hauling in party representatives for an entire business day—helping Plaintiffs obtain information they should have had when they filed this case. To the extent Plaintiffs are encountering scheduling difficulties or did not accomplish certain tasks they believe are material in discovery, that is through their own choices for case management. Defendants respectfully request the ex parte application be denied.

Dated: May 19, 2026            **ONE LLP**

By: /s/ Joanna Ardalan
Joanna Ardalan
Peter R. Afrasiabi
David W. Quinto
Attorneys for Defendants BackGrid Inc.,
BackGrid USA, Inc., & Shutterstock, Inc.

6

**DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND
SHUTTERSTOCK, INC.'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION**