DAVID A. SERGENIAN, State Bar No. 230174
david@sergenianlaw.com
SERGENIAN LAW, P.C.
808 Wilshire Blvd., Suite 200
Santa Monica, CA 90401
Telephone: (213) 435-2035

SHENGMAO MU, State Bar No. 327076
smu@whitewoodlaw.com
WHITEWOOD LAW, P.C.
99 S. Alameda Blvd., Suite 600
San Jose, CA  95113
Tel.: (917) 858-8018
Fax: (917) 591-0618
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THIBAULT MAUVILAIN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FLYNET PICTURES, LLC, et al., <br><br> Defendants. | Case No. 2:25–cv–2757–FLA–MBKx <br><br> **DISCOVERY MATTER** <br><br> **MAGISTRATE JUDGE MICHAEL B. KAUFMAN** <br><br> **L.R. 37-2 JOINT STIPULATION IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION FROM DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND SHUTTERSTOCK, INC.** <br><br> Date: July 8, 2026 <br> Time: 10:00 a.m. <br> Location: Roybal Federal Building <br> Crtrm: 550 <br><br> Discovery Cutoff: September 18, 2026 <br> Pretrial Conf.: February 12, 2027 <br> Trial Date: March 2, 2027 |

# TABLE OF CONTENTS

I.    INTRODUCTORY STATEMENTS..................................................................1

    A.    Plaintiffs' Introductory Statement ....................................................1

    B.    The BackGrid Defendants' Introductory Statement ...................................4

II.   DISCOVERY IN DISPUTE .......................................................................7

    A.    Category I: Bulk Sales (RFP 49)......................................................8

        1.    Request for Production No. 49 ...............................................9

        2.    Plaintiffs' Position.........................................................11

        3.    The BackGrid Defendants' Position .........................................14

    B.    Category II: Prior Deposition Testimony and Sworn Declarations in Copyright Lawsuits (RFPs 67, 68)........................................20

        1.    Request for Production No. 67 ..............................................20

        2.    Request for Production No. 68 ..............................................22

        3.    Plaintiffs' Position.........................................................23

        4.    The BackGrid Defendants' Position .........................................26

    C.    Category III: Search Term Defects, Custodian Omissions, and Lack of Transparency in Document Identification [Resolved in Part] ...................32

        1.    Plaintiffs' Position.........................................................32

            a.    Procedural Background .......................................32

            a.    The Omission of Boris Nizon from the Custodian List .........33

            b.    The BackGrid Defendants' Refusal to Disclose Hit Counts, Document Universe, Custodians, Sampling, or Media and Sources Searched...................................35

            c.    Requested Relief.............................................36

        2.    The BackGrid Defendants' Position .........................................36

III.  SANCTIONS....................................................................................41

    A.    Plaintiffs' Position on Sanctions ................................................41

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

B.   BackGrid Defendants' Position on Sanctions ...............................................45

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Pursuant to Local Rule 37-2.2, the parties submit their joint stipulation in support of Plaintiffs' Motion to Compel as follows.

## I.    INTRODUCTORY STATEMENTS

### A. Plaintiffs' Introductory Statement

This Motion seeks to compel Defendants BackGrid Inc., BackGrid USA, Inc., and Shutterstock, Inc. (collectively, the "BackGrid Defendants") to produce documents responsive to three Requests for Production at impasse, to disclose the document universe, custodian count and identities, hit counts, sampling methodology, and media and sources searched, to collect, process, and search the documents of Boris Nizon or, in the alternative, to account by declaration for the disposition of his pre-acquisition materials, and to award sanctions under Federal Rule of Civil Procedure 37(a)(5)(A).

After ten months, eight Informal Discovery Conferences before this Court, and a missed April 10, 2026 deadline to substantially complete production, the BackGrid Defendants' production remains deficient. The BackGrid Defendants have refused to produce contracts, communications, and asset lists concerning bulk sales from their archive, as well as prior copyright-litigation testimony and sworn declarations bearing on the very practices Plaintiffs allege. Two of the three BackGrid Defendants—BackGrid USA, Inc. (May 6, 2026) and Shutterstock, Inc. (May 12, 2026)—have served supplemental Rule 34 responses; BackGrid, Inc. has not, and its August 25, 2025 boilerplate objections remain operative. Shutterstock, Inc.'s supplemental responses unilaterally limit its search to documents from January 1, 2024 to present, sweeping virtually the entire relevant period out of its production. The BackGrid Defendants have not produced a privilege log. At the May 13, 2026 IDC, the BackGrid Defendants made oral representations as to several disputed categories, but none of those representations has been memorialized in a compliant Rule 34 response, supporting declaration, or further production. Plaintiffs accordingly address each disputed category herein, subject to withdrawal upon written confirmation and performance.

- 1 -

Plaintiffs filed this action on March 28, 2025, alleging copyright infringement, removal and alteration of copyright management information under 17 U.S.C. § 1202, breach of implied-in-fact contributor agreements, and violation of California Penal Code § 496. (Compl., ECF No. 1.) Plaintiffs served their First Set of Requests for Production on each of the BackGrid Defendants on July 10, 2025. Written responses followed on August 25, 2025. Plaintiffs' Local Rule 37-1 letter issued September 23, 2025. After meeting and conferring, the parties participated in six IDCs before Magistrate Judge Audero from November 2025 through March 2026. On March 25, 2026, the Court found that the parties had satisfied their meet-and-confer obligations under Rule 37. (ECF No. 83.)[1]

The next day, Plaintiffs demanded substantial completion of the BackGrid Defendants' production by April 10, 2026; the deadline passed without production. The BackGrid Defendants produced approximately 487 pages on April 27, 2026, less than eight weeks before the prior June 19, 2026 fact-discovery cutoff. On May 8, May 11, and May 12, 2026—only after Plaintiffs had served the BackGrid Defendants with the May 5, 2026 version of this Joint Stipulation—the BackGrid Defendants produced additional documents (BACKGRID002143–002574).

On May 9, 2026, the parties met and conferred by videoconference, reaching impasse on the Requests for Production addressed below. On May 11, 2026, Plaintiffs submitted an email to chambers in advance of the May 13, 2026 IDC identifying the disputes presented in this Motion. At the May 13, 2026 IDC, the parties addressed the issues raised in this Joint Stipulation, and the Court authorized Plaintiffs to serve a revised Joint Stipulation.

---

[1] After Plaintiffs initiated the motion process and served the May 5, 2026 version of this Joint Stipulation, the parties participated in two additional Informal Discovery Conferences before this Court: on May 6, 2026 (ECF No. 94), and on May 13, 2026 (ECF No. 98).

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

As of the filing of this Joint Stipulation, entire categories of responsive documents remain absent: no contracts, communications, or asset lists concerning bulk sales from the archive; and no deposition testimony or sworn declarations from prior copyright lawsuits in which the BackGrid Defendants were parties or witnesses. (Sergenian Decl. ¶ 23.) At the May 13, 2026 IDC, the BackGrid Defendants made oral representations as to several of these categories. No compliant supplemental responses or further productions have followed. Plaintiffs address each category subject to withdrawal upon written confirmation and performance.

Although Plaintiffs have repeatedly requested the BackGrid Defendants' document universe, custodian count and identities, hit counts, sampling methodology, and the media and sources searched, the BackGrid Defendants have refused to provide any of those categories. Without those disclosures, Plaintiffs cannot evaluate the adequacy of the Back-Grid Defendants' search methodology or determine whether responsive documents have been omitted from production. Plaintiffs accordingly seek an order compelling the Back-Grid Defendants to disclose each of those categories.

In the April 27, 2026 email exchange following their production, defense counsel committed in writing to serve amended written responses to Plaintiffs' Requests for Production. (Sergenian Decl. ¶ 24.) BackGrid USA, Inc. served amended responses on May 6, 2026; Shutterstock, Inc. served supplemental responses on May 12, 2026; and Back-Grid, Inc. has not served amended responses as of the date of this Joint Stipulation. (Id.) At the May 9 videoconference, Ms. Ardalan represented that BackGrid, Inc.'s amended responses, when served, would be substantively the same as BackGrid USA, Inc.'s, except where the underlying facts as to BackGrid, Inc. differ from those as to BackGrid USA, Inc. That representation does not substitute for service of compliant Rule 34 responses.

Plaintiffs respectfully request an order: (1) compelling the BackGrid Defendants to produce all documents responsive to Requests for Production Nos. 49, 67, and 68; (2) compelling BackGrid, Inc. to serve amended Rule 34 responses identifying, request-by-

- 3 -

request, what is being withheld and on what grounds; (3) compelling the BackGrid Defendants to produce a privilege log meeting the requirements of Federal Rule of Civil Procedure 26(b)(5) as to any documents withheld from production in response to Requests for Production Nos. 49, 67, and 68; (4) striking Shutterstock, Inc.'s unilateral January 1, 2024 temporal limitation as applied to Requests for Production Nos. 49, 67, and 68, and compelling Shutterstock, Inc. to produce responsive pre-2024 records in the possession, custody, or control of its wholly-owned subsidiaries BackGrid Inc. and BackGrid USA, Inc (5) compelling the BackGrid Defendants to disclose the document universe, custodian count and identities, hit counts for each search the BackGrid Defendants have run, sampling methodology and results, and media and sources searched; (6) compelling the BackGrid Defendants to collect, process, and search the documents of Boris Nizon or, in the alternative, to serve a declaration from a person with knowledge accounting for the disposition of his pre-acquisition materials and describing the reasonable inquiry conducted; and (7) awarding sanctions under Federal Rule of Civil Procedure 37(a)(5)(A) of $16,800 in attorney's fees.

### B. The BackGrid Defendants' Introductory Statement

Plaintiffs seek an order on three issues: 1) compelling all documents related to "bulk sale" agreements—even though Plaintiffs were already given the relevant information that would be contained in such documents, 2) compelling deposition testimony and declarations filed in separate copyright lawsuits—even though Plaintiffs only speculate why such testimony may be relevant to it, 3) compelling disclosure of information related to hit counts and document intake for the 2,300 searches Defendants conducted, and a request that Boris Nizon be a custodian—even though Nizon's documents did not get transferred over as part of the BackGrid USA acquisition and his documents were not kept (before Plaintiffs gave notice of this dispute). Mr. Nizon no longer works for Defendants so there are no post-acquisition documents.

During the informal discovery conference, Judge Audero stated that she was "not convinced" that Plaintiffs need all documents related to bulk sales when they have been

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

given spreadsheets showing each sale. On December 8, 2025, the BackGrid Defendants produced per-photographer sales spreadsheets reflecting the information BackGrid maintains in the ordinary course of business for each contributor. The spreadsheets identify every license issued for the Plaintiff-photographers' works that contributed to BackGrid (including major news outlets such as TMZ), the licensee, and the amount paid to the Plaintiff-photographer for each licensed photograph, when the photographer was paid, among other information.

During May 13 IDC, Judge Audero stated that she was "not convinced" that Plaintiffs needed deposition testimony and declarations from other copyright lawsuits. After all, none of the works at issue in this lawsuit are at issue in Defendants' other copyright lawsuits.

During May 13 IDC, Judge Audero stated that Plaintiffs do not get "discovery on discovery" without articulating a non-speculative reason for such a need. And told them, again, that they are not entitled to a declaration on the status of documents. (Plaintiffs had requested a similar declaration against Flynet and were told if they proceed with a motion to compel that they would be sanctioned. (*See* Dkt. 98, withdrawing the Joint Stipulation against Flynet.) Significantly, Plaintiffs were not given permission to file a joint stipulation on this issue, in violation of Judge Audero's procedures.  And, Defendants already explained to Plaintiffs why Mr. Nizon was not included as a custodian—his documents did not get saved when Shutterstock acquired BackGrid USA.

***Each of the issues brought in this motion is raised here despite Judge Audero stating that she was "not convinced" by Plaintiffs' arguments, with the exception of the hit count issue that was not permitted to proceed in the first place under the Court's rules.***  Now, Plaintiffs raise these issues with a new judge, hoping to re-litigate them and get a ***third*** bite at the apple, while asking for $16,800 in sanctions.

Plaintiffs' sanction ask is outrageous considering this is the ***third*** Joint Stipulation they brought on the same issues.

**The First Joint Stipulation** was withdrawn because, on May 6, the Court granted Defendants relief from responding. Ardalan Decl. Ex. A, B. The Parties had another IDC on May 13 and resolved almost all of the issues. The Court stated "As to those disputes upon which the parties do not reach resolution, the Court AUTHORIZES either party to file a discovery motion." (Dkt. 102).

**The Second Joint Stipulation** was filed after the May 13 IDC, when the Plaintiffs had notice that they had agreed to resolution on RFPs 14, 15, 17, 18, 27, 50, on supplementing responses to Requests for Production, on the search terms, and on the discovery on discovery dispute.  Indeed, Defendants sent an email confirming what they agreed to at the IDC and confirming they would proceed as agreed upon. Ardalan  *Id.* at Ex. D; *cf.* Ex E. The Joint Stipulation was served later that same day, without meaningfully addressing Defendants' email message.

