Joanna Ardalan (SBN 285384)
Email: jardalan@onellp.com
Peter R. Afrasiabi (SBN 193336)
Email: pafrasiabi@onellp.com
David W. Quinto (SBN 106232)
Email: dquinto@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:    (949) 258-5081

Attorneys for Defendants,
BACKGRID INC., BACKGRID USA, INC., and
SHUTTERSTOCK, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIBAULT MAUVILAIN, an individual; HENRI MAZARI, an individual; JEREMY DUPLAQUET, an individual; ROBERT CHRISTIAN WOLF, an individual; MICHEL BOUTEFEU, an individual; STEPHANE KYNDT, an individual; and JOSEPH MEHDI, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> FLYNET PICTURES. LLC, a California limited liability company: FAMEFLYNET INC.. a California corporation: BACKGRID INC.. a California corporation: BACKGRID USA. INC.. a California corporation: SHUTTERSTOCK. INC.. a Delaware corporation and DOES 1–10, inclusive, <br><br> Defendants. | Case No.: 2:25-cv-2757-FLA-MAA <br> Hon. Fernando L. Aenlle-Rocha <br><br> **DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION FROM DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND SHUTTERSTOCK, INC. AND SANCTIONS** |

**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES AND SANCTIONS**

1.        I, Joanna Ardalan, am counsel of record for BackGrid USA, Inc. Backgrid, Inc., and Shutterstock, Inc., (collectively "Backgrid" or "Defendants") in the above-captioned action. I have personal knowledge of the facts stated herein and if called to testify could and would competently testify as follows:

2.        Attached as **Exhibit A** is a true and correct copy of an email message in which Plaintiffs served their First Joint Stipulation on Defendants' discovery. Attached as **Exhibit B** is a true and correct copy of the order relieving Defendants from responding to the First Joint Stipulation.

3.        Attached as **Exhibit C-1** is a true and correct copy of a request to strike Plaintiffs' Second Joint Stipulation. The Second Joint Stipulation was unilaterally filed without Defendants' opposition, despite the fact that Defendants served their opposition prior to midnight, seven days after service.

4.        Attached as **Exhibit C-2** is a true and correct copy of my Declaration in Support of The Request to Strike.  Attached as **Exhibit C-3** is a true and correct copy of email correspondence that was sent prior to Plaintiffs' unilateral filing of the Second Joint Stipulation, where I advised Plaintiffs of FRCP 6 and that I would serve my portion of the response before midnight. Attached as **Exhibit C-4** is a true and correct copy of email correspondence in which I served Defendants' portion of the joint stipulation before the midnight deadline along with a copy of Defendants' portion of the joint stipulation.

5.        It appears Plaintiffs served the Second Joint Stipulation strategically banking on the fact that the Court would not issue a detailed order reflecting what was accomplished at the IDC, to needlessly run up costs for Defendants to respond and to jam up Defendants from adequately preparing for the seventeen depositions noticed before the rapidly approaching fact discovery cutoff that was, at the time, June 19, 2026. Indeed, Plaintiffs served the joint stipulation knowing that Defendants had noticed three of Plaintiffs' depositions the next week and that the drafting of this joint stipulation over the next seven days would impact deposition

1

**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES AND SANCTIONS**

preparation. They also served an ex parte and another IDC request for another resolved issue that same week.

6.	Attached as **Exhibit D** is a true and correct copy of an email correspondence I had with Plaintiffs' counsel. I confirmed the Court's position at the IDC, which was held before the service of the Second Joint Stipulation. Plaintiffs did not address whether they wanted supplemental responses from BackGrid Inc. or if the representation in the email regarding the status of the documents was sufficient.

7.	Attached as **Exhibit E** is a true and correct copy of an email correspondence I had with Plaintiffs' counsel.

8.	Attached as **Exhibit F** is a true and correct copy of an email message I sent to Plaintiffs' counsel asking to further confer after they took the Second Joint Stipulation off calendar. Plaintiffs waited five days to respond and declined to further meet and confer.

9.	At May 13, 2026 IDC held prior to the Second Joint Stipulation, Defendants agreed to provide view and download logs for the sets identified as the Copyrighted Works at issue. Defendants have provided those logs.

