# Exhibit C-4

# Exhibit B

 Outlook

---

**Defendants Portion of Joint Stip**

---

**From** Jo Ardalan <jardalan@onellp.com>

**Date** Thu 5/21/2026 11:48 PM

**To** David Sergenian <david@sergenianlaw.com>

**Cc** Ryan Carreon <rcarreon@whitewoodlaw.com>; Abby Neu <aneu@whitewoodlaw.com>; David Quinto <dquinto@onellp.com>; Peter Afrasiabi <pafrasiabi@onellp.com>; Shengmao Mu <smu@whitewoodlaw.com>; Sheila Mojtehedi <sheila@mojtehedi.com>; Ryan Baker <rbaker@whitewoodlaw.com>; Keaton Smith <ksmith@whitewoodlaw.com>; Megan Dell <mdell@onellp.com>

 2 attachments (329 KB)
Thibault v. Backgrid - JA Dec in Oppo to MTC Disc and Sanctions (002) 5-21-26.pdf; MTC - Backgrid Defendants - Rule 37 Stipulation v3 (004) JA 5-21- JA (No Signature) v2.docx;

David:

See our portion of the Joint Stip.

You have extended your introduction beyond what is permissible by putting in a "DISCOVERY IN DISPUTE" section and did not include a place for us to respond. For that reason, I added a heading to plaintiff's position and made our own section.

You may not file and may not add my signature per the Local Rules, until I have a business day to review the joint stipulation.

The exhibits (A-G) are here: https://we.tl/t-sHbwmNh179GmomxS

Regards,
Jo

--
**Jo Ardalan**
**Partner**

 **one llp**

Intellectual Property & Entertainment Law
310-437-8665 (Direct)
323-309-9215 (Cell)
jardalan@onellp.com

*Notice*:  If you are not the intended recipient of this e-mail, please reply and inform me of the mistake, and please do not print, forward or otherwise disseminate it.  This e-mail may contain attorney-client and/or work product information that is legally privileged, which prohibits any unauthorized review or use.

DAVID A. SERGENIAN, State Bar No. 230174
david@sergenianlaw.com
SERGENIAN LAW, P.C.
808 Wilshire Blvd., Suite 200
Santa Monica, CA 90401
Telephone: (213) 435-2035

SHENGMAO MU, State Bar No. 327076
smu@whitewoodlaw.com
WHITEWOOD LAW, P.C.
99 S. Alameda Blvd., Suite 600
San Jose, CA 95113
Tel.: (917) 858-8018
Fax: (917) 591-0618

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIBAULT MAUVILAIN, an individual; HENRI MAZARI, an individual; JEREMY DUPLAQUET, an individual; ROBERT CHRISTIAN WOLF, an individual; MICHEL BOUTEFEU, an individual; STEPHAN KYNDT, an individual; and JOSEPH MEHDI, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> FLYNET PICTURES, LLC, a California limited liability company; FAMEFLYNET INC., a California corporation; BACKGRID INC., a California corporation; BACKGRID USA, INC., a California corporation; SHUTTERSTOCK, INC., a Delaware corporation; and DOES 1–10, inclusive, <br><br> Defendants. | Case No. 2:25–cv–2757–FLA–MAA <br><br> **DISCOVERY MATTER** <br><br> **MAGISTRATE JUDGE MARIA A. AUDERO** <br><br> **L.R. 37-2 JOINT STIPULATION IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION FROM DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND SHUTTERSTOCK, INC. AND SANCTIONS** <br><br> Date:      June 11, 2026 <br> Time:      10:00 a.m. <br> Location:  Roybal Federal Building and United States Courthouse <br> Crtrm:     880, 8th Floor |

Discovery Cutoff:    June 19, 2026
Pretrial Conf.:      November 13, 2026
Trial Date:          December 1, 2026

## TABLE OF CONTENTS

I. INTRODUCTORY STATEMENTS.................................................................1

    A. Plaintiffs' Introductory Statement ..................................................1

    B. The BackGrid Defendants' Introductory Statement ....................6

II. DISCOVERY IN DISPUTE...................................................................8

    A. Category I: Server, Access, and Analytics Logs (RFP 14) .........9

        1. Request for Production No. 14 ...........................................9

        2. Plaintiffs' Position.............................................................12

        3. The BackGrid Defendants' Position .................................15

    B. Category II: Licensing Records and Revenue Records (RFPs 17, 18).......17

        1. Request for Production No. 17 .........................................17

        2. Request for Production No. 18 .........................................21

        3. Plaintiffs' Position.............................................................23

        4. The BackGrid Defendants' Position .................................27

    C. Category III: Transactional Documents and IP Due Diligence Reports (RFPs 27, 50) ...........................................29

        1. Request for Production No. 27 .........................................30

        2. Request for Production No. 50 .........................................31

        3. Plaintiffs' Position.............................................................31

        4. The BackGrid Defendants' Position .................................35

    D. Category IV: Bulk Sales (RFP 49) ...............................................38

        1. Request for Production No. 49 .........................................38

        2. Plaintiffs' Position.............................................................40

        3. The BackGrid Defendants' Position .................................43

    E. Category V: Prior Deposition Testimony and Sworn Declarations in Copyright Lawsuits (RFPs 67, 68)...........................................47

- i -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

1. Request for Production No. 67 .................................................48

2. Request for Production No. 68 .................................................49

3. Plaintiffs' Position.................................................................50

4. The BackGrid Defendants' Position .......................................53

F. Category VI: Search Term Defects, Custodian Omissions, and Lack of Transparency in Document Identification.................................................57

1. Plaintiffs' Position.................................................................58

    a. Procedural Background ..........................................................58

    b. The substantive narrowing defects .........................................58

        i. Plaintiff Boutefeu Was Omitted Entirely from the Plaintiff-Specific Entries..............................................58

        ii. Plaintiff Name Variants Were Omitted from the Pair Searches, and Bare "wolf" Was Substituted for Quoted Variants.....................................................................59

        iii. Entries 25 and 62 (Communications with Counsel) Were Substantively Narrowed ...................................59

        iv. Royalties and Financials Entries 21 Through 24 Dropped Entire Term Groups......................................60

        v. Wildcards Were Stripped from Key Plaintiff-Specific Terms.......................................................................60

        vi. Wildcard Expansions Were Broken in All 197 Pairwise Sub-Searches .........................................................61

        vii. The BackGrid Defendants Ran 197 Pairwise Sub-Searches in Only One Direction .................................61

        viii. Search 40 Was Broken by an Operator Logikcull Does Not Recognize...........................................................62

    c. The Syntax Defects in the April 13 and May 6 Search Term Sets.....................................................................................62

    d. The BackGrid Defendants' May 13 Representation that the Defects Originated in Plaintiffs' Original Terms....................63

    e. The Defective Entries Affect Document Identification Across Substantially All 'f Plaintiffs' RFPs ......................................65

    f. The Omission of Boris Nizon from the Custodian List ........67

- ii -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

g. The BackGrid Defendants' Refusal to Disclose Hit Counts, Document Universe, Custodians, Sampling, or Media and Sources Searched ................................................................. 69

h. Requested Relief ................................................................. 70

2. The BackGrid Defendants' Position ................................................. 71

III. SANCTIONS ................................................................................ 71

A. Plaintiffs' Position on Sanctions ................................................. 79

B. BackGrid Defendants' Position on Sanctions ................................. 84

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

## I. INTRODUCTORY STATEMENTS

### A. Plaintiffs' Introductory Statement

This Motion seeks to compel Defendants BackGrid Inc., BackGrid USA, Inc., and Shutterstock, Inc. (collectively, the "BackGrid Defendants") to produce documents responsive to eight Requests for Production at impasse; to correct defects in search terms identified below and rerun their searches; and to award sanctions under Federal Rule of Civil Procedure 37(a)(5)(A).

After ten months, eight Informal Discovery Conferences before this Court, and a missed April 10, 2026 deadline to substantially complete production, the BackGrid Defendants' production remains deficient. The BackGrid Defendants have refused to produce IP due diligence reports for the corporate-succession transactions at the heart of this case and prior copyright-litigation testimony and sworn declarations bearing on the very practices Plaintiffs allege. The BackGrid Defendants did not collect from a known senior principal of BackGrid USA, Inc. Two of the three BackGrid Defendants—BackGrid USA, Inc. (May 6, 2026) and Shutterstock, Inc. (May 12, 2026)—have served supplemental Rule 34 responses; BackGrid, Inc. has not, and its August 25, 2025 boilerplate objections remain operative. Shutterstock, Inc.'s supplemental responses unilaterally limit its search to documents from January 1, 2024 to present, sweeping virtually the entire relevant period out of its production. The BackGrid Defendants have not produced a privilege log. The supplemental search terms BackGrid USA, Inc. served on May 6, 2026 do not cure the substantive defects Plaintiffs identified in the April 13, 2026 modified search terms; in several respects they introduce new defects. , 2026 IDC, the Back-Grid Defendants made oral representations as to several disputed categories, but none of those representations has been memorialized in a compliant Rule 34 response, supporting declaration, or further production. Plaintiffs accordingly address each disputed category herein, subject to withdrawal upon written confirmation and performance.

Plaintiffs filed this action on March 28, 2025, alleging copyright infringement, removal and alteration of copyright management information under 17 U.S.C. § 1202,

- 1 -

breach of implied-in-fact contributor agreements, and violation of California Penal Code § 496. (Compl., ECF No. 1.) Plaintiffs served their First Set of Requests for Production on each of the BackGrid Defendants on July 10, 2025. Written responses followed on August 25, 2025. Plaintiffs' Local Rule 37-1 letter issued September 23, 2025. After meeting and conferring, the parties participated in six IDCs before Magistrate Judge Audero from November 2025 through March 2026. On March 25, 2026, the Court found that the parties had satisfied their meet-and-confer obligations under Rule 37. (ECF No. 83.)[1]

The next day, Plaintiffs demanded substantial completion of the BackGrid Defendants' production by April 10, 2026; the deadline passed without production. The BackGrid Defendants produced approximately 487 pages on April 27, 2026, less than eight weeks before the June 19, 2026 fact-discovery cutoff. On May 8, May 11, and May 12, 2026—only after Plaintiffs had served the BackGrid Defendants with the May 5, 2026 version of this Joint Stipulation—the BackGrid Defendants produced additional documents (BACKGRID002143–002574).

On May 9, 2026, the parties met and conferred by videoconference, reaching impasse on the Requests for Production addressed below. On May 11, 2026, Plaintiffs submitted an email to chambers in advance of the May 13, 2026 IDC identifying the disputes presented in this Motion. At the May 13, 2026 IDC, the parties addressed the issues raised in this Joint Stipulation, and the Court authorized Plaintiffs to serve a revised Joint Stipulation.

As of the filing of this Joint Stipulation, entire categories of responsive documents remain absent: no server or access logs for the BackGrid client portal; no royalty calculations, payment records, or reconciliations for Plaintiffs Mazari, Kyndt, or Mehdi, and,

---

[1] After Plaintiffs initiated the motion process and served the May 5, 2026 version of this Joint Stipulation, the parties participated in two additional Informal Discovery Conferences before this Court: on May 6, 2026 (ECF No. 94), and on May 13, 2026 (ECF No. 98).

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

for Plaintiffs Wolf, Boutefeu, Duplaquet, and Mauvilain, none beyond the per-photographer sales ledgers and a single 2018 reconciliation email for Mauvilain; no acquisition agreement, schedules, exhibits, or closing documents for Shutterstock, Inc.'s February 2024 acquisition of BackGrid Inc. and BackGrid USA, Inc.; no contracts, communications, or asset lists concerning bulk sales from the archive; no IP due diligence reports for any transaction in the corporate-succession chain; and no deposition testimony or sworn declarations from prior copyright lawsuits in which the BackGrid Defendants were parties or witnesses. (Sergenian Decl. ¶ 42.) , 2026 IDC, the BackGrid Defendants made oral representations as to several of these categories. No compliant supplemental responses or further productions have followed. Plaintiffs address each category subject to withdrawal upon written confirmation and performance.

Although Plaintiffs have repeatedly requested the BackGrid Defendants' document universe, custodian count and identities, hit counts, sampling methodology, and the media and sources searched, the BackGrid Defendants have refused to provide any of those categories. Without those disclosures, Plaintiffs cannot determine whether the substantive search-term defects identified below were corrected before production or perpetuated into it. Plaintiffs accordingly seek an order compelling the BackGrid Defendants to disclose each of those categories.

The "Custodians" tab of the BackGrid Defendants' April 13, 2026 modified search-terms spreadsheet identifies eight individuals as the custodians whose documents the BackGrid Defendants loaded into the their e-discovery platform. (Sergenian Decl. ¶ 19.) Boris Nizon is not among the custodians searched. (*Id.*) Mr. Nizon is the Co-Owner of BackGrid USA, Inc., a position he has held since May 2017, and was the founder and owner of Fame Pictures, Inc. from 1995 to 2012, and FameFlynet, Inc. from 2012 to 2017. (*Id.*; SAC [ECF No. 80] ¶¶ 14–18.) Plaintiffs raised the omission in writing on April 14, 2026. At the May 9, 2026 videoconference, Ms. Ardalan confirmed that Mr. Nizon had a BackGrid email account until Shutterstock's acquisition of BackGrid. Plaintiffs proposed that the omission could be resolved by Mr. Nizon submitting an appropriate declaration

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

concerning the disposition of his pre-acquisition materials. Ms. Ardalan declined. (*Id.*) , 2026 IDC, Ms. Ardalan represented for the first time that BackGrid USA, Inc. does not have Mr. Nizon's pre-acquisition materials in its possession, custody, or control. The BackGrid Defendants' Rule 34 responses do not state that those documents do not exist, and no declaration accounting for the disposition of those documents has been served.

In the April 27, 2026 email exchange following their production, defense counsel committed in writing to serve (a) amended written responses to Plaintiffs' Requests for Production and (b) a spreadsheet identifying the search terms the BackGrid Defendants actually executed against the production universe. (Sergenian Decl. ¶ 44.) BackGrid USA, Inc. served amended responses and the search-term spreadsheet (Attachment A) on May 6, 2026; Shutterstock, Inc. served supplemental responses with its own Attachment A on May 12, 2026; and BackGrid, Inc. has not served amended responses or a search-term spreadsheet as of the date of this Joint Stipulation. (*Id.*) At the May 9 videoconference, Ms. Ardalan represented that BackGrid, Inc.'s amended responses, when served, would be substantively the same as BackGrid USA, Inc.'s, except where the underlying facts as to BackGrid, Inc. differ from those as to BackGrid USA, Inc. That representation does not substitute for service of compliant Rule 34 responses.

On April 13, 2026, Ms. Ardalan provided a modified version of Plaintiffs' Boolean search terms, asserting that Logikcull did not support certain operators in the original terms. (Sergenian Decl. ¶ 16.) On April 14, 2026, Plaintiffs identified categories of defects in the April 13 modifications. (*Id.* ¶¶ 21–30.) On May 6, 2026, BackGrid USA, Inc. served supplemental search terms (Attachment A to its amended responses) intended to address those defects. (*Id.* ¶ 31.) The supplementation does not cure the substantive defects and in several respects introduces new ones, as detailed in Category VI below. (*Id.* ¶¶ 31–39.) The defects affect document identification across a substantial number of Plaintiffs' Requests for Production. , 2026 IDC, the BackGrid Defendants agreed to correct typographical and syntax defects and rerun the searches; the substantive narrowing defects were not addressed and remain at impasse. Also  IDC, Ms. Ardalan represented

- 4 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

for the first time that certain defects in the search terms originated with Plaintiffs' original Boolean terms. Plaintiffs' counsel has since reviewed each defect in the April 13 modified terms and the May 6 supplemental terms against Plaintiffs' original 62 Boolean search terms and identified no defect attributable to Plaintiffs' terms. Each defect identified by Plaintiffs—including the lowercase-or operators, ampersand operators, doubled-asterisk wildcards, unbalanced parentheses and quotation marks, and substantive narrowing of plaintiff-specific and counsel-communications entries—was introduced in the BackGrid Defendants' iteration of search terms. Ms. Ardalan has not specified a single defect originating in Plaintiffs' original terms. (*Id.* ¶ __.)

Plaintiffs respectfully request an order: (1) compelling the BackGrid Defendants to produce all documents responsive to Requests for Production Nos. 14, 17, 18, 27, 49, 50, 67, and 68; (2) compelling the BackGrid Defendants to correct the substantive search-term defects identified in Category VI below, rerun the corrected searches, produce all newly responsive documents, and disclose the document universe, custodian count and identities, hit counts for each corrected search, sampling methodology and results, and media and sources searched; (3) compelling collection, processing, and searching of documents from Boris Nizon, or, in the alternative, requiring Mr. Nizon to submit a declaration accounting for the disposition of his pre-acquisition materials; (4) compelling Back-Grid, Inc. to serve amended Rule 34 responses identifying, request-by-request, what is being withheld and on what grounds; (5) compelling the BackGrid Defendants to produce a privilege log meeting the requirements of Federal Rule of Civil Procedure 26(b)(5); (6) striking Shutterstock, Inc.'s unilateral January 1, 2024 temporal limitation and compelling Shutterstock, Inc. to produce responsive pre-2024 records in the possession, custody, or control of its wholly-owned subsidiaries BackGrid Inc. and BackGrid USA, Inc.; and (7) awarding sanctions under Federal Rule of Civil Procedure 37(a)(5)(A) of $29,775 in attorney's fees.

**B.     The BackGrid Defendants' Introductory Statement**

Defendants Backgrid USA, Inc., Backgrid, Inc., and Shutterstock's opposition comes at the tail end of an improper goose chase by Plaintiffs  who have unfairly and improperly created unnecessary and significant expense for them.

This motion fails for all of the following reasons:

1. **The Motion is Untimely**. The Motion is procedurally improper because it is not timely.  Plaintiffs served their portion of the Joint Stipulation on Defendants on May 14, 2026. Under Local Rule 37-2.2, Defendants have seven days from receipt to deliver their portion (May 21, 2026), after which Plaintiffs must add it back and provide the assembled stipulation to opposing counsel for signature, which is then due "no later than the end of the next business day" (May 22, 2026). Accounting for this time, Plaintiffs will never be able to have the motion timely heard under its June 11 notice date—and even if it is pushed to the next week, that hearing date is only one day before the discovery cutoff.

2. **Plaintiffs Have Twice Served a Joint Stipulation Without the Court's Permission and In Doing So Includes Issues that Have Been "Resolved"**

This is the second Joint Stipulation Plaintiffs served without Court permission. Judge Audero requires an IDC prior to serving a Joint Stipulation. The first Joint Stipulation, the fees for which are included in Plaintiffs' fee award here, was withdrawn because, on May 6, the Court granted Defendants relief from responding. The Parties had another IDC on May 13 and resolved almost all of the issues. The Court started "As to those disputes upon which the parties do not reach resolution, the Court AUTHORIZES either party to file a discovery motion." (Dkt. 102).  This Joint Stipulation was filed after the IDC, when the Plaintiffs had notice that they had agreed to resolution on RFPs 14, 15, 17, 18, 27, 50, on supplementing responses to Requests for Production, on the search terms, and on the discovery on discovery dispute.

Indeed, Defendants sent an email confirming what they agreed to at the IDC and confirming they would proceed as agreed upon. Ardalan *Id*. at Ex. D; *cf*. Ex E. The Joint Stipulation was served later that same day.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

After the Court issued the minute order, Plaintiffs attempted to withdraw the portions of the Joint Stipulation that were improperly raised, but did not withdraw their hefty sanctions request, that includes time for the withdrawn Joint Stipulation, for time spent before the IDC that permitted the discovery to proceed, and for the issues withdrawn and resolved.

### 3. The Issues that Remain in the Joint Stipulation Were Issues that the Court Stated Would Not Prevail and Plaintiffs Have Not Presented New Argument

With respect to every issue that was not resolved by the Court, the Court stated it was "not convinced" Plaintiffs would prevail. The remaining requests include "discovery on discovery" despite the fact that Judge Audero said Defendants' discovery was sufficient, past deposition and declarations from copyright infringement lawsuits, even through the Plaintiffs cannot articulate a non-speculative basis for why these documents would be relevant to this case, and past "bulk sales" license agreements, when Defendants have produced the licensing information in its normal business records.

### 4. The Motion Is Marred by Numerous Misrepresentations to the Court

Plaintiffs have made a staggering number of misrepresentations to the Court in this Joint Stipulation, especially with respect to the search terms. For example, Plaintiffs state "None [of the searches] retains a wildcard." The wildcard searches use '*' Defendants did **_806_** searches that included the wildcard. In total, Defendants did 2300 searches for Plaintiffs and Judge Audero said Defendants' production appeared adequate.

