Joanna Ardalan (SBN 285384)
Email: jardalan@onellp.com
Peter R. Afrasiabi (SBN 193336)
Email: pafrasiabi@onellp.com
David W. Quinto (SBN 106232)
Email: dquinto@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:   (949) 258-5081

Attorneys for Defendants,
BACKGRID INC., BACKGRID USA, INC., and
SHUTTERSTOCK, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIBAULT MAUVILAIN, an individual; HENRI MAZARI, an individual; JEREMY DUPLAQUET, an individual; ROBERT CHRISTIAN WOLF, an individual; MICHEL BOUTEFEU, an individual; STEPHANE KYNDT, an individual; and JOSEPH MEHDI, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> FLYNET PICTURES, LLC, a California limited liability company; FAMEFLYNET INC., a California corporation; BACKGRID INC., a California corporation; BACKGRID USA, INC., a California corporation; SHUTTERSTOCK, INC., a Delaware corporation and DOES 1–10, inclusive, <br><br> Defendants. | Case No.: 2:25-cv-2757-FLA-MAA <br> Hon. Fernando L. Aenlle-Rocha <br><br> **DECLARATION OF JOANNA ARDALAN IN SUPPORT OF DEFENDANTS BACKGRID USA, INC. BACKGRID INC., AND SHUTTERSTOCK INC.'S MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL** <br><br> **Date:**     **August 28, 2026** <br> **Time:**     **1:30 p.m.** <br> **Crtrm:**     **6B** |

---

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

## DECLARATION OF JOANNA ARDALAN

I, Joanna Ardalan, am counsel of record for defendants Backgrid Inc., Backgrid USA, Inc., and Shutterstock, Inc. I have personal knowledge of the facts stated herein and if called to testify could and would testify as follows:

1.      Attached as **Exhibit 1** is a true and correct copy of correspondence I sent to Plaintiffs' counsel after having received Plaintiffs' identification of the "Copyrighted Works" at issue in this case.

2.      Attached as **Exhibit 2** is a true and correct copy of a spreadsheet I attached to the email message attached to this Declaration as Exhibit 1. The spreadsheet was attached as a native Excel spreadsheet. For that reason, I have lodged the native file with the Court and attached a PDF copy of that spreadsheet hereto.  The spreadsheet reflects each of the set numbers of Photographs that Plaintiffs identified as the "Copyrighted Works." Next to the set numbers are notes regarding the license fees received for each of the sets, if any.

3.      The Plaintiffs filed this lawsuit without identifying the "Copyrighted Works" at issue. And, I repeatedly asked Plaintiffs to identify the works because Defendants could not meaningfully respond to the lawsuit without the identification. *See e.g.* Exhibit 8. At first, Plaintiffs produced a PDF file of the "Copyrighted Works," but without any information that would assist Defendants in identifying those works—i.e. they did not break up the photos by plaintiff, identify them by title, celebrity, set number, or anything else that would help Defendants identify the works.  Plaintiffs finally identified the works they had in their possession as part of the discovery process, after being confronted with scheduling an IDC for deficient responses. The evidence of alleged infringement was not produced until October 29, 2025, after Defendants insisted on an IDC to address what are the "Copyrighted Works" at issue in this lawsuit.  *See* Exhibit 6.  It was apparent why Plaintiffs did not include the information they identified in those pleadings: Plaintiffs had obtained the evidence through fraud. Plaintiff Thibault Mauvilain had emailed

1

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

BackGrid's sales team, pretending to be "Emily Carter," a production assistant for a Netflix documentary, who requested access to BackGrid's Confidential Client Portal for "research."  For 14 months, Plaintiff Mauvilain had access to BackGrid's Confidential Client Portal, where he collected evidence for this case, on behalf of himself and the other Plaintiffs.  BackGrid cut off access when Plaintiffs finally produced documents and BackGrid was able to match "Emily Carter's" IP address against Mauvilain's IP address—meaning Plaintiffs were incentivized to hold off on producing documents for as long as possible so they could continue accessing the portal, likely knowing that their fraud would be discovered and access cut off—and they did delay as much as possible.

4.     Attached as **Exhibit 3** is a true and correct copy of a redacted email chain  started by "Emily Carter" and sent to BackGrid USA, Inc., asking for access to the Confidential Client Portal. "Emily Carter" claims she needs access because she is a production assistant working on a Netflix documentary "Hollywood Uncovered." The redacted text is an attorney-client communication.

