David A. Sergenian, SBN 230174
david@sergenianlaw.com
**SERGENIAN LAW, P.C.**
808 Wilshire Blvd., Suite 200
Santa Monica, CA 90401
Telephone: (213) 435-2035

Shengmao Mu, SBN 327076
smu@whitewoodlaw.com
**WHITEWOOD LAW, P.C.**
99 S. Alameda Blvd., Suite 600
San Jose, CA 95113
Tel.: (917) 858-8018

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIBAULT MAUVILAIN, an individual; HENRI MAZARI, an individual; JEREMY DUPLAQUET, an individual; ROBERT CHRISTIAN WOLF, an individual; MICHEL BOUTEFEU, an individual; STEPHAN KYNDT, an individual; and JOSEPH MEHDI, an individual, <br><br>            Plaintiffs, <br><br>    v. <br><br>FLYNET PICTURES, LLC, a California limited liability company; FAMEFLYNET INC., a California corporation; BACKGRID INC., a California corporation; BACKGRID USA, INC., a California corporation; SHUTTERSTOCK, INC., a Delaware corporation and DOES 1–10, inclusive, <br><br>            Defendants. | Case No. 2:25-cv-02757-FLA-MBKx <br><br>*Hon. Fernando L. Aenlle-Rocha* <br><br>**OPPOSITION TO MOTION FOR SANCTIONS ON BEHALF OF NON-PARTIES DAVID SERGENIAN, SHENGMAO MU, RYAN CARREON, SERGENIAN LAW P.C., AND WHITEWOOD LAW P.C.** <br><br>**Hearing Information** <br>Date:     August 28, 2026 <br>Time:    1:30 p.m. <br>Crtrm:   6B |

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    BOTH SANCTIONING AUTHORITIES IMPOSE EXACTING, INDIVIDUALLY SPECIFIC REQUIREMENTS...............................................2

    A.     Section 1927 Requires Personal Multiplication of Proceedings in Subjective Bad Faith ..........................................................................2

    B.     Inherent-Power Sanctions Require a Specific Finding of Bad Faith and Strict Causal Tailoring ............................................................3

III.   DEFENDANTS HAVE NOT ESTABLISHED SECTION 1927 LIABILITY .....3

    A.     Section 1927 Cannot Support Liability Against Plaintiffs or the Firms.......3

    B.     Defendants Do Not Identify Which Attorney Personally Committed Which Challenged Act................................................................................4

    C.     Defendants Do Not Identify Any Sanctionable Conduct Personally Attributable to Attorney Carreon ..............................................5

    D.     Defendants Do Not Identify Any Sanctionable Conduct Personally Attributable to Attorneys Sergenian or Mu ....................................8

    E.     *Caputo* Forecloses the Attempt to Substitute Association and Hindsight for Proof of Bad Faith............................................................10

    F.     Defendants Identify Only Ordinary Litigation Activity, Not Vexatious Multiplication of Proceedings...........................................12

IV.    DEFENDANTS' INHERENT-POWER THEORY FAILS FOR THE SAME REASONS ..........................................................................................13

    A.     Alleged Conduct by Plaintiff Mauvilain Cannot Be Imputed to Every Plaintiff and Attorney.............................................................13

    B.     The "Thousands of Instances of Contempt" Characterization Contradicts the Governing Discovery Order from the Magistrate Judge......................15

    C.     Defendants Cannot Use Inherent Authority to Avoid Rule 11's Substantive Safeguards ........................................................................16

    D.     Alleged Limited Damages Do Not Establish Vexatiousness or Improper Purpose....................................................................................17

- i -

V.      THE RELIEF REQUESTED IS UNSPECIFIED, UNALLOCATED, AND IMPERMISSIBLY PUNITIVE..................................................................................18

    A.    Defendants Have Failed to Provide Notice of the Amount Sought............18

    B.    Exhibit 29 to the Ardalan Declaration Affirmatively Demonstrates the Absence of Causal Allocation................................................................19

    C.    Joint and Several Liability Cannot Replace Individualized Findings ........20

    D.    Dismissal With Prejudice Is Unsupported ...................................................21

VI.     CONCLUSION .......................................................................................................21

OPPOSITION TO MOTION FOR SANCTIONS

## TABLE OF AUTHORITIES

**CASES**

*Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998)..................................................17

*Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004 (9th Cir. 2015)..................3

*Caputo ex rel. United States v. Tungsten Heavy Powder, Inc.,* 96 F.4th 1111
  (9th Cir. 2024)..................................................................3, 5, 9, 11, 12, 21

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)..................................................17

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001)..................................................4

*FTC v. Alaska Land Leasing, Inc.*, 799 F.2d 507 (9th Cir. 1986)..................................5

Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101 (2017) ...................................4, 20

*Guillory v. BackGrid USA, Inc.*, 2023 U.S. Dist. LEXIS 235599
  (C.D. Cal. Sept. 27, 2023) ..................................................................6

*Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290 (9th Cir. 2015).....................3, 4, 5

*In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431 (9th Cir. 1996)..............................3, 13

*Lake v. Gates*, 130 F.4th 1064 (9th Cir. 2025)..................................................3

*Porter v. Martinez*, 941 F.2d 732 (9th Cir. 1991) ..............................................22

*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644 (9th Cir. 1997) ........................4

*RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461
  (C.D. Cal. 2022) ..................................................................4, 18, 21

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ...........................................19

*Sneller v. City of Bainbridge Island*, 606 F.3d 636 (9th Cir. 2010)..............................5

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426 (9th Cir. 2017) ..............13

*Washington v. Wechsler*, 2024 U.S. Dist. LEXIS 206604 (C.D. Cal. Sept. 3, 2024)........4

*White v. Moore*, 2022 U.S. Dist. LEXIS 215076 (C.D. Cal. Sept. 21, 2022)...................4

*In re Yagman*, 796 F.2d 1165 (9th Cir. 1986)..................................................14

*Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir. 1986) ...................................13