After the Court issued the minute order, Plaintiffs attempted to withdraw the portions of the Second Joint Stipulation that were improperly raised, but did not withdraw their hefty sanctions request, that includes time for the withdrawn First Joint Stipulation, for time spent before the IDC that permitted the discovery to proceed, and for the issues withdrawn and resolved. Ardalan Decl. Ex. E.

The Second Joint Stipulation contained numerous and substantial misrepresentations to the Court, all of which was outlined in Defendants' response (Ardalan Decl. Ex. C-4, 71-76), which was timely served to Plaintiffs, but never filed. Plaintiffs unilaterally filed the Second Joint Stipulation, taking the position that Defendants' portion was due exactly seven days after service—to the minute—and not 11:59 p.m. seven days after service. (Ardalan Decl. Ex. C-1, C-2, C-3, C-4.) Defendants filed a request to strike the improperly filed Second Joint Stipulation. *Id.*

Notably, the Second Joint Stipulation was served to jam up Defendants during the deposition preparation and was served so that Defendants would have to respond in the same week they were taking three of Plaintiffs' depositions and would have to oppose Plaintiffs' ex parte application.  Ardalan Decl. ¶ 5.

- 6 -

Despite this, Plaintiffs then withdrew the improperly filed Second Joint Stipulation, knowing that it would be dead on arrival because it was unilaterally filed and for not accounting for all prefiling time required under Local Rule 37, prior to the hearing date. Of course, the withdrawal was after Defendants spent about 15 hours opposing the joint stipulation. Ardalan Decl., ¶ 23.

Plaintiffs now try again in this **Third Joint Stipulation**, but updated their responses after having a first look at Defendants' arguments in the Second Joint Stipulation. This is a stunning move considering Defendants expressly asked Plaintiffs if they would like to further confer on these remaining issues, but Plaintiffs declined the request and opted to serve this joint stipulation ***five days later***, citing a concern about timing. Ardalan Decl., Ex. F ("Plaintiffs are not in a position to defer the motion any further given the case schedule.")

The only parties entitled to their fees are Defendants, who have had to endure now ***three*** joint stipulations on the ***same issues*** that Judge Audero did not believe any further relief should be given. Ardalan Decl. Ex. D.

Moreover, this Third Joint Stipulation is procedurally defective. It was served without hearing information in violation of 37-2.1. Defendants have no notice as to when the hearing is to occur. And, Plaintiffs have violated the Local Rules by making their introductory statement over three pages. L.R. 37-2.1.

## II.    DISCOVERY IN DISPUTE

### Plaintiffs' Position

In compliance with L.R. 37-2, this section contains verbatim the requests and responses at issue. Each BackGrid Defendant served its original responses on August 25, 2025. On May 6, 2026, BackGrid USA, Inc. served supplemental responses to certain Requests, including RFP 49. BackGrid USA, Inc. did not supplement its responses to RFPs 67 or 68. On May 12, 2026, Shutterstock, Inc. served supplemental responses, including to RFP 49. Shutterstock, Inc. did not supplement its responses to RFPs 67 or 68.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

BackGrid, Inc. did not serve supplemental responses to any Request, and its original August 25, 2025 responses remain operative. Where the responses of the three BackGrid Defendants to a Request differ, the differences are shown by bracketed alternatives in the format [BGI/BGU: … / SS: …]. Where two of the three responses are identical, those entities are grouped (BGI/BGU). Where the BackGrid Inc. and BackGrid USA, Inc. responses differ only in identifying the responding party, the entity names are shown inline as "BackGrid Inc./BackGrid USA, Inc." For RFP 49, BackGrid USA, Inc.'s May 6, 2026 supplemental response is set forth verbatim immediately following the original responses. The BackGrid Defendants' responses contain some minor typographical and formatting irregularities that have been corrected for readability.

### **Defendants' Position**

This Section is another violation of the Local Rules, which permit only a three-page introduction. L.R. 37-2.1. Moreover, Defendants object to changes made to their responses stated below. Plaintiffs are not permitted to correct "minor typographical and formatting irregularities that have been corrected for readability." The obvious changes include the paragraphing of the responses. Plaintiffs' changes make the objections less readable and because Plaintiffs have made changes to the responses, it now puts a burden on Defendants to determine what those changes are. Defendants therefore request that the Court refer to the actual responses, not Plaintiffs' representations of the responses to the extent objections are relevant to its determination of these issues.

### A. Category I: Bulk Sales (RFP 49)

This category covers the documents reflecting the "bulk sales" of works from the BackGrid Defendants' archive; i.e., the wholesale licensing and asset-transfer transactions for photographs in the archive, including the communications, contracts, and lists of assets sold.

**1.    Request for Production No. 49**

**REQUEST FOR PRODUCTION NO. 49**

All DOCUMENTS RELATING TO the "bulk sales" of works referenced in Paragraph 5 of the FAC, including communications, contracts, and lists of assets sold.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49 (Served August 25, 2025)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party invites the parties to meet and confer regarding the meaning of "bulk sales," which as used in the complaint is vague and ambiguous. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

**BACKGRID USA, INC.'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 49 (Served May 6, 2026)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party invites the parties to meet and confer regarding the meaning of "bulk sales," which as used in the complaint is vague and ambiguous. Subject to and without waiving the foregoing objections, Responding Party has searched for documents pursuant to the searches shown in Attachment A and has produced or will produce responsive documents. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

**SHUTTERSTOCK, INC.'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 49 (Served May 12, 2026)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party invites the parties to meet and confer regarding the meaning of "bulk

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

sales," which as used in the complaint is vague and ambiguous. Subject to and without waiving the foregoing objections, Responding Party will conduct a reasonably diligent search and will produce non-privileged responsive documents in its possession, custody, or control, to the extent they exist. Responding Party has searched for documents pursuant to the searches shown in Attachment A. Responding Party has limited its search from January 1, 2024 to present. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

[BackGrid, Inc. did not serve a supplemental response to Request for Production No. 49.]

### 2.    Plaintiffs' Position

The bulk-sales documents responsive to RFP 49 bear on multiple disputed issues. The Second Amended Complaint alleges that Defendants licensed sets of Plaintiffs' photographs to third parties without paying royalties (SAC ¶¶ 3, 58), and defense counsel has admitted that BackGrid licensed at least some improperly attributed sets to third parties without paying the photographers any royalty (SAC ¶ 58). The Request seeks the contracts, communications, and asset lists relating to wholesale licensing and asset-transfer transactions for photographs in the BackGrid Defendants' archive. Those records establish the scale and recipients of the BackGrid Defendants' licensing conduct, the royalty calculations (or lack thereof) for the resulting transactions, and the transfers of archive content between entities in the Flynet–FameFlynet–BackGrid–Shutterstock corporate-succession chain (SAC ¶¶ 35–37).

At the May 13, 2026 IDC, the BackGrid Defendants represented that information responsive to RFP 49 had already been produced as part of the per-photographer sales spreadsheets. That representation does not satisfy the Request. RFP 49 seeks "[a]ll DOCUMENTS RELATING TO the 'bulk sales' of works referenced in Paragraph 5 of the

- 11 -

FAC, including communications, contracts, and lists of assets sold." A sales spreadsheet listing per-license transactions is not a contract, not a communication, and not a list of assets sold. The contracts, communications, and asset lists associated with wholesale and asset-transfer transactions are categorically distinct records, and none has been produced.

The bulk-sales documents bear directly on a contested liability theory the BackGrid Defendants have themselves placed in dispute. In their motion to dismiss the SAC and reply in support, the BackGrid Defendants argue that Plaintiffs have not alleged "factual circumstances giving rise to an assumption of liability" sufficient to establish successor liability, and that Plaintiffs' allegations that each successor "took possession of the archive" "simply describe a license" rather than an assumption of liability. (Dkt. 88 at 5–6; Dkt. 84-1 at 6–7.) The contracts, communications, and asset lists relating to bulk transfers of works from the BackGrid Defendants' archive are direct evidence of how the archive moved between entities in the corporate-succession chain and of the terms on which each transfer occurred; i.e., the factual specificity the BackGrid Defendants now contend is missing.

The BackGrid Defendants supplemented unevenly. BackGrid USA, Inc.'s May 6, 2026 supplemental response represents that BackGrid USA, Inc. has "searched for documents pursuant to the searches shown in Attachment A" and "has produced or will produce responsive documents." Shutterstock, Inc.'s May 12, 2026 supplemental response represents that Shutterstock "will conduct a reasonably diligent search and will produce non-privileged responsive documents in its possession, custody, or control, to the extent they exist," but unilaterally limits Shutterstock's search to documents "from January 1, 2024 to present." BackGrid, Inc. did not supplement its response, and its original boilerplate objections remain operative.

Shutterstock's January 1, 2024 temporal limitation is improper. The bulk-sales transactions at issue (wholesale licensing and asset-transfer transactions for photographs in the archive) predominantly predate Shutterstock's February 2024 acquisition of Back-

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Grid, and the records of those transactions remain in the systems of the subsidiaries Shutterstock now owns by virtue of the recency of the Shutterstock acquisition. As parent corporation of BackGrid Inc. and BackGrid USA, Inc., Shutterstock has Rule 34 control over the pre-2024 records. *See United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.") (citations omitted); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544–45 (N.D. Cal. 2005). Shutterstock cannot use a unilateral, post-hoc date cutoff to immunize the historical bulk-sales records of the entities it acquired. The temporal limitation should be ordered stricken, and Shutterstock should be required to produce responsive records without a January 1, 2024 cutoff.

The boilerplate objections—"vague," "ambiguous," "overbroad," "unduly burdensome," and "not reasonably calculated to lead to the discovery of admissible evidence"—are insufficient under Federal Rule of Civil Procedure 34(b)(2)(B), which requires the responding party to "state with specificity the grounds for objecting to the request, including the reasons." *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (boilerplate objections fail to comply with the Federal Rules and are tantamount to no objection at all).

Confidentiality concerns about commercial-transaction records are addressed by the protective order at ECF No. 64.

The parties have confirmed in writing that to the extent the BackGrid Defendants are aware of responsive, non-privileged documents not surfaced by keyword search, the BackGrid Defendants still have an obligation to produce them. (Sergenian Decl. ¶ 24, Ex. 7.) Bulk-sale contracts and asset-transfer agreements are records the BackGrid Defendants maintain in their ordinary business files; they do not depend on keyword searches against custodian email collections, and BackGrid USA, Inc.'s commitment to produce only documents "pursuant to the searches shown in Attachment A" falls short of the BackGrid Defendants' obligation under the parties' agreement.

- 13 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

To the extent the BackGrid Defendants contend that any responsive documents do not exist or cannot be located, they should serve amended Rule 34 responses identifying what is being withheld on what grounds, and support any "no further documents" representation by declaration describing the reasonable inquiry conducted. *See* Fed. R. Civ. P. 34(b)(2)(B)–(C); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 U.S. Dist. LEXIS 151705, at *38–39 (C.D. Cal. July 28, 2023); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006).

### 3.    The BackGrid Defendants' Position

Plaintiffs' motion to compel further responses to RFP 49 should be denied for four reasons: (i) the Court has already heard this dispute during an informal discovery conference and indicated that it was "not convinced" Plaintiffs were entitled to more than what the BackGrid Defendants have provided (Ardalan Decl., Ex. D); (ii) Plaintiffs have already received all material information about the "bulk sales" at issue through the per-photographer sales spreadsheets produced by the BackGrid Defendants on December 8, 2025, and through the supplemental searches and productions served on May 6, 8, 11, and 12, 2026[2] (Ardalan Decl. ¶ 12; (iii) Plaintiffs have not articulated — and cannot articulate — a meaningful need for "ALL DOCUMENTS RELATING TO" bulk sales beyond what they already have; and (iv) requiring "ALL DOCUMENTS RELATING TO" the bulk sales would impose a disproportionate burden on the BackGrid Defendants for low marginal yield, if at all.

1. The Court has already considered and declined this request at IDC 7. Plaintiffs presented RFP 49 to the Court at the May 13, 2026 Informal Discovery Conference. On the same set of arguments now repeated in the Joint Stipulation, the Court informed the parties that it "was not convinced [Plaintiffs] needed more than what [Defendants] have already provided." (Ardalan Decl., Ex. D May 14, 2026 Email from J. Ardalan to D. Sergenian, RFP 49.) The Court's IDC 7 Order authorized Plaintiffs to file a motion as to

---

[2] Defendants have even provided supplemental copies of these spreadsheets it address sales made since the first production of the spreadsheets.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

RFP 49 but did not displace what the Court said on the merits. (ECF No. 102 at 1–2.) Plaintiffs offer nothing in this Joint Stipulation that distinguishes their presentation here from the presentation the Court already declined to adopt.