10.	With respect to RFP 17 and 18, the Court stated that the business records already produced on the licensing is sufficient. At the May 13 IDC, this issue was resolved because the documents already produced were sufficient to show the licensing history, the payments received from the outlets, the commissions paid to the photographers, the commission rate among other information. Plaintiffs could not articulate a need for any further information, so the issue was resolved.

11.	At the May 13 IDC, Defendants agreed to produce the Shutterstock-BackGrid USA, Inc. purchase agreement, but not the rest of the due diligence documents. Plaintiffs could not articulate a need for information beyond the purchase agreement, so the issue was resolved.  The purchase agreement has been produced.

2

**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES AND SANCTIONS**

12.        On December 8, 2025, the BackGrid Defendants produced per-photographer sales spreadsheets reflecting the information BackGrid maintains in the ordinary course of business for each contributor. The spreadsheets identify every license issued for the Plaintiff-photographers' works that contributed to BackGrid (including major news outlets such as TMZ), the licensee, and the amount paid to the Plaintiff-photographer for each licensed photograph, when it the photographer was paid, among other information. That information captures all material data about every licensed photograph, including those licensed as part of any wholesale or asset-transfer transaction Plaintiffs label a "bulk sale." With respect to the copyrighted works at issue, Defendants produced screenshots of its administrative portal showing the same information. The spreadsheets do not categorize licenses as "bulk" or "non-bulk," but that distinction is immaterial to Plaintiffs' claims: the relevant facts for Plaintiffs' breach-of-contract, copyright, and Section 1202 theories are the fact of license, the licensee, and the royalty paid, and all of that information has been produced. The BackGrid Defendants supplemented those productions on May 6, May 8, May 11, and May 12, 2026 (BACKGRID002143–002574), and BackGrid USA, Inc.'s May 6, 2026 supplemental response to RFP 49 confirms that the BackGrid Defendants have searched for responsive documents pursuant to Attachment A and "produced or will produce responsive documents." The BackGrid Defendants also ran the more than 2,000 pairwise Boolean searches reflected in Attachment A to the responses and, pursuant to the parties' April 27, 2026 written agreement (Sergenian Decl. Ex. 8), will produce responsive, non-privileged documents identified outside those searches. A true and correct copy of the searches is attached as **Exhibit G**.  Those searches were produced on May 5, 2026.  The Court did not see any further need to provide additional documents with respect to RFP 49. *See* Exhibit D.

13.        The BackGrid Defendants anticipate, based on their business practices and history, that there are no formal license agreements for the "bulk sales"

3

Plaintiffs identify; deal terms were typically negotiated over email and by telephone, and the resulting transactions often involved photographs that have no connection to the photographs at issue in this case or to the Plaintiff-photographers. To respond to "ALL DOCUMENTS RELATING TO" bulk sales as Plaintiffs frame the request, the BackGrid Defendants would have to manually review thousands of emails and documents to reverse-engineer which transactions might touch any of the photographs at issue.

14.     Plaintiffs expressly agreed to a temporal limitation when the parties met and conferred about this issue initially.  They asked for all documents after Shutterstock's acquisition of BackGrid USA, Inc., which happened in February 2024.

15.     Plaintiffs presented RFPs 67 and 68 to the Court at the May 13, 2026 Informal Discovery Conference. On the same arguments now repeated in the Joint Stipulation — including Plaintiffs' contentions about the *BackGrid USA, Inc. v. Twitter, Inc.* matter and Mr. Nizon's declaration in *FameFlynet, Inc. v. Breitbart News Network, LLC* — the Court informed the parties that it "was not convinced you needed this." (May 14, 2026 Email from J. Ardalan to D. Sergenian, RPDs 67 and 68.) As explained at the IDC, no depositions took place in the Twitter case. The Court's IDC 7 Order authorized Plaintiffs to file a motion but did not displace what the Court said on the merits. (ECF No. 102 at 1–2.)

16.     Attached as **Exhibit H** is a true and correct copy of Plaintiffs' Requests for Production of Documents to Shutterstock.