### 5. The Motion Was Timed to an Attempt to Jam up Defendants' Deposition Preparation

Knowing that Defendants are taking Plaintiff Thibault Mauvilain's deposition on May 18, Plaintiff Henri Mazari's deposition on May 20, and Plaintiff Robert Christian Wolf's deposition on May 22, and that they served this joint stipulation for a motion to compel on May 14 (making Defendants' response due May 21), and then waited two weeks after meeting and conferring to file the ex parte application to extend dates, giving

- 7 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Defendants even less opportunity to respond than what is afforded under the rules, knowing that counsel is working on deposition preparation and the joint stipulation.

**6. Plaintiffs are Judge Shopping by Waiting to Notice this Joint Stipulation the Day after Judge Audero Retires—Afterall, Judge Audero Said They Would Fail on the Merits**

Plaintiffs likely delayed this motion because they wanted a second bite at the apple. Judge Audero told them they would not prevail on the remaining issues.

**7. Plaintiffs Are Not Complying with their Own Discovery Obligations**

While Plaintiffs are attempting to litigate every angle of Defendants' discovery, the Court should be aware that at the May 18 and May 20 depositions of Plaintiffs, Thibault Mauvilain and Henri Mazari, respectively,  they admitted to not searching for documents, not producing text messages between plaintiffs, auto-destroying documents, and violating the Court's Dec. 17, 2025 Order thousands of times by saving and storing files from Back-Grid's Confidential Client Portal that was expressly prohibited. The deposition transcripts are not yet available.

## II.    DISCOVERY IN DISPUTE

### Plaintiffs' Position

In compliance with L.R. 37-2, this section contains verbatim the requests and responses at issue. Each BackGrid Defendant served its original responses on August 25, 2025. On May 6, 2026, BackGrid USA, Inc. served supplemental responses to certain Requests, including RFPs 14, 17, and 49. BackGrid USA, Inc. did not supplement its responses to RFPs 18, 27, 50, 67, or 68. On May 12, 2026, Shutterstock, Inc. served supplemental responses, including to RFPs 17, 18, and 49. Shutterstock, Inc. did not supplement its responses to RFPs 14, 27, 50, 67, or 68. BackGrid, Inc. did not serve supplemental responses to any Request, and its original August 25, 2025 responses remain operative. Where the responses of the three BackGrid Defendants to a Request differ, the differences are shown by bracketed alternatives in the format [BGI/BGU: … / SS: …]. Where two of the three responses are identical, those entities are grouped (BGI/BGU).

- 8 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Where the BackGrid Inc. and BackGrid USA, Inc. responses differ only in identifying the responding party, the entity names are shown inline as "BackGrid Inc./BackGrid USA, Inc." For RFPs 14, 15, 17, and 49, BackGrid USA, Inc.'s May 6, 2026 supplemental response is set forth verbatim immediately following the original responses. The Back-Grid Defendants' responses contain some minor typographical and formatting irregularities that have been corrected for readability.

**<u>Defendants' Position</u>**

This section is an improper as it is an extension of the introduction outside of the page limit. It should be stricken. Moreover, it is now outdated. Plaintiffs now contend that they wish the withdraw RFP 14, 17, 18, 27, the failure to supplement responses to Requests for Production, search term defects, and the Boris Nizon custodian issue. Ardalan Decl. Ex. E.

**A.      Category I: Server, Access, and Analytics Logs (RFP 14)**

Category I covers the server logs, database records, and analytics reflecting third-party access to, viewing of, downloading of, and licensing of the photographs at issue in this action.

**1.      Request for Production No. 14**

**REQUEST FOR PRODUCTION NO. 14**

All server logs, database records, analytics reports, and other DOCUMENTS showing every instance that any of the COPYRIGHTED WORKS were displayed on, downloaded from, or otherwise accessed through any of YOUR websites or client portals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14 (Served August 25, 2025)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. [BGI/BGU: Responding Party objects to YOU, which as defined is overly broad and unduly burdensome. Re-

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

sponding Party understands YOU to mean BackGrid Inc./BackGrid USA, Inc. / SS: Responding Party further objects to the definition of YOU. It defines "YOU" as "Defendant Flynet Pictures, LLC and any other person or entities acting on its behalf, including, but not limited to, any parents, successors, predecessors, subsidiaries, divisions, and any past and present officers, directors, employees, agents, and representatives." Shutterstock is not Flynet Pictures, LLC and cannot respond on its behalf.] Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party objects to the term "COPYRIGHTED WORKS" as defined. As defined, Responding Party is required to review 12,972 documents, which are not organized, labeled, or otherwise searchable, and were produced as multiple pdf files. As such, the definition prohibits the Responding Party from searching its documents by using these files in a meaningful manner. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

**BACKGRID USA, INC.'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14 (Served May 6, 2026)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to YOU, which as defined is overly broad and unduly burdensome. Responding Party

- 10 -

understands YOU to mean BackGrid USA, Inc. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party under-stands the "COPYRIGHTED WORKS" to mean the sets identified by Plaintiffs on or around January 12, 2026. These sets were identified after Responding Party had access to BackGrid's Confidential Client Portal over two different periods of time. First, Plain-tiffs had access to the Confidential Client Portal over a 14 month period. That access was acquired through fraud when one or more of the Plaintiffs represented they were "Emily Carter," who requested access as part of the production team on a Netflix documentary project. Second, Plaintiffs had access to the Confidential Client Portal over a three week period when BackGrid USA, Inc. gave Plaintiffs access to it as part of the discovery pro-cess. The latter period of access—the Plaintiffs' inspection of the Confidential Client Por-tal—is part of the Responding Party's production. Subject to and without waiving the foregoing objections, Responding Party has searched for documents pursuant to the searches shown in Attachment A as has produced or will produce responsive documents. Responding Party has also produced summaries of licenses, sales and payments. Re-sponding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

### 2. Plaintiffs' Position

Plaintiffs' 17 U.S.C. § 1202 claim (removal/alteration of Copyright Management Information ["CMI"]) alleges that the BackGrid Defendants and their predecessors removed, altered, and replaced Plaintiffs' CMI and continued offering Plaintiffs' photographs for license through the BackGrid client portal under that false CMI. (SAC ¶¶ 50–62, 87–92.) The server logs, database records, and analytics responsive to RFP 14 establish the scope of that conduct: every instance any of the photographs at issue was displayed, downloaded, searched for, viewed, or licensed through the BackGrid Defendants' websites or client portals. Those records bear directly on the scope of infringement, the scope of the BackGrid Defendants' Section 1202 violations, damages, and the BackGrid Defendants' inducement of third-party infringement. They exist, if at all, only in the BackGrid Defendants' systems.

The BackGrid Defendants have the capability to produce access logs identifying specific photographs viewed through the BackGrid client portal. They have already done so for one third-party account holder. At BACKGRID001327–001540, BackGrid USA, Inc. produced a 214-page activity log for the account "Hollywood Uncovered Netflix." (Sergenian Decl. ¶ 44.) The log shows, for that account, each attempted login, each successful login, each search executed, and each photograph viewed. For each photograph viewed, the log displays the photograph's title and, in many instances, a BackGrid internal identifier for the photograph. (*Id.*) The existence of this log establishes that the BackGrid Defendants can generate equivalent logs for every other account holder that accessed the BackGrid client portal, querying by photograph title or by BackGrid internal identifier. The BackGrid Defendants can therefore use their internal identifiers for the photographs at issue to produce a log of every time any client viewed each photograph. (*Id.*)

The parties have confirmed in writing that to the extent the BackGrid Defendants are aware of responsive, non-privileged documents that are not surfaced by the agreed search terms, the BackGrid Defendants still have an obligation to produce those docu-

- 12 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

ments. (Sergenian Decl. ¶ 43, Ex. 8.) On April 27, 2026, Plaintiffs' counsel wrote to defense counsel: "We have discussed and confirmed several times that if your clients are aware of responsive, non-privileged documents that are not responsive to search terms, they have an obligation to produce those." Defense counsel responded the same evening: "Yes- we have done that." (Ex. 8.) Notwithstanding that agreement, and notwithstanding their demonstrated capability to produce equivalent access logs, the BackGrid Defendants have refused to produce per-photograph access logs for the photographs at issue. (Sergenian Decl. ¶ 45.) Their position is that such logs are not responsive to the search terms they ran and therefore need not be produced. That position is contrary to the agreement memorialized in Exhibit 8 and contrary to the BackGrid Defendants' demonstrated capability to produce the logs.

, 2026 IDC, the BackGrid Defendants represented that they would produce material responsive to RFP 14. That representation has not been memorialized in a compliant Rule 34 response or followed by any production. BackGrid USA, Inc.'s May 6, 2026 supplemental response—the only operative response from any BackGrid Defendant—commits only to producing documents "pursuant to the searches shown in Attachment A," along with "summaries of licenses, sales and payments." Those searches do not reach the per-photograph access logs RFP 14 seeks, and the summaries (predominantly per-photographer sales ledgers and screenshots of an internal "myBackgrid" administrative interface) do not substitute for the underlying access logs. BackGrid, Inc. and Shutterstock, Inc. have not supplemented their responses to RFP 14, and their original boilerplate objections remain operative. Absent an order, Plaintiffs have no record commitment they can enforce.

The boilerplate objections—"vague," "ambiguous," "overbroad," "unduly burdensome," and "not reasonably calculated to lead to the discovery of admissible evidence"—are insufficient under Federal Rule of Civil Procedure 34(b)(2)(B), which requires the responding party to "state with specificity the grounds for objecting to the request, including the reasons." *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

1142, 1149 (9th Cir. 2005) (boilerplate objections fail to comply with the Federal Rules and are tantamount to no objection at all).

The "COPYRIGHTED WORKS" objection is meritless. Plaintiffs have produced everything Plaintiffs have on the works at issue: the registration certificates and the spreadsheet attached as Exhibit A to the Second Amended Complaint mapping each Back-Grid set code to its corresponding copyright registration number. (SAC ¶ 55, Ex. A [ECF No. 80-1].) Plaintiffs derived those set codes from the access the BackGrid Defendants granted them to the client portal. (SAC ¶ 49.) The client portal is the customer-facing interface; it is not the underlying digital asset management system, the server logs, or the database tables the BackGrid Defendants use to operate their licensing business. Plaintiffs cannot identify works in systems they have never seen. The BackGrid Defendants have direct access to those systems and, as the Hollywood Uncovered Netflix log demonstrates, can map their own set codes to specific photographs without further input from Plaintiffs. The collateral allegations in BackGrid USA, Inc.'s May 6 supplemental response regarding Plaintiffs' prior access to the client portal are not a basis for withholding production; they go neither to relevance nor to burden, and the protective order at ECF No. 64 governs the handling of any confidential material produced.

Shutterstock's separate "wrong party" objection fails. Shutterstock acquired Back-Grid Inc. and BackGrid USA, Inc. in February 2024. (SAC ¶¶ 18, 37.) As parent corporation of those wholly-owned subsidiaries, Shutterstock has Rule 34 control over documents in their possession, including the server logs sought here. *See United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.") (citations omitted); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999) (affirming legal control test); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544–45 (N.D. Cal. 2005) (rejecting parent corporation's argument that plaintiffs must subpoena or join the wholly-owned subsidiary to obtain its documents; parent had Rule 34 control through its ownership).

- 14 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

To the extent the BackGrid Defendants contend that any responsive documents do not exist or cannot be located, they should serve amended Rule 34 responses identifying what is being withheld on what grounds, and support any "no further documents" representation by declaration describing the reasonable inquiry conducted. *See* Fed. R. Civ. P. 34(b)(2)(B)–(C); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 U.S. Dist. LEXIS 151705, at *38–39 (C.D. Cal. July 28, 2023); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006).

### 3. The BackGrid Defendants' Position

Plaintiffs withdrew the challenge to Defendants' alleged failure to produce logs from the Joint Stipulation by email dated Saturday, May 16, 2026, two days after the Joint Stipulation was served. Ardalan Decl. Ex. E. Plaintiffs and their counsel should be sanctioned for their pattern of discovery abuses in this case. Ardalan Decl. E. Plaintiffs served the Joint Stipulation after Defendants sent an email confirming what they agreed to at the IDC and confirming they would proceed as agreed upon. *Id.* at Ex. D; *cf.* Ex E. Defendants' discovery abuse as it relates to this discovery request is threefold, as discussed below.

<u>This is the Second Time Plaintiffs Served an</u>

<u>Improper Joint Stipulation on This Issue</u>

On May 5, 2026, Plaintiffs improperly served a Joint Stipulation against Defendants, which includes this Request for Production Number 14. Ardalan Decl., Ex. A. Defendants sought and obtained relief to respond to it during an informal discovery conference the next day, May 6, 2026. (Dkt. 94.) The Court agreed with Defendants and found that the Joint Stipulation was not authorized. The Court set the matter for a further IDC on May 13, 2026, to address the disputed issues. *Id.* The Court held that Defendants were excused from responding to that Joint Stipulation in the meantime and encouraged the parties to further meet and confer, which they did. *Id.* Defendants even agreed to a Saturday meet and confer call, to cooperate with Plaintiffs. Instead of attempting to cooperate with Defendants and be forthcoming about the issues, Defendants attempted to create a

- 15 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

record after the fact of issues not discussed on the call, but raised them afterwards in writing and with the Court, pretending they had been discussed. Ardalan Decl., Ex. B.

Plaintiffs tried again to proceed with a second Joint Stipulation. During the May 13, 2026, IDC, the dispute as to this discovery request was ***resolved***, as reflected in the Court's May 15, 2026, IDC 7 Order. Plaintiffs were not authorized to bring a motion as to the instant discovery request. Nevertheless, Plaintiffs served the Joint Stipulation on May 14, 2026—one day after IDC 7. (Dkt. 107; Ardalan Decl. Ex. C.) It appears Plaintiffs did so, banking on the fact that the Court would not issue a detailed order reflecting what was accomplished at the IDC, to needlessly run up costs for Defendants to respond and to jam up Defendants from adequately preparing for the seventeen depositions noticed before the rapidly approaching fact discovery cutoff on June 19, 2026. Indeed, Plaintiffs served the joint stipulation knowing that Defendants had noticed three of Plaintiffs' depositions the next week and that the drafting of this joint stipulation over the next seven days would impact deposition preparation. They also served an ex parte and another IDC request for another resolved issue that same week. Ardalan Decl. ¶ 4.

### The Stipulation is Untimely

The Joint Stipulation is untimely and procedurally defective. (Ardalan Decl. Ex. C.) Plaintiffs served their portion of the Joint Stipulation on Defendants on May 14, 2026. Under Local Rule 37-2.2, Defendants have seven days from receipt to deliver their portion (May 21, 2026), after which Plaintiffs must add it back and provide the assembled stipulation to opposing counsel for signature, which is then due "no later than the end of the next business day" (May 22, 2026). Local Rule 37-3 then requires the motion to be "noticed to be heard on a regular Motion Day for the appropriate judge at least twenty-one days after the filing of the motion," and Judge Audero's Procedures provide that civil motions are heard only on Thursdays at 10:00 a.m. The earliest properly noticed Thursday hearing date is therefore June 18, 2026 — not the June 11, 2026, date Plaintiffs noticed, which is only twenty days after the earliest possible filing date and violates Local Rule 37-3 on its face.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

The June 18, 2026 alternative fails independently under the Scheduling Order, which requires that "a planned motion to compel . . . ordinarily be discussed with the opposing party at least six (6) weeks before the cut-off" — i.e., by May 8, 2026 — and that "[a]ny motion challenging the adequacy of discovery responses . . . be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted" (ECF No. 50 at 5). A June 18, 2026, hearing leaves one day before the June 19, 2026, fact-discovery cut-off. Judge Audero's Standing Order ¶ 7(b) warns that "[a] party that waits until the last day to have a motion heard on a date that turns out to be unavailable risks having the motion stricken and not heard," and Local Rule 37-2.4 authorizes the Court to decline to consider a non-compliant discovery motion. The Joint Stipulation should be denied or stricken on this ground alone.

Sanctions are warranted under Federal Rule of Civil Procedure 37(a)(5)(B), Local Rule 37-4, and the Court's inherent authority to compensate Defendants for the fees incurred opposing this withdrawn portion of the Joint Stipulation between May 14 and May 16, 2026, as discussed further below.

<u>The Requested Documents Have Been Provided</u>

At the IDC, Defendants agreed to provide view and download logs for the sets identified as the Copyrighted Works at issue. Defendants have provided those logs. Ardalan Decl. ¶ 8.

**B.     Category II: Licensing Records and Revenue Records (RFPs 17, 18)**

Category II covers the financial records reflecting revenue from licensing (a) the photographs at issue in this action and (b) any photograph provided to the BackGrid Defendants by any Plaintiff.

**1.     Request for Production No. 17**

**REQUEST FOR PRODUCTION NO. 17**

All financial statements, ledgers, royalty statements, and accounting records RELATING TO revenue generated from the licensing of the COPYRIGHTED WORKS.

- 17 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. [BGI/BGU: Responding Party objects to YOU, which as defined is overly broad and unduly burdensome. Responding Party understands YOU to mean BackGrid Inc./BackGrid USA, Inc. / SS: Responding Party further objects to the definition of YOU. It defines "YOU" as "Defendant Flynet Pictures, LLC and any other person or entities acting on its behalf, including, but not limited to, any parents, successors, predecessors, subsidiaries, divisions, and any past and present officers, directors, employees, agents, and representatives." Shutterstock is not Flynet Pictures, LLC and cannot respond on its behalf.] Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party objects to the term "COPYRIGHTED WORKS" as defined. As defined, Responding Party is required to review 12,972 documents, which are not organized, labeled, or otherwise searchable, and were produced as multiple pdf files. As such, the definition prohibits the Responding Party from searching its documents by using these files in a meaningful manner. Subject to and without waiving the foregoing objections, Responding Party invites Plaintiffs to meet and confer regarding this request, specifically regarding how the parties can define COPYRIGHTED WORKS so that they may be more searchable, and how to limit the irrelevant and potentially private information from being produced. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding

- 18 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

**BACKGRID USA, INC.'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17 (Served May 6, 2026)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party understands the "COPYRIGHTED WORKS" to mean the sets identified by Plaintiffs on or around January 12, 2026. These sets were identified after Responding Party had access to BackGrid's Confidential Client Portal over two different periods of time. First, Plaintiffs had access to the Confidential Client Portal over a 14 month period. That access was acquired through fraud when one or more of the Plaintiffs represented they were "Emily Carter," who requested access as part of the production team on a Netflix documentary project. Second, Plaintiffs had access to the Confidential Client Portal over a three week period when BackGrid USA, Inc. gave Plaintiffs access to it as part of the discovery process. The latter period of access—the Plaintiffs' inspection of the Confidential Client Portal—is part of the Responding Party's production. Subject to and without waiving the foregoing objections, Responding Party has searched for documents pursuant to the searches shown in Attachment A as has produced or will produce responsive

- 19 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

documents. Responding Party has also produced summaries of licenses, sales and payments. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

**SHUTTERSTOCK, INC.'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17 (Served May 12, 2026)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party understands the "COPYRIGHTED WORKS" to mean the sets identified by Plaintiffs on or around January 12, 2026. These sets were identified after Responding Party had access to BackGrid's Confidential Client Portal over two different periods of time. First, Plaintiffs had access to the Confidential Client Portal over a 14 month period. That access was acquired through fraud when one or more of the Plaintiffs represented they were "Emily Carter," who requested access as part of the production team on a Netflix documentary project. Second, Plaintiffs had access to the Confidential Client Portal over a three week period when BackGrid USA, Inc. gave Plaintiffs access to it as part of the discovery process. The latter period of access—the Plaintiffs' inspection of the Confidential Client Portal—is part of the BackGrid USA, Inc.'s production. Subject to and

- 20 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

without waiving the foregoing objections, Responding Party will conduct a reasonably diligent search and will produce non-privileged responsive documents in its possession, custody, or control. Responding Party has searched for documents pursuant to the searches shown in Attachment A. Responding Party has limited its search from January 1, 2024 to present. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

### 2. Request for Production No. 18

**REQUEST FOR PRODUCTION NO. 18**

All financial statements, ledgers, royalty statements, and accounting records RELATING TO revenue generated from the licensing of any photograph provided to YOU by any of the PLAINTIFFS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18 (Served August 25, 2025)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. [BGI/BGU: Responding Party objects to YOU, which as defined is overly broad and unduly burdensome. Responding Party understands YOU to mean BackGrid Inc./BackGrid USA, Inc. / SS: Responding Party further objects to the definition of YOU. It defines "YOU" as "Defendant Flynet Pictures, LLC and any other person or entities acting on its behalf, including, but not limited to, any parents, successors, predecessors, subsidiaries, divisions, and any past and present officers, directors, employees, agents, and representatives." Shutterstock is not Flynet Pictures, LLC and cannot respond on its behalf.] Responding Party further objects to this request to the extent it calls for the production of privileged, work-product

- 21 -
JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Subject to and without waiving the foregoing objections, Responding Party will produce non-privileged responsive documents in its possession, custody, or control, to the extent they exist, subject to a reasonable timeframe. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

[BackGrid USA, Inc. did not serve a supplemental response to Request for Production No. 18.]