5.     Attached as **Exhibit 4** is a true and correct copy of the activity log of Hollywood Uncovered, which is the account credentialed to "Emily Carter."

6.     Attached as **Exhibit 5** is a true and correct copy of the activity log for Thibault Mauvilain, who continued to submit photos to BackGrid USA for licensing while this lawsuit was pending.  By comparing the IP addresses between the activity log in Exhibit 4 and the activity log in Exhibit 5 (starting at BACKGRID001615), thirteen of those IP addresses overlap, including: 172.56.112.49, 172.56.120.205, 172.56.120.230, 172.56.121.124, 172.56.121.28, 172.56.122.147, 172.56.122.160, 172.56.122.90, 172.56.123.45, 172.56.123.65, 172.56.123.71, 172.56.186.149, 72.56.187.131.

7.     Attached as **Exhibit 6** is a true and correct copy of an email message I sent to Judge Audero's Chambers requesting an IDC. Also, attached in this exhibit are the attachments contained in that email message, which includes a declaration of

2

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

non-participation from Plaintiffs in the request for an IDC. Defendants requested this IDC because they had not been given meaningful information regarding the identity of the "Copyrighted Works" at issue.  At the time, Plaintiffs had produced only a mixed up PDF copy of the photographs, which was not sorted by plaintiff or anything else.

8.    Plaintiffs produced **7,508** native files, which appears to be one native file for every photo now identified in this case as a "Copyrighted Work" on February 25, 2026.  As shown in the attached deposition testimony, Plaintiffs "dragged and dropped" these files from BackGrid's Confidential Client Portal, while the Plaintiffs were given limited access per the Court's December 17, 2025 Order. The violations were not raised with counsel or Plaintiffs until May 20, 2026 at 6:07 p.m. for the first time, which is why it was surprising that Mr. Wolf testified that Mr. Mauvilain advised him that Defendants complained that Plaintiffs saved the native files.  I know that the violations were first raised by Defendants at 6:07 p.m. on May 20, 2026, because I looked at  when the line of questioning first started in Mazari's deposition, 266:1,  and matched it with the video file. A true and correct screenshot of when 266:1 started is attached hereto as **Exhibit 28**.  Lodged with the Court as **Exhibit 33** is a true and correct native .jpg file produced by Plaintiffs as part of their February 25, 2026 production, which is included here as an example of one of the files saved in violation of the Court's order. The native files produced were also not designated as "Confidential."  In the February 25, 2026 production, Plaintiffs produced the following .jpg files which were saved from the Confidential Client Portal with the following bates range: Thibault 014562–014570; 014581–014607; 014637–014716; 014798–014805; 014824–014835; 014861–014870; 014883–014890; 014900–014902; 014912–014917; 014926–014949; 014975–014980; 014988–014992; 014999–015028; 015062–015074; 015089–015169; 015259–015263; 015270–015277; 015287–015290; 015296–015303; 015313–015332; 015354–015356; 015361–015398; 015514–015525; 015563–015590;

3

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

015675–015685; 015698–015728; 015760–015784; 015814–015827; 015843–015846; 015852–015873; 015898–015908; 015920–015927; 015937–015955; 015976–016001; 016029–016041; 016056–016066; 016079–016102; 016127–016146; 016168–016185; 016213–016229; 016248–016267; 016289–016300; 016314–016323; 016335–016356; 016381–016388; 016399–016423; 016451–016481; 016516–016520; 016526–016545; 016566–016586; 016601–016607; 016616–016639; 016666–016812; 016961–017030; 017172–017179; 017199–017228; 017261–017281; 017304–017317; 017332–017361; 017394–017428; 017467–017476; 017500–017551; 017606–017616; 017686–017714; 017761–017771; 017784–017800; 017836–017844; 017864–017878; 017916–017930; 017962–017966; 017979–017990; 018006; 018009–018037; 018097–018104; 018114–018121; 018131–018134; 018145–018147; 018155–018168; 018186–018195; 018217–018239; 018264–018274; 018287–018312; 018339–018347; 018358–018372; 018390–018413; 018463–018477; 018494–018509; 018527–018537; 018550–018573; 018599; 018601–018603; 018610–018621; 018635–018641; 018657–018664; 018682–018695; 018709–018721; 018739–018746; 018757–018772; 018792–018801; 018823–018825; 018833–018837; 018849–018858; 018870–018879; 018891–018907; 018926–018938; 018953–019001; 019052–019063; 019091–019099; 019110–019119; 019134–019144; 019157–019164; 019182–019193; 019219–019244; 019298–019337; 019452–019460; 019482–019493; 019508–019510; 019515–019532; 019551–019562; 019578–019590; 019606–019619; 019635–019640; 019648–019667; 019689–019696; 019706–019711; 019719–019723; 019731–019738; 019748–019770; 019795–019797; 019802–019807; 019815–019839; 019867–019889; 019915; 019917–019927; 019941–019947; 019956–019969; 019985–020023; 020064–020074; 020087–020102; 020120–020133; 020149; 020152–020194; 020241–020329; 020420–020473; 020529–020575; 020624–020665; 020709–020804; 020902–020986; 021072–021091; 021114–021129; 021151–021157; 021166–021175;