**STATUTES**

28 U.S.C. § 1338(a) ..................................................................18

OPPOSITION TO MOTION FOR SANCTIONS

28 U.S.C. § 1927.................................................... 2, 3, 4, 5, 6, 7, 9, 12, 13, 19, 20, 21, 22

**RULES**

Fed. R. Civ. P. 11(b)...............................................................................17

Fed. R. Civ. P. 11(c)(2) ...........................................................................17

Fed. R. Civ. P. 37 ................................................................................10, 11

Fed. R. Civ. P. 37(a)...........................................................................16, 17

Fed. R. Civ. P. 37(b)..................................................................................2

Fed. R. Civ. P. 37(e) ..........................................................................17, 18

C.D. Cal. L.R. 7-3......................................................................................20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.......................17, 18

OPPOSITION TO MOTION FOR SANCTIONS

Non-parties David Sergenian, Shengmao Mu, and Ryan Carreon, and their firms, Sergenian Law PC, and Whitewood Law PC,[1] file this Opposition to Defendants Back-Grid USA, Inc., BackGrid Inc., and Shutterstock Inc.'s Motion for Sanctions.

## I.   INTRODUCTION

Defendants have not filed a targeted sanctions motion. They have filed an omnibus grievance catalog.

The Motion collects nearly every merits dispute, discovery disagreement, scheduling issue, and accusation arising during this litigation; repeatedly attributes them to "Plaintiffs and counsel" as an undifferentiated group; and then seeks the most sweeping relief available: dismissal with prejudice and joint and several liability for an unspecified amount of attorneys' fees against seven Plaintiffs, three attorneys, and two law firms.

That is not how sanctions work. Neither 28 U.S.C. § 1927 nor the Court's inherent authority permits sanctions by association. Defendants must prove, separately as to each proposed sanctionee, what that person did, what that person knew, why the conduct reflected the required bad faith, what proceeding the conduct unreasonably multiplied, and what excess fees would not have been incurred but for that conduct. The Motion does not perform that analysis.

Instead, it relies on collective labels and unsupported inferences. Defendants concede that they do not know what Plaintiffs told counsel, yet ask the Court to infer that every attorney knew every fact known to every client. They treat disputed legal theories as necessarily frivolous, limited actual damages as evidence of improper purpose, and an alleged breach of a discovery agreement as "thousands of instances of contempt," despite an order expressly providing that the agreement was not enforceable through Rule 37(b) sanctions. They then append an entire-case time report containing 696.7 hours but never

---

[1] As of June 12, 2026, listed counsel no longer represents any of the current or former Plaintiffs in this action (*see* Dkts. 113–119, 121–124) and this Opposition is not filed on their behalf. Although Defendants' Motion purports to move against counsel and "against each of the Plaintiffs," undersigned counsel is not authorized to accept service on behalf of any Plaintiff.

state the amount of sanctions sought or connect any time entry to any particular individual or act.

Alleged misconduct by one Plaintiff does not establish that six other Plaintiffs, three attorneys, and two firms acted in subjective bad faith. Defendants' attempt to spread responsibility across everyone associated with the case is precisely what the governing standards forbid.

The Motion should be denied.

## II.   BOTH SANCTIONING AUTHORITIES IMPOSE EXACTING, INDIVIDUALLY SPECIFIC REQUIREMENTS

### A.   Section 1927 Requires Personal Multiplication of Proceedings in Subjective Bad Faith

Section 1927 is not a prevailing-party fee provision. Nor does it authorize reimbursement of every fee incurred in defending a case that ultimately proves unsuccessful. It applies only when an individual attorney personally "multiplies the proceedings" both "unreasonably and vexatiously." 28 U.S.C. § 1927.

The Ninth Circuit requires a finding of subjective bad faith. Bad faith may be shown when an attorney knowingly or recklessly advances a frivolous position, or advances a meritorious position for the purpose of harassment. *Caputo ex rel. United States v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1153–55 (9th Cir. 2024). Frivolousness alone is insufficient. *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436–37 (9th Cir. 1996); *accord Lake v. Gates*, 130 F.4th 1064, 1070–71 (9th Cir. 2025) (a § 1927 sanction "must be supported by a finding of subjective bad faith" (quoting *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015))). Sanctions under § 1927 are "an extraordinary remedy, one to be exercised with extreme caution." *Keegan*, 78 F.3d at 437.

The statute is also personal and incremental. It applies only to individual attorneys who personally multiply proceedings, not to clients or law firms. *Caputo*, 96 F.4th at 1153–54; *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293–95 (9th Cir. 2015).

- 2 -

And it permits recovery only of the "excess" fees incurred "because of" the specific vexatious conduct identified. 28 U.S.C. § 1927.

**B.     Inherent-Power Sanctions Require a Specific Finding of Bad Faith and Strict Causal Tailoring**

The Court's inherent authority is potent and therefore must be exercised with restraint. Monetary sanctions require a specific finding that the particular respondent acted in bad faith or engaged in conduct tantamount to bad faith. Mere negligence is insufficient. Recklessness alone is also insufficient unless accompanied by frivolousness, harassment, or an improper purpose. *Fink v. Gomez*, 239 F.3d 989, 991–94 (9th Cir. 2001); *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648–50 (9th Cir. 1997).

The resulting award must be compensatory, not punitive. The Court may shift only those fees that would not have been incurred but for the identified bad-faith conduct. A temporal relationship is not enough. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–10 (2017) (reversing an entire-case fee award even though the underlying discovery misconduct was extensive and deliberate because the lower court had not causally tied the award to the misconduct).

This Court's own decisions reflect the same restraint. *See White v. Moore*, 2022 U.S. Dist. LEXIS 215076, at *4 (C.D. Cal. Sept. 21, 2022) (denying § 1927 sanctions in their entirety where the movant presented no facts suggesting recklessness or bad faith); *Washington v. Wechsler*, 2024 U.S. Dist. LEXIS 206604 (C.D. Cal. Sept. 3, 2024) (denying sanctions and disqualification motions); *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 529 (C.D. Cal. 2022) (Audero, M.J.) (recommending denial of § 1927 and inherent-power sanctions notwithstanding serious discovery misconduct), *adopted*, 2022 U.S. Dist. LEXIS 200121 (C.D. Cal. Nov. 2, 2022).