2. The BackGrid Defendants have already produced the material information Plaintiffs are entitled to receive. On December 8, 2025, the BackGrid Defendants produced per-photographer sales spreadsheets reflecting the information BackGrid maintains in the ordinary course of business for each contributor. The spreadsheets identify every license issued for the Plaintiff-photographers' works that contributed to BackGrid (including major news outlets such as TMZ), the licensee, and the amount paid to the Plaintiff-photographer for each licensed photograph, when it the photographer was paid, among other information. That information captures all material data about every licensed photograph, including those licensed as part of any wholesale or asset-transfer transaction Plaintiffs label a "bulk sale." Ardalan Decl., ¶ 12.  With respect to the copyrighted works at issue, Defendants produced screenshots of their administrative portal showing the same information.

The spreadsheets do not categorize licenses as "bulk" or "non-bulk," but that distinction is immaterial to Plaintiffs' claims: the relevant facts for Plaintiffs' breach-of-contract, copyright, and Section 1202 theories are the fact of license, the licensee, and the royalty paid, and all of that information has been produced. The BackGrid Defendants supplemented those productions on May 6, May 8, May 11, and May 12, 2026 (BACK-GRID002143–002574), and BackGrid USA, Inc.'s May 6, 2026 supplemental response to RFP 49 confirms that the BackGrid Defendants have searched for responsive documents pursuant to Attachment A and "produced or will produce responsive documents." The BackGrid Defendants also ran the more than 2,300 pairwise Boolean searches reflected in Attachment A  to the responses (Ardalan Decl., Ex. G).

3. Plaintiffs cannot articulate a need for "ALL DOCUMENTS RELATING TO" bulk sales. Given the information already produced, Plaintiffs have not — and cannot —

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

explain why they need an undifferentiated production of every document, communication, contract, and asset list "RELATING TO" bulk sales. The relevant economic and identifying facts about each licensed photograph are already in the spreadsheets. Any additional document would, at best, confirm what is already in the production. Plaintiffs' assertion (Joint Stipulation ¶ 214) that a sales spreadsheet "is not a contract, not a communication, and not a list of assets sold" is form over substance: the spreadsheet is a list of assets sold, with the price and licensee for each. Plaintiffs have identified no contested issue in this case that turns on the format of that information rather than its substance.

4. Producing "ALL DOCUMENTS RELATING TO" bulk sales would be disproportionate under Rule 26(b)(1). The BackGrid Defendants anticipate, based on their business practices and history, that there are no formal license agreements for the "bulk sales" Plaintiffs identify; deal terms were typically negotiated over email and by telephone, and the resulting transactions often involved photographs that have no connection to the photographs at issue in this case or to the Plaintiff-photographers.  Ardalan Decl. ¶ 13. To respond to "ALL DOCUMENTS RELATING TO" bulk sales as Plaintiffs frame the request, the BackGrid Defendants would have to manually review thousands of emails and documents to reverse-engineer which transactions might touch any of the photographs at issue.  *Id.* That burden plainly outweighs the marginal benefit of producing documents that, at most, would confirm information already in the spreadsheets and Attachment A searches.

5. Shutterstock's temporal limitation is appropriate and creates no gap in the production. Shutterstock purchased BackGrid USA, Inc. in February 2024. Plaintiffs' separate objection to Shutterstock's January 1, 2024 temporal limitation fails on its own terms. And, Plaintiffs expressly agreed to this temporal limitation when the parties met and conferred about this issue initially. It is not a "unilateral" limitation.  Ardalan Decl. ¶14. Shutterstock acquired BackGrid Inc. and BackGrid USA, Inc. in February 2024 and did not exist as a producing party in this matter for pre-2024 records.  *Id.* The pre-2024 records Plaintiffs say are missing are being produced — to the extent they exist and are

- 16 -

responsive — by BackGrid USA, Inc., the entity that actually maintained those records. Plaintiffs' Rule 34 "parent corporation control" argument therefore creates no actual production gap: the records are being produced by the entities in possession. Imposing a duplicate production obligation on Shutterstock for the same pre-2024 records being produced by its subsidiaries would serve no purpose and would expand discovery for its own sake.

BackGrid Inc. was terminated in 2023. As explained to Plaintiffs in writing, it does not have documents, but to the extent they exist they would be in the possession, custody, or control of BackGrid USA, Inc. Ardalan Decl. Ex. D ("We told you BackGrid, Inc. does not have documents in its possession, custody or control because it is a terminated entity and if there are documents, they are in BackGrid USA's possession. If you need supplemental responses saying that, or if this is sufficient let me know.") BackGrid inquired whether Plaintiffs would require an additional supplement to their responses, but they failed to respond and instead opted into filing a Second Joint Stipulation, which they later took off calendar. Ardalan Decl. ¶ 6.  Plaintiffs declined Defendants' request to meet and confer again and simply filed this Third Joint Stipulation. Ardalan Decl. Ex. F.

6. The motion is also procedurally defective as it does not contemplate a hearing date.  The Second Joint Stipulation—which addresses this same issue and was withdrawn by Plaintiffs –was untimely and procedurally defective. While they included a hearing date, it did not account for the additional time required under the Local Rules for Defendants to review the Joint Stipulation before filing. (Ardalan Decl. Ex. C-1, C-2, C-3, C-4.) Now, Plaintiffs attempt to avoid the timing issue by failing to include a hearing date at all.[3]

---

[3] With respect to the Second Joint Stipulation, Plaintiffs served their portion of the Joint Stipulation on Defendants on May 14, 2026. Under Local Rule 37-2.2, Defendants

- 17 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

7. This Third Joint Stipulation goes against the spirit of Defendants' exhaustive efforts to informally resolve discovery issues in this case. After Plaintiffs took their Second Joint Stipulation off calendar, they threatened to file yet another. Notably, Plaintiffs took their stipulation off calendar after Defendants spent about 15 hours responding to it. Ardalan Decl. ¶ 23.  The docket does not reflect that Defendants responded to the Second Joint Stipulation because Plaintiffs unilaterally filed the stipulation taking the position that Defendants' portion was not due at 11:59 PM on the seventh day after service, but at the time served, seven days later. (*See* Dkt. 107; Ardalan Decl., Ex. C-1, C-2, C-3, C-4.) Defendants filed a request to strike the joint stipulation and produced exhibits demonstrating that their portion of the Joint Stipulation was served on Plaintiffs by 11:59 PM on May 21, 2026. *Id.* In addition, the Second Joint Stipulation was filed with unilateral changes in Plaintiffs' portion that Defendants never even had a chance to address. *Id.*

In response to Plaintiffs threat to re-file the joint stipulation, which is the above captioned stipulation, on May 27, 2026, Defendants asked:

"Instead of serving a third joint stipulation on overlapping issues, why not tell us what issues you believe are remaining and perhaps we can work it out? Clearly there is some difference between what you served and what you believe remain as you unilaterally made changes to the stipulation you served and later filed.

have seven days from receipt to deliver their portion (May 21, 2026), after which Plaintiffs must add it back and provide the assembled stipulation to opposing counsel for signature, which is then due "no later than the end of the next business day" (May 22, 2026). Local Rule 37-3 then requires the motion to be "noticed to be heard on a regular Motion Day for the appropriate judge at least twenty-one days after the filing of the motion," and Judge Audero's Procedures provide that civil motions are heard only on Thursdays at 10:00 a.m. The earliest properly noticed Thursday hearing date is therefore June 18, 2026 — not the June 11, 2026, date Plaintiffs noticed, which is only twenty days after the earliest possible filing date and violates Local Rule 37-3 on its face. Ardalan Decl. Ex. C-4.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

You did not even bother getting back to me on my last email when I wrote to you about the outstanding issues—you simply served a second, improper joint stipulation 15 minutes later. Of course, it appears you are now attempting to avoid the consequences of your outrageous and unsupported position that you were able to unilaterally file the joint stip because the deadline did not expire at midnight, but rather at exactly 168 hours after you served the joint stip. Now that discovery is open, if we serve you additional requests, will you serve responses exactly 720 hours from the time the requests are served on you? You ought to, under your reading of the Federal Rules.

It is not well taken that Plaintiffs are making numerous attempts to drive up costs, filing now two improper joint stipulations on my clients (one on the other defendants), without confronting  Plaintiffs' fee exposure for the improper filings.

If you think issues remain, let us know what they are."

Ardalan Decl., Ex. F.

***Five days*** after Defendants' above email message, Plaintiffs served their Third Joint Stipulation. Plaintiffs opted to not attempt to work it out with Defendants and instead ran to Court, hoping that a new magistrate judge would be more sympathetic to their position than Judge Audero, who said that Plaintiffs already received the information they need. *Id.*

Moreover, Plaintiffs should be admonished for their uncivil behavior. They had no permission to proceed with the First Joint Stipulation because they did not satisfy the IDC process. Ardalan Decl. Ex. B. The Second Joint Stipulation was served knowing that Defendants were going to take Plaintiff Thibault Mauvilain's deposition on May 18, Plaintiff Henri Mazari's deposition on May 20, and Plaintiff Robert Christian Wolf's deposition on May 22, and that they served this joint stipulation for a motion to compel on May 14 (making Defendants' response due May 21), and separately, due two days after an ex parte application that they waited two weeks after meeting and conferring to file, giving Defendants even less opportunity to respond than what is afforded under the rules. *Id.* at ¶ 5.  In spite of all that, Plaintiffs simply took their dead-on-arrival Second Joint Stipulation off calendar after Defendants invested 15 hours in responding to it and after Plaintiffs unilaterally filed it.  Ardalan Decl. ¶ 23.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

**Sanctions Are Warranted Against Plaintiffs and their Counsel**

Sanctions are warranted under Federal Rule of Civil Procedure 37(a)(5)(B), Local Rule 37-4, and the Court's inherent authority to compensate Defendants for the fees incurred opposing this portion of the Joint Stipulation.

The Court already said that it was not convinced that they should receive further documents with respect to this request. Instead of taking the Court's guidance, Plaintiffs have taken on and off calendar three joint stipulations on this issue, each of which needlessly costs Defendants resources and time to respond. This is especially notable with respect to the first two joint stipulations which were dead on arrival because they did not follow the Court's procedures.

The Court has already declined the relief Plaintiffs request, Plaintiffs already have the material information they sought, the additional production Plaintiffs demand would be cumulative and disproportionate, Shutterstock's temporal limitation creates no gap in the production, as previously agreed upon by Plaintiffs, and the motion is procedurally improper. The Court should deny Plaintiffs' motion as to RFP 49 and award the BackGrid Defendants and Shutterstock their reasonable expenses under Rule 37(a)(5)(B) and Local Rule 37-4.

**B. Category II: Prior Deposition Testimony and Sworn Declarations in Copyright Lawsuits (RFPs 67, 68)**

This category covers prior sworn statements by the BackGrid Defendants in other copyright lawsuits (i.e., deposition testimony (RFP 67) and sworn declarations (RFP 68)) from any matter in which a BackGrid Defendant has appeared as a plaintiff, defendant, or third-party witness.

**1.    Request for Production No. 67**

**REQUEST FOR PRODUCTION NO. 67**

All DOCUMENTS concerning any deposition testimony given by YOU as either a plaintiff, defendant, or third party witness in any lawsuit alleging copyright infringement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67 (Served August 25, 2025)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. [BGI/BGU: Responding Party objects to YOU, which as defined is overly broad and unduly burdensome. Responding Party understands YOU to mean BackGrid Inc./BackGrid USA, Inc. / SS: Responding Party further objects to the definition of YOU. It defines "YOU" as "Defendant Flynet Pictures, LLC and any other person or entities acting on its behalf, including, but not limited to, any parents, successors, predecessors, subsidiaries, divisions, and any past and present officers, directors, employees, agents, and representatives." Shutterstock is not Flynet Pictures, LLC and cannot respond on its behalf.] Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party objects that this request is overly broad in that it requests information from unrelated lawsuits and is intended to harass and annoy. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

[None of the BackGrid Defendants served a supplemental response to Request for Production No. 67.]

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

**2.      Request for Production No. 68**

**REQUEST FOR PRODUCTION NO. 68**

All DOCUMENTS concerning any sworn declarations given by YOU as either a plaintiff, defendant, or third party witness in any lawsuit alleging copyright infringement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68 (Served August 25, 2025)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. [BGI/BGU: Responding Party objects to YOU, which as defined is overly broad and unduly burdensome. Responding Party understands YOU to mean BackGrid Inc./BackGrid USA, Inc. / SS: Responding Party further objects to the definition of YOU. It defines "YOU" as "Defendant Flynet Pictures, LLC and any other person or entities acting on its behalf, including, but not limited to, any parents, successors, predecessors, subsidiaries, divisions, and any past and present officers, directors, employees, agents, and representatives." Shutterstock is not Flynet Pictures, LLC and cannot respond on its behalf.] Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party objects that this request is overly broad in that it requests information from unrelated lawsuits and is intended to harass and annoy. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

[None of the BackGrid Defendants served a supplemental response to Request for Production No. 68.]