17.     Attached as **Exhibit I** is a true and correct copy of Defendants' request for a IDC 1. As a result of this IDC, Defendants gave Plaintiffs restricted access to BackGrid's Confidential Client Portal for the sole purpose of identifying the works. (Dkt. 66.) The Order expressly stated that "Plaintiffs are not permitted to download or otherwise save or store materials form the [Confidential] Client portal. All materials created as a result of access to BackGrid's client portal will be

**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES AND SANCTIONS**

produced to Defendants by January 12, 2026." Plaintiffs violated this order thousands of times by saving native files from the Portal and not producing them by January 12, 2026.

18.	At deposition on May 18, 2026, Thibault Mauvilain admitted that he made up an identity—Emily Carter—and requested access to the Confidential Client Portal, claiming to be a producer who wanted access to research photos for an upcoming documentary.

19.	Long before the IDC, from August 2024 to November 2025, Plaintiff Mauvilain posing as "Emily Carter" had  14 months of access to BackGrid's Confidential Client Portal even before the lawsuit was filed, and still did not identify the sets at issue in the Complaint or until Defendants forced the issue with IDC 1.

20.	Attached as **Exhibit J** is a true and correct copy of excerpts of deposition transcript of Thibault Mauvilian. BackGrid reviewed the licenses issued for each of the identified sets after Plaintiffs had access to the Confidential Portal through fraud and also through the IDC process—the total licensing revenue across all Plaintiffs is less than $2,931.16,  and has now been paid to Plaintiffs.

21.	Attached as **Exhibit K** is a true and correct copy of an email message I sent Plaintiffs' counsel regarding Plaintiffs' failure to produce the native files they submitted to Defendants that are the very basis of their 1202 claim. It appears from their response to my email message that they do not know whether they have produced the very files that form the foundation of this entire lawsuit. Plaintiffs contend they submitted files with metadata that identified their name and other copyright management information and that the removal of their name from the metadata forms the basis of their 1202 claim. They have not produced the very files they submitted to Defendant Flynet and FameFlyNet. Without these files, they cannot prove they provided the copyright management information to Defendants.

**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES AND SANCTIONS**

22.       During the December 11 IDC, Defendants brought the head of BackGrid's IT and the architect of Backgrid's system for an all-day IDC to explain to Plaintiffs how to find the works and use their systems so that Plaintiffs could figure out the works at issue.

23.       I am a partner at One LLP and have been since 2019. I have been practicing intellectual property law since 2013. I am an adjunct professor at Loyola Law School, where a teach a copyright litigation seminar, and have done so since 2013. I have also taught intellectual property law classes at the University of Southern California and the University of California, Irvine.  I am a member of the Board of Directors for the Federal Bar Association, Orange County, and have been since 2023. I have also served as a member of the Board of Directors for the Los Angeles Intellectual Property Law Association. My typical rate is $800 per hour. I am charging a lower billable rate to BackGrid for purposes of this litigation.

24.       Because Plaintiffs put Defendants in an impossible position with respect to the Second Joint Stipulation, where their counsel could not prepare to take three depositions, respond to the joint stipulation, and oppose and ex parte request, Defendants hired Sheila Mojtehedi to assist with some of the preparation of the joint stipulation, as she was aware of the discovery history in this case, and has invoiced Defendants for work on this matter. She has spent a total of 9.3 hours at an hourly rate of $450.  Mojtehedi Decl., ¶ 10. I billed 6.3 hours in drafting the Second Joint Stipulation.  Defendants therefore request $9,225 in sanctions against Plaintiffs for the Second Joint Stipulation.

25.       With respect to this Third Joint Stipulation, I have spent an addition 8.5 hours drafting this respond. I anticipate spending an additional two hours drafting a supplemental brief and an additional three hours preparing for and attending the hearing.  The BackGrid Defendants request an additional $10,800 in sanctions for this Third Joint Stipulation.

**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES AND SANCTIONS**

I declare under penalty of perjury that the facts stated herein are true and correct.  Executed this 8th day of June 2026 at Beverly Hills, California.


/s/ Joanna Ardalan

7

**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES AND SANCTIONS**