**SHUTTERSTOCK, INC.'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 18 (Served May 12, 2026)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to the definition of YOU. It defines "YOU" as "Defendant Flynet Pictures, LLC and any other person or entities acting on its behalf, including, but not limited to, any parents, successors, predecessors, subsidiaries, divisions, and any past and present officers, directors, employees, agents, and representatives." Shutterstock is not Flynet Pictures, LLC and cannot respond on its behalf. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party understands the "COPYRIGHTED WORKS" to mean the sets identified by Plaintiffs on or around January 12, 2026. These sets were identified after Responding Party had access to BackGrid's Confidential Client Portal over two different periods of time. First, Plaintiffs had access to the Confidential Client Portal over a 14 month period. That access was acquired through fraud when one or more of the Plaintiffs represented they were "Emily Carter," who requested access as part of the production team on a Netflix documentary project. Second, Plaintiffs had access to the Confidential Client Portal over a three week period when BackGrid USA, Inc. gave Plaintiffs access to it as part of the discovery process. The latter period of access—the Plaintiffs' inspection of the Confidential Client Portal—is part of the BackGrid USA, Inc.'s production. Subject to and without waiving the foregoing objections, Responding Party will conduct a reasonably diligent search and will produce non-privileged responsive documents in its possession, custody, or control, to the extent they exist. Responding Party has searched for documents pursuant to the searches shown in Attachment A. Responding Party has limited its search from January 1, 2024 to present. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

### 3.    Plaintiffs' Position

Plaintiffs' damages on the breach-of-contract, copyright infringement, and Section 1202 claims depend on the BackGrid Defendants' records of every license issued and every fee collected for (a) the photographs at issue and (b) any photograph provided to the BackGrid Defendants by any Plaintiff. The BackGrid Defendants have not denied that

- 23 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

these documents reside in the BackGrid Defendants' systems. Plaintiffs allege that the BackGrid Defendants licensed sets of Plaintiffs' photographs to third parties without paying royalties. (SAC ¶ 58.) Defense counsel has already conceded that licenses were issued for at least some improperly attributed sets without royalty payments to the photographers. (*Id.*) The withheld records are necessary to determine the scope of that conduct and to calculate damages.

, 2026 IDC, the BackGrid Defendants represented that they would produce the underlying sales spreadsheet in native Excel format. That representation has not been memorialized in a compliant Rule 34 response or followed by any production. Even if it were, a sales spreadsheet does not satisfy RFPs 17 and 18, which seek "[a]ll financial statements, ledgers, royalty statements, and accounting records." The April 27, 2026 production includes no royalty calculations, payment records, or reconciliations for Plaintiffs Mazari, Kyndt, or Mehdi. For Plaintiffs Wolf, Boutefeu, Duplaquet, and Mauvilain, it includes no royalty calculations, payment records, or reconciliations beyond the per-photographer sales ledgers at BACKGRID000001–001326 and the single December 11, 2018 reconciliation email for Plaintiff Mauvilain at BACKGRID002097–002131. (Sergenian Decl. ¶ 42.) The May 8, May 11, and May 12, 2026 supplemental productions added no responsive material in this category.

The parties have confirmed in writing that to the extent the BackGrid Defendants are aware of responsive, non-privileged documents that are not surfaced by the agreed search terms, the BackGrid Defendants still have an obligation to produce those documents. (Sergenian Decl. ¶ 43, Ex. 8.) BackGrid USA, Inc.'s supplemental response to RFP 17 commits only to producing documents "pursuant to the searches shown in Attachment A," a commitment that, on its face, falls short of the BackGrid Defendants' obligation under the parties' agreement. The financial records responsive to RFPs 17 and 18 (licensing ledgers, royalty statements, accounting records, and ACH or wire records reflecting payment from licensees) are records the BackGrid Defendants maintain in the ordinary course of business and can produce without resort to keyword search across an

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

unstructured email collection. Their existence is not in doubt, as the partial production demonstrates.

Shutterstock's unilateral January 1, 2024 temporal limitation should be stricken. The Second Amended Complaint alleges that Shutterstock acquired BackGrid in February 2024 and "thereafter continued operating, controlling, or benefiting from the same archive, client portal, contributor systems, and licensing business." (SAC ¶ 37.) Plaintiffs' damages on the breach-of-contract, copyright infringement, and Section 1202 claims span contributor relationships, licensing transactions, and CMI alterations predating the acquisition by years and, for Plaintiff Mauvilain, decades. (SAC ¶¶ 38–47.) As parent corporation of BackGrid Inc. and BackGrid USA, Inc., Shutterstock has Rule 34 control over the pre-2024 records its wholly-owned subsidiaries possess. *See United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544–45 (N.D. Cal. 2005). Shutterstock cannot use a post-hoc date cutoff to immunize the historical records of the entities it acquired.

The boilerplate objections—"vague," "ambiguous," "overbroad," "unduly burdensome," and "not reasonably calculated to lead to the discovery of admissible evidence"—are insufficient under Federal Rule of Civil Procedure 34(b)(2)(B), which requires the responding party to "state with specificity the grounds for objecting to the request, including the reasons." See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct., 408 F.3d 1142, 1149 (9th Cir. 2005) (boilerplate objections fail to comply with the Federal Rules and are tantamount to no objection at all).

Confidentiality concerns about commercial licensing terms are addressed by the protective order at ECF No. 64.

The "COPYRIGHTED WORKS" objection (raised only for RFP 17) is meritless. Plaintiffs have produced everything Plaintiffs have on the works at issue: the registration certificates and the spreadsheet attached as Exhibit A to the Second Amended Complaint mapping each BackGrid set code to its corresponding copyright registration number.

- 25 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

(SAC ¶ 55, Ex. A [ECF No. 80-1].) Plaintiffs derived those set codes from the access the BackGrid Defendants granted them to the client portal. (SAC ¶ 49.) The BackGrid Defendants maintain the underlying digital asset management system and the licensing records by their own internal identifiers, not by Plaintiffs' copyright registration numbers, and can cross-reference their internal identifiers to the works at issue without further input from Plaintiffs. In any event, RFP 18 expressly extends to any photograph provided to the BackGrid Defendants by any Plaintiff, eliminating the BackGrid Defendants' premise that the request depends on the COPYRIGHTED WORKS definition.

Shutterstock's separate "wrong party" objection fails. Shutterstock acquired Back-Grid Inc. and BackGrid USA, Inc. in February 2024. (SAC ¶¶ 18, 37.) As parent corporation of those wholly-owned subsidiaries, Shutterstock has Rule 34 control over documents in their possession, including the financial records sought here. *See United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.") (citations omitted); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999) (affirming legal control test); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544–45 (N.D. Cal. 2005) (rejecting parent corporation's argument that plaintiffs must subpoena or join the wholly-owned subsidiary to obtain its documents; parent had Rule 34 control through its ownership).

To the extent the BackGrid Defendants contend that any responsive documents do not exist or cannot be located, they should serve amended Rule 34 responses identifying what is being withheld on what grounds, and support any "no further documents" representation by declaration describing the reasonable inquiry conducted. *See* Fed. R. Civ. P. 34(b)(2)(B)–(C); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 U.S. Dist. LEXIS 151705, at *38–39 (C.D. Cal. July 28, 2023); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006).

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

#### 4. The BackGrid Defendants' Position

Plaintiffs withdrew the challenge to Defendants' alleged failure to produce financial statements and ledgers from the Joint Stipulation by email dated Saturday, May 16, 2026, two days after the Joint Stipulation was served. Ardalan Decl. Ex. E. This issue was resolved. The Court stated that the business records already produced on the licensing is sufficient. Ardalan Decl. ¶ 9. Plaintiffs and their counsel should be sanctioned for their pattern of discovery abuses in this case. Plaintiffs served the Joint Stipulation after Defendants sent an email confirming what they agreed to at the IDC and confirming they would proceed as agreed upon. *Id*. at Ex. D; cf. Ex E. Defendants' discovery abuse as it relates to this discovery request is threefold, as discussed below.

This is the Second Time Plaintiffs Served an

Improper Joint Stipulation on This Issue

On May 5, 2026, Plaintiffs improperly served a Joint Stipulation against Defendants, which includes this Request for Production Numbers 17 and 18. Ardalan Decl., Ex. A. Defendants sought and obtained relief to respond to it during an informal discovery conference the next day, May 6, 2026. (Dkt. 94.) The Court agreed with Defendants and found that the Joint Stipulation was not authorized. The Court set the matter for a further IDC on May 13, 2026, to address the disputed issues. *Id*. The Court held that Defendants were excused from responding to that Joint Stipulation in the meantime and encouraged the parties to further meet and confer, which they did. Id. Defendants even agreed to a Saturday meet and confer call, to cooperate with Plaintiffs. Instead of attempting to cooperate with Defendants and be forthcoming about the issues, Defendants attempted to create a record after the fact of issues not discussed on the call, but raised them afterwards in writing and with the Court, pretending they had been discussed. Ardalan Decl., Ex., B.

Plaintiffs tried again to proceed with a second Joint Stipulation. During the May 13, 2026, IDC, the dispute as to this discovery request was resolved, as reflected in the Court's May 15, 2026, IDC 7 Order. Plaintiffs were not authorized to bring a motion as

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

to the instant discovery request. Nevertheless, Plaintiffs served the Joint Stipulation on May 14, 2026—one day after IDC 7. (Dkt. 107; Ardalan Decl. Ex. C.) It appears Plaintiffs did so, banking on the fact that the Court would not issue a detailed order re-flecting what was accomplished at the IDC, to needlessly run up costs for Defendants to respond and to jam up Defendants from adequately preparing for the seventeen deposi-tions noticed before the rapidly approaching fact discovery cutoff on June 19, 2026. In-deed, Plaintiffs served the joint stipulation knowing that Defendants had noticed three of Plaintiffs' dep-ositions the next week and that the drafting of this joint stipulation over the next seven days would impact deposition preparation. They also served an ex parte and another IDC request for another resolved issue that same week. Ardalan Decl. ¶ 4.

<u>The Stipulation is Untimely</u>

The Joint Stipulation is untimely and procedurally defective. (Ardalan Decl. Ex. C.) Plaintiffs served their portion of the Joint Stipulation on Defendants on May 14, 2026. Under Local Rule 37-2.2, Defendants have seven days from receipt to deliver their por-tion (May 21, 2026), after which Plaintiffs must add it back and provide the assembled stipulation to opposing counsel for signature, which is then due "no later than the end of the next business day" (May 22, 2026). Local Rule 37-3 then requires the motion to be "noticed to be heard on a regular Motion Day for the appropriate judge at least twenty-one days after the filing of the motion," and Judge Audero's Procedures provide that civil motions are heard only on Thursdays at 10:00 a.m. The earliest properly noticed Thursday hearing date is therefore June 18, 2026 — not the June 11, 2026, date Plaintiffs noticed, which is only twenty days after the earliest possible filing date and violates Local Rule 37-3 on its face.

The June 18, 2026 alternative fails independently under the Scheduling Order, which requires that "a planned motion to compel . . . ordinarily be discussed with the opposing party at least six (6) weeks before the cut-off" — i.e., by May 8, 2026 — and that "[a]ny motion challenging the adequacy of discovery responses . . . be filed, served,

- 28 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted" (ECF No. 50 at 5). A June 18, 2026, hearing leaves one day before the June 19, 2026, fact-discovery cut-off. Judge Audero's Standing Order ¶ 7(b) warns that "[a] party that waits until the last day to have a motion heard on a date that turns out to be unavailable risks having the motion stricken and not heard," and Local Rule 37-2.4 authorizes the Court to decline to consider a non-compliant discovery motion. The Joint Stipulation should be denied or stricken on this ground alone.

Sanctions are warranted under Federal Rule of Civil Procedure 37(a)(5)(B), Local Rule 37-4, and the Court's inherent authority to compensate Defendants for the fees incurred opposing this withdrawn portion of the Joint Stipulation between May 14 and May 16, 2026, as discussed further below.

<u>The Requested Documents Have Been Provided</u>

At the IDC, the issue was resolved because the documents already produced were sufficient to show the licensing history, the payments received from the outlets, the commissions paid to the photographers, the commission rate, among other information. Plaintiffs could not articulate a need for any further information, so the issue was resolved. Ardalan Decl., ¶ 9.

### C. Category III: Transactional Documents and IP Due Diligence Reports (RFPs 27, 50)

Category III covers the transactional documents reflecting the corporate succession from Flynet Pictures, LLC through FameFlynet, Inc., BackGrid, and Shutterstock: Shutterstock's February 2024 acquisition agreement and related closing documents (RFP 27) and the IP due diligence reports prepared in connection with each transaction in that chain (RFP 50).

- 29 -
JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

### 1. Request for Production No. 27

**REQUEST FOR PRODUCTION NO. 27**

All DOCUMENTS RELATING TO the acquisition of BACKGRID by SHUT-TERSTOCK, including but not limited to the acquisition agreement and all schedules, exhibits, and closing documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27 (Served August 25, 2025)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to the definition of SHUTTERSTOCK as overly broad and unduly burdensome. Responding Party understands SHUTTERSTOCK to mean Shutterstock, Inc. Responding Party objects to the definition of BACKGRID as overly broad and unduly burdensome. Responding Party understands BACKGRID to mean BackGrid, Inc. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

[None of the BackGrid Defendants served a supplemental response to Request for Production No. 27.]

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

## 2. Request for Production No. 50

**REQUEST FOR PRODUCTION NO. 50**

All due diligence reports, or portions thereof, created or received during the mergers/acquisitions involving FLYNET, FAMEFLYNET, BACKGRID, and SHUTTERSTOCK that RELATE TO intellectual property portfolios, copyright liabilities, and contributor agreements or obligations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50 (Served August 25, 2025)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

[None of the BackGrid Defendants served a supplemental response to Request for Production No. 50.]

## 3. Plaintiffs' Position

The corporate transactional documents and IP due diligence reports responsive to RFPs 27 and 50 go to the corporate succession at the heart of this case. The Second

- 31 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Amended Complaint alleges that Flynet merged with Fame Pictures in 2012 to form FameFlynet; that FameFlynet merged with AKM-GSI in 2017 to form BackGrid (SAC ¶ 35); and that Shutterstock acquired BackGrid in February 2024 and thereafter continued operating, controlling, or benefiting from the same archive, client portal, contributor systems, and licensing business (*id.* ¶ 37). The SAC further alleges that each successor entity "accepted the benefits of [the] contributor agreements and assumed or continued the corresponding obligations"—including by maintaining contributor accounts, paying or purporting to pay royalties on archive photographs, continuing to use the same contributor codes assigned to Plaintiffs, and representing to Plaintiffs through the contributor portal that the information provided was complete and accurate. (*Id.* ¶ 99.) The acquisition agreement and closing documents for the Shutterstock–BackGrid transaction (RFP 27) and the IP due diligence reports prepared in connection with each transaction in the chain (RFP 50) are direct evidence of what was actually disclosed, assumed, and transferred at each step.

These documents bear on multiple disputed issues. They go to successor liability; i.e., whether each successor assumed the predecessor's contractual obligations to Plaintiffs and inherited responsibility for the predecessor's infringement and CMI removal. They go to Plaintiffs' Section 1202 scienter allegations: what each acquirer knew, at the time of acquisition, about the contributor agreements, the metadata practices, and the copyright liabilities it was acquiring. (SAC ¶¶ 87–92.) They go to the scope of Shutterstock's ownership and control over the pre-2024 BackGrid records discussed in Category II above, and they bear directly on Shutterstock's unilateral January 1, 2024 temporal limitation on its searches.

The transactional documents and IP due diligence reports bear directly on a contested liability theory the BackGrid Defendants have themselves placed in dispute. In their motion to dismiss the SAC and reply in support, the BackGrid Defendants argue that Plaintiffs have not alleged "factual circumstances giving rise to an assumption of liability" sufficient to establish successor liability, and contend that Plaintiffs' allegations

that each successor "took possession of the archive," "paid royalties," and "maintained client and contributor systems" "simply describe a license" and do not "amount to a plausible inference of successor liability." (Dkt. 88 at 5–6; Dkt. 84-1 at 6–7.) The factual circumstances the BackGrid Defendants say are missing can be established or refuted in the very documents they refuse to produce: the terms of the acquisition agreements, what liabilities and obligations were disclosed and assumed in the related closing documents, and what each acquirer knew about the predecessor entities' copyright and contributor obligations through the IP due diligence prepared in connection with each transaction. The BackGrid Defendants cannot fairly argue that Plaintiffs have failed to allege successor liability with factual specificity while simultaneously withholding the documents in which those facts reside.

None of the BackGrid Defendants supplemented its response to RFP 27 or RFP 50. The original August 25, 2025 responses consist of boilerplate objections without any commitment to search, produce, or even confirm whether responsive documents exist. BackGrid USA, Inc.'s May 6, 2026 supplementation and Shutterstock, Inc.'s May 12, 2026 supplementation did not address either Request. BackGrid, Inc. has not supplemented any Request. The operative responses are no responses at all.

, 2026 IDC, Ms. Ardalan represented for the first time that Shutterstock, Inc. would produce the Shutterstock–BackGrid acquisition agreement, but that the schedules, exhibits, and closing documents would not be produced. That representation has not been memorialized in a compliant Rule 34 response or followed by any production. It also does not resolve the Request: RFP 27 expressly seeks the acquisition agreement "and all schedules, exhibits, and closing documents." The schedules, exhibits, and closing documents accompanying an acquisition agreement are where the substantive disclosures concerning IP, contributor obligations, and assumed liabilities reside—not in the bare contract.

The boilerplate objections—"vague," "ambiguous," "overbroad," "unduly burdensome," and "not reasonably calculated to lead to the discovery of admissible evidence"—are insufficient under Federal Rule of Civil Procedure 34(b)(2)(B),

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

which requires the responding party to "state with specificity the grounds for objecting to the request, including the reasons." *See Burlington N.*, 408 F.3d at 1149 (boilerplate objections fail to comply with the Federal Rules and are tantamount to no objection at all).

The BackGrid Defendants' objections to the definitions of SHUTTERSTOCK and BACKGRID in RFP 27 are meritless. The Request seeks documents relating to a transaction that the BackGrid Defendants themselves describe in their own corporate filings, press releases, and pleadings. The BackGrid Defendants know what entity acquired what entity in February 2024; they do not need a Plaintiff-supplied definition to identify the responsive documents.

Confidentiality concerns about transactional documents and due diligence reports are addressed by the protective order at ECF No. 64.

The transactional documents and due diligence reports responsive to RFPs 27 and 50 are corporate-level records that would not, in the ordinary course, be located through keyword searches of custodian email collections. They are records the BackGrid Defendants either maintain in their own records-management systems or do not have at all. The parties have confirmed in writing that to the extent the BackGrid Defendants are aware of responsive, non-privileged documents not surfaced by keyword search, the BackGrid Defendants still have an obligation to produce them. (Sergenian Decl. ¶ 43, Ex. 8.) For RFP 27 in particular, it is not plausible that Shutterstock has no documents relating to its own acquisition of BackGrid; the acquisition agreement and related closing documents are, by definition, records Shutterstock maintains in its capacity as acquirer.

To the extent any document responsive to RFP 27 or RFP 50 resides with a wholly-owned subsidiary rather than the responding party itself, the parent corporation has Rule 34 control. *See United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.") (citations omitted); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544–45 (N.D. Cal. 2005).

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

To the extent the BackGrid Defendants contend that any responsive documents do not exist or cannot be located, they should serve amended Rule 34 responses identifying what is being withheld on what grounds, and support any "no further documents" representation by declaration describing the reasonable inquiry conducted. *See* Fed. R. Civ. P. 34(b)(2)(B)–(C); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 U.S. Dist. LEXIS 151705, at *38–39 (C.D. Cal. July 28, 2023); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006).