4

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

021197–021209; 021224–021231; 021257–021285; 021316–021320; 021327–021356; 021388–021398; 021413–021418; 021433–021446; 021462–021472; 021499–021513; 021530–021533; 021539–021551; 021566–021585; 021607–021634; 021666–021682; 021702–021729; 021792–021820; 021851–021883; 021919–021920; 021923–021930; 021938–021950; 021965–021988; 022037–022054; 022074–022079; 022087–022090; 022100–022103; 022109–022123; 022140–022149; 022161–022183; 022208–022248; 022291–022327; 022332–022335; 022341–022387; 022436–022443; 022453–022468; 022489–022509; 022532–022538; 022547–022591; 022642–022670; 022701–022708; 022721–022732; 022746–022782; 022831; 022834–022890; 022959–022978; 023004–023053; 023104–023124; 023148–023188; 023231–023233; 023238–023295; 023355–023426; 023501–023530; 023562–023579; 023599–023628; 023660–023677; 023697–023706; 023718–023737; 023759–023786; 023816–023836; 023860–023881; 023905–023938; 023974–023998; 024025–024062; 024102–024132; 024165–024179; 024196–024212; 024228–024252; 024279–024293; 024310–024327; 024347–024376; 024408–024457; 024509–024517; 024529–024550; 024574–024581; 024590–024607; 024627–024643; 024663–024685; 024709–024722; 024739–024746; 024756–024767; 024781–024800; 024822–024854; 024889–024899; 024912–024932; 024951–024957; 024966–025015; 025067–025111; 025159–025200; 025242–025278; 025317–025361; 025408–025424; 025444–025450; 025459–025492; 025528–025539; 025553–025569; 025587–025590; 025597–025628; 025662–025691; 025723–025752; 025783–025802; 025824–025866; 025911–025955; 026003–026027; 026054–026076; 026101–026132; 026166–026195; 026227–026236; 026248–026301; 026354–026363; 026375–026385; 026398–026417; 026439–026458; 026480–026517; 026557–026572; 026592–026633; 026677–026701; 026729–026761; 026796–026835; 026877–026909; 026944–026973; 027006–027030; 027057–027066; 027078–027100; 027124–027158; 027195–027209; 027226–027241; 027259–

5

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

027275; 027294–027311; 027329–027356; 027386–027430; 027476–027483; 027496–027510; 027527–027563; 027602–027631; 027663–027712; 027764–027780; 027799–027849; 027902–027931; 027963–027983; 028006–028016; 028029–028049; 028072–028084; 028101–028112; 028126–028140; 028157–028188; 028222–028251; 028283–028309; 028340–028378; 028419–028448; 028480–028499; 028521–028554; 028590–028619; 028651–028672; 028697–028748; 028802–028818; 028837–028856; 028878–028917; 028959–028986; 029016–029040; 029067–029078; 029092–029121; 029153–029174; 029198–029214; 029233–029250; 029270–029293; 029321–029336; 029354–029369; 029387–029404; 029424–029488; 029555–029564; 029576–029589; 029605–029618; 029634–029646; 029661–029680; 029702–029725; 029751–029770; 029792–029807; 029825–029841; 029860–029881; 029905–029937; 029972–030001; 030033–030049; 030068–030096; 030127–030157; 030190–030223; 030259–030279; 030302–030309; 030319–030348; 030379–030391; 030406–030439; 030475–030488; 030504–030513; 030526–030572; 030621–030631; 030644–030671; 030701–030705; 030722–030738.