**III.   DEFENDANTS HAVE NOT ESTABLISHED SECTION 1927 LIABILITY**

**A.     Section 1927 Cannot Support Liability Against Plaintiffs or the Firms**

Under black-letter Ninth Circuit law, Section 1927 does not authorize sanctions against any Plaintiff, Sergenian Law PC, or Whitewood Law PC. *Kaass Law*, 799 F.3d at

- 3 -

OPPOSITION TO MOTION FOR SANCTIONS

1293–95. *Caputo* likewise states that § 1927 "does not apply to law firms, clients, corporations, or other entities." *Caputo*, 96 F.4th at 1153. Recovery under § 1927 lies "only from an attorney or otherwise admitted representative of a party." *FTC v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986) (emphasis omitted); *accord Sneller v. City of Bainbridge Island*, 606 F.3d 636, 640 (9th Cir. 2010) (reversing sanction imposed jointly on counsel and client because "§ 1927 authorizes sanctions only upon counsel").

Thus, to the extent that Defendants seek § 1927 sanctions against any Plaintiff, Sergenian Law PC, or Whitewood Law PC, that request is unequivocally barred by clear and extensive Ninth Circuit case law.

**B.      Defendants Do Not Identify Which Attorney Personally Committed Which Challenged Act**

Section 1927 also does not impose vicarious liability among co-counsel. The fact that several attorneys appeared for the same clients does not make each responsible for every pleading, discovery response, client statement, or scheduling communication.

Despite making sweeping allegations of misconduct, the Motion does not establish which attorney knew of Mauvilain's alleged use of the "Emily Carter" account; when that attorney acquired such knowledge; whether or which attorney knew that any particular native file had been altered; whether or which attorney directed or participated in the alleged downloading of portal materials; whether or which attorney knowingly made a false factual representation; whether or which attorney continued advocating a specific position after learning that it lacked any factual or legal basis; or which excess fees were caused by which specific alleged conduct.

Defendants admit that they "cannot know whether Plaintiffs informed their counsel of the fraud." Mot. at 15. That concession is not a minor evidentiary gap. It concerns the central element of their claim against counsel. Defendants do not know what counsel knew, yet ask the Court to assume knowledge and bad faith because counsel represented

the clients. Section 1927 requires evidence, not the most adverse inference Defendants can construct.[2]

The Ardalan declaration does not cure the problem. It asserts that Plaintiffs were "incentivized" to delay production and "likely" knew that their alleged conduct would be discovered. Ardalan Decl. ¶ 3. Those are litigation arguments and unfounded inferences about other persons' mental states, not facts within Ardalan's personal knowledge.

**C.     Defendants Do Not Identify Any Sanctionable Conduct Personally Attributable to Attorney Carreon**

Attorney Carreon joined Whitewood Law in April 2025, shortly before entering his appearance on April 23, 2025. Declaration of Ryan E. Carreon ("Carreon Decl.") ¶¶ 2–4. The original Complaint was filed on March 28, 2025, and the First Amended Complaint was filed on April 10, 2025. *See* Dkts. 1, 21. Attorney Carreon therefore had no role in the pre-suit investigation or in preparing or filing either pleading because he was not employed by Whitewood Law at the time. *See* Dkt. 29 (First appearance of Attorney Carreon).

Likewise, Attorney Carreon did not sign the Second Amended Complaint. Dkt. 80. Defendants offer no declaration, communication, billing record, or testimony showing that Attorney Carreon formulated, reviewed, or approved any theory in that pleading. Yet Defendants attack the pleadings through generalized references to "counsel," without

---

[2] Defendants cannot satisfy their sanctions burden by asking the Court to accept their counsel's unsupported factual narrative at face value. That is particularly true because, in a prior action before this same Court, Defendants' counsel Joanna Ardalan sought to disqualify opposing counsel based on representations the Court found were "at best inaccurate or, worse, misleading," prompting an order to show cause why sanctions should not issue. *Guillory v. BackGrid USA, Inc.*, No. 2:22-cv-06185-FLA-RAOx, 2023 U.S. Dist. LEXIS 235599, at *12 (C.D. Cal. Sep. 27, 2023) (Aenlle-Rocha, J.). Against that backdrop, counsel's characterizations are not entitled to any presumption of accuracy and cannot substitute for competent evidence of sanctionable conduct.

OPPOSITION TO MOTION FOR SANCTIONS

identifying any allegation, legal theory, or representation that Attorney Carreon personally drafted, approved, or advocated. *See* Mot. at 8–13, 18, 21. They simply treat his appearance as sufficient.

The exhibits cited by Defendants reinforce that absence of individualized proof. First, the October 2025 metadata communications were not authored by Attorney Carreon. Attorney Carreon was copied but made no representation in the email chain. Ardalan Decl. ¶ 10 & Ex. 8 at 2–3. Defendants nevertheless attribute these statements indiscriminately to "counsel." *See* Mot. at 15–17. Being copied on another attorney's email does not establish that the copied individual supplied the underlying information, adopted the representation, or knew whether it was accurate.

Second, the supplemental interrogatory responses were signed by other attorneys and verified by the individual Plaintiffs. Ardalan Decl. ¶ 11 & Exs. 9-1 through 9-7. Defendants do not identify any response signed by Attorney Carreon or offer evidence that he drafted, reviewed, approved, or personally vouched for the challenged statements. *See* Mot. at 15–17. His appearance in certain counsel identification blocks does not establish the knowledge or personal participation required for § 1927 liability.

Third, Attorney Carreon's response when Defendants first raised broad accusations concerning metadata and alleged spoliation demonstrates diligence, not bad faith. Defendants demanded a substantive response concerning multiple Plaintiffs, six recent depositions, document collections, metadata, and written discovery on short notice. Ardalan Decl. ¶ 9 & Ex. 7 at 6–7. Attorney Carreon responded that counsel had received only two of the six deposition transcripts, needed a reasonable opportunity to review the testimony and client-specific facts, and requested the particular testimony and transcript citations on which Defendants relied. *Id*. at 6. He further proposed addressing the issues initially in writing so there would be a clear record of the parties' positions. *Id*. That was a measured response to serious, client-specific accusations based substantially on Defendants' characterizations of incomplete deposition testimony. It did not multiply any proceeding.