### 3. Plaintiffs' Position

The prior deposition testimony and sworn declarations responsive to RFPs 67 and 68 bear directly on Plaintiffs' claims, including its Section 1202 claim. The SAC alleges that the BackGrid Defendants "intentionally removed or altered Plaintiffs' copyright management information without authority" and "knowingly provided and distributed false copyright management information" by stripping or replacing Plaintiffs' bylines, source information, and copyright ownership information, and substituting "FameFlynet/BACKGRID" credit fields and "Copyright © [year] BACKGRID, Inc." copyright fields. (SAC ¶¶ 87–92.) Section 1202(b) requires Plaintiffs to prove intentionality, knowledge of removal of CMI, or that the BackGrid Defendants knew, or had reasonable grounds to know, that the removal of CMI would induce, enable, facilitate, or conceal infringement.

The BackGrid Defendants' own prior statements under oath, and through counsel in matters where they were the plaintiff, directly establish that scienter. In *BackGrid USA, Inc. v. Twitter, Inc.*, No. 2:22-cv-09462 (C.D. Cal.), BackGrid USA, Inc. argued, in support of its own copyright claims, that metadata stripping "induces and encourages infringement" and that "there is no legitimate purpose in stripping metadata except to induce infringement." (ECF Nos. 87-1 at 14, 86 at 13.) Those statements are admissions of a party opponent under Federal Rule of Evidence 801(d)(2), and they are direct evidence that the BackGrid Defendants understood that the conduct alleged in this case is "infringement-inducing." At the very least, they are inconsistent with the positions the Back-Grid Defendants are taking in this case. Prior testimony and declarations from other copyright lawsuits in which the BackGrid Defendants have appeared as plaintiff, defendant, or third-party witness are equally probative on contested issues in this case, including the

- 23 -

BackGrid Defendants' understanding of contributor agreements, byline and attribution practices, metadata handling, and the operations of the BackGrid digital asset management system.

Boris Nizon's prior sworn testimony illustrates the point. In *FameFlynet, Inc. v. Breitbart News Network, LLC*, No. 2:17-cv-05416-TJH-AS (C.D. Cal.), Mr. Nizon submitted a supplemental declaration under penalty of perjury stating that, as President of FameFlynet, Inc., he "personally perform[s] or oversee[s] all research into the underlying merits of the matter as well as the retrieval of documents from our systems in support of our enforcement policy," and that FameFlynet's licensing practice was to grant only a "non-exclusive, non-transferable, limited license" subject to terms and conditions, with FameFlynet retaining copyright ownership. (Sergenian Decl. ¶ 20, Ex. 12 (Nizon Supp. Decl., ECF No. 31, ¶¶ 5, 13–14, 19–20).) Those statements bear directly on the contributor-agreement, licensing-scope, and document-custodianship issues central to the SAC, and are party-opponent admissions under Fed. R. Evid. 801(d)(2) attributable to FameFlynet and to BackGrid USA, Inc. as successor to FameFlynet. Plaintiffs identified the existence of this declaration through their own search of the public docket; the BackGrid Defendants have produced no testimony or declarations from any of their prior copyright actions, including this one.

Mr. Nizon's testimony in the *Breitbart* case is directly probative because the FameFlynet archive, contributor systems, and licensing practices he described were transferred into BackGrid in 2017 and continue to operate within the BackGrid client portal and contributor systems at issue in this action. (SAC ¶¶ 35–36, 99.) Mr. Nizon's sworn statements about how those systems and practices operated under his direction are binding admissions on the BackGrid Defendants, whose archive, contributor systems, and licensing business are the same systems Mr. Nizon described, now operated by the entity he co-founded and continues to co-own.

None of the BackGrid Defendants supplemented its response to RFP 67 or RFP 68. The original August 25, 2025 responses object that the Requests seek "information from

- 24 -

unrelated lawsuits" and are "intended to harass and annoy." Neither objection is supported. The lawsuits are not unrelated; they concern photographic content, metadata, and copyright claims, which is the subject matter of this action. And requesting party-opponent admissions—regardless of the subject matter of the lawsuit—is a standard request, and is all the more relevant here where it is directed to elements of Plaintiffs' Section 1202 claim.

The boilerplate objections—"vague," "ambiguous," "overbroad," "unduly burdensome," and "not reasonably calculated to lead to the discovery of admissible evidence"— are insufficient under Federal Rule of Civil Procedure 34(b)(2)(B), which requires the responding party to "state with specificity the grounds for objecting to the request, including the reasons." *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (boilerplate objections fail to comply with the Federal Rules and are tantamount to no objection at all).

Confidentiality concerns about prior sworn statements are addressed by the protective order at ECF No. 64. Most filings in prior copyright lawsuits are on the public record; deposition transcripts and any other materials designated under a protective order in another matter can be redesignated under the protective order in this action as appropriate.

Shutterstock's separate "wrong party" objection fails. Shutterstock acquired BackGrid Inc. and BackGrid USA, Inc. in February 2024. (SAC ¶¶ 18, 37.) As parent corporation of those wholly-owned subsidiaries, Shutterstock has Rule 34 control over documents in their possession, including the deposition transcripts and sworn declarations sought here. *See United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.") (citations omitted); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544–45 (N.D. Cal. 2005).

Prior testimony and declarations are records the BackGrid Defendants identify by matter, not by keyword search against custodian email collections. They know which

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

copyright lawsuits they have been involved in. They can identify the matters, retrieve the testimony and declarations from their litigation files, and produce them.

To the extent the BackGrid Defendants contend that any responsive documents do not exist or cannot be located, they should serve amended Rule 34 responses identifying what is being withheld on what grounds, and support any "no further documents" representation by declaration describing the reasonable inquiry conducted. *See* Fed. R. Civ. P. 34(b)(2)(B)–(C); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 U.S. Dist. LEXIS 151705, at *38–39 (C.D. Cal. July 28, 2023); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006).

At the May 13, 2026 IDC, the BackGrid Defendants declined to produce documents responsive to RFPs 67 and 68. The Court did not order production. Plaintiffs accordingly seek an order compelling production.

### 4.    The BackGrid Defendants' Position

Plaintiffs' motion to compel further responses to RFPs 67 and 68 should be denied. The requests are facially overbroad, the documents Plaintiffs seek are at best marginally relevant to any contested issue in this case, the burden of compliance is grossly disproportionate to any benefit, and — most importantly — the Court has already heard and declined the request at IDC 7.

1. The Court has already considered and declined this request at IDC 7. Plaintiffs presented RFPs 67 and 68 to the Court at the May 13, 2026 Informal Discovery Conference. Ardalan Decl., ¶ 15. On the same arguments now repeated in the Joint Stipulation — including Plaintiffs' contentions about the *BackGrid USA, Inc. v. Twitter, Inc.* matter and Mr. Nizon's declaration in *FameFlynet, Inc. v. Breitbart News Network, LLC —* the Court informed the parties that it "was not convinced you needed this." (Ardalan Decl. Ex. D, May 14, 2026 Email from J. Ardalan to D. Sergenian, RFPs 67 and 68.) The Court's IDC 7 Order authorized Plaintiffs to file a motion but did not displace what the Court said on the merits. (ECF No. 102 at 1–2.)

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

2. The requests are facially overbroad and disproportionate under Rule 26(b)(1). RFPs 67 and 68 demand "[a]ll DOCUMENTS concerning" "any deposition testimony" and "any sworn declarations" by any BackGrid Defendant "as either a plaintiff, defendant, or third party witness in any lawsuit alleging copyright infringement." There is no temporal, subject-matter, or factual limitation. The requests reach copyright-infringement matters of any kind, from any year, involving any photograph (not just the photographs at issue), any photographer (not just the Plaintiff-photographers), any contributor relationship (or none), and any practice (whether or not implicated in this case). That sweep is the paradigm of an overbroad request.

3. The relevance analysis fails as to each BackGrid Defendant and across each of the three categories the requests cover.

4. Shutterstock, Inc. Shutterstock acquired BackGrid Inc. and BackGrid USA, Inc. in February 2024. Before that acquisition, Shutterstock had no relationship of any kind, direct or indirect, with the Plaintiff-photographers, with the photographs at issue, or with the BackGrid client portal. Even after the acquisition, Shutterstock's involvement as to Plaintiffs, if any, is only as the parent company to BackGrid. Plaintiffs' request — that Shutterstock should produce litigation files from its broader history as a publicly traded company on any copyright matter — is untethered to any element of any claim or defense in this matter. The request as to Shutterstock should be denied in full.

And, Shutterstock's objection that the request is directed to the wrong party for good reason. Plaintiffs defined YOU as Defendant Flynet Pictures, LLC, a different defendant.  Ardalan Decl. Ex. H.

5. BackGrid, Inc. is a terminated entity that has nothing to do with the Plaintiffs in this case. BackGrid Inc. has not appeared in a copyright suit. BackGrid, Inc. has not been a defendant or third-party witness in any matter in which the relationship between BackGrid and a contributor was at issue. Plaintiffs identify none.

6. BackGrid USA, Inc. Plaintiffs cite two prior matters as the basis for their request as to BackGrid USA, Inc.: *BackGrid USA, Inc. v. Twitter, Inc.,* No. 2:22-cv-09462 (C.D.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Cal.), and *FameFlynet, Inc. v. Breitbart News Network, LLC*, No. 2:17-cv-05416-TJH-AS (C.D. Cal.). Neither matter justifies the relief Plaintiffs seek:

- Twitter. Plaintiffs argue that BackGrid USA, Inc. took the position in the Twitter matter that "metadata stripping 'induces and encourages infringement.'" The cited material consists of legal arguments made in counsel-drafted briefing (ECF Nos. 87-1 at 14, 86 at 13 of the Twitter matter), not deposition testimony or sworn declarations. Those filings are not responsive to RFP 67 ("deposition testimony") or RFP 68 ("sworn declarations") as Plaintiffs have framed those requests; they are publicly available on the Twitter docket; and they reflect counsel's argument on facts specific to Twitter, not party-opponent admissions about the contributor relationships at issue in this case. Plaintiffs already have what they describe. Twitter is an internet service provider that never had a license from BackGrid to distribute the photos uploaded by third parties. Here, the uploaders are Plaintiffs who submitted their works to one or more of Defendants to license their works. And, as explained at the IDC, no depositions took place in the case. Ardalan Decl., ¶ 15.

- Breitbart / Nizon Declaration. Plaintiffs admit in the Joint Stipulation that they "identified the existence of this declaration through their own search of the public docket" (¶ 241). The Nizon declaration is therefore in Plaintiffs' possession. There is nothing to compel. To the extent Plaintiffs want Mr. Nizon's testimony about the contributor relationships at issue in this case, the appropriate vehicle is a deposition of Mr. Nizon — and the BackGrid Defendants will not foreclose that. RFPs 67 and 68 are not vehicles to relitigate the disposition of Mr. Nizon's pre-acquisition materials, an issue that was resolved at IDC 7 (ECF No. 102 at 1) and that Plaintiffs withdrew from this Joint Stipulation on May 16, 2026.

7. The "party-opponent admission" theory does not expand the scope of discovery. Plaintiffs argue that prior testimony and declarations would be admissions under Federal Rule of Evidence 801(d)(2). Rule 801(d)(2) is an evidentiary rule, not a discovery rule. It

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

governs admissibility, not the scope of Rule 34 production, and it does not justify a blanket production of every transcript and declaration any BackGrid entity has ever given in any copyright case.

8. The burden of compliance is grossly disproportionate. To respond to RFPs 67 and 68 as Plaintiffs frame them, the BackGrid Defendants would have to canvass the entire copyright-litigation history of two entities (BackGrid USA, Inc., and Shutterstock, Inc.) plus other companies (FameFlynet, Inc.; Fame Pictures, Inc.), identify every matter in which any of those entities ever testified or submitted a declaration, retrieve the transcripts and declarations from litigation files (many of which may be subject to confidentiality designations in those other matters), and produce them. The yield for that effort would be at best cumulative of what is already publicly available on PACER (and which Plaintiffs have demonstrated they can locate themselves) and at worst irrelevant to any contested issue in this case. See Fed. R. Civ. P. 26(b)(1) (proportionality factors).