### 4. The BackGrid Defendants' Position

Plaintiffs withdrew the challenge to Defendants' alleged failure to produce documents related to Shutterstock's acquisition of BackGrid, including all due diligence documents, from the Joint Stipulation by email dated Saturday, May 16, 2026, two days after the Joint Stipulation was served. Ardalan Decl. Ex. E. This issue was resolved. At the IDC, Defendants agreed to produce the purchase agreement, but not the rest of the due diligence documents. Ardalan Decl. ¶ 10. Plaintiffs could not articulate a need for information beyond the purchase agreement, so the issue was resolved. *Id.* Plaintiffs and their counsel should be sanctioned for their pattern of discovery abuses in this case. Plaintiffs served the Joint Stipulation after Defendants sent an email confirming what they agreed to at the IDC and confirming they would proceed as agreed upon. *Id.* at Ex. D; cf. Ex E. Defendants' discovery abuse as it relates to this discovery request is threefold, as discussed below.

This is the Second Time Plaintiffs Served an

Improper Joint Stipulation on This Issue

On May 5, 2026, Plaintiffs improperly served a Joint Stipulation against Defendants, which includes this Request for Production Numbers 27. Ardalan Decl., Ex. A. Defendants sought and obtained relief to respond to it during an informal discovery conference the next day, May 6, 2026. (Dkt. 94.) The Court agreed with Defendants and found that the Joint Stipulation was not authorized. The Court set the matter for a further IDC on May 13, 2026, to address the disputed issues. *Id.* The Court held that Defendants

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

were excused from responding to that Joint Stipulation in the meantime and encouraged the parties to further meet and confer, which they did. Id. Defendants even agreed to a Saturday meet and confer call, to cooperate with Plaintiffs.  Instead of attempting to cooperate with Defendants and be forthcoming about the issues, Defendants attempted to create a record after the fact of issues not discussed on the call, but raised them afterwards in writing and with the Court, pretending they had been discussed. Ardalan Decl., Ex. B.

Plaintiffs tried again to proceed with a second Joint Stipulation. During the May 13, 2026, IDC, the dispute as to this discovery request was resolved, as reflected in the Court's May 15, 2026, IDC 7 Order. Plaintiffs were not authorized to bring a motion as to the instant discovery request. Nevertheless, Plaintiffs served the Joint Stipulation on May 14, 2026—one day after IDC 7. (Dkt. 107; Ardalan Decl. Ex. C.) It appears Plaintiffs did so, banking on the fact that the Court would not issue a detailed order reflecting what was accomplished at the IDC, to needlessly run up costs for Defendants to respond and to jam up Defendants from adequately preparing for the seventeen depositions noticed before the rapidly approaching fact discovery cutoff on June 19, 2026. Indeed, Plaintiffs served the joint stipulation knowing that Defendants had noticed three of Plaintiffs' depositions the next week and that the drafting of this joint stipulation over the next seven days would impact deposition preparation. They also served an ex parte and another IDC request for another resolved issue that same week. Ardalan Decl. ¶ 4.

<u>The Stipulation is Untimely</u>

The Joint Stipulation is untimely and procedurally defective. (Ardalan Decl. Ex. C.) Plaintiffs served their portion of the Joint Stipulation on Defendants on May 14, 2026. Under Local Rule 37-2.2, Defendants have seven days from receipt to deliver their portion (May 21, 2026), after which Plaintiffs must add it back and provide the assembled stipulation to opposing counsel for signature, which is then due "no later than the end of the next business day" (May 22, 2026). Local Rule 37-3 then requires the motion to be "noticed to be heard on a regular Motion Day for the appropriate judge at least twenty-one days after the filing of the motion," and Judge Audero's Procedures provide that civil

- 36 -

motions are heard only on Thursdays at 10:00 a.m. The earliest properly noticed Thursday hearing date is therefore June 18, 2026 — not the June 11, 2026, date Plaintiffs noticed, which is only twenty days after the earliest possible filing date and violates Local Rule 37-3 on its face.

The June 18, 2026 alternative fails independently under the Scheduling Order, which requires that "a planned motion to compel . . . ordinarily be discussed with the opposing party at least six (6) weeks before the cut-off" — i.e., by May 8, 2026 — and that "[a]ny motion challenging the adequacy of discovery responses . . . be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted" (ECF No. 50 at 5). A June 18, 2026, hearing leaves one day before the June 19, 2026, fact-discovery cut-off. Judge Audero's Standing Order ¶ 7(b) warns that "[a] party that waits until the last day to have a motion heard on a date that turns out to be unavailable risks having the motion stricken and not heard," and Local Rule 37-2.4 authorizes the Court to decline to consider a non-compliant discovery motion. The Joint Stipulation should be denied or stricken on this ground alone.

Sanctions are warranted under Federal Rule of Civil Procedure 37(a)(5)(B), Local Rule 37-4, and the Court's inherent authority to compensate Defendants for the fees incurred opposing this withdrawn portion of the Joint Stipulation between May 14 and May 16, 2026, as discussed further below.

<u>The Requested Documents Have Been Provided</u>

At the IDC, Defendants agreed to produce the Shutterstock-BackGrid USA, Inc. purchase agreement, but not the rest of the due diligence documents. Ardalan Decl. ¶ 10. Plaintiffs could not articulate a need for information beyond the purchase agreement, so the issue was resolved. *Id.* The purchase agreement has been produced. *Id.*

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

**D.      Category IV: Bulk Sales (RFP 49)**

Category IV covers the documents reflecting the "bulk sales" of works from the BackGrid Defendants' archive; i.e., the wholesale licensing and asset-transfer transactions for photographs in the archive, including the communications, contracts, and lists of assets sold.

**1.      Request for Production No. 49**

**REQUEST FOR PRODUCTION NO. 49**

All DOCUMENTS RELATING TO the "bulk sales" of works referenced in Paragraph 5 of the FAC, including communications, contracts, and lists of assets sold.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49 (Served August 25, 2025)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party invites the parties to meet and confer regarding the meaning of "bulk sales," which as used in the complaint is vague and ambiguous. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

- 38 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

**BACKGRID USA, INC.'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 49 (Served May 6, 2026)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party invites the parties to meet and confer regarding the meaning of "bulk sales," which as used in the complaint is vague and ambiguous. Subject to and without waiving the foregoing objections, Responding Party has searched for documents pursuant to the searches shown in Attachment A and has produced or will produce responsive documents. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

**SHUTTERSTOCK, INC.'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 49 (Served May 12, 2026)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this request to the extent it calls for the production of privileged, work-product

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party invites the parties to meet and confer regarding the meaning of "bulk sales," which as used in the complaint is vague and ambiguous. Subject to and without waiving the foregoing objections, Responding Party will conduct a reasonably diligent search and will produce non-privileged responsive documents in its possession, custody, or control, to the extent they exist. Responding Party has searched for documents pursuant to the searches shown in Attachment A. Responding Party has limited its search from January 1, 2024 to present. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

[BackGrid, Inc. did not serve a supplemental response to Request for Production No. 49.]

### 2. Plaintiffs' Position

The bulk-sales documents responsive to RFP 49 bear on multiple disputed issues. The Second Amended Complaint alleges that Defendants licensed sets of Plaintiffs' photographs to third parties without paying royalties (SAC ¶¶ 3, 58), and defense counsel has admitted that BackGrid licensed at least some improperly attributed sets to third parties without paying the photographers any royalty (SAC ¶ 58). The Request seeks the contracts, communications, and asset lists relating to wholesale licensing and asset-transfer transactions for photographs in the BackGrid Defendants' archive. Those records establish the scale and recipients of the BackGrid Defendants' licensing conduct, the royalty

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

calculations (or lack thereof) for the resulting transactions, and the transfers of archive content between entities in the Flynet–FameFlynet–BackGrid–Shutterstock corporate-succession chain (SAC ¶¶ 35–37).

, 2026 IDC, the BackGrid Defendants represented that information responsive to RFP 49 had already been produced as part of the per-photographer sales spreadsheets. That representation does not satisfy the Request. RFP 49 seeks "[a]ll DOCUMENTS RELATING TO the 'bulk sales' of works referenced in Paragraph 5 of the FAC, including communications, contracts, and lists of assets sold." A sales spreadsheet listing per-license transactions is not a contract, not a communication, and not a list of assets sold. The contracts, communications, and asset lists associated with wholesale and asset-transfer transactions are categorically distinct records, and none has been produced.

The bulk-sales documents bear directly on a contested liability theory the BackGrid Defendants have themselves placed in dispute. In their motion to dismiss the SAC and reply in support, the BackGrid Defendants argue that Plaintiffs have not alleged "factual circumstances giving rise to an assumption of liability" sufficient to establish successor liability, and that Plaintiffs' allegations that each successor "took possession of the archive" "simply describe a license" rather than an assumption of liability. (Dkt. 88 at 5–6; Dkt. 84-1 at 6–7.) The contracts, communications, and asset lists relating to bulk transfers of works from the BackGrid Defendants' archive are direct evidence of how the archive moved between entities in the corporate-succession chain and of the terms on which each transfer occurred; i.e., the factual specificity the BackGrid Defendants now contend is missing.

The BackGrid Defendants supplemented unevenly. BackGrid USA, Inc.'s May 6, 2026 supplemental response represents that BackGrid USA, Inc. has "searched for documents pursuant to the searches shown in Attachment A" and "has produced or will produce responsive documents." Shutterstock, Inc.'s May 12, 2026 supplemental response represents that Shutterstock "will conduct a reasonably diligent search and will produce non-privileged responsive documents in its possession, custody, or control, to the extent

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

they exist," but unilaterally limits Shutterstock's search to documents "from January 1, 2024 to present." BackGrid, Inc. did not supplement its response, and its original boilerplate objections remain operative.

Shutterstock's January 1, 2024 temporal limitation is improper. The bulk-sales transactions at issue (wholesale licensing and asset-transfer transactions for photographs in the archive) predominantly predate Shutterstock's February 2024 acquisition of Back-Grid, and the records of those transactions remain in the systems of the subsidiaries Shutterstock now owns by virtue of the recency of the Shutterstock acquisition. As parent corporation of BackGrid Inc. and BackGrid USA, Inc., Shutterstock has Rule 34 control over the pre-2024 records. *See United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.") (citations omitted); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544–45 (N.D. Cal. 2005). Shutterstock cannot use a unilateral, post-hoc date cutoff to immunize the historical bulk-sales records of the entities it acquired. The temporal limitation should be ordered stricken, and Shutterstock should be required to produce responsive records without a January 1, 2024 cutoff.

The boilerplate objections—"vague," "ambiguous," "overbroad," "unduly burdensome," and "not reasonably calculated to lead to the discovery of admissible evidence"—are insufficient under Federal Rule of Civil Procedure 34(b)(2)(B), which requires the responding party to "state with specificity the grounds for objecting to the request, including the reasons." *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (boilerplate objections fail to comply with the Federal Rules and are tantamount to no objection at all).

Confidentiality concerns about commercial-transaction records are addressed by the protective order at ECF No. 64.

The parties have confirmed in writing that to the extent the BackGrid Defendants are aware of responsive, non-privileged documents not surfaced by keyword search, the

- 42 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

BackGrid Defendants still have an obligation to produce them. (Sergenian Decl. ¶ 43, Ex. 8.) Bulk-sale contracts and asset-transfer agreements are records the BackGrid Defendants maintain in their ordinary business files; they do not depend on keyword searches against custodian email collections, and BackGrid USA, Inc.'s commitment to produce only documents "pursuant to the searches shown in Attachment A" falls short of the Back-Grid Defendants' obligation under the parties' agreement.

To the extent the BackGrid Defendants contend that any responsive documents do not exist or cannot be located, they should serve amended Rule 34 responses identifying what is being withheld on what grounds, and support any "no further documents" representation by declaration describing the reasonable inquiry conducted. *See* Fed. R. Civ. P. 34(b)(2)(B)–(C); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 U.S. Dist. LEXIS 151705, at *38–39 (C.D. Cal. July 28, 2023); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006).

### 3. The BackGrid Defendants' Position

Plaintiffs' motion to compel further responses to RFP 49 should be denied for four reasons: (i) the Court has already heard this dispute and indicated that it was "not convinced" Plaintiffs were entitled to more than what the BackGrid Defendants have provided (Ardalan Decl., Ex. D) ; (ii) Plaintiffs have already received all material information about the "bulk sales" at issue through the per-photographer sales spreadsheets produced by the BackGrid Defendants and through the supplemental searches and productions served on May 6, 8, 11, and 12, 2026; (iii) Plaintiffs have not articulated — and cannot articulate — a meaningful need for "ALL DOCUMENTS RELATING TO" bulk sales beyond what they already have; and (iv) requiring "ALL DOCUMENTS RELATING TO" the bulk sales would impose a disproportionate burden on the BackGrid Defendants for low marginal yield, if at all.

1. The Court has already considered and declined this request at IDC 7. Plaintiffs presented RFP 49 to the Court at the May 13, 2026 Informal Discovery Conference. On the same set of arguments now repeated in the Joint Stipulation, the Court informed the

- 43 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

parties that it "was not convinced [Plaintiffs] needed more than what [Defendants] have already provided." (Ardalan Decl., Ex. D May 14, 2026 Email from J. Ardalan to D. Sergenian, RFP 49.) The Court's IDC 7 Order authorized Plaintiffs to file a motion as to RFP 49 but did not displace what the Court said on the merits. (ECF No. 102 at 1–2.) Plaintiffs offer nothing in this Joint Stipulation that distinguishes their presentation here from the presentation the Court already declined to adopt.

2. The BackGrid Defendants have already produced the material information Plaintiffs are entitled to receive. On December 8, 2026, the BackGrid Defendants produced per-photographer sales spreadsheets reflecting the information BackGrid maintains in the ordinary course of business for each contributor. The spreadsheets identify every license issued for the Plaintiff-photographers' works that contributed to BackGrid (including major news outlets such as TMZ), the licensee, and the amount paid to the Plaintiff-photographer for each licensed photograph, when it the photographer was paid, among other information. That information captures all material data about every licensed photograph, including those licensed as part of any wholesale or asset-transfer transaction Plaintiffs label a "bulk sale." With respect to the copyrighted works at issue, Defendants produced screenshots of its administrative portal showing the same information. The spreadsheets do not categorize licenses as "bulk" or "non-bulk," but that distinction is immaterial to Plaintiffs' claims: the relevant facts for Plaintiffs' breach-of-contract, copyright, and Section 1202 theories are the fact of license, the licensee, and the royalty paid, and all of that information has been produced. The BackGrid Defendants supplemented those productions on May 6, May 8, May 11, and May 12, 2026 (BACKGRID002143–002574), and BackGrid USA, Inc.'s May 6, 2026 supplemental response to RFP 49 confirms that the BackGrid Defendants have searched for responsive documents pursuant to Attachment A and "produced or will produce responsive documents." The BackGrid Defendants also ran the more than 2,300 pairwise Boolean searches reflected in Attachment A to the re-

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

sponses (Ardalan Decl., Ex. F) and, pursuant to the parties' April 27, 2026 written agreement (Sergenian Decl. Ex. 8), will produce responsive, non-privileged documents identified outside those searches.

3. Plaintiffs cannot articulate a need for "ALL DOCUMENTS RELATING TO" bulk sales. Given the information already produced, Plaintiffs have not — and cannot — explain why they need an undifferentiated production of every document, communication, contract, and asset list "RELATING TO" bulk sales. The relevant economic and identifying facts about each licensed photograph are already in the spreadsheets. Any additional document would, at best, confirm what is already in the production. Plaintiffs' assertion (Joint Stipulation ¶ 214) that a sales spreadsheet "is not a contract, not a communication, and not a list of assets sold" is form over substance: the spreadsheet is a list of assets sold, with the price and licensee for each. Plaintiffs have identified no contested issue in this case that turns on the format of that information rather than its substance.

4. Producing "ALL DOCUMENTS RELATING TO" bulk sales would be disproportionate under Rule 26(b)(1). The BackGrid Defendants anticipate, based on their business practices and history, that there are no formal license agreements for the "bulk sales" Plaintiffs identify; deal terms were typically negotiated over email and by telephone, and the resulting transactions often involved photographs that have no connection to the photographs at issue in this case or to the Plaintiff-photographers.  Ardalan Decl. ¶ 12. To respond to "ALL DOCUMENTS RELATING TO" bulk sales as Plaintiffs frame the request, the BackGrid Defendants would have to manually review thousands of emails and documents to reverse-engineer which transactions might touch any of the photographs at issue.  *Id.* That burden plainly outweighs the marginal benefit of producing documents that, at most, would confirm information already in the spreadsheets and Attachment A searches.

5. Shutterstock's temporal limitation is appropriate and creates no gap in the production. Plaintiffs' separate objection to Shutterstock's January 1, 2024 temporal limitation (Joint Stipulation ¶ 217) fails on its own terms. And, Plaintiffs expressly agreed to a

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

this temporal limitation when the parties met and conferred about this issue initially. Shutterstock acquired BackGrid Inc. and BackGrid USA, Inc. in February 2024 and did not exist as a producing party in this matter for pre-2024 records. Ardalan Decl. ¶13. The pre-2024 records Plaintiffs say are missing are being produced — to the extent they exist and are responsive — by BackGrid USA, Inc., the entity that actually maintained those records. Plaintiffs' Rule 34 "parent corporation control" argument therefore creates no actual production gap: the records are being produced by the entities in possession. Imposing a duplicate production obligation on Shutterstock for the same pre-2024 records being produced by its subsidiaries would serve no purpose and would expand discovery for its own sake.

6. The motion is also procedurally untimely. The Joint Stipulation is untimely and procedurally defective. (Ardalan Decl. Ex. C.) Plaintiffs served their portion of the Joint Stipulation on Defendants on May 14, 2026. Under Local Rule 37-2.2, Defendants have seven days from receipt to deliver their portion (May 21, 2026), after which Plaintiffs must add it back and provide the as-sembled stipulation to opposing counsel for signature, which is then due "no later than the end of the next business day" (May 22, 2026). Local Rule 37-3 then requires the motion to be "noticed to be heard on a regular Motion Day for the appropriate judge at least twenty-one days after the filing of the motion," and Judge Audero's Procedures provide that civil motions are heard only on Thursdays at 10:00 a.m. The earliest properly noticed Thursday hearing date is therefore June 18, 2026 — not the June 11, 2026, date Plaintiffs noticed, which is only twenty days after the ear-liest possible filing date and violates Local Rule 37-3 on its face.

The June 18, 2026 alternative fails independently under the Scheduling Order, which requires that "a planned motion to compel . . . ordinarily be discussed with the opposing party at least six (6) weeks before the cut-off" — i.e., by May 8, 2026 — and that "[a]ny motion challenging the adequacy of discovery responses . . . be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the re-sponses to be obtained before that date if the motion is granted" (ECF No. 50 at 5). A

- 46 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

June 18, 2026, hearing leaves one day before the June 19, 2026, fact-discovery cut-off. Judge Audero's Standing Order ¶ 7(b) warns that "[a] party that waits until the last day to have a motion heard on a date that turns out to be unavailable risks having the motion stricken and not heard," and Local Rule 37-2.4 authorizes the Court to decline to consider a non-compliant discovery motion. The Joint Stipulation should be denied or stricken on this ground alone.

Sanctions are warranted under Federal Rule of Civil Procedure 37(a)(5)(B), Local Rule 37-4, and the Court's inherent authority to compensate Defendants for the fees incurred opposing this withdrawn portion of the Joint Stipulation between May 14 and May 16, 2026, as discussed further below.

For this independent reason, the motion as to RFP 49 should be denied or stricken. Conclusion. The Court has already declined the relief Plaintiffs request, Plaintiffs already have the material information they sought, the additional production Plaintiffs demand would be cumulative and disproportionate, Shutterstock's temporal limitation creates no gap in the production, and the motion is procedurally untimely. The Court should deny Plaintiffs' motion as to RFP 49 and award the BackGrid Defendants and Shutterstock their reasonable expenses under Rule 37(a)(5)(B) and Local Rule 37-4.