9. Attached as **Exhibit 7** is a true and correct copy of email correspondence I sent to Plaintiffs' counsel the week preceding their unilateral dismissal of claims and requests to withdraw from representation.

10. Attached as **Exhibit 8** is a true and correct copy of email correspondence where counsel represented that the native files served in this case were the same as those submitted to the Agencies, which form the basis of the CMI claim. On October 29, 2025, Mr. Mu states "All the native photographs we disclosed previously contain the original IPTC metadata."

11. Attached as **Exhibit 9-1 to 9-7** are true and correct copies of Plaintiffs' supplemental interrogatory response in which they identify the native files already produced and the text files of the data contained in those native files as being the CMI submitted to the Defendant Agencies.

6

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

12.     Attached as **Exhibit 10-1** is a true and correct copy of an email message I sent to Judge Audero's Chambers, with Plaintiffs' counsel cc'ed. True and correct copies of the attachments are also included herein at **Exhibits 10-2** and **10-3a and 10-3b**. Exhibit 10-2, the Powerpoint presentation,  at slide 25, discloses the license fees for the sets then identified by Plaintiffs.   Exhibit 10-3a is a spreadsheet showing "Hollywood Uncovered's" activity  i.e. Mauvilain's activity as Emily Carter. Exhibit 10-3b is a spreadsheet showing Mauvilain's activity as a BackGrid contributor. Business records reflecting the license fees were served on December 10, 2025, and are attached hereto as **Exhibit 11.** After IDC 1, Plaintiffs were given three weeks of access to BackGrid's Confidential Client Portal, with limitations as stated in the Court's December 17, 2025 Order.  Attached as **Exhibit 12** are true and correct copies of business records produced showing the license fees for the additional sets identified by Plaintiffs after they were given access to the Confidential Client Portal. They were produced on January 29, 2026.

13.     Attached as **Exhibit 13** is a true and correct copy of the non-confidential portion of my deposition testimony I gave in this case.

14.     Attached as **Exhibit 14** is a true and correct copy of Exhibit 1 to my deposition.

15.     Attached as **Exhibit 15** is a true and correct copy of Exhibit 2 to my deposition.

16.     Attached as **Exhibit 16** is a true and correct copy of email correspondence I had with Plaintiffs' counsel. In that correspondence, I ask: "Can you please let us know what credit information the plaintiffs would like associated with these sets?  I have attached a spreadsheet, which includes the sets identified in the production. If you could simply include the exact credit your clients would like next to each set and the name of the photographer, we have no problem updating it, so long as your clients represent to us that they are indeed the authors/owners to the

7

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR
SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

same." Plaintiffs' counsel responded to my email message, but never responded to the substance of BackGrid's request.

17. Attached as **Exhibit 17** is a true and correct copy of email correspondence I had with Plaintiffs' counsel. Here, I state: "Now that you have identified all of the photos that are at issue in this lawsuit, we will ask you again whether your clients will represent and warrant that they are the photographers of the photos identified in the spreadsheet attached (that you created) and whether you would like us to update the credit information or not. If so, what should the credit be? Again, BackGrid USA has no obligation to credit your clients, and no contract term or industry practice required it to include credit information on its portal, but it is offering your clients this opportunity because it makes no difference to BackGrid USA one way or the other." Plaintiffs did not respond to this offer in substance.

18. Attached as **Exhibit 18** is a true and correct copy of Plaintiffs' Interrogatory responses.

19. Attached as **Exhibit 19** is a true and correct copy of Exhibit 3 to my deposition.

20. Attached as **Exhibit 20** is a true and correct copy of email correspondence sent from Plaintiffs regarding Kyndt's deposition scheduling and confirming that he had obtained a visa so that the deposition can go forward on June 12, 2026.

21. Attached as **Exhibit 21** is a true and correct copy of email correspondence sent from Plaintiffs representing that Kyndt's deposition cannot go forward because his visa had not been granted.

22. Attached as **Exhibit 22** are true and correct excerpts of Plaintiff Mauvilain's deposition transcript.

23. Attached as **Exhibit 23** are true and correct excerpts of Plaintiff Mazari's deposition transcript.

8

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

24. Attached as **Exhibit 24** are true and correct excerpts of Plaintiff Wolf's deposition transcript. Attached as **Exhibit 24-4 and 24-5** are Exhibits 4 and 5 from Wolf's deposition, respectively. Wolf's native files which he produced as files he submitted to the Agencies include IPTC data that includes Hans Castrop.