- 6 -

OPPOSITION TO MOTION FOR SANCTIONS

Fourth, Defendants' reliance on Attorney Carreon's statement during the June 22, 2026 meet-and-confer that he had "nothing to say" proves nothing. Ardalan Decl. ¶ 32 & Ex. 30 at 2. By then, multiple Plaintiffs had been dismissed from the case and all of Plaintiffs' attorneys had withdrawn. Declining to debate an anticipated sanctions motion during a meet-and-confer did not cause a filing, deposition, hearing, or other multiplication of proceedings. Nor does the Motion identify any excess fee incurred because Attorney Carreon declined to provide an oral response.

Finally, the Kyndt visa issue does not change the analysis or establish subjective bad faith. On May 14, 2026, Attorney Carreon reported that Kyndt had a visa appointment the following day and would be available if the visa was obtained. Ardalan Decl. ¶ 20 & Ex. 20 at 5–7. On May 15, 2026, Attorney Carreon reported that Kyndt's visa had been approved. *Id.* at 2. This representation was based on documentation provided by Kyndt reflecting that the visa had been approved. Carreon Decl. ¶¶ 5–8 & Ex. A. Shortly before his flight, Kyndt went online to check his visa status to ensure that his paperwork was properly in order and discovered that the visa status had been changed and that the visa was denied. Carreon Decl. ¶¶ 9–10, Ex. B. In his email to counsel, Kyndt stated that he "hadn't received anything official" and only discovered the issue when he proactively checked the visa status portal. Carreon Decl., Ex. B. On June 11, 2026, Attorney Sergenian notified Defendants' counsel in writing that the visa had not been granted, took the deposition off calendar, and apologized in the same email for the late notice. Ardalan Decl. Ex. 21; Carreon Decl. ¶ 11. It multiplied nothing: Kyndt dismissed his claims without prejudice the following day, mooting the deposition entirely.

Defendants characterize this sequence as a "misrepresent[ation]" by counsel, but their cited materials include no declaration from Kyndt, visa record, communication to Attorney Carreon, or other evidence showing bad faith. *See* Mot. at 22; Ardalan Decl. ¶¶ 20–21 & Exs. 20–21. That record does not establish that Attorney Carreon (or any of Plaintiffs' counsel) knowingly made a false statement on May 15, and indeed the documentation provided to Attorney Carreon reflects the same information Attorney Carreon

- 7 -

conveyed. Nor do Defendants identify a proceeding Attorney Carreon (or any of Plaintiffs' counsel) allegedly multiplied because of the statement or segregate any resulting expense. A communication based on client-supplied information, without proof of knowledge or improper purpose, does not satisfy § 1927. The omission of both culpable knowledge and causal allocation of alleged excess costs independently defeats sanctions on this ground.

D.     **Defendants Do Not Identify Any Sanctionable Conduct Personally Attributable to Attorneys Sergenian or Mu**

The October 2025 emails cited in Sections IV.C through IV.E of the Motion do not support sanctions against Attorney Sergenian or Attorney Mu. Attorney Mu wrote both emails; Attorney Sergenian was copied and made no representation. Ardalan Decl. ¶ 10 & Ex. 8. The Motion also misquotes the October 14 email by omitting a crucial sentence. The full sentence reads: "In terms of the native files, *my understanding after my communication with Plaintiffs* is that they are the photos that were submitted to the agencies, there should be no name change from Plaintiffs but I will get back to you with responses from each one of them." Ardalan Decl. Ex. 8 (emphasis added). The Motion omits the italicized language. Mot. at 15. The full sentence shows that Attorney Mu told Ardalan his information came from the clients and that he would confirm it with each of them. An attorney who repeats what his clients told him, identifies his clients as the source of information, and promises to have the clients confirm the information has not knowingly misrepresented anything. Each Plaintiff then verified the same information in supplemental interrogatory responses. Ardalan Decl. Exs. 9-1 through 9-7. Defendants offer no evidence that either attorney knew or had reason to believe otherwise, and by Ardalan's own sworn account, no question concerning the files was raised with counsel or Plaintiffs until May 20, 2026. Ardalan Decl. ¶ 8. Attorney Mu and Attorney Sergenian are in the same position as the attorney the Ninth Circuit declined to sanction in *Caputo*. *Caputo*, 96 F.4th at 1119–20, 1156–57.

OPPOSITION TO MOTION FOR SANCTIONS

Defendants also describe the three joint stipulations as one dispute served three times. Mot. § IV.H. The record shows the issues were successively narrowed. Magistrate Judge Audero relieved Defendants of responding to the first stipulation and took up the disputes at an informal discovery conference. Dkt. 94; Sergenian Decl. ¶ 5. The second joint stipulation, served May 14, was accompanied by a cover email offering to remove any of seven identified items if Defendants performed by May 19—the very opportunity to perform Defendants now say they were denied. When Defendants' portion had not arrived by the evening of May 21, Attorney Sergenian stated his computation of the seven-day response deadline in writing, filed the stipulation at 8:55 p.m., and received Defendants' portion by email at 11:47 p.m. that night: too late to file in time to be heard by Magistrate Judge Audero. Plaintiffs withdrew the motion on June 1, after the Court continued the discovery cutoff (Dkt. 109) and Magistrate Judge Audero invited a Rule 37 motion on the remaining dispute (Dkt. 108). Sergenian Decl. ¶¶ 8–10 & Exs. B–C, H; Dkts. 106, 110. The third joint stipulation presented only what remained at impasse since at least May 9, including the Boris Nizon custodian question Magistrate Judge Audero authorized the parties to brief. Dkt. 108; Sergenian Decl. ¶¶ 6, 11 & Exs. A, D. Defendants do not identify the "misrepresentations" they attribute to the second joint stipulation, stating only that they were "outlined in Defendants' response," a document Defendants served but never filed. Mot. at 19–20.