9. The motion is also procedurally defective as it does not contemplate a hearing date. The Second Joint Stipulation—which addresses this same issue and was withdrawn by Plaintiffs was untimely and procedurally defective because they included a hearing date, and did not account for the additional time required under the Local Rules for Defendants to review the Joint Stipulation before filing. (Ardalan Decl. Ex. C.) Now, Plaintiffs attempt to avoid the timing issue by failing to include a hearing date at all.[4]

---

[4] With respect to the Second Joint Stipulation, Plaintiffs served their portion of the Joint Stipulation on Defendants on May 14, 2026. Under Local Rule 37-2.2, Defendants have seven days from receipt to deliver their portion (May 21, 2026), after which Plaintiffs must add it back and provide the as-sembled stipulation to opposing counsel for signature, which is then due "no later than the end of the next business day" (May 22, 2026). Local Rule 37-3 then requires the motion to be "noticed to be heard on a regular Motion Day for the appropriate judge at least twenty-one days after the filing of the motion," and

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

10. This Third Joint Stipulation goes against the spirit of Defendants' exhaustive efforts to informally resolve discovery issues in this case. After Plaintiffs took their Second Joint Stipulation off calendar, they threatened to file yet another. Notably, Plaintiffs took their stipulation off calendar after Defendants spent about 15 hours responding to it. Ardalan Decl., ¶ 23. The docket does not reflect that Defendants responded to the Second Joint Stipulation because Plaintiffs unilaterally filed the stipulation taking the position that Defendants' portion was not due at 11:59 PM on the seventh day after service, but at the time served, seven days later. (*See* Dkt. 107; Ardalan Decl., Ex. C-1, C-2, C-3, C-4.) Defendants filed a request to strike the joint stipulation and produced exhibits demonstrating that their portion of the Joint Stipulation was served on Plaintiffs by midnight on May 21, 2026. *Id.* In addition, the Second Joint Stipulation was filed with unilateral changes in Plaintiffs' portion that Defendants never even had a chance to address. *Id.*

In response to Plaintiffs threat to re-file the joint stipulation, which is the above captioned stipulation, on May 27, 2026, Defendants asked:

"Instead of serving a third joint stipulation on overlapping issues, why not tell us what issues you believe are remaining and perhaps we can work it out? Clearly there is some difference between what you served and what you believe remain as you unilaterally made changes to the stipulation you served and later filed.

You did not even bother getting back to me on my last email when I wrote to you about the outstanding issues—you simply served a second, improper joint stipulation 15 minutes later. Of course, it appears you are now attempting to avoid the consequences of your outrageous and unsupported position that you were able to unilaterally file the joint stip because the deadline did not expire at midnight, but rather at exactly 168 hours after

---

Judge Audero's Procedures provide that civil motions are heard only on Thursdays at 10:00 a.m. The earliest properly noticed Thursday hearing date is therefore June 18, 2026 — not the June 11, 2026, date Plaintiffs noticed, which is only twenty days after the earliest possible filing date and violates Local Rule 37-3 on its face.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

you served the joint stip. Now that discovery is open, if we serve you additional requests, will you serve responses exactly 720 hours from the time the requests are served on you? You ought to, under your reading of the Federal Rules.

It is not well taken that Plaintiffs are making numerous attempts to drive up costs, filing now two improper joint stipulations on my clients (one on the other defendants), without confronting Plaintiffs' fee exposure for the improper filings.

If you think issues remain, let us know what they are."

Ardalan Decl., Ex. F.

*Five days* after Defendants' above email message, Plaintiffs served their Third Joint Stipulation. Plaintiffs opted to not attempt to work it out with Defendants and instead ran to Court, hoping that a new magistrate judge would be more sympathetic to their position than Judge Audero, who said that Defendants already received the information they need. *Id.*

Moreover, Plaintiffs should be admonished for their uncivil behavior. They had no permission to proceed with First Joint Stipulation because they did not satisfy the IDC process. Ardalan Decl. Ex. A-1. The Second Joint Stipulation was served knowing that Defendants were going to take Plaintiff Thibault Mauvilain's deposition on May 18, Plaintiff Henri Mazari's deposition on May 20, and Plaintiff Robert Christian Wolf's deposition on May 22, and that they served this joint stipulation for a motion to compel on May 14 (making Defendants' response due May 21), and separately, due two days after an ex parte application that they waited two weeks after meeting and conferring to file, giving Defendants even less opportunity to respond than what is afforded under the rules. *Id.* at ¶ 5. In spite of all that, Plaintiffs simply took their dead-on-arrival Second Joint Stipulation off calendar after Defendants invested 15 hours in responding to it and after Plaintiffs unilaterally filed it.

### Sanctions Are Warranted Against Plaintiffs and their Counsel

Sanctions are warranted under Federal Rule of Civil Procedure 37(a)(5)(B), Local Rule 37-4, and the Court's inherent authority to compensate Defendants for the fees in-

curred opposing this withdrawn portion of the Joint Stipulation between May 14 and May 16, 2026, as discussed further below.

The Court already said that it was not convinced that they should receive further documents with respect to this request. Instead of taking the Court's guidance, Plaintiffs have taken on and off calendar three joint stipulations on this issue, each of which needlessly costs Defendants resources and time to respond. This is especially notable with respect to the first two joint stipulations which were dead on arrival because they did not follow the Court's procedures.

]The Court has already declined this request at IDC 7, the requests are facially overbroad, Plaintiffs' two specific examples either are not responsive as framed (Twitter) or are already in Plaintiffs' possession (Breitbart / Nizon declaration), Rule 801(d)(2) does not expand discovery, the burden is disproportionate, and the motion is procedurally untimely. The Court should deny Plaintiffs' motion as to RFPs 67 and 68 and award the BackGrid Defendants and Shutterstock their reasonable expenses incurred opposing it under Rule 37(a)(5)(B) and Local Rule 37-4.

### C. Category III: Search Term Defects, Custodian Omissions, and Lack of Transparency in Document Identification

This category addresses the BackGrid Defendants' disclosures concerning their search methodology, document universe, custodians, sampling, and media and sources searched, and the omission of Boris Nizon as a custodian. The parties' respective positions on each issue are set forth below.

#### 1. Plaintiffs' Position

##### a. Procedural Background

The BackGrid Defendants assumed responsibility for running keyword searches against their production universe by asking Plaintiffs to propose Boolean search terms and then taking those terms in-house for execution. On October 15, 2025, Plaintiffs sent 62 proposed Boolean terms. (Ex. 2.) On April 13, 2026, six months later, Ms. Ardalan provided a modified version of Plaintiffs' terms, asserting that Logikcull, the BackGrid

- 32 -

Defendants' e-discovery platform, did not support certain Boolean operators in the original terms. (Ex. 5.) On April 14, 2026, Plaintiffs identified the categories of defects in the April 13 modifications. (Ex. 6.) The BackGrid Defendants did not respond to the April 14 critique. On May 6, 2026, BackGrid USA, Inc. served supplemental search terms in Attachment A to its amended responses, intended to address the April 14 critique. The May 6 supplementation does not cure the April 13 defects, and in several respects introduces new defects of the same kind.

### b.      The Omission of Boris Nizon from the Custodian List

Boris Nizon does not appear among the custodians the BackGrid Defendants identified in their April 13, 2026 custodian and search-term disclosure. (Ex. 5.) Mr. Nizon is a co-owner of BackGrid USA, Inc. and has been since May 2017. (Ex. 10.) He was previously the founder and owner of FamePictures, Inc. and a co-founder and co-owner of FameFlynet, Inc., the predecessor entities in the succession chain through which Plaintiffs' photographs were distributed. (*Id*.) He maintained a BackGrid email account from 2017 until at least 2024. (Sergenian Decl. ¶ 19.) On April 14, 2026, Plaintiffs identified the omission of Mr. Nizon as a custodian and asked that his documents be collected and searched. (Ex. 6.)

The BackGrid Defendants have given shifting and incomplete accounts of those documents. At the May 13, 2026 Informal Discovery Conference, the BackGrid Defendants represented that they were unable to produce Mr. Nizon's documents because one of the Defendants, Shutterstock, did not have possession, custody, or control over his documents. Magistrate Judge Audero asked the BackGrid Defendants directly whether BackGrid USA, Inc. has possession, custody, or control over Mr. Nizon's documents. Counsel stated at the IDC that BackGrid USA, Inc. also does not have possession, custody, or control over the documents. (Sergenian Decl. ¶ 19.) Subsequently, Plaintiffs asked the BackGrid Defendants to confirm that representation in writing. They initially refused. (Sergenian Decl. ¶ 19; Ex. 11.) Then, they stated they would confirm the representation

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

in writing. (*Id.* ¶ 19.) Two days later, they claimed they had confirmed it in writing, pointing to their May 19, 2026 opposition to Plaintiffs' *ex parte* application to modify the scheduling order, but that filing states only that Mr. Nizon's documents "did not get transferred over when BackGrid was purchased by Shutterstock." (Dkt. 104 at 6.) Whether Shutterstock received the documents in the acquisition is a distraction. The question is whether **BackGrid USA**, the entity Mr. Nizon co-owns (or BackGrid, Inc.), has them. The BackGrid Defendants have answered that question only once, orally and off the record, and have refused to put their answer in writing.

The representations cannot be squared with Mr. Nizon's continuing ownership role or his own sworn testimony regarding his control over the predecessor entities' records. In *FameFlynet, Inc. v. Breitbart News Network, LLC*, No. 2:17-cv-05416-TJH-AS (C.D. Cal. July 13, 2018), Mr. Nizon swore that, as President and founder of FameFlynet, he personally performed or oversaw the retrieval of documents from FameFlynet's systems and was personally familiar with its records and the metadata embedded in its images. (Ex. 12 ¶¶ 5, 9–11, 14.) Mr. Nizon held that role until 2017, when FameFlynet's archive and operations continued into the BackGrid entities of which he remains a co-owner. (Ex. 10.)

A party must produce documents within its possession, custody, or control; where responsive documents once existed but are no longer in the producing party's possession, the party must say so and describe the reasonable inquiry it conducted. Fed. R. Civ. P. 34(b)(2)(B)–(C); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 U.S. Dist. LEXIS 151705, at *38–39 (C.D. Cal. July 28, 2023). The BackGrid Defendants' informal, unsworn assertion that Mr. Nizon's documents were "not transferred over" does not satisfy that standard. Plaintiffs accordingly request an order compelling the BackGrid Defendants to collect, process, and search Mr. Nizon's documents or, in the alternative, to serve a declaration from a person with knowledge accounting for the disposition of his pre-acquisition materials and describing the reasonable inquiry conducted.

- 34 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

c.      **The BackGrid Defendants' Refusal to Disclose Hit Counts, Document Universe, Custodians, Sampling, or Media and Sources Searched**

Throughout the search-term negotiation and to the present, the BackGrid Defendants have not disclosed: (a) the total number of documents loaded into Logikcull, (b) the total number of custodians whose documents are loaded into Logikcull, (c) the hit count returned by any search the BackGrid Defendants ran, (d) any sampling methodology or sampling results that would allow Plaintiffs to evaluate the BackGrid Defendants' characterization of search results as responsive or nonresponsive, or (e) the email accounts, file shares, cloud storage, mobile devices, backup tapes, archived systems, legacy databases, or other media and sources from which documents were collected and loaded into Logikcull. (Sergenian Decl. ¶ 18.)

Plaintiffs requested this information from defense counsel on at least four occasions: in the April 14, 2026 email (Ex. 6); in the April 27, 2026 email following the BackGrid Defendants' production (Ex. 7); during the May 9, 2026 meet-and-confer videoconference, at which Ms. Ardalan declined to provide any of these categories and stated that the BackGrid Defendants would not re-run the searches and would not say whether hit counts had been saved; and in the May 11, 2026 chambers email in advance of the May 13, 2026 IDC. (*Id.*)

Without these categories of information, Plaintiffs cannot determine whether the documents missed by the defects identified above were captured by any other search the BackGrid Defendants ran. The BackGrid Defendants have placed Plaintiffs in the position of identifying defects on the face of the search strings, requesting the metrics that would either confirm or refute the defects' practical effect, and being refused those metrics on every request.

Federal Rule of Civil Procedure 26(g) requires the BackGrid Defendants to certify that their discovery responses are complete and correct to the best of their knowledge after a reasonable inquiry. Federal Rule of Civil Procedure 34(b)(2)(B) and (C) requires

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

the BackGrid Defendants to specify any production limitations they impose and to indicate whether responsive documents are being withheld on the basis of an objection. See Fed. R. Civ. P. 34(b)(2)(B)–(C); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 U.S. Dist. LEXIS 151705, at *38–39 (C.D. Cal. July 28, 2023); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006). When a producing party imposes keyword-search limitations on its production, the methodology behind those limitations is a proper subject of disclosure where, as here, Plaintiffs have identified facially apparent defects in the executed searches and the producing party refuses to describe its document universe, hit counts, or media and sources searched. The BackGrid Defendants cannot rely on a search methodology they refuse to describe, refuse to correct, and refuse to rerun.

### d.    Requested Relief

Plaintiffs respectfully request an order compelling the BackGrid Defendants to disclose the document universe, the custodian count and identities, the hit counts for each search the BackGrid Defendants have run, the sampling methodology and any sampling results, and the email accounts, file shares, cloud storage, mobile devices, backup tapes, archived systems, legacy databases, and other media and sources from which documents were collected.

### 2.    The BackGrid Defendants' Position

Defendants address this dispute as two separate issues. One, the disclosure of hit counts, document universe, etc. Two, Boris Nizon as a custodian.