### E. Category V: Prior Deposition Testimony and Sworn Declarations in Copyright Lawsuits (RFPs 67, 68)

Category V covers prior sworn statements by the BackGrid Defendants in other copyright lawsuits (i.e., deposition testimony (RFP 67) and sworn declarations (RFP 68)) from any matter in which a BackGrid Defendant has appeared as a plaintiff, defendant, or third-party witness.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

**1.    Request for Production No. 67**

**REQUEST FOR PRODUCTION NO. 67**

All DOCUMENTS concerning any deposition testimony given by YOU as either a plaintiff, defendant, or third party witness in any lawsuit alleging copyright infringement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67 (Served August 25, 2025)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. [BGI/BGU: Responding Party objects to YOU, which as defined is overly broad and unduly burdensome. Responding Party understands YOU to mean BackGrid Inc./BackGrid USA, Inc. / SS: Responding Party further objects to the definition of YOU. It defines "YOU" as "Defendant Flynet Pictures, LLC and any other person or entities acting on its behalf, including, but not limited to, any parents, successors, predecessors, subsidiaries, divisions, and any past and present officers, directors, employees, agents, and representatives." Shutterstock is not Flynet Pictures, LLC and cannot respond on its behalf.] Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party objects that this request is overly broad in that it requests information from unrelated lawsuits and is intended to harass and annoy. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and

- 48 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

[None of the BackGrid Defendants served a supplemental response to Request for Production No. 67.]

## 2. Request for Production No. 68

**REQUEST FOR PRODUCTION NO. 68**

All DOCUMENTS concerning any sworn declarations given by YOU as either a plaintiff, defendant, or third party witness in any lawsuit alleging copyright infringement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68 (Served August 25, 2025)**

Responding Party objects to the request to the extent it is vague, ambiguous, overly broad, unduly burdensome, and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. [BGI/BGU: Responding Party objects to YOU, which as defined is overly broad and unduly burdensome. Responding Party understands YOU to mean BackGrid Inc./BackGrid USA, Inc. / SS: Responding Party further objects to the definition of YOU. It defines "YOU" as "Defendant Flynet Pictures, LLC and any other person or entities acting on its behalf, including, but not limited to, any parents, successors, predecessors, subsidiaries, divisions, and any past and present officers, directors, employees, agents, and representatives." Shutterstock is not Flynet Pictures, LLC and cannot respond on its behalf.] Responding Party further objects to this request to the extent it calls for the production of privileged, work-product protected, or otherwise non-discoverable information. No such information will be produced. By agreeing to search for or produce responsive information, or by producing responsive information, Responding Party does not admit the competence, relevance, materiality, or admissibility of such information or the information contained therein. Responding Party further objects to this request to the extent it seeks private, privileged, and/or confidential commercial, financial, and/or proprietary business information. Responding Party objects that this request is overly broad in that it requests information

- 49 -

from unrelated lawsuits and is intended to harass and annoy. Responding Party specifically reserves its right to object to the use of such information on any grounds, including irrelevance and/or inadmissibility. Responding Party's responses are made subject to and without waiving any objections as to competence, relevance, materiality, or admissibility. Discovery is ongoing. Responding Party reserves the right to update its response.

[None of the BackGrid Defendants served a supplemental response to Request for Production No. 68.]

### 3. Plaintiffs' Position

The prior deposition testimony and sworn declarations responsive to RFPs 67 and 68 bear directly on Plaintiffs' claims, including its Section 1202 claim. The SAC alleges that the BackGrid Defendants "intentionally removed or altered Plaintiffs' copyright management information without authority" and "knowingly provided and distributed false copyright management information" by stripping or replacing Plaintiffs' bylines, source information, and copyright ownership information, and substituting "FameFlynet/BACKGRID" credit fields and "Copyright © [year] BACKGRID, Inc." copyright fields. (SAC ¶¶ 87–92.) Section 1202(b) requires Plaintiffs to prove intentionality, knowledge of removal of CMI, or that the BackGrid Defendants knew, or had reasonable grounds to know, that the removal of CMI would induce, enable, facilitate, or conceal infringement.

The BackGrid Defendants' own prior statements under oath, and through counsel in matters where they were the plaintiff, directly establish that scienter. In *BackGrid USA, Inc. v. Twitter, Inc.*, No. 2:22-cv-09462 (C.D. Cal.), BackGrid USA, Inc. argued, in support of its own copyright claims, that metadata stripping "induces and encourages infringement" and that "there is no legitimate purpose in stripping metadata except to induce infringement." (ECF Nos. 87-1 at 14, 86 at 13.) Those statements are admissions of a party opponent under Federal Rule of Evidence 801(d)(2), and they are direct evidence that the BackGrid Defendants understood that the conduct alleged in this case is "in-

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

fringement-inducing." At the very least, they are inconsistent with the positions the Back-Grid Defendants are taking in this case. Prior testimony and declarations from other copyright lawsuits in which the BackGrid Defendants have appeared as plaintiff, defendant, or third-party witness are equally probative on contested issues in this case, including the BackGrid Defendants' understanding of contributor agreements, byline and attribution practices, metadata handling, and the operations of the BackGrid digital asset management system.

Boris Nizon's prior sworn testimony illustrates the point. In *FameFlynet, Inc. v. Breitbart News Network, LLC*, No. 2:17-cv-05416-TJH-AS (C.D. Cal.), Mr. Nizon submitted a supplemental declaration under penalty of perjury stating that, as President of FameFlynet, Inc., he "personally perform[s] or oversee[s] all research into the underlying merits of the matter as well as the retrieval of documents from our systems in support of our enforcement policy," and that FameFlynet's licensing practice was to grant only a "non-exclusive, non-transferable, limited license" subject to terms and conditions, with FameFlynet retaining copyright ownership. (Sergenian Decl. ¶ __, Ex. __ (Nizon Supp. Decl., ECF No. 31, ¶¶ 5, 13–14, 19–20).) Those statements bear directly on the contributor-agreement, licensing-scope, and document-custodianship issues central to the SAC, and are party-opponent admissions under Fed. R. Evid. 801(d)(2) attributable to FameFlynet and to BackGrid USA, Inc. as successor to FameFlynet. Plaintiffs identified the existence of this declaration through their own search of the public docket; the BackGrid Defendants have produced no testimony or declarations from any of their prior copyright actions, including this one.

Mr. Nizon's testimony in the *Breitbart* case is directly probative because the FameFlynet archive, contributor systems, and licensing practices he described were transferred into BackGrid in 2017 and continue to operate within the BackGrid client portal and contributor systems at issue in this action. (SAC ¶¶ 35–36, 99.) Mr. Nizon's sworn statements about how those systems and practices operated under his direction are binding admissions on the BackGrid Defendants, whose archive, contributor systems, and

- 51 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

licensing business are the same systems Mr. Nizon described, now operated by the entity he co-founded and continues to co-own.

None of the BackGrid Defendants supplemented its response to RFP 67 or RFP 68. The original August 25, 2025 responses object that the Requests seek "information from unrelated lawsuits" and are "intended to harass and annoy." Neither objection is supported. The lawsuits are not unrelated; they concern photographic content, metadata, and copyright claims, which is the subject matter of this action. And requesting party-opponent admissions—regardless of the subject matter of the lawsuit—is a standard request, and is all the more relevant here where it is directed to elements of Plaintiffs' Section 1202 claim.

The boilerplate objections—"vague," "ambiguous," "overbroad," "unduly burdensome," and "not reasonably calculated to lead to the discovery of admissible evidence"—are insufficient under Federal Rule of Civil Procedure 34(b)(2)(B), which requires the responding party to "state with specificity the grounds for objecting to the request, including the reasons." *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (boilerplate objections fail to comply with the Federal Rules and are tantamount to no objection at all).

Confidentiality concerns about prior sworn statements are addressed by the protective order at ECF No. 64. Most filings in prior copyright lawsuits are on the public record; deposition transcripts and any other materials designated under a protective order in another matter can be redesignated under the protective order in this action as appropriate.

Shutterstock's separate "wrong party" objection fails. Shutterstock acquired BackGrid Inc. and BackGrid USA, Inc. in February 2024. (SAC ¶¶ 18, 37.) As parent corporation of those wholly-owned subsidiaries, Shutterstock has Rule 34 control over documents in their possession, including the deposition transcripts and sworn declarations sought here. *See United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.") (citations omitted); *In re*

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

*Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544–45 (N.D. Cal. 2005).

Prior testimony and declarations are records the BackGrid Defendants identify by matter, not by keyword search against custodian email collections. They know which copyright lawsuits they have been involved in. They can identify the matters, retrieve the testimony and declarations from their litigation files, and produce them.

To the extent the BackGrid Defendants contend that any responsive documents do not exist or cannot be located, they should serve amended Rule 34 responses identifying what is being withheld on what grounds, and support any "no further documents" representation by declaration describing the reasonable inquiry conducted. *See* Fed. R. Civ. P. 34(b)(2)(B)–(C); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 U.S. Dist. LEXIS 151705, at *38–39 (C.D. Cal. July 28, 2023); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006).

, 2026 IDC, the BackGrid Defendants declined to produce documents responsive to RFPs 67 and 68. The Court did not order production. Plaintiffs accordingly seek an order compelling production.

### 4. The BackGrid Defendants' Position

Plaintiffs' motion to compel further responses to RFPs 67 and 68 should be denied. The requests are facially overbroad, the documents Plaintiffs seek are at best marginally relevant to any contested issue in this case, the burden of compliance is grossly disproportionate to any benefit, and — most importantly — the Court has already heard and declined the request at IDC 7.

1. The Court has already considered and declined this request at IDC 7. Plaintiffs presented RFPs 67 and 68 to the Court at the May 13, 2026 Informal Discovery Conference. Ardalan Decl., ¶ 14. On the same arguments now repeated in the Joint Stipulation — including Plaintiffs' contentions about the *BackGrid USA, Inc. v. Twitter, Inc*. matter and Mr. Nizon's declaration in *FameFlynet, Inc. v. Breitbart News Network, LLC* — the Court informed the parties that it "was not convinced you needed this." (Ardalan Decl.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Ex. D, May 14, 2026 Email from J. Ardalan to D. Sergenian, RFPss 67 and 68.) The Court's IDC 7 Order authorized Plaintiffs to file a motion but did not displace what the Court said on the merits. (ECF No. 102 at 1–2.)

2. The requests are facially overbroad and disproportionate under Rule 26(b)(1). RFPs 67 and 68 demand "[a]ll DOCUMENTS concerning" "any deposition testimony" and "any sworn declarations" by any BackGrid Defendant "as either a plaintiff, defendant, or third party witness in any lawsuit alleging copyright infringement." There is no temporal, subject-matter, or factual limitation. The requests reach copyright-infringement matters of any kind, from any year, involving any photograph (not just the photographs at issue), any photographer (not just the Plaintiff-photographers), any contributor relationship (or none), and any practice (whether or not implicated in this case). That sweep is the paradigm of an overbroad request.

3. The relevance analysis fails as to each BackGrid Defendant and across each of the three categories the requests cover.

Shutterstock, Inc. Shutterstock acquired BackGrid Inc. and BackGrid USA, Inc. in February 2024. Before that acquisition, Shutterstock had no relationship of any kind, direct or indirect, with the Plaintiff-photographers, with the photographs at issue, or with the BackGrid client portal. Even after the acquisition, Shutterstock's involvement as to Plaintiffs, if any, is only as the parent company to Backgrid. Plaintiffs' request — that Shutterstock should produce litigation files from its broader history as a publicly traded company on any copyright matter — is untethered to any element of any claim or defense in this matter. The request as to Shutterstock should be denied in full.

And, Shutterstock's objection that the request is directed to the wrong party for good reason. Plaintiffs defined YOU as Defendant Flynet Pictures, LLC, a different defendant. Ardalan Decl. Ex. G.

BackGrid, Inc. is a terminated entity that has nothing to do with the Plaintiffs in this case. BackGrid Inc. has not appeared in a copyright suit. BackGrid, Inc. has not been

- 54 -
JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

a defendant or third-party witness in any matter in which the relationship between Back-Grid and a contributor was at issue. Plaintiffs identify none.

BackGrid USA, Inc. Plaintiffs cite two prior matters as the basis for their request as to BackGrid USA, Inc.: *BackGrid USA, Inc. v. Twitter, Inc.,* No. 2:22-cv-09462 (C.D. Cal.), and *FameFlynet, Inc. v. Breitbart News Network, LLC*, No. 2:17-cv-05416-TJH-AS (C.D. Cal.). Neither matter justifies the relief Plaintiffs seek:

- Twitter. Plaintiffs argue that BackGrid USA, Inc. took the position in the Twitter matter that "metadata stripping 'induces and encourages infringement.'" The cited material consists of legal arguments made in counsel-drafted briefing (ECF Nos. 87-1 at 14, 86 at 13 of the Twitter matter), not deposition testimony or sworn declarations. Those filings are not responsive to RFP 67 ("deposition testimony") or RFP 68 ("sworn declarations") as Plaintiffs have framed those requests; they are publicly available on the Twitter docket; and they reflect counsel's argument on facts specific to Twitter, not party-opponent admissions about the contributor relationships at issue in this case. Plaintiffs already have what they describe.

- Breitbart / Nizon Declaration. Plaintiffs admit in the Joint Stipulation that they "identified the existence of this declaration through their own search of the public docket" (¶ 241). The Nizon declaration is therefore in Plaintiffs' possession. There is nothing to compel. To the extent Plaintiffs want Mr. Nizon's testimony about the contributor relationships at issue in this case, the appropriate vehicle is a deposition of Mr. Nizon — and the BackGrid Defendants will not foreclose that. RFPs 67 and 68 are not vehicles to relitigate the disposition of Mr. Nizon's pre-acquisition materials, an issue that was resolved at IDC 7 (ECF No. 102 at 1) and that Plaintiffs withdrew from this Joint Stipulation on May 16, 2026.

4. The "party-opponent admission" theory does not expand the scope of discovery. Plaintiffs argue that prior testimony and declarations would be admissions under Federal Rule of Evidence 801(d)(2). Rule 801(d)(2) is an evidentiary rule, not a discovery rule. It

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

governs admissibility, not the scope of Rule 34 production, and it does not justify a blanket production of every transcript and declaration any BackGrid entity has ever given in any copyright case.

5. The burden of compliance is grossly disproportionate. To respond to RFPs 67 and 68 as Plaintiffs frame them, the BackGrid Defendants would have to canvass the entire copyright-litigation history of two entities (BackGrid USA, Inc., and Shutterstock, Inc.) plus other companies (FameFlynet, Inc.; Fame Pictures, Inc.), identify every matter in which any of those entities ever testified or submitted a declaration, retrieve the transcripts and declarations from litigation files (many of which may be subject to confidentiality designations in those other matters), and produce them. The yield for that effort would be at best cumulative of what is already publicly available on PACER (and which Plaintiffs have demonstrated they can locate themselves) and at worst irrelevant to any contested issue in this case. See Fed. R. Civ. P. 26(b)(1) (proportionality factors).

6. The motion is also procedurally untimely. The Joint Stipulation is untimely and procedurally defective. (Ardalan Decl. Ex. C.) Plaintiffs served their portion of the Joint Stipulation on Defendants on May 14, 2026. Under Local Rule 37-2.2, Defendants have seven days from receipt to deliver their portion (May 21, 2026), after which Plaintiffs must add it back and provide the as-sembled stipulation to opposing counsel for signature, which is then due "no later than the end of the next business day" (May 22, 2026). Local Rule 37-3 then requires the motion to be "noticed to be heard on a regular Motion Day for the appropriate judge at least twenty-one days after the filing of the motion," and Judge Audero's Procedures provide that civil motions are heard only on Thursdays at 10:00 a.m. The earliest properly noticed Thursday hearing date is therefore June 18, 2026 — not the June 11, 2026, date Plaintiffs noticed, which is only twenty days after the earliest possible filing date and violates Local Rule 37-3 on its face.

The June 18, 2026 alternative fails independently under the Scheduling Order, which requires that "a planned motion to compel . . . ordinarily be discussed with the opposing party at least six (6) weeks before the cut-off" — i.e., by May 8, 2026 — and

- 56 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

that "[a]ny motion challenging the adequacy of discovery responses . . . be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted" (ECF No. 50 at 5). A June 18, 2026, hearing leaves one day before the June 19, 2026, fact-discovery cut-off. Judge Audero's Standing Order ¶ 7(b) warns that "[a] party that waits until the last day to have a motion heard on a date that turns out to be unavailable risks having the motion stricken and not heard," and Local Rule 37-2.4 authorizes the Court to decline to consider a non-compliant discovery motion. The Joint Stipulation should be denied or stricken on this ground alone.

Sanctions are warranted under Federal Rule of Civil Procedure 37(a)(5)(B), Local Rule 37-4, and the Court's inherent authority to compensate Defendants for the fees incurred opposing this withdrawn portion of the Joint Stipulation between May 14 and May 16, 2026, as discussed further below.

For this independent reason, the motion as to RFPs 67 and 68 should be denied or stricken.

Conclusion. The Court has already declined this request at IDC 7, the requests are facially overbroad, Plaintiffs' two specific examples either are not responsive as framed (Twitter) or are already in Plaintiffs' possession (Breitbart / Nizon declaration), Rule 801(d)(2) does not expand discovery, the burden is disproportionate, and the motion is procedurally untimely. The Court should deny Plaintiffs' motion as to RFPs 67 and 68 and award the BackGrid Defendants and Shutterstock their reasonable expenses incurred opposing it under Rule 37(a)(5)(B) and Local Rule 37-4.

### F. Category VI: Search Term Defects, Custodian Omissions, and Lack of Transparency in Document Identification

Category VI addresses the search terms the BackGrid Defendants ran against the production universe, the composition of the custodian list, and the BackGrid Defendants' disclosures concerning their search methodology, document universe, and media and sources searched. The parties' respective positions on each issue are set forth below.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

### 1. Plaintiffs' Position

#### a. Procedural Background

The BackGrid Defendants assumed responsibility for running keyword searches against their production universe by asking Plaintiffs to propose Boolean search terms and then taking those terms in-house for execution. On October 15, 2025, Plaintiffs sent 62 proposed Boolean terms. (Ex. 2.) On April 13, 2026, six months later, Ms. Ardalan provided a modified version of Plaintiffs' terms, asserting that Logikcull, the BackGrid Defendants' e-discovery platform, did not support certain Boolean operators in the original terms. (Ex. 5.) On April 14, 2026, Plaintiffs identified the categories of defects in the April 13 modifications. (Ex. 6.) The BackGrid Defendants did not respond to the April 14 critique. On May 6, 2026, BackGrid USA, Inc. served supplemental search terms in Attachment A to its amended responses, intended to address the April 14 critique. The May 6 supplementation does not cure the April 13 defects, and in several respects introduces new defects of the same kind.

#### b. The substantive narrowing defects

The April 13 modifications narrowed several of Plaintiffs' proposed search terms in ways that prevent responsive documents from being identified. The May 6 supplementation does not cure those defects and, in several respects, introduces new defects of the same kind. The substantive narrowing defects identified below are not typographical or syntactical. They cause responsive documents to fall outside the searches the BackGrid Defendants ran, regardless of any correction to typographical or syntax defects.

##### i. Plaintiff Boutefeu Was Omitted Entirely from the Plaintiff-Specific Entries

Plaintiffs' original Search Term 5 was the plaintiff-specific search for Plaintiff Michel Boutefeu: (Boutefeu OR "M Boutefeu" OR "BTF Press" OR MIBO) w/15 (royalt* OR payment* OR attribution OR metadata OR CMI OR portal OR missing OR copyright OR photo* OR contribut* OR IPTC). (Ex. 2 at row 6.) Entry 5 was omitted entirely from the April 13, 2026 modified search terms and remains omitted from the May 6, 2026

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

supplementation. (Sergenian Decl. ¶¶ 40, 54; Attachment A.) There is no plaintiff-specific search entry for Mr. Boutefeu anywhere in Attachment A. The result is that no plaintiff-specific search was executed for one of the seven Plaintiffs. The omission affects every RFP that Plaintiffs' Search Term 5 was designed to address as to Mr. Boutefeu's documents.

### ii. Plaintiff Name Variants Were Omitted from the Pair Searches, and Bare "wolf" Was Substituted for Quoted Variants

For the plaintiff-specific entries 1, 2, 3, 4, 6, and 7, the pair searches in the May 6 supplementation omit the quoted-phrase variants of each photographer's name. There are no pair searches for "T Mauvilain," "H Mazari," "J Duplaquet," "Robert Wolf," "Christian Wolf," "S Kyndt," or "J Mehdi." (Sergenian Decl. ¶ 60; Attachment A at rows 138–228.) For Plaintiff Wolf, the BackGrid Defendants substituted the bare, lowercase word "wolf" in place of the quoted variants in the original. (*Id.* at rows 139–147, 184–192.) "Wolf" as a bare term is overinclusive (capturing any document containing the word "wolf" in any context) and at the same time underinclusive: documents that reference Plaintiff Wolf only by his quoted full name "Robert Wolf" or "Christian Wolf," without using the surname alone, are captured only if "wolf" happens to appear elsewhere within the proximity window. The same defect appears in the reverse-direction pair searches for each of the other plaintiff-specific entries.