25. Attached as **Exhibit 25** are true and correct excerpts of Plaintiff Boutefeu's deposition transcript.

26. Attached as **Exhibit 26** are true and correct excerpts of Plaintiff Mehdi's deposition transcript.

27. Attached as **Exhibit 27** are true and correct excerpts of Plaintiff Duplaquet's deposition transcript.

28. Attached as **Exhibit 28** is a true and correct copy of a screenshot capturing the timestamp of when Mazari's deposition testimony, starting at 266:1 started. Because the certified transcript does not have a time stamp, I matched up the transcript, when Mazari was first questioned about the saving of files from the Confidential Client Portal with the video. The issue of violating the December 17 Order or saving the files from the portal had not been raised by Defendants to Plaintiffs or their counsel previously.

29. Attached as **Exhibit 29** are true and correct timesheets for this matter. My typical billing rate is $800 per hour, but I gave BackGrid a discount on my hourly fee for this matter. I understand that $800 is a typical, or even lower hourly rate for intellectual property litigators in this District. I am an adjunct professor at Loyola Law School, where I teach a Copyright litigation class. In the past, I have taught intellectual property classes at the University of Southern California, and University of California, Irvine. I currently serve as a member of the Board of Directors for the Federal Bar Association, Orange County Chapter, and have served as a member of the Board of Directors for the Los Angeles Intellectual Property Law Association.

9

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

30.     My colleagues Peter Afrasiabi, David Quinto and Evan Littman also billed time on this matter. Mr. Afrasiabi is a founding partner of One LLP. Mr. Afrasiabi is a nationally recognized intellectual property and appellate attorney at One LLP, known for representing clients in high-profile trademark, copyright, patent, and trade secret matters. He has been named a Top Intellectual Property and Entertainment Lawyer by Variety Magazine and has successfully handled significant appeals before federal and state courts across the country. Peter serves as Director of the Appellate Litigation Clinic at the University of California, Irvine School of Law and has taught advocacy through the National Institute for Trial Advocacy and Oxford University. A published author and frequent speaker, he has co-authored a leading advocacy book and is widely recognized for his contributions to legal education and appellate practice. His typical hourly rate is $950 per hour.

31.     David Quinto is a founding lawyer of Quinn Emanuel and has been practicing law for 43 years. He co-authors Trade Secrets: Law and Practice, which is published by Lexis Nexis and is on its 14th edition. Mr. Quinto served as a WIPO UDRP panelist since 2004, has been selected as Hollywood Reporter's Top 100 Power Lawyer and has been honored as a member of the Lawdragon 500 Leading Lawyers in America. His typical hourly rate is $900 per hour, although he has billed at substantially higher rates. Evan Littman also worked on this case. He is a first-year associate and typically bills at $350 per hour.

32.     I met and conferred about this motion with Ryan Carreon on June 22, 2026. I explained the substance of this motion, including all of the topics that were listed in my email requesting the call. Mr. Mu, who previously represented he would attend the call, did not. Mr. Sergenian did not attend the call. After I explained the basis of this motion, Mr. Carreon stated he had "nothing to say." Because Plaintiffs' counsel withdrew after the meet and confer call on June 22, 2026, I separately sent the written correspondence to the remaining pro se parties, Mr. Mauvilain and Mr. Mazari. I asked if they had anything to add to the discussion. Separately, when Mr.

10

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

Mauvilain and Mr. Mazari emailed me about deposition dates, I further explained to them why the case was frivolous and a waste of resources. I attached the motion to dismiss the Second Amended Complaint to my email message. They responded that they wished to proceed with depositions.  I sent another email message asking if they would like to further confer about the motion given that Defendants will seek dismissal of their claims.  Mauvilain and Mazari stated they wished to have a call, so we conferred telephonically on July 16, 2026. During the call, I explained the substance of the motion, as outlined in my previous email messages regarding the same. Mr. Mauvilain and Mr. Mazari denied wrongdoing.  Attached as Exhibit **30, 31, and 32** are true and correct copies of correspondence regarding the same.

I declare under penalty of perjury under the laws of the United States that the facts stated herein are true and correct.

Executed in Los Angeles, California

Date: July 31, 2026                                    /s/ Joanna Ardalan

                                            _____

                                            Joanna Ardalan

11

**DECLARATION OF JOANNA ARDALAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**