The Motion's description of the third joint stipulation as "improper and frivolous" and as an attempt to "take advantage of Judge Audero's retirement" is refuted by the docket and by Ardalan's own correspondence. The third joint stipulation was served after Magistrate Judge Audero ordered that Plaintiffs "may file a discovery motion pursuant to Federal Rule of Civil Procedure 37" and found "that the parties have satisfied their pre-motion meet-and-confer obligations." Dkt. 108. Plaintiffs served their portion on June 1, 2026; Ardalan delivered Defendants' portion on June 8; and on June 10 she wrote: "I am out of the country on July 2. Please push the date to July 9. If you do that, *you may add my signature and file*." Sergenian Decl. ¶¶ 11–13 & Exs. D–E (emphasis added). The

- 9 -

OPPOSITION TO MOTION FOR SANCTIONS

stipulation filed on June 12 was fully joint, contained Defendants' portion, bore the electronic signature Ardalan had authorized in writing two days earlier, and was set for hearing on July 8 because newly assigned Magistrate Judge Kaufman hears discovery motions on Wednesdays. A Rule 37 motion filed on a Magistrate Judge's express invitation, with opposing counsel's own written authorization, cannot be "improper," much less evidence of subjective bad faith.

The Motion also faults Plaintiffs for deposing Defendants' litigation counsel. However, Ardalan appeared voluntarily, on a date she provided, after agreeing that a subpoena was unnecessary, and she defined the deposition's purpose herself: "the purpose of the deposition is to find out my testimony with respect to the phone conversation I had with Virginia [sic] Parant." Sergenian Decl. ¶¶ 15–16 & Exs. F–G. That testimony went to a fact alleged in the operative pleadings—whether Parant gave notice terminating Defendants' permission to license Plaintiffs' works—and it was evasive. Asked whether she remembered Parant revoking Defendants' permission, Ardalan answered: "No"; asked whether it was possible Parant stated it, Ardalan answered: "I highly doubt that that would be the case"; pressed on whether she was "100 percent sure," Ardalan became certain: "She didn't state it." Ardalan Dep. (Sergenian Decl. Ex. G) 72:2–19; *see id.* 72:20–73:7. She thus disputed the assertion in the pleadings, making the termination question one of credibility between Parant and Ardalan—a dispute that cannot be resolved, much less declared frivolous, on the declarations submitted.

### E.    *Caputo* Forecloses the Attempt to Substitute Association and Hindsight for Proof of Bad Faith

The Ninth Circuit's decision in *Caputo* provides a direct and unusually powerful comparison.

There, one attorney was primarily responsible for researching and drafting an appellate opening brief, a petition for rehearing, and an opposition to sanctions. She personally submitted frivolous arguments, failed to investigate available records adequately, re-

- 10 -

OPPOSITION TO MOTION FOR SANCTIONS

peated a theory after both the district court and Ninth Circuit had questioned it, and ultimately "quadrupled down" on that theory. The Ninth Circuit stated that the attorney should have exercised "considerably greater care" but declined to sanction her. *Caputo*, 96 F.4th at 1119–20.

The dispositive distinction was knowledge. The attorney did not personally know the critical facts known to the client and other attorneys. Those individuals had withheld relevant information from her, and she relied on what they told her. Her investigation may have been incomplete, and her filings contained inaccurate and frivolous assertions, but the evidence did not establish the subjective bad faith necessary under § 1927. *Id.* at 1120, 1156–57.

By contrast, the attorneys sanctioned in *Caputo* personally knew facts that contradicted the position being advanced. They recycled a prior filing by changing an affidavit date, failed to disclose earlier affidavits directly contradicting the "new evidence" theory, approved filings despite their knowledge, and repeatedly caused the same false theory to be litigated through reconsideration, appeal, rehearing, sanctions proceedings, and an evidentiary hearing. *Id.* at 1120, 1154–58.

Even then, the court did not lump counsel together. It allocated different maximum percentages to the three culpable attorneys based on their individual knowledge and roles, while imposing no monetary sanction against one of the attorneys. *Id.* at 1158.

The contrast here is stark. Defendants have not shown that Attorneys Sergenian, Mu, or Carreon possessed the client-specific knowledge held by the sanctioned attorneys in *Caputo*. They have not shown that they knowingly made false representations, concealed contrary documents, or repeated a position they personally knew was false.

If the attorney who personally drafted and repeatedly submitted the frivolous arguments in *Caputo* could not be sanctioned absent evidence of personal knowledge or recklessness, Attorneys Sergenian, Mu, and Carreon cannot be sanctioned merely because they appeared as co-counsel in the case and advanced reasonable litigation positions.

OPPOSITION TO MOTION FOR SANCTIONS

### F.    Defendants Identify Only Ordinary Litigation Activity, Not Vexatious Multiplication of Proceedings

Under § 1927, the statutory question is not whether Plaintiffs ultimately prevail. It is whether a particular attorney unreasonably and vexatiously multiplied proceedings.

The Motion largely identifies ordinary litigation conduct: amending pleadings after dismissal with leave to amend, opposing a motion to dismiss, pursuing disputed legal theories, serving discovery, seeking discovery conferences, and taking depositions. Defendants may believe those decisions were misguided, but that does not make them sanctionable.

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426 (9th Cir. 2017), illustrates the necessary specificity that Defendants' Motion lacks. There, the Ninth Circuit reversed sanctions based on one unsuccessful legal argument because the position was not frivolous. It affirmed a separate, narrow award only because counsel continued pursuing an actual-damages claim after discovery conclusively established that no evidence supported it, thereby causing identifiable depositions and expert work. *Id.* at 442–44.

Defendants conduct no comparable analysis. They do not identify the date on which each attorney supposedly acquired information making a particular claim indisputably frivolous, the specific filing made after that date, or the additional motion, deposition, or hearing caused by that filing. Instead, they contend that the entire lawsuit was "dead on arrival" and therefore every defense fee should be shifted. That is ordinary prevailing-party reasoning dressed up as § 1927.