### a.    Disclosure of Hit Counts, Document Universe etc.

As a threshold matter, Plaintiffs did not receive permission to proceed with their "discovery on discovery" dispute. Judge Audero's procedures require that each party be given permission to proceed with a Joint Stipulation after completion of an Informal Discovery Conference.  She did not give permission for it to be raised here. Plaintiffs now hope a new judge will re-address this issue, but the Court ought to take notice that this joint stipulation was served and filed under Judge Audero's procedures and that Plaintiffs were never given permission to proceed.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Notably, this issue was also raised in the First and Second Joint Stipulation. The First Joint Stipulation was withdrawn entirely because it did not follow Judge Audero's procedures. Ardalan Decl., Ex. A and B. The Second Joint Stipulation improperly included this issue because Judge Audero told Plaintiffs they do not get discovery on discovery. After service of the Second Joint Stipulation, Plaintiffs represented they would withdraw this issue, among others, from Second Joint Stipulation because it was not permitted by the Court's order. Ex. E.

Notably, that Second Joint Stipulation contained numerous, substantive misrepresentations, which is explained in the Sanctions request, including, for example, representing that there were no wildcard searches when there were **_806_** wildcard searches completed. Or that one of the Plaintiffs was left out entirely, when he appeared in about 70 searches. Ardalan Decl. Ex C-4.

In addition, Plaintiffs have requested discovery on discovery as part of the IDC— **_and not even if the form of a request or interrogatory._** The Court has told Defendants multiple times at multiple IDCs that the Court does not permit it absent some showing that a party is improperly withholding documents. *Jensen v. BMW of North America, LLC,* 328 F.R.D. 557, 566 (S.D Cal. 2019) ("Discovery into another party's discovery process is disfavored."); *Perez v. DirecTV Grp. Holdings, LLC*, No. SA CV 16-01440-JLS (DFMx), 2020 WL 5875026, at *2 (C.D. Cal. Aug. 17, 2020) (reasoning that when "discovery on discovery" is sought, the party requesting the discovery must present an adequate factual basis to justify the discovery). The Court stated that Defendants' production appeared to be adequate and was not convinced there is a need for discovery on discovery. Ardalan Decl. Ex. F.

Here, Plaintiffs have not articulated any non-speculative reason for them needing this information. Defendants would have to re-run the 2,300 searches to provide hit count information, which would be time consuming and burdensome. Ardalan Decl. Ex. G.

**b**. **Boris Nizon Is Not a Custodian Because Plaintiffs Do Not Have His Documents in Their Possession, Custody, or Control.**

Defendants have explained at an IDC and later in an opposition to Plaintiffs' ex parte request that when Shutterstock purchased BackGrid USA, Inc., in February 2024, ***before*** Defendants were given notice of any dispute, certain technological systems changed as part of the purchase. Mr. Nizon's documents did not get transferred over. Mr. Nizon stopped involvement with BackGrid USA, Inc. after its purchase, so there are no new emails after the purchase. This has already been explained to Plaintiffs during the IDC. Plaintiffs were satisfied with the explanation at the IDC, but later wanted this confirmed in writing because the IDC was not recorded. As noted by Judge Audero, further litigation of this issue is not a good use of Court resources. (Dkt. 108, "Before the Court is Plaintiffs' request for a further informal discovery conference ("IDC"), requested for the sole purpose of having BackGrid Defendants reiterate a representation made by their counsel at IDC 7. IDC 7 was held on May 13, 2026 at 7:00 a.m. to accommodate the parties' scheduling conflicts, which, because of the early hour and the resulting inability of the Court to provide courtroom coverage, necessitated a waiver by the parties of the creation of a Court record (recording) of same. The parties stipulated to such waiver. (See ECF No. 99 at 49-51.) Now, in the absence of a Court record, to which Plaintiffs stipulated, Plaintiffs seek a further IDC to re-affirm the representation made by BackGrid Defendants' counsel. The Court DENIES Plaintiffs' request for a further IDC and encourages the parties to resolve this (apparently revived) dispute without further expenditure of Court resources.")

Defendants attempted to meet and confer per this Order. Plaintiffs refused. Now, Plaintiffs want relief and sanctions.

c. **This Motion Is Procedurally Defective**

The motion is also procedurally defective as it does not contemplate a hearing date. The Second Joint Stipulation—which addresses this same issue and was withdrawn by Plaintiffs was untimely and procedurally defective because they included a hearing date, but did not account for the additional time required under the Local Rules for Defendants

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

to review the Joint Stipulation before filing. (Ardalan Decl. Ex. C.) Now, Plaintiffs attempt to avoid the timing issue by failing to include a hearing date at all.[5]

**d. This Motion Goes Against the Spirit of Defendants' Exhaustive Efforts to Resolve Discovery Issues in This Case.**

This Third Joint Stipulation goes against the spirit of Defendants' exhaustive efforts to informally resolve discovery issues in this case. After Plaintiffs took their Second Joint Stipulation off calendar, they threatened to file yet another. Notably, Plaintiffs took their stipulation off calendar after Defendants spent about 15 hours responding to it. Ardalan Decl., ¶ 23  The docket does not reflect that Defendants responded to the Second Joint Stipulation because Plaintiffs unilaterally filed the stipulation taking the position that Defendants' portion was not due at 11:59 PM on the seventh day after service, but at the time served, seven days later. (*See* Dkt. 107; Ardalan Decl., Ex. C-1, C-2, C-3, C-4.) Defendants filed a request to strike the joint stipulation and produced exhibits demonstrating that their portion of the Joint Stipulation was served on Plaintiffs by midnight on

[5] With respect to the Second Joint Stipulation, Plaintiffs served their portion of the Joint Stipulation on Defendants on May 14, 2026. Under Local Rule 37-2.2, Defendants have seven days from receipt to deliver their portion (May 21, 2026), after which Plaintiffs must add it back and provide the as-sembled stipulation to opposing counsel for signature, which is then due "no later than the end of the next business day" (May 22, 2026). Local Rule 37-3 then requires the motion to be "noticed to be heard on a regular Motion Day for the appropriate judge at least twenty-one days after the filing of the motion," and Judge Audero's Procedures provide that civil motions are heard only on Thursdays at 10:00 a.m. The earliest properly noticed Thursday hearing date is therefore June 18, 2026 — not the June 11, 2026, date Plaintiffs noticed, which is only twenty days after the earliest possible filing date and violates Local Rule 37-3 on its face.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

May 21, 2026. *Id.* In addition, the Second Joint Stipulation was filed with unilateral changes in Plaintiffs' portion that Defendants never even had a chance to address. *Id.*

In response to Plaintiffs threat to re-file the joint stipulation, which is the above captioned stipulation, on May 27, 2026, Defendants asked:

"Instead of serving a third joint stipulation on overlapping issues, why not tell us what issues you believe are remaining and perhaps we can work it out? Clearly there is some difference between what you served and what you believe remain as you unilaterally made changes to the stipulation you served and later filed.

You did not even bother getting back to me on my last email when I wrote to you about the outstanding issues—you simply served a second, improper joint stipulation 15 minutes later. Of course, it appears you are now attempting to avoid the consequences of your outrageous and unsupported position that you were able to unilaterally file the joint stip because the deadline did not expire at midnight, but rather at exactly 168 hours after you served the joint stip. Now that discovery is open, if we serve you additional requests, will you serve responses exactly 720 hours from the time the requests are served on you? You ought to, under your reading of the Federal Rules.

It is not well taken that Plaintiffs are making numerous attempts to drive up costs, filing now two improper joint stipulations on my clients (one on the other defendants), without confronting  Plaintiffs' fee exposure for the improper filings.

If you think issues remain, let us know what they are."
Ardalan Decl., Ex. F.

***Five days*** after Defendants' above email message, Plaintiffs served their Third Joint Stipulation. Plaintiffs opted to not attempt to work it out with Defendants and instead ran to Court, hoping that a new magistrate judge would be more sympathetic to their position than Judge Audero, who said that Defendants already received the information they need. *Id.*

Moreover, Plaintiffs should be admonished for their uncivil behavior. They had no permission to proceed with First Joint Stipulation because they did not satisfy the IDC process. Ardalan Decl. Ex. A-1. The Second Joint Stipulation was served knowing that Defendants were going to take Plaintiff Thibault Mauvilain's deposition on May 18,

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Plaintiff Henri Mazari's deposition on May 20, and Plaintiff Robert Christian Wolf's deposition on May 22, and that they served this joint stipulation for a motion to compel on May 14 (making Defendants' response due May 21), and separately, due two days after an ex parte application that they waited two weeks after meeting and conferring to file, giving Defendants even less opportunity to respond than what is afforded under the rules. *Id.* at ¶ 5. In spite of all that, Plaintiffs simply took their dead-on-arrival Second Joint Stipulation off calendar after Defendants invested 15 hours in responding to it and after Plaintiffs unilaterally filed it.

## III.   SANCTIONS

### A. Plaintiffs' Position on Sanctions

Plaintiffs respectfully request an award of $ 16,800 in attorney's fees as a sanction under Federal Rule of Civil Procedure 37(a)(5)(A) for the reasonable expenses incurred in bringing this Motion.

Rule 37(a)(5)(A) provides that if a motion to compel discovery "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The award is mandatory unless one of three exceptions applies: (i) the motion was filed before the movant attempted in good faith to obtain the discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). None of those exceptions applies here.

The first exception is foreclosed by the record. Plaintiffs served their First Set of Requests for Production on July 10, 2025. Plaintiffs' Local Rule 37-1 letter issued September 23, 2025. In addition to meeting and conferring, the parties participated in eight IDCs before this Court between November 2025 and May 2026. On March 25, 2026, the Court found that the parties had satisfied their meet-and-confer obligations under Rule

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

37. (ECF No. 83.) Plaintiffs then drew an April 10, 2026 deadline for substantial completion of production; that deadline passed without compliance. The April 27, 2026 production—approximately 487 pages, predominantly internal accounting records, ACH receipts, LinkedIn notifications, FRE 408 settlement correspondence, and screenshots of an internal administrative interface—did not resolve the deficiencies. (Sergenian Decl. ¶¶ 21–22.) Plaintiffs served a Rule 37 Joint Stipulation on the BackGrid Defendants on May 5, 2026. At the May 6, 2026 IDC, this Court declined to authorize the filing of the motion at that time without prejudice to its later filing, and set the May 13, 2026 IDC to address the alleged deficiencies in the BackGrid Defendants' document production. (ECF No. 94 at 2.) Plaintiffs followed with a videoconference meet and confer on May 9, 2026, and an email to chambers on May 11, 2026, identifying the disputes presented in this Motion. At the May 13, 2026 IDC, the parties addressed the issues raised in this Joint Stipulation, and this Court authorized Plaintiffs to serve a revised Joint Stipulation. The BackGrid Defendants made oral representations as to several disputed categories at the conference, but none of those representations has been memorialized in a compliant Rule 34 response or followed by further production. Plaintiffs accordingly address each disputed category herein, subject to withdrawal upon written confirmation and performance.

The second exception is unavailable because the BackGrid Defendants' position is not substantially justified. The "substantially justified" standard is "satisfied if there is a 'genuine dispute' … or 'if reasonable people could differ as to the appropriateness of the contested action.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations and alterations omitted); *accord Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994); *Lee v. Cnty. of Los Angeles*, 2025 U.S. Dist. LEXIS 274331, at *10–11 (C.D. Cal. Dec. 30, 2025). The party resisting sanctions bears the burden of establishing substantial justification. *Hyde & Drath*, 24 F.3d at 1171; *Lee*, 2025 U.S. Dist. LEXIS 274331, at *7–8. Reasonable people could not differ on the propriety of the BackGrid Defendants' conduct here.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

The Court's March 25, 2026 Minute Order, which found that Plaintiffs had satisfied their meet-and-confer obligations under Rule 37 while encouraging further efforts to resolve disputes (ECF No. 83 at 1–2), gave the BackGrid Defendants a clear path to bring their production into compliance and avoid this Motion. They did not use it.

Plaintiffs demanded substantial completion by April 10, 2026; the deadline passed without any production. (Sergenian Decl. ¶¶ 13–14.)

Plaintiffs identified five categories of defects in the BackGrid Defendants' April 13 modified search terms and asked the BackGrid Defendants to provide the hit counts, document universe, custodians, sampling methodology, and media and sources searched. (Sergenian Decl. ¶¶ 17–18.) The BackGrid Defendants did not respond to the critique and did not provide any of the requested information. (*Id.* ¶ 18.)

The BackGrid Defendants' productions through May 12, 2026—the April 27 production at BACKGRID001656–002142 and the supplemental productions on May 8, May 11, and May 12 at BACKGRID002143–002574—are missing entire categories of responsive material, including source files; server and access logs; royalty calculations, payment records, and reconciliations for Plaintiffs Mazari, Kyndt, and Mehdi; royalty calculations, payment records, and reconciliations for Plaintiffs Wolf, Boutefeu, Duplaquet, and Mauvilain beyond the per-photographer sales ledgers and the single December 11, 2018 reconciliation for Mauvilain; audit logs; metadata handling scripts; contributor code documentation; asset purchase and merger agreements; and prior litigation filings. (Sergenian Decl. ¶ 23.)