### iii. Entries 25 and 62 (Communications with Counsel) Were Substantively Narrowed

The original entries 25 and 62 were flat OR lists capturing any document mentioning any of the listed counsel names. (Ex. 2 at rows 26, 62.) In the May 6 supplementation, the pair searches drop the full names "Whitewood Law," "Sergenian Law," "David Sergenian," "Virginie Parant," and "Shengmao Mu" entirely; "Shengmao Mu" was reduced to bare "mu," which is meaningless as a standalone search; "Virginie Parant" was replaced with the Boolean "Virginie AND parant" without quotation marks and without proximity;

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

and the new proximity requirement excludes any document mentioning counsel that does not also contain "email," "letter," or "correspondence" within five words. (Sergenian Decl. ¶ 59; Attachment A at rows 704–714, 2302–2311.) Memos, declarations, calendar entries, captions, transcripts, settlement letters, draft pleadings, and any communications that do not use the words "email," "letter," or "correspondence" will be missed. The same defects appear in entry 62.

### iv.    Royalties and Financials Entries 21 Through 24 Dropped Entire Term Groups

In entry 21 of the May 6 supplementation, no pair search includes "photographer*" with any of the Group 1 royalty terms, and the only "contributor*" pair is "(contributor* payout*)~15." (Sergenian Decl. ¶ 61; Attachment A at rows 524–581.) In entry 22, the BackGrid Defendants paired Group 1 only with Group 2; the third group of nine terms (the seven photographer surnames plus "photographer*" and "contributor*") is dropped from the pair searches entirely. In entry 23, Group 2 was paired with the seven photographer surnames, but Group 1 ("calculat*," "track*," "report*") was never paired with anything in any pair search. In entry 24, "sales report" and "revenue report" are not paired with "photographer*," "contributor*," "byline," or "attribution." The result is that the principal royalty and financial-records searches—the searches directly relevant to Plaintiffs' damages allegations and to the BackGrid Defendants' admitted licensing of improperly attributed sets without royalty payments (SAC ¶ 58)—do not reach the documents Plaintiffs' original terms were designed to capture.

### v.    Wildcards Were Stripped from Key Plaintiff-Specific Terms

In the plaintiff-specific entries, the May 6 supplementation drops the asterisk from "photo*" in specific pair searches. Row 55 reads "(THMA photo)~15" and Row 56 reads "(photo THMA)~15," each dropping the asterisk. (Sergenian Decl. ¶ 57.) Row 960 (entry 33) drops the asterisk from "photographer*." Without the wildcards, these searches do not capture "photograph," "photographer," "photographs," "photography," or related

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

morphological variants. Plaintiffs' original terms used wildcards extensively—royalt*, payment*, contribut*, photo*, infringement*, communicat*—precisely to capture the morphological variants most likely to appear in responsive documents.

### vi. Wildcard Expansions Were Broken in All 197 Pairwise Sub-Searches

Plaintiffs' original terms used wildcards extensively (royalt*, payment*, contribut*, photo*, infringement*, communicat*, and others) to capture common morphological variations. Of the 197 pairwise sub-searches the BackGrid Defendants ran for Plaintiffs' original terms, none retains a wildcard. (Sergenian Decl. ¶ 51; Ex. 5.) The sub-searches do not reach variants such as "royalties," "royalty-bearing," "payments," "photographs," "photographers," or "contributors"—precisely the variants most likely to appear in responsive licensing, royalty, and contributor documents.

### vii. The BackGrid Defendants Ran 197 Pairwise Sub-Searches in Only One Direction

The BackGrid Defendants ran 197 pairwise sub-searches in only one direction, even though Logikcull's published documentation states that proximity searching is order-specific and recommends, as a best practice, combining searches in reverse order. (Ex. 7 at 2.) None of the 197 pairwise sub-searches has a reverse-order counterpart. (Sergenian Decl. ¶ 50.) Documents in which the topic word precedes the plaintiff name or contributor code—for example, documents discussing "attribution" before naming "Mauvilain," or "royalty" before identifying the contributor code "BAC"—are not captured by the BackGrid Defendants' one-direction approach. This is not a typo and not a narrowing of a single entry; it is a methodological defect grounded in the BackGrid Defendants' own e-discovery vendor's published guidance, and it affects 197 of the searches the BackGrid Defendants actually ran.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

### viii. Search 40 Was Broken by an Operator Logikcull Does Not Recognize

The BackGrid Defendants' modified version of Plaintiffs' Search Term 40—which targets contributor codes used in connection with Shutterstock, attribution, byline, and metadata, the precise conduct underlying Plaintiffs' Section 1202 and breach-of-contract claims—uses lowercase "or" as the Boolean operator connecting the contributor-code group to the topic terms. (Ex. 5 at row 199.) Logikcull does not recognize lowercase "or" as a Boolean operator; it treats it as a literal word. (Ex. 7.) The result is that the single most important search in the inventory ran as if the word "or" had to appear in the document near the surrounding terms, producing a fundamentally different search than the one intended. (Sergenian Decl. ¶ 49.) The BackGrid Defendants ran no other version of Search 40.

### c. The Syntax Defects in the April 13 and May 6 Search Term Sets

In addition to the substantive narrowing defects above, the April 13 modified search terms and the May 6 supplementation contain numerous typographical and syntax defects. Plaintiffs identified those defects in the April 14 email (Ex. 6) and again in the May 11 chambers email submission. Each defect is set forth in detail in paragraphs 41 through 51 and 55 through 58 of the Sergenian Declaration and includes:

- Modified Searches 45, 46, 53, 54, and 60, each of which contains a missing Boolean operator, an unbalanced parenthesis, or an unclosed quotation mark, with the result that the search either does not execute as intended or does not execute at all (Sergenian Decl. ¶¶ 41–48);

- A doubled-asterisk wildcard ("contribut**") that appears across the broad combined searches at rows corresponding to entries 17, 21, 22, 23, 24, 26, 27, 28, 33, 34, 35, 41, 45, 46, 47, 50, 51, and 54 (Sergenian Decl. ¶ 56);

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

- Numerous additional syntax errors in the May 6 column-E pair searches, including missing parentheses, unbalanced parentheses and quotation marks, stray "OR" tokens inside two-term proximity expressions, ampersand operators that Logikcull does not recognize, and orphaned "OR" tokens that prevent execution (Sergenian Decl. ¶ 55); and

- Unbalanced quotation marks in the reverse-direction "Belle pictures" pair searches at rows 285–293, none of which will return the documents they appear designed to capture (Sergenian Decl. ¶ 58).

, 2026 IDC, the BackGrid Defendants agreed to correct the typographical and syntax defects identified above and rerun the corrected searches. As of the filing of this Joint Stipulation, the BackGrid Defendants have not served a corrected search-term spreadsheet, have not represented in writing that the corrected searches have been run, and have not produced any newly responsive documents.

### d. The BackGrid Defendants' May 13 Representation that the Defects Originated in Plaintiffs' Original Terms

, 2026 IDC, Ms. Ardalan represented for the first time that certain defects in the search terms originated with Plaintiffs' original Boolean terms rather than with the BackGrid Defendants' iteration of those terms. (Sergenian Decl. ¶ __.) Plaintiffs' counsel has since reviewed each defect identified above against Plaintiffs' original 62 Boolean search terms (Ex. 2) and identified no defect attributable to Plaintiffs' terms. Each defect identified above was introduced in the BackGrid Defendants' iteration of the search terms.

The side-by-side comparison demonstrates the point. Plaintiffs' original Search Term 1 reads:

(Mauvilain OR "T Mauvilain" OR BAC OR THMA) w/15 (royalt*
OR payment* OR attribution OR metadata OR CMI OR portal OR missing
OR copyright OR photo* OR contribut* OR IPTC)

The May 6 supplementation's broad combined version of Search Term 1 (Attachment A at row 4) reads:

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

(Mauvilain OR "T Mauvilain" OR BAC OR THMA OR royalt* & royalties OR payment or payments OR attribution OR metadata OR CMI OR portal OR missing OR copyright OR photo OR photo OR contribut** OR IPTC)~15

That single transformation introduces (i) a lowercase "or" operator that Logikcull treats as a literal word (Ex. 7); (ii) an ampersand "&" operator that Logikcull does not recognize (id.); (iii) a manually expanded wildcard ("royalt* & royalties") that the wild-card was designed to capture without manual expansion; (iv) a doubled wildcard ("contribut**") that is non-standard syntax; and (v) a duplicate "photo OR photo" entry that stripped the asterisk from "photo*." None of those defects appears in Plaintiffs' original term.

Other illustrative examples:

Entry 25 (Counsel). Plaintiffs' original: an 8-name OR list. (Ex. 2 at row 26.) BackGrid's May 6 version at row 705: "Virginie AND parant"—radical narrowing that eliminates "Whitewood Law," "Sergenian Law," "David Sergenian," "Shengmao Mu," and the proper-noun form of "Virginie Parant." (Attachment A at row 705.)

Entry 40 (Contributor Codes/Shutterstock). Plaintiffs' original: upper-case OR throughout. (Ex. 2 at row 41.) BackGrid's April 13 version: "JOME or Shutterstock" with a lowercase "or" that Logikcull treats as a literal word. (Ex. 5 at row 199.)

Entry 45 (Board Meeting/Minutes). Plaintiffs' original: balanced parentheses, explicit OR. (Ex. 2 at row 46.) BackGrid's April 13 version: omits the OR operator between "board minutes" and "copyright" entirely. (Ex. 5 at row 204.)

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Entry 52 (Business Plans/Marketing). Plaintiffs' original: balanced quotation marks throughout. (Ex. 2 at row 53.) BackGrid's April 13 version: "access log*"—missing closing quotation mark. (Ex. 5 at row 212.)

The BackGrid Defendants have not specified a single defect originating in Plaintiffs' original terms. The defects identified by Plaintiffs—including the lowercase-or operators, the ampersand operators, the doubled-asterisk wildcards, the unbalanced parentheses and quotation marks, and the substantive narrowing of plaintiff-specific and counsel-communications entries—were each introduced in the BackGrid Defendants' iteration of Plaintiffs' Boolean search terms.

### e. The Defective Entries Affect Document Identification Across Substantially All 'f Plaintiffs' RFPs

The defective entries identified above, cross-referenced against Plaintiffs' "Applicable RPD Nos." column from Exhibit 2, affect the following RFPs:

| Defective Entry | Defect | RFPs Affected |
|---|---|---|
| Entry 1 (Mauvilain plaintiff-specific) | Wildcards stripped in pair searches (photo, photographer); quoted name variants dropped; doubled wildcard | 1–3, 5–13, 17–20, 23–24, 33, 37, 65–66 |
| Entry 2 (Mazari plaintiff-specific) | Quoted name variants dropped; doubled wildcard | 1–4, 5–13, 17–20, 23–24, 33, 37, 65–66 |
| Entry 3 (Duplaquet plaintiff-specific) | Quoted name variants dropped; doubled wildcard | 1–3, 5–13, 17–20, 23–24, 33, 37, 65–66 |
| Entry 4 (Wolf plaintiff-specific) | Bare "wolf" substituted for quoted variants; quoted name variants dropped; doubled wildcard | 1–3, 5–13, 17–20, 23–24, 33, 37, 65–66 |
| Entry 5 (Boutefeu plaintiff-specific) | Omitted entirely | 1–3, 5–13, 17–20, 23–24, 33, 37, 65–66 |

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

| Defective Entry | Defect | RFPs Affected |
| --- | --- | --- |
| Entry 6 (Kyndt plaintiff-specific) | Quoted name variants dropped; doubled wildcard | 1–3, 5–13, 17–20, 23–24, 33, 37, 65–66 |
| Entry 7 (Mehdi plaintiff-specific) | Quoted name variants dropped; doubled wildcard | 1–4, 5–13, 17–20, 23–24, 33, 37, 65–66 |
| Entry 21 (Royalties) | "photographer*" dropped from pair searches; "contributor*" reduced to a single pair; doubled wildcard | 17–20 |
| Entry 22 (Unpaid royalties) | Third term group dropped from pair searches; doubled wildcard | 17–20 |
| Entry 23 (Royalty tracking/reporting) | Group 1 never paired with anything | 17–20 |
| Entry 24 (Sales reports) | "photographer*," "contributor*," "byline," "attribution" not paired with report terms | 13, 17–20 |
| Entry 25 (Counsel) | Full names dropped from pair searches; "Shengmao Mu" reduced to "mu"; "Virginie Parant" reduced to "Virginie AND parant"; new five-word proximity to "email"/"letter"/"correspondence" | 30, 35, 51–53 |
| Entry 33 (Contributor agreements) | Wildcard dropped from "photographer*"; doubled wildcard | 1, 11–12, 33, 38, 63 |
| Entry 40 (Contributor codes/Shutterstock) | Lowercase "or" operator (Logikcull does not recognize) | 5–12, 33, 37 |
| Entry 45 (Board meeting/minutes) | Missing OR operator | 36 |
| Entry 46 (Document retention) | Unbalanced parentheses | 57 |
| Entry 53 (Server/access logs) | Unclosed quotation mark | 14–15 |

- 66 -

| Defective Entry | Defect | RFPs Affected |
|---|---|---|
| Entry 54 (Portal integration/migration) | Missing OR operator | 41 |
| Entry 60 (Kyndt comms) | Missing OR operator | 2–3, 33, 65–66 |
| Entry 62 (Counsel comms) | Same defects as Entry 25 | 30, 51–53 |
| 197 pairwise sub-searches across entries | One-direction only; wildcards stripped | Every RFP addressed by any plaintiff-specific or contributor-code entry |

The plaintiff-specific entries alone affect more than twenty distinct RFPs. The royalty and counsel-communications entries affect the records central to Plaintiffs' damages and notice allegations. The one-direction and wildcard-strip defects in the 197 pairwise sub-searches affect every RFP that Plaintiffs' plaintiff-specific or contributor-code entries were designed to address.

### f.     The Omission of Boris Nizon from the Custodian List

The "Custodians" tab of the BackGrid Defendants' April 13, 2026 modified search-terms spreadsheet identifies eight individuals as the custodians whose documents the BackGrid Defendants loaded into Logikcull. (Sergenian Decl. ¶ 30; Ex. 5.) Boris Nizon is not among them. (*Id.*) Mr. Nizon is the Co-Owner of BackGrid USA, Inc., a position he has held since May 2017, and was the founder and owner of Fame Pictures, Inc. from 1995 to 2012, and FameFlynet, Inc. from 2012 to 2017. (*Id.*; SAC ¶¶ 14–18.) Mr. Nizon has therefore been a senior principal of BackGrid USA, Inc. throughout the relevant period and was the founder and owner of two predecessor entities in the corporate-succession chain at the center of this case.

Plaintiffs raised the omission in writing on April 14, 2026. (Ex. 6.) The BackGrid Defendants did not respond and did not add Mr. Nizon to the custodian list. At the May 9, 2026 meet-and-confer videoconference, Ms. Ardalan confirmed that Mr. Nizon had a

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

BackGrid email account until Shutterstock's acquisition of BackGrid. Plaintiffs proposed that the omission could be resolved by Mr. Nizon submitting an appropriate declaration concerning the disposition of his pre-acquisition materials. Ms. Ardalan declined.

, 2026 IDC, Ms. Ardalan represented for the first time that BackGrid USA, Inc. does not have Mr. Nizon's pre-acquisition materials in its possession, custody, or control. That oral representation has not been memorialized in a Rule 34 response or supporting declaration. It is also inconsistent with Mr. Nizon's own sworn testimony in *FameFlynet, Inc. v. Breitbart News Network, LLC*, No. 2:17-cv-05416-TJH-AS (C.D. Cal.). In a supplemental declaration submitted under penalty of perjury on July 13, 2018, Mr. Nizon described himself as President of FameFlynet, Inc., having "held that title since the company was formed in 2012," and stated that, in that role, he "oversee[s] and handle[s] all business aspects of the company and ha[s] done so since its inception," including "entering into and executing all agreements with photographers who work for FFN," "making sure that FFN register[s] all of its pictures … with the United States Copyright Office," and "overseeing all of the day-to-day affairs of FFN including sales and licensing and content acquisition." (Sergenian Decl. ¶ 20, Ex. 12 (Nizon Supp. Decl., ECF No. 31, ¶¶ 4–5, 9, 14).) Mr. Nizon further attested that he is "also the primary contact for our counsel in copyright related actions and personally perform[s] or oversee[s] all research into the underlying merits of the matter as well as the retrieval of documents from our systems in support of our enforcement policy." (*Id.* ¶ 5.) Mr. Nizon also attested that FameFlynet's licensing records identifying the contributing photographer for purposes of commission calculation were "made and kept in the course of regularly conducted business activity of FFN" and that he was "personally familiar with those records and activities in [his] role as founder and President of FFN." (*Id.* ¶ 14.)

The FameFlynet archive, contributor systems, and licensing practices Mr. Nizon attested to in the Breitbart case were transferred into BackGrid in 2017 and continue to operate within the BackGrid client portal and contributor systems at issue here. (SAC

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

¶¶ 35–36, 99.) Mr. Nizon's sworn statements about how those systems and practices operated under his direction—and his sworn attestation that he is the person who oversees document retrieval from "our systems in support of our enforcement policy"—are difficult to reconcile with the representation that BackGrid USA, Inc., the entity he co-founded and continues to co-own, does not have those documents.

The omission of a senior principal of BackGrid USA, Inc. since 2017 who is also the founder of FameFlynet, the predecessor entity central to the SAC's corporate-succession allegations, is not curable except by collection from Mr. Nizon or, in the alternative, by a declaration from him accounting for the disposition of his pre-acquisition materials. The BackGrid Defendants' Rule 34 responses do not state that those documents do not exist, and no declaration has been served.

> **g.** **The BackGrid Defendants' Refusal to Disclose Hit Counts, Document Universe, Custodians, Sampling, or Media and Sources Searched**

Throughout the search-term negotiation and to the present, the BackGrid Defendants have not disclosed: (a) the total number of documents loaded into Logikcull, (b) the total number of custodians whose documents are loaded into Logikcull, (c) the hit count returned by any search the BackGrid Defendants ran, (d) any sampling methodology or sampling results that would allow Plaintiffs to evaluate the BackGrid Defendants' characterization of search results as responsive or nonresponsive, or (e) the email accounts, file shares, cloud storage, mobile devices, backup tapes, archived systems, legacy databases, or other media and sources from which documents were collected and loaded into Logikcull. (Sergenian Decl. ¶ 29.)

Plaintiffs requested this information from defense counsel on at least four occasions: in the April 14, 2026 email (Ex. 6); in the April 27, 2026 email following the BackGrid Defendants' production (Ex. 8); during the May 9, 2026 meet-and-confer videoconference, at which Ms. Ardalan declined to provide any of these categories and stated that the BackGrid Defendants would not re-run the searches and would not say whether hit

counts had been saved; and in the May 11, 2026 chambers email in advance of the May 13, 2026 IDC. (*Id.*)

Without these categories of information, Plaintiffs cannot determine whether the documents missed by the defects identified above were captured by any other search the BackGrid Defendants ran. The BackGrid Defendants have placed Plaintiffs in the position of identifying defects on the face of the search strings, requesting the metrics that would either confirm or refute the defects' practical effect, and being refused those metrics on every request.

Federal Rule of Civil Procedure 26(g) requires the BackGrid Defendants to certify that their discovery responses are complete and correct to the best of their knowledge after a reasonable inquiry. Federal Rule of Civil Procedure 34(b)(2)(B) and (C) requires the BackGrid Defendants to specify any production limitations they impose and to indicate whether responsive documents are being withheld on the basis of an objection. See Fed. R. Civ. P. 34(b)(2)(B)–(C); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 U.S. Dist. LEXIS 151705, at *38–39 (C.D. Cal. July 28, 2023); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006). When a producing party imposes keyword-search limitations on its production, the methodology behind those limitations is a proper subject of disclosure where, as here, Plaintiffs have identified facially apparent defects in the executed searches and the producing party refuses to describe its document universe, hit counts, or media and sources searched. The BackGrid Defendants cannot rely on a search methodology they refuse to describe, refuse to correct, and refuse to rerun.