The filing of the original Complaint cannot support § 1927 sanctions in any event because commencing an action does not multiply an existing proceeding. *Keegan*, 78 F.3d at 435. This is because § 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun." *Id.*; *see also Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986) (noting that under § 1927, "the multiplication of proceedings is punished, thus placing initial pleadings beyond [§ 1927's] reach."). Pre-suit client conduct likewise is not post-commencement multiplication by an attorney because it necessarily did not

- 12 -

cause multiplication of an existing proceeding. *See In re Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986) ("It is only possible to multiply or prolong proceedings after the complaint is filed."). Defendants must identify specific *post-filing* conduct by a particular attorney that caused otherwise unnecessary proceedings. They have not done so.

## IV. DEFENDANTS' INHERENT-POWER THEORY FAILS FOR THE SAME REASONS

### A. Alleged Conduct by Plaintiff Mauvilain Cannot Be Imputed to Every Plaintiff and Attorney

Defendants' principal misconduct allegation concerns Mauvilain's use of the fictitious identity "Emily Carter" to obtain access to BackGrid's Confidential Client Portal. Mot. at 4, 15; Ardalan Decl. ¶¶ 3–6; Kantif Decl. ¶ 10. Mauvilain acknowledged at deposition that "Emily Carter" was a fictional character and that he used that identity when requesting portal access. Ardalan Decl. Ex. 22 (Mauvilain Dep.) at 172:3–173:16. That evidence may warrant scrutiny of Mauvilain's own conduct, but it does not establish that any other Plaintiff knew how he obtained the access, authorized the representation to BackGrid, or participated in creating or using the fictitious identity. Nor does it establish that any attorney knew of that conduct when the original or First Amended Complaint were filed.

Indeed, Defendants expressly concede that they "cannot know whether Plaintiffs informed their counsel of the fraud." Mot. at 15. They nevertheless contend that counsel either lacked evidence of infringement or "likely" concealed how that evidence was obtained, and argue that "[e]ither path supports sanctions." *Id.* That is not a factual showing of attorney bad faith. It is speculation expressly predicated on Defendants' acknowledged lack of knowledge.

The Ardalan declaration does not bridge that gap. Ardalan asserts that Mauvilain collected evidence "on behalf of himself and the other Plaintiffs" and that "Plaintiffs" were incentivized to delay production, "likely knowing" the alleged conduct would be discovered. Ardalan Decl. ¶ 3. But the declaration identifies no communication in which

any other Plaintiff authorized Mauvilain to use a fictitious identity, no testimony that another Plaintiff knew how he obtained access, and no evidence that Mauvilain disclosed that conduct to counsel. *See id.* ¶¶ 3–6. The statements concerning the other Plaintiffs' knowledge and motives are conclusions, not facts shown to be within Ardalan's personal knowledge.

The remaining deposition excerpts likewise concern particular individuals and particular files, not collective misconduct. For example, Defendants rely on Wolf's testimony that Mauvilain instructed him regarding the sequence of commands and screenshots used to identify his photographs and that Wolf used a drag-and-drop process. Mot. at 21; Ardalan Decl. Ex. 24 (Wolf Dep.) at 215:2–15. Even accepting Defendants' characterization, that testimony does not establish that Wolf knew how Mauvilain originally acquired the "Emily Carter" credentials, that Wolf participated in the alleged pre-suit deception, or that any attorney directed or knew of Wolf's use of the portal in the manner described. Defendants' own declaration states that the alleged downloading violation was not raised with Plaintiffs or counsel until May 20, 2026. Ardalan Decl. ¶¶ 8, 28.

Defendants' metadata allegations are similarly plaintiff-specific. They cite Wolf's testimony that he could not explain why the name "Hans Castorp" appeared in metadata associated with certain files. Mot. at 16–17; Ardalan Decl. Ex. 24 (Wolf Dep.) at 154:16–19, 184:13–15, 196:20–197:3, 200:9–201:24, 204:11–22. An unexplained metadata issue involving Wolf's files does not establish that the other six Plaintiffs altered evidence or that counsel knew of, directed, or participated in any alteration. The Motion supplies no evidence connecting that metadata to any act or knowledge of counsel.

Likewise, Duplaquet testified that he was not sure what accounted for the December 2024 metadata date on a file he produced, and expressly denied that Mauvilain instructed him either to change the metadata or to remove the metadata date. Ardalan Decl. Ex. 27 (Duplaquet Dep.) at 169:4–23. Duplaquet later testified that he may have added an address to some files, denied altering the files, and denied adding metadata other than

- 14 -
OPPOSITION TO MOTION FOR SANCTIONS

an address. *Id.* at 173:15–19, 177:8–11, 178:11–19. Defendants characterize that testimony as evidence of "spoliation," Mot. at 17, but it does not implicate the other Plaintiffs and says nothing about what any attorney knew or did.

The evidentiary distinctions matter. The fictitious-account allegation concerns Mauvilain. The drag-and-drop testimony concerns Wolf and Mauvilain. The "Hans Castorp" metadata concerns Wolf's files. The address metadata concerns Duplaquet's files. Yet Defendants repeatedly convert these separate allegations into accusations against "Plaintiffs and counsel" collectively and request joint and several sanctions against everyone associated with the case. Mot. at 14–17, 20–23.

Defendants repeatedly bridge these evidentiary gaps with phrases such as "likely," "we have to assume," and "perhaps." Assumptions may support advocacy. They cannot support explicit findings of subjective bad faith against twelve different respondents. The Court cannot make the explicit, respondent-specific findings of subjective bad faith required for inherent-power sanctions by aggregating unrelated conduct, imputing one Plaintiff's knowledge to the others, or imputing client conduct to counsel without evidence that counsel knew of or participated in it. At most, Defendants have identified factual disputes concerning particular Plaintiffs and particular documents. They have not established collective bad faith.