The BackGrid Defendants committed in writing, on the date of the April 27 production, to serve amended Rule 34 responses identifying what was being withheld and a spreadsheet identifying the search terms they actually executed. (*Id.* ¶ 24.) BackGrid USA, Inc. served amended responses and Attachment A on May 6, 2026, only after Plaintiffs initiated the motion process. Shutterstock, Inc. served supplemental responses with its own Attachment A on May 12, 2026, after Plaintiffs served the Rule 37 Joint Stipulation. BackGrid, Inc. has not served amended responses or a search-terms spreadsheet as

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

of the filing of this Motion. (*Id.*) Shutterstock, Inc.'s supplemental responses unilaterally limit its search to documents "from January 1, 2024 to present"—a temporal limitation Plaintiffs never agreed to and that excludes virtually all of the conduct at issue in this action.

None of these failures reflects a genuine dispute or a position on which reasonable people could differ. They reflect a pattern of non-cooperation that continued, and in some respects deepened, after the Court's March 25 order. Nor is this a case in which the Back-Grid Defendants' objections themselves are substantially justified, as discussed above.

The third exception likewise does not apply. Rule 37(a)(5)(A) treats fee awards as mandatory "if the disclosure or requested discovery is provided after the motion was filed." Several of the disputes addressed in the May 5, 2026 version of this Joint Stipulation were addressed at the May 13, 2026 IDC only after Plaintiffs initiated the motion process. The BackGrid Defendants are represented by sophisticated counsel; they have had 10 months and the benefit of eight IDCs to bring their production into compliance; and their voluntary written commitments on the date of the April 27 production were either honored late and partially (BackGrid USA, Inc. and Shutterstock, Inc.) or not honored at all (BackGrid, Inc.). (Sergenian Decl. ¶ 24.) There is nothing unjust about requiring the BackGrid Defendants to bear the reasonable expenses of the motion their conduct necessitated.

Reasonable attorney's fees under Rule 37 are calculated using the lodestar method, in which the court multiplies the number of hours reasonably expended by a reasonable hourly rate, with adjustments where appropriate based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (adopting twelve-factor reasonableness test from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), including time and labor required, customary fee, results obtained, and experience and ability of counsel). *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Counsel for Plaintiffs spent 34.7

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

hours preparing this Motion across eight days (May 1–5, and May 11–14, 2026). (Sergenian Decl. ¶ 32.) Those hours exclude time spent on the meet-and-confer process, on the eight IDCs, and on the broader management of discovery, and they reflect only the time necessitated by the BackGrid Defendants' noncompliance. (*Id.*) Because several of the disputed categories addressed in those hours have since been resolved, Plaintiffs do not seek their full incurred time; they seek only one-half of those hours (17.4 hours) as the portion fairly attributable to the issues that remain at impasse, together with the 5 hours anticipated for the supplemental memorandum, for a total of 22.4 hours. (*Id.*)

The hourly rate is well within, and at the low end or below, the prevailing market rate. Counsel's standard rate is $750 per hour. (Sergenian Decl. ¶ 33.) The 2024 Real Rate Report, of which courts in this District take judicial notice, reports a median hourly rate of $895 for partners in Los Angeles, a third-quartile rate of $1,268, and a range of $675 to $1,575 for commercial-litigation partners. *See Bank of Hope v. Expedited Travel, LLC*, 2026 U.S. Dist. LEXIS 79619, at \*6–7 (C.D. Cal. Feb. 13, 2026); *Trs. of the Laundry v. Kleen Kraft Servs., Inc.*, 2026 U.S. Dist. LEXIS 47266, at \*8–10 (C.D. Cal. Feb. 2, 2026).

Multiplying 22.4 hours by the $750 rate yields $16,800. That figure is reasonable, well-supported, and modest in light of the underlying record.

For these reasons, Plaintiffs respectfully request that the Court award $16,800 in attorney's fees against the BackGrid Defendants and their counsel, jointly and severally, under Rule 37(a)(5)(A).

### B. BackGrid Defendants' Position on Sanctions

The above sanctions request contains material misrepresentations and attempts to mislead the Court.

### Misrepresentations in Plaintiffs' Sanctions Request

First, Plaintiffs state: "The Court's March 25, 2026 Minute Order, which found that Plaintiffs had satisfied their meet-and-confer obligations under Rule 37 while encouraging further efforts to resolve disputes (ECF No. 83 at 1–2), gave the BackGrid Defendants a clear path to bring their production into compliance and avoid this Motion."

- 45 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

This is a misrepresentation. Judge Audero did not authorize that the above issues proceed per a March IDC. For that reason, Defendants were given relief from responding to Plaintiffs' First Joint Stipulation.  Ardalan Decl. Ex. A and B.

Second, Plaintiffs make it appear that it was Defendants' discovery that was at issue in the eight IDCs. They state that Defendants had "the benefit of eight IDCs to bring their production into compliance." This is misleading.

The **First IDC** was **brought by the BackGrid Defendants**. **<u>Plaintiffs filed this lawsuit without identifying the works they contend are at issue.</u>** Because they did not, discovery came to a stalemate—Plaintiffs served discovery on the "COPYRIGHTED WORKS" but without identifying the COPYRIGHTED WORKS in a way that was meaningful or searchable. Defendants who license millions of photos from hundreds of contributors—could not conduct meaningful discovery.

It was Defendants—not Plaintiffs—who requested an IDC with Judge Audero to find out what the COPYRIGHTED WORKS are so that their own discovery could proceed, despite the fact that their Motion to Dismiss was pending.  Ardalan Decl., Ex. I (which includes an email, an IDC statement, a declaration, and responses).  During the December 11 IDC, Defendants brought the head of BackGrid's IT and the architect of BackGrid's system for an all-day IDC to explain to Plaintiffs how to find the works and use their systems so that Plaintiffs could figure out the works at issue. Ardalan Decl. ¶ 22. During the IDC, BackGrid agreed to give and ultimately gave Plaintiffs three weeks of access to a Confidential Client Portal so that Plaintiffs could find their works. (Dkt. 66) That means Plaintiffs got answers to their questions from two of BackGrid's agents with superior knowledge of their internal systems for an entire day, as well as three weeks of access to BackGrid's confidential systems—all so that Plaintiffs could find the works at issue.

Significantly, this is not the first time Plaintiffs had access to BackGrid's Confidential Portal. At deposition on May 18, Thibault Mauvilain admitted that he made up an identity—Emily Carter—and requested access to the Confidential Client Portal, claiming

- 46 -

to be a producer who wanted access to research photos for an upcoming documentary. Ardalan Decl. Ex. J. 172:3-16; 175:19-176:08.

Long before the IDC, from August 2024 to November 2025, Plaintiff Mauvilain posing as "Emily Carter" had  14 months of access to BackGrid's Confidential Client Portal even before the lawsuit was filed, and still did not identify the sets at issue. Ardalan Decl., ¶ 20.  That access was obtained through fraud and gave Plaintiffs months of free and illegal discovery on their claims.

In the end, BackGrid reviewed the licenses issued for each of the identified sets after Plaintiffs had access to the Confidential Portal through fraud and also through the IDC process—the total licensing revenue across all Plaintiffs is less than $2,931.16,  and has now been paid to Plaintiffs. Ardalan Decl., ¶ 20. Significantly, each of the licenses were issued before the copyright registrations issued, so there is no ability for Plaintiffs to receive statutory damages under Section 504, even assuming they can prove infringement. And, they will never prove infringement when they submitted the photos to the Defendants for license.

Now that Judge Audero has retired and the Court may not be aware of Defendants' efforts to resolve discovery issues in this case, Defendants want to emphasize to the Court that Defendants have been overwhelmingly accommodating to Plaintiffs in prior discovery disputes.

The **Second, Third, and Fourth IDCs** involved BackGrid's discovery against Plaintiffs and Plaintiffs' discovery against BackGrid Defendants and Flynet Defendants. They were continued because Defendants' First Motion to Dismiss was pending and there was a serious question about whether the documents requested by Plaintiffs were proportional given that the parties did not know what claims would be at issue once the Court issued its Order. (Dkt. 68.)

Defendants' Motion to Dismiss was granted in full, dismissing each of the claims with leave to amend, on the same day the continued IDCs 2-4 were held. (Dkt. 81.)  Judge Audero declined to resolve any further issues that day because no claim was pending but

- 47 -

invited the parties back after Plaintiffs amended their complaint. *Id.* The Court should note that Plaintiffs filed a Second Amended Complaint with minimal changes—failing to meaningfully address the District Court's motion to dismiss order with respect to the Complaint's deficiencies. A Second Motion to Dismiss is pending and has been under submission since May 7, 2026. (Dkt. 95.)

IDCs 2-4 were finally held on March 24, 2026. After those IDCs, Defendants conducted additional searches and further met and conferred with Plaintiffs about the same. In the end, Defendants conducted 2,300 searches per the terms and produced those documents. (Dkt. 83; Ardalan, Ex. G.)

IDC 5 was filed ***by Defendants,*** because ***Plaintiffs would not participate in agreeing to a deposition schedule*** and between the two sides, the parties anticipated 17 depositions. (Dkt. 94.) Prior to this IDC, Plaintiffs served the First Joint Stipulation, which the Court found improper and gave Defendants relief. *Id.*

IDC 6 was ***filed by Flynet Defendants*** to seek relief on the same basis as IDC 5. Judge Audero threatened Plaintiffs with paying Defendants' fees if they proceed with the Flynet Joint Stipulation they had improperly served on those defendants and Plaintiffs withdrew their joint stipulation. (Dkt. 98.)

IDC 7 was filed by Plaintiffs and resolved many of the issues which were improperly included in the Second Joint Stipulation. (Dkt. 102, Ardalan Decl., Ex. C-1, C-4, Ex. F.)

There was no IDC 8. It never occurred at all. (Dkt. 108.)

As such, to say that Defendants have had the benefit of ***eight IDCs*** and still have issues with their production, justifying a sanctions award is misleading at best. And, again, each dispute that was raised in the joint stipulation were issues that the Court expressly stated would likely not prevail.

In addition, Defendants should be awarded fees for the Second Joint Stipulation that was up on and taken off calendar. That joint stipulation could never have been timely filed, given its hearing date and given the requirement that Defendants be able to review

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

the Joint Stipulation before filing. Ardalan Decl. C-4. Moreover, it was marred by issues that could never have been brought per the Court's rules and by serious misrepresentations.

**Plaintiffs' misrepresentations from the Second Joint Stipulation are listed below:**

- **"There is no plaintiff-specific search entry for Mr. Boutefeu anywhere in Attachment A."**

Mr. Boutefeu is in dozens of searches in the spreadsheet. *See* Ardalan Decl., Ex. C-4; G,  E529 ((royalt* Boutefeu)~15), E543 ((payment* Boutefeu)~15).  In total, he appears in the following searches: E524, E529, E536, E543, E550, E569, E570, E571, E572, E582, E613, E618, E625, E632, E647, E648, E649, E657, E662, E669, E680, E695, E696, E697, E768, E787, E792, E806, E820, E842, E843, E844, E961, E968, E973, E985, E1001, E1002, E1668, E1738, E1743, E1752, E1765, E1766, E2176, E2177, E2179, E2181, E2183, E2185, E2187, E2189, E2191, E2193, E2195, E2197, E2198, E2199, E2200, E2201, E2207, E2208, E2209, E2210, E2211, E2217, E2218, E2219, E2220.

- "None [of the searches] retains a wildcard." The wildcard searches use '*'.

**As an example, royalt* is in column E 92 times.** *See* Ardalan Decl., Ex. G, E3, E4, E7, E8, E25, E26, E43, E44, E62, E64, E73, E83, E92, E101, E102, E111, E120, E129, E138, E139, E148, E157, E166, E175, E184, E193, E202, E211, E220, E229, E231, E240, E248, E250, E259, E268, E277, E286, E295, E524, E525, E526, E527, E528, E529, E530, E531, E553, E557, E561, E565, E569, E573, E577, E582, E583, E586, E589, E592, E595, E598, E599, E600, E601, E602, E613, E614, E615, E616, E617, E618, E619, E620, E635, E638, E641, E644, E647, E650, E653, E787, E800, E814, E828, E866, E867, E868, E1693, E1696, E1702, E1710, E1711.