### h.     Requested Relief

Plaintiffs respectfully request an order: (1) compelling the BackGrid Defendants to correct the substantive narrowing defects and the typographical and syntax defects identified above, rerun the corrected searches, and produce all newly responsive documents; (2) compelling the BackGrid Defendants to disclose the document universe, the custodian count and identities, the hit counts for each corrected search, the sampling methodology and any sampling results, and the email accounts, file shares, cloud storage,

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

mobile devices, backup tapes, archived systems, legacy databases, and other media and sources from which documents were collected; and (3) compelling collection, processing, and searching of documents from Boris Nizon, or, in the alternative, requiring Mr. Nizon to submit a declaration accounting for the disposition of his pre-acquisition materials.

### 2. The BackGrid Defendants' Position

### A. Plaintiffs Have Removed Failure to Supplement Rule 34 Responses, Search Term Defects, and Boris Nizon's Documents from the Joint Stipulation

Plaintiffs withdrew the challenge to Defendants' alleged failure to supplement Rule 34 Responses, search term defects, and failure to provide Boris Nizon's document as issues here. Ardalan Decl. Ex. E.

The Court ought to know that the "failures" of the search terms listed by Plaintiffs are largely based on bald misrepresentations to the Court.

**Plaintiffs' misrepresentations are listed below:**

- **"There is no plaintiff-specific search entry for Mr. Boutefeu anywhere in Attachment A."**

Mr. Boutefeu is in dozens of searches in the spreadsheet. *See* Ardalan Decl., Ex. F, E529 ((royalt* Boutefeu)~15), E543 ((payment* Boutefeu)~15). In total, he appears in the following searches: E524, E529, E536, E543, E550, E569, E570, E571, E572, E582, E613, E618, E625, E632, E647, E648, E649, E657, E662, E669, E680, E695, E696, E697, E768, E787, E792, E806, E820, E842, E843, E844, E961, E968, E973, E985, E1001, E1002, E1668, E1738, E1743, E1752, E1765, E1766, E2176, E2177, E2179, E2181, E2183, E2185, E2187, E2189, E2191, E2193, E2195, E2197, E2198, E2199, E2200, E2201, E2207, E2208, E2209, E2210, E2211, E2217, E2218, E2219, E2220.

- "None [of the searches] retains a wildcard." The wildcard searches use '*'.

**As an example, royalt* is in column E 92 times.** *See* Ardalan Decl., Ex. F, E3, E4, E7, E8, E25, E26, E43, E44, E62, E64, E73, E83, E92, E101, E102, E111, E120,

- 71 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

E129, E138, E139, E148, E157, E166, E175, E184, E193, E202, E211, E220, E229, E231, E240, E248, E250, E259, E268, E277, E286, E295, E524, E525, E526, E527, E528, E529, E530, E531, E553, E557, E561, E565, E569, E573, E577, E582, E583, E586, E589, E592, E595, E598, E599, E600, E601, E602, E613, E614, E615, E616, E617, E618, E619, E620, E635, E638, E641, E644, E647, E650, E653, E787, E800, E814, E828, E866, E867, E868, E1693, E1696, E1702, E1710, E1711.

**Indeed, \* appears in 806 searches.**

E3, E4, E7, E8, E19, E20, E25, E26, E37, E38, E43, E44, E57, E58, E62, E64, E70, E73, E79, E83, E89, E92, E98, E101, E102, E108, E111, E117, E120, E126, E129, E135, E138, E139, E145, E148, E154, E157, E163, E166, E172, E175, E181, E184, E190, E193, E199, E202, E208, E211, E217, E220, E226, E229, E231, E237, E240, E246, E248, E250, E256, E259, E265, E268, E274, E277, E283, E286, E292, E295, E301, E305, E306, E307, E308, E309, E310, E311, E313, E314, E315, E316, E317, E318, E319, E321, E325, E326, E327, E328, E329, E330, E331, E332, E333, E334, E335, E336, E337, E338, E339, E341, E343, E344, E345, E346, E347, E348, E350, E352, E353, E354, E355, E356, E357, E358, E359, E360, E361, E362, E363, E364, E365, E366, E368, E370, E371, E372, E373, E374, E375, E377, E394, E395, E398, E399, E402, E403, E408, E409, E410, E411, E412, E413, E440, E441, E442, E443, E444, E445, E446, E447, E448, E449, E450, E451, E478, E479, E480, E481, E482, E484, E487, E488, E489, E490, E492, E495, E497, E499, E500, E501, E502, E503, E505, E507, E509, E511, E512, E513, E514, E515, E516, E517, E518, E519, E520, E521, E522, E523, E524, E525, E526, E527, E528, E529, E530, E531, E532, E533, E534, E535, E536, E537, E538, E539, E540, E541, E542, E543, E544, E545, E546, E547, E548, E549, E550, E551, E552, E553, E554, E555, E556, E557, E558, E559, E560, E561, E562, E563, E564, E565, E566, E567, E568, E569, E570, E571, E572, E573, E574, E575, E576, E577, E578, E579, E580, E581, E582, E583, E584, E585, E586, E587, E588, E589, E590, E591, E592, E593, E594, E595, E596, E597, E598, E599, E600, E601, E602, E603, E604, E605, E606, E607, E608, E609, E610, E611,

- 72 -

E612, E613, E614, E615, E616, E617, E618, E619, E620, E621, E622, E623, E624,
E625, E626, E627, E628, E629, E630, E631, E632, E633, E634, E635, E636, E637,
E638, E639, E640, E641, E642, E643, E644, E645, E646, E647, E648, E649, E650,
E651, E652, E653, E654, E655, E657, E672, E673, E715, E717, E718, E719, E724,
E725, E726, E731, E732, E733, E738, E739, E740, E748, E749, E750, E751, E752,
E753, E754, E755, E756, E757, E758, E759, E768, E769, E770, E771, E772, E773,
E774, E775, E776, E777, E778, E779, E780, E781, E782, E783, E784, E785, E786,
E787, E788, E789, E790, E791, E792, E793, E794, E795, E796, E797, E798, E799,
E800, E801, E802, E803, E804, E805, E806, E807, E808, E809, E810, E811, E812,
E813, E814, E815, E816, E817, E818, E819, E820, E821, E822, E823, E824, E825,
E826, E827, E828, E829, E830, E831, E832, E833, E834, E835, E836, E837, E838,
E839, E840, E841, E842, E843, E844, E845, E846, E847, E848, E849, E850, E851,
E852, E853, E854, E855, E856, E857, E858, E859, E860, E861, E862, E863, E864,
E865, E866, E867, E868, E869, E870, E871, E872, E873, E874, E879, E880, E881,
E882, E883, E884, E885, E886, E891, E892, E893, E894, E895, E896, E898, E901,
E904, E907, E911, E914, E915, E918, E919, E924, E925, E926, E927, E928, E929,
E930, E931, E932, E933, E934, E935, E936, E937, E938, E939, E940, E941, E942,
E943, E944, E945, E946, E947, E948, E949, E950, E951, E952, E953, E954, E955,
E956, E957, E958, E959, E960, E961, E962, E963, E964, E965, E966, E967, E968,
E976, E977, E988, E989, E1007, E1008, E1009, E1010, E1017, E1018, E1019, E1020,
E1021, E1022, E1023, E1024, E1025, E1026, E1027, E1028, E1029, E1030, E1031,
E1032, E1033, E1034, E1035, E1498, E1502, E1503, E1504, E1505, E1506, E1507,
E1508, E1512, E1513, E1517, E1518, E1522, E1523, E1529, E1530, E1532, E1539,
E1546, E1552, E1553, E1554, E1555, E1556, E1557, E1558, E1559, E1560, E1561,
E1562, E1563, E1564, E1565, E1566, E1567, E1568, E1569, E1570, E1571, E1572,
E1573, E1574, E1575, E1576, E1577, E1578, E1579, E1580, E1581, E1582, E1583,
E1584, E1585, E1586, E1587, E1588, E1589, E1590, E1591, E1592, E1593, E1594,
E1595, E1596, E1597, E1598, E1599, E1600, E1601, E1602, E1603, E1604, E1605,

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

E1606, E1607, E1610, E1611, E1612, E1613, E1614, E1615, E1616, E1617, E1618, E1619, E1620, E1621, E1622, E1623, E1624, E1625, E1626, E1627, E1628, E1631, E1632, E1633, E1634, E1635, E1636, E1637, E1638, E1639, E1640, E1641, E1642, E1643, E1644, E1645, E1646, E1647, E1648, E1650, E1651, E1653, E1655, E1656, E1658, E1659, E1660, E1661, E1662, E1663, E1664, E1665, E1666, E1667, E1668, E1669, E1670, E1671, E1672, E1673, E1674, E1675, E1676, E1677, E1678, E1679, E1680, E1681, E1682, E1683, E1684, E1685, E1686, E1687, E1688, E1689, E1690, E1691, E1692, E1693, E1696, E1697, E1699, E1702, E1703, E1705, E1710, E1711, E1712, E1713, E1716, E1717, E1718, E1719, E1720, E1722, E1723, E1725, E1726, E1728, E1729, E1730, E1731, E1732, E1733, E1737, E1775, E1794, E1795, E1797, E1798, E1800, E1801, E1802, E1803, E1804, E1805, E1806, E1807, E1808, E1809, E1810, E1813, E1814, E1815, E1816, E1817, E1818, E1819, E1820, E1821, E1822, E1823, E1824, E1825, E1826, E1827, E1828, E1829, E1830, E1831, E1832, E1833, E1834, E1835, E1836, E1837, E1838, E1840, E1843, E1846, E1847, E1848, E1849, E1850, E1851, E1852, E1853, E1854, E1855, E1856, E1857, E1858, E1859, E1861, E1864, E1868, E1871, E1874, E1875, E1876, E1877, E1878, E1879, E1880, E1882, E1885, E1888, E1889, E1890, E1891, E1892, E1893, E1894, E1895, E1896, E1897, E1898, E1899, E1900, E1901, E1903, E1904, E1907, E1909, E1910, E1911, E1912, E1913, E1914, E1915, E1916, E1917, E1918, E1919, E1921, E1922, E1925, E1927, E1928, E1930, E1931, E1934, E1936, E1937, E1938, E1939, E1940, E1941, E1942, E1943, E1944, E1945, E1946, E1948, E1949, E1952, E1954, E1955, E1957, E1958, E1961, E1963, E1964, E1965, E1966, E1967, E1968, E1969, E1970, E1971, E1972, E1973, E1974, E1975, E1976, E1977, E1978, E1979, E1980, E1981, E1982, E1983, E1984, E1987, E1990, E1995, E1996, E1997, E2014, E2015, E2016, E2017, E2022, E2027, E2032, E2037, E2042, E2055, E2056, E2057, E2062, E2067, E2072, E2077, E2090, E2091, E2092, E2097, E2102, E2107, E2112, E2137, E2138, E2139, E2140, E2141, E2142, E2147, E2152, E2157, E2162, E2167, E2176, E2193, E2194, E2195,

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

E2196, E2201, E2206, E2211, E2216, E2221, E2234, E2235, E2236, E2241, E2246, E2251, E2256, E2274, E2275, E2276, E2277, E2282, E2287, E2292, E2297.

- **"The BackGrid Defendants ran 197 pairwise sub-searches in only one direction.";** "[F]or example, documents discussing "attribution" before naming "Mauvilain," or "royalty" before identifying the contributor code "BAC"—are not captured by the BackGrid Defendants' one-direction approach.

**This statement is incorrect and the searches are in _consecutive order_ on the spreadsheet.**

*See* Ardalan Decl., Ex. F, E5 (Mauvilain attribution)~15; E6(attribution Mauvilain)~15; E25 (BAC royalt*)~15, E26 (royalt* BAC)~15.

- **"The BackGrid Defendants' modified version of Plaintiffs' Search Term 40—which targets contributor codes used in connection with Shutterstock, attribution, byline, and metadata, the precise conduct underlying Plaintiffs' Section 1202 and breach-of-contract claims—uses lowercase "or" as the Boolean operator connecting the contributor-code group to the topic terms"

This is another misrepresentation to the Court. With respect to search term 40, Defendants broke down those searches and did not use OR in doing so. See E1394 to E1497. ("BTF Press" Shutterstock)~10, ("BTF Press" attribution)~10, ("BTF Press" byline)~10, ("BTF Press" metadata)~10, ("BELLE PICTURES" Shutterstock)~10, ("BELLE PICTURES" attribution)~10, ("BELLE PICTURES" byline)~10, ("BELLE PICTURES" metadata)~10, (BAC Shutterstock)~10, (BAC attribution)~10, (BAC byline)~10, (BAC metadata)~10, (KO Shutterstock)~10, (KO attribution)~10, (KO byline)~10, (KO metadata)~10, (JD Shutterstock)~10, (JD attribution)~10, (JD byline)~10, (JD metadata)~10, (CW Shutterstock)~10, (CW attribution)~10, (CW byline)~10, (CW metadata)~10, (CCR Shutterstock)~10, (CCR attribution)~10, (CCR byline)~10, (CCR metadata)~10, (FT Shutterstock)~10, (FT attribution)~10, (FT byline)~10, (FT metadata)~10, (THMA Shutterstock)~10, (THMA attribution)~10, (THMA byline)~10,

(THMA metadata)~10, (FREE Shutterstock)~10, (FREE attribution)~10, (FREE byline)~10, (FREE metadata)~10, (RIWE Shutterstock)~10, (RIWE attribution)~10, (RIWE byline)~10, (RIWE metadata)~10, (MIBO Shutterstock)~10, (MIBO attribution)~10, (MIBO byline)~10, (MIBO metadata)~10, (JOME Shutterstock)~10, (JOME attribution)~10, (JOME byline)~10, (JOME metadata)~10, (Shutterstock "BTF Press")~10, (Shutterstock "BELLE PICTURES")~10, (Shutterstock BAC)~10, (Shutterstock KO)~10, (Shutterstock JD)~10, (Shutterstock CW)~10, (Shutterstock CCR)~10, (Shutterstock OR FT)~10, (Shutterstock OR THMA)~10, (Shutterstock FREE)~10, (Shutterstock RIWE)~10, (Shutterstock MIBO)~10, (Shutterstock JOME)~10, (attribution "BTF Press")~10, (attribution "BELLE PICTURES")~10, (attribution BAC)~10, (attribution KO)~10, (attribution JD)~10, (attribution CW)~10, (attribution CCR)~10, (attribution OR FT)~10, (attribution OR THMA)~10, (attribution FREE)~10, (attribution RIWE)~10, (attribution MIBO)~10, (attribution JOME)~10, (byline "BTF Press")~10, (byline "BELLE PICTURES")~10, (byline BAC)~10, (byline KO)~10, (byline JD)~10, (byline CW)~10, (byline CCR)~10, (byline FT)~10, (byline THMA)~10, (byline FREE)~10, (byline RIWE)~10, (byline MIBO)~10, (byline JOME)~10, (metadata "BTF Press")~10, (metadata "BELLE PICTURES")~10, (metadata BAC)~10, (metadata KO)~10, (metadata JD)~10, (metadata CW)~10, (metadata CCR)~10, (metadata FT)~10, (metadata THMA)~10, (metadata FREE)~10, (metadata RIWE)~10, (metadata MIBO)~10, (metadata JOME)~10.

Defendants agreed that to the extent there are **_typos_**, they would agree to re-run the searches. Defendants asked Plaintiffs for a list of typos, but Defendants did not provide them. Ardalan Decl., Ex. D

Plaintiffs and their counsel should be sanctioned for their pattern of discovery abuses in this case. Ardalan Decl. Ex. E. Plaintiffs served the Joint Stipulation after Defendants sent an email confirming what they agreed to at the IDC and confirming they would proceed as agreed upon. *Id.* at Ex. D; *cf.* Ex E. Defendants' discovery abuse as it relates to this discovery request is threefold, as discussed below.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

## B. Plaintiffs Are Not Entitled to Discovery on Discovery

Plaintiffs have requested discovery on discovery as part of the IDC—**_and not even if the form of a request or interrogatory._** The Court has told Defendants multiple times at multiple IDCs that the Court does not permit it absent some showing that a party is improperly withholding documents. *Jensen v. BMW of North America, LLC,* 328 F.R.D. 557, 566 (S.D Cal. 2019) ("Discovery into another party's discovery process is disfavored."); *Perez v. DirecTV Grp. Holdings, LLC*, No. SA CV 16-01440-JLS (DFMx), 2020 WL 5875026, at \*2 (C.D. Cal. Aug. 17, 2020) (reasoning that when "discovery on discovery" is sought, the party requesting the discovery must present an adequate factual basis to justify the discovery). The Court stated that Defendants' production appeared to be adequate and was not convinced they there is a need for discovery on discovery.

Plaintiffs' misrepresentations about the searches above only underscores that they are not being accurate and forthcoming about their need for discovery and are engaged in a pattern of discovery abuse to run up costs and fees. Moreover, Plaintiffs make another misrepresentation here when they state that Defendants did not disclose the custodian list. They even acknowledge the eight custodian list in this document.

<u>This is the Second Time Plaintiffs Served an</u>

<u>Improper Joint Stipulation on This Issue</u>

On May 5, 2026, Plaintiffs improperly served a Joint Stipulation against Defendants, which includes this issue. Ardalan Decl., Ex. A. Defendants sought and obtained relief to respond to it during an informal discovery conference the next day, May 6, 2026. (Dkt. 94.) The Court agreed with Defendants and found that the Joint Stipulation was not authorized. The Court set the matter for a further IDC on May 13, 2026, to address the disputed issues. *Id.* The Court held that Defendants were excused from responding to that Joint Stipulation in the meantime and encouraged the parties to further meet and confer, which they did. *Id.* Defendants even agreed to a Saturday meet and confer call, to cooperate with Plaintiffs.  Instead of attempting to cooperate with Defendants and be forthcoming about the issues, Defendants attempted to create a record after the fact of issues

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

not discussed on the call, but raised them afterwards in writing and with the Court, pretending they had been discussed. Ardalan Decl., Ex. B.

Plaintiffs tried again to proceed with a second Joint Stipulation. During the May 13, 2026, IDC, the dispute as to this discovery request was **_resolved_**, as reflected in the Court's May 15, 2026, IDC 7 Order. Plaintiffs were not authorized to bring a motion as to the instant discovery request. Nevertheless, Plaintiffs served the Joint Stipulation on May 14, 2026—one day after IDC 7. (Dkt. 107; Ardalan Decl. Ex. C.) It appears Plaintiffs did so, banking on the fact that the Court would not issue a detailed order reflecting what was accomplished at the IDC, to needlessly run up costs for Defendants to respond and to jam up Defendants from adequately preparing for the seventeen depositions noticed before the rapidly approaching fact discovery cutoff on June 19, 2026. Indeed, Plaintiffs served the joint stipulation knowing that Defendants had noticed three of Plaintiffs' depositions the next week and that the drafting of this joint stipulation over the next seven days would impact deposition preparation. They also served an ex parte and another IDC request for another resolved issue that same week. Ardalan Decl. ¶ 4.

The Stipulation is Untimely

The Joint Stipulation is untimely and procedurally defective. (Ardalan Decl. Ex. C.) Plaintiffs served their portion of the Joint Stipulation on Defendants on May 14, 2026. Under Local Rule 37-2.2, Defendants have seven days from receipt to deliver their portion (May 21, 2026), after which Plaintiffs must add it back and provide the assembled stipulation to opposing counsel for signature, which is then due "no later than the end of the next business day" (May 22, 2026). Local Rule 37-3 then requires the motion to be "noticed to be heard on a regular Motion Day for the appropriate judge at least twenty-one days after the filing of the motion," and Judge Audero's Procedures provide that civil motions are heard only on Thursdays at 10:00 a.m. The earliest properly noticed Thursday hearing date is therefore June 18, 2026 — not the June 11, 2026, date Plaintiffs noticed, which is only twenty days after the earliest possible filing date and violates Local Rule 37-3 on its face.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

The June 18, 2026 alternative fails independently under the Scheduling Order, which requires that "a planned motion to compel . . . ordinarily be discussed with the opposing party at least six (6) weeks before the cut-off" — i.e., by May 8, 2026 — and that "[a]ny motion challenging the adequacy of discovery responses . . . be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted" (ECF No. 50 at 5). A June 18, 2026, hearing leaves one day before the June 19, 2026, fact-discovery cut-off. Judge Audero's Standing Order ¶ 7(b) warns that "[a] party that waits until the last day to have a motion heard on a date that turns out to be unavailable risks having the motion stricken and not heard," and Local Rule 37-2.4 authorizes the Court to decline to consider a non-compliant discovery motion. The Joint Stipulation should be denied or stricken on this ground alone.

Sanctions are warranted under Federal Rule of Civil Procedure 37(a)(5)(B), Local Rule 37-4, and the Court's inherent authority to compensate Defendants for the fees incurred opposing this withdrawn portion of the Joint Stipulation between May 14 and May 16, 2026, as discussed further below.

## III. SANCTIONS

### A. Plaintiffs' Position on Sanctions

Plaintiffs respectfully request an award of $29,775 in attorney's fees as a sanction under Federal Rule of Civil Procedure 37(a)(5)(A) for the reasonable expenses incurred in bringing this Motion.

Rule 37(a)(5)(A) provides that if a motion to compel discovery "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The award is mandatory unless one of three exceptions applies: (i) the motion was filed before the movant attempted in good faith to obtain the discovery without court action;

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). None of those exceptions applies here.

The first exception is foreclosed by the record. Plaintiffs served their First Set of Requests for Production on July 10, 2025. Plaintiffs' Local Rule 37-1 letter issued September 23, 2025. In addition to meeting and conferring, the parties participated in eight IDCs before this Court between November 2025 and May 2026. On March 25, 2026, the Court found that the parties had satisfied their meet-and-confer obligations under Rule 37. (ECF No. 83.) Plaintiffs then drew an April 10, 2026 deadline for substantial completion of production; that deadline passed without compliance. The April 27, 2026 production—approximately 487 pages, predominantly internal accounting records, ACH receipts, LinkedIn notifications, FRE 408 settlement correspondence, and screenshots of an internal administrative interface—did not resolve the deficiencies. (Sergenian Decl. ¶¶ 30–31.) Plaintiffs served a Rule 37 Joint Stipulation on the BackGrid Defendants on May 5, 2026. At the May 6, 2026 IDC, this Court declined to authorize the filing of the motion at that time without prejudice to its later filing, and set the May 13, 2026 IDC to address the alleged deficiencies in the BackGrid Defendants' document production. (ECF No. 94 at 2.) Plaintiffs followed with a videoconference meet and confer on May 9, 2026, and an email to chambers on May 11, 2026, identifying the disputes presented in this Motion. At the May 13, 2026 IDC, the parties addressed the issues raised in this Joint Stipulation, and this Court authorized Plaintiffs to serve a revised Joint Stipulation. The BackGrid Defendants made oral representations as to several disputed categories at the conference, but none of those representations has been memorialized in a compliant Rule 34 response or followed by further production. Plaintiffs accordingly address each disputed category herein, subject to withdrawal upon written confirmation and performance.

The second exception is unavailable because the BackGrid Defendants' position is not substantially justified. The "substantially justified" standard is "satisfied if there is a 'genuine dispute' … or 'if reasonable people could differ as to the appropriateness of the

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

contested action.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations and alterations omitted); *accord Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994); *Lee v. Cnty. of Los Angeles*, 2025 U.S. Dist. LEXIS 274331, at *10–11 (C.D. Cal. Dec. 30, 2025). The party resisting sanctions bears the burden of establishing substantial justification. *Hyde & Drath*, 24 F.3d at 1171; *Lee*, 2025 U.S. Dist. LEXIS 274331, at *7–8. Reasonable people could not differ on the propriety of the BackGrid Defendants' conduct here.

The Court's March 25, 2026 Minute Order, which found that Plaintiffs had satisfied their meet-and-confer obligations under Rule 37 while encouraging further efforts to resolve disputes (ECF No. 83 at 1–2), gave the BackGrid Defendants a clear path to bring their production into compliance and avoid this Motion. They did not use it.

Plaintiffs demanded substantial completion by April 10, 2026; the deadline passed without any production. (Sergenian Decl. ¶¶ 11–12.)

When Plaintiffs identified five categories of defects in the BackGrid Defendants' April 13 modified search terms, the BackGrid Defendants did not respond to the critique and did not provide the hit counts, document universe, or media and sources searched that would have allowed Plaintiffs to evaluate whether the documents missed by these defects were captured elsewhere. (Sergenian Decl. ¶¶ 14–28.) BackGrid USA, Inc.'s May 6, 2026 supplemental search terms, served only after Plaintiffs initiated the motion process, did not cure those defects and introduced new defects of the same kind. (*Id.* ¶¶ 30–37.)

The BackGrid Defendants' productions through May 12, 2026—the April 27 production at BACKGRID001656–002142 and the supplemental productions on May 8, May 11, and May 12 at BACKGRID002143–002574—are missing entire categories of responsive material, including source files; server and access logs; royalty calculations, payment records, and reconciliations for Plaintiffs Mazari, Kyndt, and Mehdi; royalty calculations, payment records, and reconciliations for Plaintiffs Wolf, Boutefeu, Duplaquet, and Mauvilain beyond the per-photographer sales ledgers and the single Decem-

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

ber 11, 2018 reconciliation for Mauvilain; audit logs; metadata handling scripts; contributor code documentation; asset purchase and merger agreements; and prior litigation filings. (Sergenian Decl. ¶ 42.)

The BackGrid Defendants committed in writing, on the date of the April 27 production, to serve amended Rule 34 responses identifying what was being withheld and a spreadsheet identifying the search terms they actually executed. (*Id.* ¶ 46.) BackGrid USA, Inc. served amended responses and Attachment A on May 6, 2026, only after Plaintiffs initiated the motion process. Shutterstock, Inc. served supplemental responses with its own Attachment A on May 12, 2026, after Plaintiffs served the Rule 37 Joint Stipulation. BackGrid, Inc. has not served amended responses or a search-terms spreadsheet as of the filing of this Motion. (*Id.*) Shutterstock, Inc.'s supplemental responses unilaterally limit its search to documents "from January 1, 2024 to present"—a temporal limitation Plaintiffs never agreed to and that excludes virtually all of the conduct at issue in this action.

The omission of Boris Nizon, the Co-Owner of BackGrid USA, Inc. since May 2017 and a principal of a predecessor entity in the corporate-succession chain, from the eight-custodian list went unaddressed despite Plaintiffs' written notice on April 14, 2026. (*Id.* ¶ 19.)

None of these failures reflects a genuine dispute or a position on which reasonable people could differ. They reflect a pattern of non-cooperation that continued, and in some respects deepened, after the Court's March 25 order. Nor is this a case in which the BackGrid Defendants' objections themselves are substantially justified, as discussed above.

The third exception likewise does not apply. The BackGrid Defendants are represented by sophisticated counsel; they have had 10 months and the benefit of eight IDCs to bring their production into compliance; and their voluntary written commitments on the date of the April 27 production were either honored late and partially (BackGrid USA, Inc. and Shutterstock, Inc.) or not honored at all (BackGrid, Inc.). (Sergenian Decl. ¶ 46.)

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

There is nothing unjust about requiring the BackGrid Defendants to bear the reasonable expenses of the motion their conduct necessitated.

Reasonable attorney's fees under Rule 37 are calculated using the lodestar method, in which the court multiplies the number of hours reasonably expended by a reasonable hourly rate, with adjustments where appropriate based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (adopting twelve-factor reasonableness test from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), including time and labor required, customary fee, results obtained, and experience and ability of counsel). *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Counsel for Plaintiffs spent 34.7 hours preparing this Motion across eight days (May 1–5, and May 11–14, 2026), with an additional 5 hours anticipated for the supplemental memorandum, for a total of 39.7 hours. (Sergenian Decl. ¶ 49.) Those hours exclude time spent on the meet-and-confer process, on the eight IDCs, and on the broader management of discovery, and they reflect only the time necessitated by the BackGrid Defendants' noncompliance. (*Id.*)

The hourly rate is well within, and at the low end or below, the prevailing market rate. Counsel's standard rate is $750 per hour. (Sergenian Decl. ¶ 50.) The 2024 Real Rate Report, of which courts in this District take judicial notice, reports a median hourly rate of $895 for partners in Los Angeles, a third-quartile rate of $1,268, and a range of $675 to $1,575 for commercial-litigation partners. *See Bank of Hope v. Expedited Travel, LLC*, 2026 U.S. Dist. LEXIS 79619, at *6–7 (C.D. Cal. Feb. 13, 2026); *Trs. of the Laundry v. Kleen Kraft Servs., Inc.*, 2026 U.S. Dist. LEXIS 47266, at *8–10 (C.D. Cal. Feb. 2, 2026).

Multiplying 39.7 hours by the $750 rate yields $29,775. That figure is reasonable, well-supported, and modest in light of the underlying record.

For these reasons, Plaintiffs respectfully request that the Court award $29,775 in attorney's fees against the BackGrid Defendants and their counsel, jointly and severally, under Rule 37(a)(5)(A).

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

## B. BackGrid Defendants' Position on Sanctions

Sanctions should be denied against Defendants. Pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), Defendants request sanctions against Plaintiffs and their counsel for this motion that reflects a pattern of ongoing discovery abuse.

Sanctions Against Defendants Must Be Denied

Defendants request that sanctions be denied for the following reasons:

1. More than half of this motion was withdrawn because Plaintiffs did not have permission to file it from the Court. They were on notice that they needed permission because they ran into the same problem with the first Joint Stipulation they served on Defendants. Ardalan Ex. D.

2. As discussed herein, the motion is untimely because it was filed without sufficient time before the hearing date. Moreover, it is untimely because it was filed too close to the discovery cutoff.

3. Plaintiffs have made serious and extensive misrepresentations to the Court in this Joint Stipulation, especially with respect to the purported search term failures. The misrepresentations include representing to the Court that no wildcard searches were done—when 806 wildcard searches were completed, and representing that one plaintiff did not appear in the searches when he appeared about 60 times. And, misrepresenting that the proximity searches were run only in one direction, when they were run in both.

4. With respect to the only remaining issues in this Joint Stipulation, the Court stated at the IDC that it "was not convinced" that Plaintiffs should get the discovery they now request and that Defendants' production was adequate. Despite the fact that Plaintiffs were on notice that the motion would likely fail, they filed it anyway, within one day of a three-hour IDC, in which the Court attempted to assist the parties in resolving these disputes. This demonstrates a disregard for the Court's time and for the process.

5. The attorneys' fees requested here includes time that was billed even ***before*** the IDC permitting Plaintiffs to proceed with the Joint Stipulation, which occurred on May 13. This demonstrates a two-fold problem for Plaintiffs: It demonstrates they were

- 84 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

working on a motion, no matter what the Court and the Defendants said or agreed to; it demonstrates they did not know the issues that would be part of this Joint Stipulation but proceeded anyway. Counsel acknowledges he is also including time for "revising the joint stipulation" because the first time he served it, it was improper. Sergenian Decl., ¶ 56.

### Defendants Request Their Attorneys' Fees for Opposing this Motion

Even before serving this motion, Plaintiffs were on notice the Motion would fail.

The Court resolved many of the issues Plaintiffs attempt to bring here.

To the extent other issues existed, the Court told Plaintiffs it was not convinced they should get the discovery on those topics. Plaintiffs re-iterated the same arguments here again, wasting the Court and Defendants' time, which is especially egregious as the Court invested three hours in an IDC that started at 7 a.m. so resolve these issues. More-over, this joint stipulation is untimely to begin with. There is no chance of this motion being granted, and Defendants ought to be sanctioned for these abuses.

Finally, Plaintiffs waited at the last minute to jam up Defendants' during their week of depositions. Indeed, Plaintiffs served the joint stipulation knowing that Defendants had noticed three of Plaintiffs' depositions the next week and that the drafting of this joint stipulation over the next seven days would impact deposition preparation. They also served an ex parte and another IDC request for another resolved issue that same week.

Because Plaintiffs put Defendants in an impossible position, where their counsel could not prepare to take three depositions, respond to the joint stipulation, and oppose and ex parte request, Defendants hired Sheila Mojtehedi to assist with some of the prep-aration of the joint stipulation, as she was aware of the discovery history in this case, and has invoiced Defendants for work on this matter. She has spent a total of 9.3 hours at an hourly rate of $450. Mojtehedi Decl., ¶ 10. Ms. Ardalan's hourly rate is usually $800 per hour. She bills BackGrid $800 per hour for other matters, but has provided BackGrid with a discount in this case. She has billed 6.3 hours in drafting this joint stipulation. Defend-ants therefore request $9,225 in sanctions against Plaintiffs.

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Defendants request their fees for this motion that is dead on arrival, but, importantly, also on the merits.

Dated: May 22, 2026

**SERGENIAN LAW**
a Professional Corporation

By: /s/David A. Sergenian
DAVID A. SERGENIAN

Dated: May 22, 2026

WHITEWOOD LAW, P.C.

By: /s/Shengmao Mu
SHENGMAO MU
ABBY M. NEU (*pro hac vice*)
RYAN E. CARREON (SBN 311668)
KEATON SMITH (*pro hac vice*)

*Counsel for Plaintiffs*

May 21, 2026

**ONE LLP**

[SIGNATURE WITHHELD FOR REVIEW PER LOCAL RULE 37-2.2]

_____

Joanna Ardalan
Peter Afrasiabi
David Quinto
Attorneys for Defendants BackGrid Inc., BackGrid USA, Inc., & Shutterstock, Inc

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

## ATTESTATION REGARDING SIGNATURES

I, David A. Sergenian, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: May 22, 2026

**SERGENIAN LAW**
a Professional Corporation

By: */s/David A. Sergenian*
DAVID A. SERGENIAN

- 87 -

JOINT STIPULATION ISO MOT. TO COMPEL RPDS TO BACKGRID DEFENDANTS

Joanna Ardalan (SBN 285384)
Email: jardalan@onellp.com
Peter R. Afrasiabi (SBN 193336)
Email: pafrasiabi@onellp.com
David W. Quinto (SBN 106232)
Email: dquinto@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:    (949) 258-5081

Attorneys for Defendants,
BACKGRID INC., BACKGRID USA, INC., and
SHUTTERSTOCK, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIBAULT MAUVILAIN, an individual; HENRI MAZARI, an individual; JEREMY DUPLAQUET, an individual; ROBERT CHRISTIAN WOLF, an individual; MICHEL BOUTEFEU, an individual; STEPHANE KYNDT, an individual; and JOSEPH MEHDI, an individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>FLYNET PICTURES. LLC, a California limited liability company: FAMEFLYNET INC.. a California corporation: BACKGRID INC.. a California corporation: BACKGRID USA. INC.. a California corporation: SHUTTERSTOCK. INC.. a Delaware corporation and DOES 1–10, inclusive,<br><br>        Defendants. | Case No.: 2:25-cv-2757-FLA-MAA<br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION FROM DEFENDANTS BACKGRID INC., BACKGRID USA, INC., AND SHUTTERSTOCK, INC. AND SANCTIONS** |

1. I, Joanna Ardalan, am counsel of record for BackGrid USA, Inc. Backgrid, Inc., and Shutterstock, Inc., (collectively "Backgrid") in the above-captioned action. I have personal knowledge of the facts stated herein and if called to testify could and would competently testify as follows:

2. Attached as **Exhibit A** is a true and correct copy of an email message in which Plaintiffs served a joint stipulation on discovery.

3. Attached as **Exhibit B** is a true and correct copy of an email correspondence I had with Plaintiffs' counsel.

4. Attached as **Exhibit C** is a true and correct copy of an email correspondence I had with Plaintiffs' counsel.

5. It appears Plaintiffs served the Joint Stipulation strategically banking on the fact that the Court would not issue a detailed order reflecting what was accomplished at the IDC, to needlessly run up costs for Defendants to respond and to jam up Defendants from adequately preparing for the seventeen depositions noticed before the rapidly approaching fact discovery cutoff on June 19, 2026. Indeed, Plaintiffs served the joint stipulation on knowing that Defendants had noticed three of Plaintiffs' depositions the next week and that the drafting of this joint stipulation over the next seven days would impact deposition preparation. They also served an ex parte and another IDC request for another resolved issue that same week.

6. Attached as **Exhibit D** is a true and correct copy of an email correspondence I had with Plaintiffs' counsel.

7. Attached as **Exhibit E** is a true and correct copy of an email correspondence I had with Plaintiffs' counsel.

8. At IDC, Defendants agreed to provide view and download logs for the sets identified as the Copyrighted Works at issue. Defendants have provided those logs.

1

**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES AND SANCTIONS**

9.  With respect to RFP 17 and 18, the Court stated that the business records already produced on the licensing is sufficient. At IDC, this issue was resolved because the documents already produced were sufficient to show the licensing history, the payments received from the outlets, the commissions paid to the photographers, the commission rate among other information. Plaintiffs could not articulate a need for any further information, so the issue was resolved.

10.  At the IDC, Defendants agreed to produce the Shutterstock-BackGrid USA, Inc. purchase agreement, but not the rest of the due diligence documents. Plaintiffs could not articulate a need for information beyond the purchase agreement, so the issue was resolved. *Id.*  The purchase agreement has been produced.

11.  On April 27, 2026, the BackGrid Defendants produced per-photographer sales spreadsheets reflecting the information BackGrid maintains in the ordinary course of business for each contributor. The spreadsheets identify every license issued for the Plaintiff-photographers' works that contributed to BackGrid (including major news outlets such as TMZ), the licensee, and the amount paid to the Plaintiff-photographer for each licensed photograph, when it the photographer was paid, among other information. That information captures all material data about every licensed photograph, including those licensed as part of any wholesale or asset-transfer transaction Plaintiffs label a "bulk sale." With respect to the copyrighted works at issue, Defendants produced screenshots of its administrative portal showing the same information. The spreadsheets do not categorize licenses as "bulk" or "non-bulk," but that distinction is immaterial to Plaintiffs' claims: the relevant facts for Plaintiffs' breach-of-contract, copyright, and Section 1202 theories are the fact of license, the licensee, and the royalty paid, and all of that information has been produced. The BackGrid Defendants supplemented those productions on May 6, May 8, May 11, and May 12, 2026 (BACKGRID002143–002574), and BackGrid USA, Inc.'s May 6, 2026 supplemental response to RFP 49 confirms that

2

**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES AND SANCTIONS**

the BackGrid Defendants have searched for responsive documents pursuant to Attachment A and "produced or will produce responsive documents." The BackGrid Defendants also ran the more than 2,000 pairwise Boolean searches reflected in Attachment A to the responses and, pursuant to the parties' April 27, 2026 written agreement (Sergenian Decl. Ex. 8), will produce responsive, non-privileged documents identified outside those searches. A true and correct copy of the searches is attached as **Exhibit F**.  Those searches were produced on May 5, 2026.

12.    The BackGrid Defendants anticipate, based on their business practices and history, that there are no formal license agreements for the "bulk sales" Plaintiffs identify; deal terms were typically negotiated over email and by telephone, and the resulting transactions often involved photographs that have no connection to the photographs at issue in this case or to the Plaintiff-photographers. To respond to "ALL DOCUMENTS RELATING TO" bulk sales as Plaintiffs frame the request, the BackGrid Defendants would have to manually review thousands of emails and documents to reverse-engineer which transactions might touch any of the photographs at issue.

13.    Plaintiffs expressly agreed to a temporal limitation when the parties met and conferred about this issue initially.  They asked for all documents after Shutterstock's acquisition of BackGrid USA, Inc., which happened in February 2024.

14.    The Court has already considered and declined this request at IDC 7. Plaintiffs presented RFPs 67 and 68 to the Court at the May 13, 2026 Informal Discovery Conference. On the same arguments now repeated in the Joint Stipulation — including Plaintiffs' contentions about the BackGrid USA, Inc. v. Twitter, Inc. matter and Mr. Nizon's declaration in FameFlynet, Inc. v. Breitbart News Network, LLC — the Court informed the parties that it "was not convinced you needed this." (May 14, 2026 Email from J. Ardalan to D. Sergenian, RPDs 67 and 68.) The

3

**DECLARATION OF JOANNA ARDALAN IN OPPOSITION RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FURTHER RESPONSES AND SANCTIONS**

Court's IDC 7 Order authorized Plaintiffs to file a motion but did not displace what the Court said on the merits. (ECF No. 102 at 1–2.)

15. Attached as **Exhibit G** is a true and correct copy of Plaintiffs' discovery requests.

16. I am a partner at One LLP and have been since 2019. I have been practicing intellectual property law since 2013. I am an adjunct professor at Loyola Law School, where a teach a copyright litigation seminar, and have done so since 2013. I have also taught intellectual property law classes at the University of Southern California and the University of California, Irvine. I am a member of the Board of Directors for the Federal Bar Association, Orange County, and have been since 2023. I have also served as a member of the Board of Directors for the Los Angeles Intellectual Property Law Association. My typical rate is $800 per hour. I am charging a lower billable rate to BackGrid for purposes of this litigation.

I declare under penalty of perjury that the facts stated herein are true and correct. Executed this 21st day of May 2026 at Beverly Hills, California.

/s/ Joanna Ardalan