**B. The "Thousands of Instances of Contempt" Characterization Contradicts the Governing Discovery Order from the Magistrate Judge**

Defendants' most extreme rhetoric concerns the December 17, 2025 Discovery Order. Dkt. 66. Defendants contend that each photograph generated three separate acts of contempt, producing "thousands of instances."

The Discovery Order says otherwise. Paragraph 5 expressly provides that it "does not constitute an order to permit or provide discovery such that its violation would be subject to" sanctions. It directs the parties to enforce the agreement through a Rule 37(a) motion to compel. Dkt. 66 ¶ 5.

OPPOSITION TO MOTION FOR SANCTIONS

Defendants identify no later Rule 37(a) motion or order compelling compliance with the disputed obligation and no subsequent violation of such an order. Their effort to recast an alleged breach of an agreement as thousands of contempt violations disregards the Magistrate Judge's express limitation.

The Order does not necessarily immunize independently proven bad-faith misconduct from every exercise of inherent authority. But it defeats Defendants' premise that the mere saving, production timing, or designation of each file was itself contempt of court. To obtain inherent-power sanctions, Defendants must independently prove who did what, who knew it was prohibited, and how it abused the judicial process.

Defendants also concede that they did not raise the asserted downloading violation with Plaintiffs or counsel until May 20, 2026. Ardalan Decl. ¶¶ 8, 28. That concession undermines any claim that counsel knowingly persisted in violating Defendants' interpretation of the Order before receiving notice.

## C.    Defendants Cannot Use Inherent Authority to Avoid Rule 11's Substantive Safeguards

Much of the Motion attacks the factual and legal sufficiency of the Complaint, First Amended Complaint, and Second Amended Complaint. Those are classic Rule 11 issues. Rule 11 applies to factual contentions, legal theories, improper purpose, and the adequacy of pre-filing inquiry, and it includes a mandatory 21-day safe harbor. Fed. R. Civ. P. 11(b), (c)(2); *Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998). Defendants cannot obtain the practical equivalent of Rule 11 sanctions while avoiding the mandatory safe-harbor provision merely by relabeling an allegedly deficient pleading as inherent-power bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (courts "ordinarily should rely on the Rules rather than the inherent power").

The rest of the Motion is plagued by similar improper attempts to use inherent authority. The alleged loss or alteration of electronically stored information is governed by Rule 37(e), whose advisory committee note forecloses resort to inherent authority to determine when such measures should be used. Fed. R. Civ. P. 37(e) advisory committee's

OPPOSITION TO MOTION FOR SANCTIONS

note to 2015 amendment; *see RG Abrams*, 342 F.R.D. at 539. Defendants never moved under Rule 37(e). Defendants have had available to them a mechanism to address alleged harm from access of the client portal since January 16, 2026, when they announced that the conduct "will be subject to a counterclaim against each of your clients when we answer." Ardalan Decl. Ex. 1. No responsive pleading has come due—Defendants' motion to dismiss remains pending—and no counterclaim has been filed. The Motion thus asks the Court to adjudicate an unpled counterclaim on declarations, against two pro se parties and five dismissed Plaintiffs, without the protections any proper vehicle would afford.

Defendants' repeated assertion that they told Plaintiffs the claims lacked merit proves only that the parties disagreed. An opponent's insistence that a claim is frivolous does not establish that the claim actually was frivolous or that counsel subjectively knew it was frivolous. Otherwise, every forceful meet-and-confer letter would manufacture the scienter necessary for later sanctions.

### D.    Alleged Limited Damages Do Not Establish Vexatiousness or Improper Purpose

Defendants repeatedly invoke their estimate that actual damages totaled less than $3,000 and describe the case as appropriate for small claims court. That rhetoric is legally misplaced.

Federal copyright jurisdiction does not require a minimum amount in controversy. *See* 28 U.S.C. § 1338(a). Copyright plaintiffs may pursue actual damages, statutory remedies where available, injunctive relief, declaratory relief, and other nonmonetary relief. A dispute does not become vexatious merely because a defendant believes its monetary value is modest.

Nor could Defendants conclusively end the controversy by sending payments[3] calculated according to their own view of the case. The availability of statutory damages,

_____

[3] Defendants openly concede that they licensed a number of Plaintiffs' photographs without remitting payment to the Plaintiffs. Kantif Decl. ¶¶ 5–6, 8. This supports Plaintiffs'

- 17 -

OPPOSITION TO MOTION FOR SANCTIONS

the existence and scope of any license, conditions on that license, alleged CMI removal, and entitlement to nonmonetary relief remain disputed issues. Whether Plaintiffs were correct is a merits question. It is not proof that counsel litigated in subjective bad faith.

Section 1927 is in any event "concerned only with limiting the abuse of court processes," not with the equities or value of the underlying dispute. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). And Defendants' own declarant confirms the factual core of the claims: BackGrid ingested the Flynet and FameFlyNet archives under "a placeholder contributor code," "did not receive clear records on the contributors," licensed the archived sets while holding the collected funds "in a separate FameFlyNet contributor account," and paid Plaintiffs for the sets at issue only "on or around March 18, 2026"—nearly a year into this lawsuit, after the works were identified through discovery. Kantif Decl. ¶¶ 5–6, 8. A case whose central factual premise the movants' own declarant corroborates was not frivolous, and the payment chronology answers the "small claims" refrain: identification and payment happened because of this litigation.

## V. THE RELIEF REQUESTED IS UNSPECIFIED, UNALLOCATED, AND IMPERMISSIBLY PUNITIVE

### A. Defendants Have Failed to Provide Notice of the Amount Sought

Defendants' Notice of Motion says Defendants seek attorneys' fees "as outlined" in paragraphs 29 through 31 of the Ardalan declaration. However, those paragraphs do not state an amount. They identify Exhibit 29 as timesheets and provide counsel's "typical" billing rates, while acknowledging that Ardalan charged an unspecified discounted rate. The billing records do not disclose the actual rates charged in this matter; the total dollar amount sought; the amount attributed to each alleged act; the amount sought from each proposed sanctionee; or the calculation supporting joint and several liability.

---

central theory of the case that Defendants mismanaged Plaintiffs' intellectual property and acted without Plaintiffs' authorization and is further evidence that Plaintiffs had a good-faith basis to bring this action.

The proposed order submitted with Defendants' Motion also leaves the sanctions amount blank.

Exhibit 30 to the Ardalan Declaration confirms that the Local Rule 7-3 notice was no more specific. It described eight broad subjects, introduced them as "includ[ing], but … not limited to," and disclosed no amount, rates, hours, allocation, or causal theory.

Due process requires meaningful notice of both the conduct alleged to be sanction-able and the authority and relief under consideration. A proposed sanctionee cannot mean-ingfully challenge reasonableness, causation, proportionality, or ability to pay when the movant never identifies the award it seeks.

At minimum, no monetary award can be entered on the present record.

**B.    Exhibit 29 to the Ardalan Declaration Affirmatively Demonstrates the Absence of Causal Allocation**

Exhibit 29 to the Ardalan Declaration is an entire-matter time report totaling 696.7 hours. It begins on April 2, 2025, before Attorney Carreon entered the case, and includes ordinary work throughout the litigation: reviewing pleadings, drafting motions to dismiss, participating in Rule 26 proceedings, preparing written discovery, attending informal dis-covery conferences, and taking depositions.

That is not a calculation of "excess" fees caused by particularized misconduct. *See* 28 U.S.C. § 1927.

The report also does not state dollar values. It does not segregate work Defendants would have performed regardless of the challenged conduct. It does not identify which entries relate to Mauvilain, which relate to metadata, which relate to the Kyndt deposition, which relate to allegedly frivolous legal theories, or which resulted from alleged conduct by Attorneys Sergenian, Mu, or Carreon. Numerous entries are vague or concern multiple subjects.

*Goodyear* rejects an award based merely on the period during which misconduct allegedly occurred. The question is which fees would not have been incurred but for each identified bad-faith act. *Goodyear*, 581 U.S. at 108–10. Defendants' submission does not

- 19 -

attempt that analysis. A demand resting "solely on an accounting—detailed as it may be—of the attorneys' fees and expenses" incurred is precisely the showing the Court found insufficient in *RG Abrams*. 342 F.R.D. at 529.

The breadth of Exhibit 29 also confirms that Defendants seek a windfall rather than compensation. Ordinary merits work, including motions to dismiss and discovery Defendants would have undertaken in defending the claims, cannot become sanctionable "excess" merely because Defendants now contend the entire case should never have been brought.

### C. Joint and Several Liability Cannot Replace Individualized Findings

As explained above in section III.E, Defendants' proposed order would impose joint and several liability across numerous individuals without determining who caused which expense, yet their own allegations concern fundamentally different actors and events. For example, the "Emily Carter" account concerns prelitigation actions taken by Mauvilain; the disputed metadata concerns different files and different Plaintiffs; the Kyndt deposition issue concerns a particular witness and communications from particular attorneys; and the alleged portal activity involved particular Plaintiffs.

*Caputo* illustrates the required approach. After extensive factfinding, the court assigned different percentages of responsibility to three attorneys based on their individual knowledge and conduct and imposed nothing against one attorney. *Caputo*, 96 F.4th at 1156–58. Magistrate Judge Audero applied the same principle in this District, recommending denial of § 1927 and inherent-power sanctions where the movants did "not distinguish between the acts of Defendants and those of Defendants' counsel," and this Court adopted the recommendation. *RG Abrams*, 342 F.R.D. at 529, *adopted*, 2022 U.S. Dist. LEXIS 200121 (C.D. Cal. Nov. 2, 2022).

Defendants propose the opposite. Their theory is effectively that everyone is responsible for everything. Neither § 1927 nor inherent authority recognizes that theory.

- 20 -

OPPOSITION TO MOTION FOR SANCTIONS

### D.     Dismissal With Prejudice Is Unsupported

Section 1927 authorizes excess costs, expenses, and attorneys' fees. It does not authorize dismissal. Dismissal under inherent authority is an extreme sanction requiring findings of willfulness, bad faith, or fault; prejudice; consideration of the public policy favoring decisions on the merits; and consideration of less drastic alternatives. *Porter v. Martinez,* 941 F.2d 732, 733 (9th Cir. 1991).

Defendants do not analyze those factors separately for any Plaintiff. Their proposed order simply dismisses every claim of every Plaintiff, including claims already voluntarily dismissed, without identifying the misconduct attributable to each Plaintiff or explaining why a narrower remedy could not cure any resulting prejudice.

That requested relief confirms the punitive nature of the Motion. Defendants are not asking for compensation tied to identified misconduct. They are asking the Court to punish the entire opposing side for the routine disputes and frustrations of litigation.

## VI.   CONCLUSION

Defendants have submitted a large record, but volume is not a substitute for satisfying the governing legal standards.

Defendants have not shown that any particular attorney knowingly or recklessly advanced a frivolous position. They have not shown that any particular individual acted in subjective bad faith. They have not identified a specific proceeding that was vexatiously multiplied. They have not connected any fee to any specific act by any specific individual. And they have not even stated the amount they seek.

The Motion substitutes collective accusation, speculation, and an entire-case billing report for the individualized proof required by § 1927 and the Court's inherent authority. It should be denied in its entirety.

- 21 -

Dated: August 7, 2026

**SERGENIAN LAW**
a Professional Corporation

By:    */s/David A. Sergenian*
     DAVID A. SERGENIAN

Dated: August 7, 2026

WHITEWOOD LAW, P.C.

By:    */s/Shengmao Mu*
     SHENGMAO MU
     RYAN E. CARREON

- 22 -

## C.D. CAL. LOCAL RULE 11-6.2 CERTIFICATION

The undersigned, on behalf of the filing non-parties, certifies that this brief contains 6,977 words, which complies with the word limit of L.R. 11-6.1.

Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 7, 2026

**SERGENIAN LAW**
a Professional Corporation

By:  /s/David A. Sergenian
      DAVID A. SERGENIAN

- 23 -
OPPOSITION TO MOTION FOR SANCTIONS