**Indeed, * appears in 806 searches.**

E3, E4, E7, E8, E19, E20, E25, E26, E37, E38, E43, E44, E57, E58, E62, E64, E70, E73, E79, E83, E89, E92, E98, E101, E102, E108, E111, E117, E120, E126, E129,

- 49 -

E135, E138, E139, E145, E148, E154, E157, E163, E166, E172, E175, E181, E184, E190, E193, E199, E202, E208, E211, E217, E220, E226, E229, E231, E237, E240, E246, E248, E250, E256, E259, E265, E268, E274, E277, E283, E286, E292, E295, E301, E305, E306, E307, E308, E309, E310, E311, E313, E314, E315, E316, E317, E318, E319, E321, E325, E326, E327, E328, E329, E330, E331, E332, E333, E334, E335, E336, E337, E338, E339, E341, E343, E344, E345, E346, E347, E348, E350, E352, E353, E354, E355, E356, E357, E358, E359, E360, E361, E362, E363, E364, E365, E366, E368, E370, E371, E372, E373, E374, E375, E377, E394, E395, E398, E399, E402, E403, E408, E409, E410, E411, E412, E413, E440, E441, E442, E443, E444, E445, E446, E447, E448, E449, E450, E451, E478, E479, E480, E481, E482, E484, E487, E488, E489, E490, E492, E495, E497, E499, E500, E501, E502, E503, E505, E507, E509, E511, E512, E513, E514, E515, E516, E517, E518, E519, E520, E521, E522, E523, E524, E525, E526, E527, E528, E529, E530, E531, E532, E533, E534, E535, E536, E537, E538, E539, E540, E541, E542, E543, E544, E545, E546, E547, E548, E549, E550, E551, E552, E553, E554, E555, E556, E557, E558, E559, E560, E561, E562, E563, E564, E565, E566, E567, E568, E569, E570, E571, E572, E573, E574, E575, E576, E577, E578, E579, E580, E581, E582, E583, E584, E585, E586, E587, E588, E589, E590, E591, E592, E593, E594, E595, E596, E597, E598, E599, E600, E601, E602, E603, E604, E605, E606, E607, E608, E609, E610, E611, E612, E613, E614, E615, E616, E617, E618, E619, E620, E621, E622, E623, E624, E625, E626, E627, E628, E629, E630, E631, E632, E633, E634, E635, E636, E637, E638, E639, E640, E641, E642, E643, E644, E645, E646, E647, E648, E649, E650, E651, E652, E653, E654, E655, E657, E672, E673, E715, E717, E718, E719, E724, E725, E726, E731, E732, E733, E738, E739, E740, E748, E749, E750, E751, E752, E753, E754, E755, E756, E757, E758, E759, E768, E769, E770, E771, E772, E773, E774, E775, E776, E777, E778, E779, E780, E781, E782, E783, E784, E785, E786, E787, E788, E789, E790, E791, E792, E793, E794, E795, E796, E797, E798, E799, E800, E801, E802, E803, E804, E805, E806, E807, E808, E809, E810, E811, E812,

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

E813, E814, E815, E816, E817, E818, E819, E820, E821, E822, E823, E824, E825, E826, E827, E828, E829, E830, E831, E832, E833, E834, E835, E836, E837, E838, E839, E840, E841, E842, E843, E844, E845, E846, E847, E848, E849, E850, E851, E852, E853, E854, E855, E856, E857, E858, E859, E860, E861, E862, E863, E864, E865, E866, E867, E868, E869, E870, E871, E872, E873, E874, E879, E880, E881, E882, E883, E884, E885, E886, E891, E892, E893, E894, E895, E896, E898, E901, E904, E907, E911, E914, E915, E918, E919, E924, E925, E926, E927, E928, E929, E930, E931, E932, E933, E934, E935, E936, E937, E938, E939, E940, E941, E942, E943, E944, E945, E946, E947, E948, E949, E950, E951, E952, E953, E954, E955, E956, E957, E958, E959, E960, E961, E962, E963, E964, E965, E966, E967, E968, E976, E977, E988, E989, E1007, E1008, E1009, E1010, E1017, E1018, E1019, E1020, E1021, E1022, E1023, E1024, E1025, E1026, E1027, E1028, E1029, E1030, E1031, E1032, E1033, E1034, E1035, E1498, E1502, E1503, E1504, E1505, E1506, E1507, E1508, E1512, E1513, E1517, E1518, E1522, E1523, E1529, E1530, E1532, E1539, E1546, E1552, E1553, E1554, E1555, E1556, E1557, E1558, E1559, E1560, E1561, E1562, E1563, E1564, E1565, E1566, E1567, E1568, E1569, E1570, E1571, E1572, E1573, E1574, E1575, E1576, E1577, E1578, E1579, E1580, E1581, E1582, E1583, E1584, E1585, E1586, E1587, E1588, E1589, E1590, E1591, E1592, E1593, E1594, E1595, E1596, E1597, E1598, E1599, E1600, E1601, E1602, E1603, E1604, E1605, E1606, E1607, E1610, E1611, E1612, E1613, E1614, E1615, E1616, E1617, E1618, E1619, E1620, E1621, E1622, E1623, E1624, E1625, E1626, E1627, E1628, E1631, E1632, E1633, E1634, E1635, E1636, E1637, E1638, E1639, E1640, E1641, E1642, E1643, E1644, E1645, E1646, E1647, E1648, E1650, E1651, E1653, E1655, E1656, E1658, E1659, E1660, E1661, E1662, E1663, E1664, E1665, E1666, E1667, E1668, E1669, E1670, E1671, E1672, E1673, E1674, E1675, E1676, E1677, E1678, E1679, E1680, E1681, E1682, E1683, E1684, E1685, E1686, E1687, E1688, E1689, E1690, E1691, E1692, E1693, E1696, E1697, E1699, E1702, E1703, E1705, E1710, E1711, E1712, E1713, E1716, E1717, E1718, E1719, E1720, E1722, E1723, E1725, E1726,

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

E1728, E1729, E1730, E1731, E1732, E1733, E1737, E1775, E1794, E1795, E1797, E1798, E1800, E1801, E1802, E1803, E1804, E1805, E1806, E1807, E1808, E1809, E1810, E1813, E1814, E1815, E1816, E1817, E1818, E1819, E1820, E1821, E1822, E1823, E1824, E1825, E1826, E1827, E1828, E1829, E1830, E1831, E1832, E1833, E1834, E1835, E1836, E1837, E1838, E1840, E1843, E1846, E1847, E1848, E1849, E1850, E1851, E1852, E1853, E1854, E1855, E1856, E1857, E1858, E1859, E1861, E1864, E1868, E1871, E1874, E1875, E1876, E1877, E1878, E1879, E1880, E1882, E1885, E1888, E1889, E1890, E1891, E1892, E1893, E1894, E1895, E1896, E1897, E1898, E1899, E1900, E1901, E1903, E1904, E1907, E1909, E1910, E1911, E1912, E1913, E1914, E1915, E1916, E1917, E1918, E1919, E1921, E1922, E1925, E1927, E1928, E1930, E1931, E1934, E1936, E1937, E1938, E1939, E1940, E1941, E1942, E1943, E1944, E1945, E1946, E1948, E1949, E1952, E1954, E1955, E1957, E1958, E1961, E1963, E1964, E1965, E1966, E1967, E1968, E1969, E1970, E1971, E1972, E1973, E1974, E1975, E1976, E1977, E1978, E1979, E1980, E1981, E1982, E1983, E1984, E1987, E1990, E1995, E1996, E1997, E2014, E2015, E2016, E2017, E2022, E2027, E2032, E2037, E2042, E2055, E2056, E2057, E2062, E2067, E2072, E2077, E2090, E2091, E2092, E2097, E2102, E2107, E2112, E2137, E2138, E2139, E2140, E2141, E2142, E2147, E2152, E2157, E2162, E2167, E2176, E2193, E2194, E2195, E2196, E2201, E2206, E2211, E2216, E2221, E2234, E2235, E2236, E2241, E2246, E2251, E2256, E2274, E2275, E2276, E2277, E2282, E2287, E2292, E2297.

- **"The BackGrid Defendants ran 197 pairwise sub-searches in only one direction.";** "[F]or example, documents discussing "attribution" before naming "Mauvilain," or "royalty" before identifying the contributor code "BAC"—are not captured by the BackGrid Defendants' one-direction approach.

**This statement is incorrect and the searches are in _consecutive order_ on the spreadsheet.**

- 52 -

*See* Ardalan Decl., Ex. C-4; G: E5 (Mauvilain attribution)~15; E6(attribution Mauvilain)~15; E25 (BAC royalt\*)~15,  E26 (royalt\* BAC)~15.

- **"The BackGrid Defendants' modified version of Plaintiffs' Search Term 40—which targets contributor codes used in connection with Shutterstock, attribution, byline, and metadata, the precise conduct underlying Plaintiffs' Section 1202 and breach-of-contract claims—uses lowercase "or" as the Boolean operator connecting the contributor-code group to the topic terms"**

This is another misrepresentation to the Court. With respect to search term 40, Defendants broke down those searches and did not use OR in doing so. See E1394 to E1497. ("BTF Press" Shutterstock)~10, ("BTF Press" attribution)~10, ("BTF Press" byline)~10, ("BTF Press" metadata)~10, ("BELLE PICTURES" Shutterstock)~10, ("BELLE PICTURES" attribution)~10, ("BELLE PICTURES" byline)~10, ("BELLE PICTURES" metadata)~10, (BAC Shutterstock)~10, (BAC attribution)~10, (BAC byline)~10, (BAC metadata)~10, (KO Shutterstock)~10, (KO attribution)~10, (KO byline)~10, (KO metadata)~10, (JD Shutterstock)~10, (JD attribution)~10, (JD byline)~10, (JD metadata)~10, (CW Shutterstock)~10, (CW attribution)~10, (CW byline)~10, (CW metadata)~10, (CCR Shutterstock)~10, (CCR attribution)~10, (CCR byline)~10, (CCR metadata)~10, (FT Shutterstock)~10, (FT attribution)~10, (FT byline)~10, (FT metadata)~10, (THMA Shutterstock)~10, (THMA attribution)~10, (THMA byline)~10, (THMA metadata)~10, (FREE Shutterstock)~10, (FREE attribution)~10, (FREE byline)~10, (FREE metadata)~10, (RIWE Shutterstock)~10, (RIWE attribution)~10, (RIWE byline)~10, (RIWE metadata)~10, (MIBO Shutterstock)~10, (MIBO attribution)~10, (MIBO byline)~10, (MIBO metadata)~10, (JOME Shutterstock)~10, (JOME attribution)~10, (JOME byline)~10, (JOME metadata)~10, (Shutterstock "BTF Press")~10, (Shutterstock "BELLE PICTURES")~10, (Shutterstock BAC)~10, (Shutterstock KO)~10, (Shutterstock JD)~10, (Shutterstock CW)~10, (Shutterstock CCR)~10, (Shutterstock OR FT)~10, (Shutterstock OR THMA)~10, (Shutterstock FREE)~10,

(Shutterstock RIWE)~10, (Shutterstock MIBO)~10, (Shutterstock JOME)~10, (attribution "BTF Press")~10, (attribution "BELLE PICTURES")~10, (attribution BAC)~10, (attribution KO)~10, (attribution JD)~10, (attribution CW)~10, (attribution CCR)~10, (attribution OR FT)~10, (attribution OR THMA)~10, (attribution FREE)~10, (attribution RIWE)~10, (attribution MIBO)~10, (attribution JOME)~10, (byline "BTF Press")~10, (byline "BELLE PICTURES")~10, (byline BAC)~10, (byline KO)~10, (byline JD)~10, (byline CW)~10, (byline CCR)~10, (byline FT)~10, (byline THMA)~10, (byline FREE)~10, (byline RIWE)~10, (byline MIBO)~10, (byline JOME)~10, (metadata "BTF Press")~10, (metadata "BELLE PICTURES")~10, (metadata BAC)~10, (metadata KO)~10, (metadata JD)~10, (metadata CW)~10, (metadata CCR)~10, (metadata FT)~10, (metadata THMA)~10, (metadata FREE)~10, (metadata RIWE)~10, (metadata MIBO)~10, (metadata JOME)~10.

Defendants should be awarded sanctions with respect to this motion and the earlier filed Second Joint Stipulation that was unilaterally filed and taken off calendar.

The Court should also be aware that while Defendants endured now three Joint Stipulations on dead issues, depositions revealed that Plaintiffs have not produced the original native files that they apparently submitted to Defendants and the native files submitted were spoliated with added metadata. It is stunning then that Plaintiffs pursue discovery issues addressed by the Court, hoping a new judge would feel differently about the issues, all while not producing the most basic of documents that are squarely _**required**_ for their Removal/Falsification of Copyright Management Information claims.

Defendants therefore request **$9,225** in sanctions against Plaintiffs for opposing the **Second Joint Stipulation.** Ardalan Decl., ¶ 23; Mojtehedi Decl., ¶ 10.

The BackGrid Defendants request an **additional $10,800** in sanctions for opposing this **Third Joint Stipulation.** Ardalan Decl., ¶ 24.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Dated: June 10, 2026

**SERGENIAN LAW**
a Professional Corporation

By:  /s/David A. Sergenian
        DAVID A. SERGENIAN

Dated: June 10, 2026

WHITEWOOD LAW, P.C.

By:  /s/Shengmao Mu
        SHENGMAO MU
        ABBY M. NEU (*pro hac vice*)
        RYAN E. CARREON (SBN 311668)
        KEATON SMITH (*pro hac vice*)

*Counsel for Plaintiffs*

June 10, 2026

**ONE LLP**

/s/Joanna Ardalan
Joanna Ardalan
Peter Afrasiabi
David Quinto
Attorneys for Defendants BackGrid Inc., BackGrid USA, Inc., & Shutterstock, Inc

- 55 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS