**HENRI MAZARI**
2100 Marshallfield Lane
Redondo Beach, CA 90278
Email: carboninla@yahoo.com
Telephone: 310-947-7000
Plaintiff, Pro Se

FILED

CLERK, U.S. DISTRICT COURT

08/06/2026

CENTRAL DISTRICT OF CALIFORNIA

BY ___GSA___ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIBAULT MAUVILAIN, an individual; HENRI MAZARI, an individual; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FLYNET PICTURES, LLC; FAMEFLYNET INC.; BACKGRID INC.; BACKGRID USA, INC.; SHUTTERSTOCK, INC.; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:25-cv-02757-FLA-MBK<br>Hon. Fernando L. Aenlle-Rocha<br><br>PLAINTIFF HENRI MAZARI'S OPPOSITION TO DEFENDANTS BACKGRID USA, INC., BACKGRID INC., AND SHUTTERSTOCK INC.'S MOTION FOR SANCTIONS<br><br>Hearing Date: August 28, 2026<br>Time: 1:30 p.m.<br>Courtroom: 6B |

**TABLE OF CONTENTS**

I. INTRODUCTION    4

II. RELEVANT BACKGROUND    6

    A. Mazari's Limited Flynet Relationship and September 2011 Letter    6

    B. Defendants' Own Declarant Confirms a Concrete Legacy-Archive Attribution and Payment Dispute  7

    C. The Court-Authorized Portal Access and the February 25 Production   8

    D. Mazari's Conduct After Proceeding Pro Se Was Directed Toward Narrowing and Completing Discovery   10

III. LEGAL STANDARDS    10

IV. ARGUMENT  12

    A. Defendants Did Not Notice or Brief a Section 1927 Claim Against Mazari    12

    B. The Motion Does Not Make the Required Individualized Showing of Bad Faith by Mazari    13

    C. Unresolved Merits and Evidentiary Disputes Do Not Establish Bad Faith    14

    D. The Portal Issue Does Not Support Dismissal or a Litigation-Wide Fee Award Against Mazari 17

    E. Defendants Have Not Established Spoliation Under Rule 37(e) by Mazari    19

    F. The September 2011 Letter and the Unaccepted Commission Check Are Inconsistent with Defendants' Bad-Faith Narrative    20

    G. Mazari's Own Pro Se Conduct Does Not Show Vexatious Multiplication or an Improper Purpose    20

    H. The Fee Request Fails the But-For Causation and Allocation Requirements   21

    I. The Requirements for Dismissal With Prejudice Are Not Satisfied    22

    J. Due Process Requires Precise Notice and an Opportunity to Address Any Individual Credibility or Intent Finding    23

V. CONCLUSION                    24

**TABLE OF AUTHORITIES**

CASES

Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337 (9th Cir. 1995)    11, 22

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) 11

Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001)    10

Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101 (2017)        6, 11, 14, 21-22

Gregory v. State of Montana, 118 F.4th 1069 (9th Cir. 2024) 6, 12, 19

Halaco Engineering Co. v. Costle, 843 F.2d 376 (9th Cir. 1988)      12, 18, 22-23

In re Keegan Management Co., 78 F.3d 431 (9th Cir. 1996) 12

Lasar v. Ford Motor Co., 399 F.3d 1101 (9th Cir. 2005)        11, 23

Leon v. IDX Systems Corp., 464 F.3d 951 (9th Cir. 2006)       11, 19, 22

Primus Automotive Financial Services, Inc. v. Batarse, 115 F.3d 644 (9th Cir. 1997)     10-11, 13-14

Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980)  11, 23

Stevens v. CoreLogic, Inc., 899 F.3d 666 (9th Cir. 2018)        16

Zambrano v. City of Tustin, 885 F.2d 1473 (9th Cir. 1989)     11, 21

STATUTES AND RULES

17 U.S.C. §§ 501, 1202        16

28 U.S.C. § 1927        12, 24

Federal Rule of Civil Procedure 37 5-6, 9, 12, 17, 19, 22, 24

Federal Rule of Civil Procedure 37(e)      6, 12, 19, 22, 24

**I. INTRODUCTION**

Defendants ask for the two most severe remedies available: dismissal of every claim with prejudice and joint-and-several liability for attorneys' fees and costs. As to Plaintiff Henri Mazari, however, the Motion does not make the findings those remedies require. It aggregates seven photographers, three former attorneys, and two law firms; recites conduct attributable to different people at different times; and asks the Court to treat the entire collection as one undifferentiated course of bad faith. Governing authority requires an individualized finding of culpable conduct, a close nexus between that conduct and the sanction imposed, and - before any compensatory fee award - a but-for connection between the particular misconduct and the specific fees claimed.

Mazari does not ask the Court to ignore the portal-access issue or any other matter that warrants factual examination. He acknowledges that, during the court-authorized access period, he used a drag-and-drop method while examining photographs and embedded IPTC/CMI information. But he did not obtain the pre-suit credentials associated with the name "Emily Carter," did not create or use that identity, and is not identified in Defendants' IP-address evidence concerning that account. Defendants' own declarations attribute that conduct to Plaintiff Thibault Mauvilain. Ardalan Decl. ¶¶ 3-6; Kantif Decl. ¶ 10. The question as to Mazari is whether Defendants have proved that he personally acted in subjective bad faith to abuse the judicial process, destroy evidence, deceive the Court, or cause identifiable excess fees. They have not.

Mazari's declaration confirms that he did not create or use the Emily Carter account, that his portal review was for identification and metadata inspection, that he did not alter BackGrid's system, and that he did not distribute the files outside the litigation. Mazari Decl. ¶¶ 18-38.

The record instead confirms a real underlying dispute. BackGrid founder Alex Kantif states that BackGrid incorporated old Flynet and FameFlynet archive photographs into its licensing system without clear contributor records, used placeholder contributor codes while researching the correct contributors, licensed

disputed sets while the proper payee remained unresolved, held money in a separate FameFlynet contributor account, and sent payments to Plaintiffs after this action began. Kantif Decl. ¶¶ 5-8. Defendants' own public declaration states that its spreadsheet records the set numbers Plaintiffs identified and notes the license fees received for those sets, if any. Ardalan Decl. ¶ 2. Those admissions do not decide the merits, but they foreclose the Motion's premise that Mazari knowingly pursued a dispute invented from nothing.

The Court's prior pleading order likewise does not establish frivolousness. The Court dismissed the First Amended Complaint with leave to amend after concluding that the alleged contractual terms required greater detail and expressly declined to decide remaining arguments that were intertwined with those allegations. Dkt. 79 at 3. The operative pleading added further allegations, and Defendants' motion to dismiss it had not been decided when they filed the sanctions motion. An unresolved merits dispute is not a substitute for the express bad-faith finding required before inherent-power sanctions may be imposed.

The Motion also overstates the December 17, 2025 portal-access order. The order permitted temporary access for searching and identifying works, permitted screenshots, prohibited downloading or otherwise saving or storing portal materials, and required production by January 12, 2026. Dkt. 66 at 2-3. But paragraph 5 expressly stated that the order was not an order whose violation would be sanctionable under Rule 37(b) and identified a Rule 37(a) motion to compel as the enforcement mechanism. Id. at 3. Defendants did not obtain a violation finding before characterizing the later production as thousands of acts of contempt. Ardalan further states that Defendants first raised the issue during Mazari's May 20, 2026 deposition, after receiving the production on February 25. Ardalan Decl. ¶¶ 8, 28.

Nor have Defendants shown spoliation by Mazari. Their specific metadata examples concern other Plaintiffs, and Kantif's only identified post-filing metadata example concerns Jeremy Duplaquet. Kantif Decl. ¶ 11. Defendants do not identify an original Henri Mazari file that was deleted, destroyed, or rendered unavailable. They retained their own portal, account, licensing, archive, and activity records. Rule 37(e), and the Ninth Circuit's decision in Gregory v. State of Montana, require proof of covered ESI loss and the rule's specified culpability before severe sanctions may be imposed.

Finally, the fee presentation is neither causal nor individualized. The Motion and declarations identify timesheets and lawyer biographies but do not state a final requested total in the proposed order, identify the discounted rates actually charged, separate ordinary merits work from work caused by a specific act by Mazari, or allocate fees among the many proposed sanctionees. Ardalan Decl. ¶¶ 29-31. Under Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 108-10 (2017), a compensatory inherent-power fee sanction is limited to fees that would not have been incurred but for the misconduct. A blanket joint-and-several award for defending the entire action does not satisfy that rule.

For these reasons, the Motion should be denied as to Mazari. At minimum, the Court should deny dismissal and joint-and-several liability, require individualized evidentiary findings, and require any fee request to identify the precise amount and expenses proved to have been caused by specifically identified conduct attributable to Mazari.

**II. RELEVANT BACKGROUND**

**A. Mazari's Limited Flynet Relationship and September 2011 Letter**

Mazari's factual position is individual. He began submitting photographs to Flynet Pictures in 2004 as an independent freelance photographer under a course of dealing in which he received 70 percent of licensing revenue and Flynet retained 30 percent. Mazari Decl. ¶¶ 4-6. He did not submit the historical works directly to

FameFlynet, BackGrid Inc., BackGrid USA, or Shutterstock and did not enter into a separate contributor agreement with those entities for those works. Id. ¶¶ 7-10. Kantif's declaration does not establish otherwise; it speaks collectively of photographs submitted to Flynet and FameFlynet and states only that he understands the identified works were submitted to those agencies. Kantif Decl. ¶ 1.

Mazari stopped submitting new photographs in approximately mid-2009. Mazari Decl. ¶ 10. He later prepared a letter dated September 18, 2011 stating that his photo archives and videos would no longer be represented by Flynet or affiliated agencies. Id. ¶¶ 11-17. He testified about the letter at deposition and acknowledged that he no longer has the certified-mail receipt. Ardalan Decl. Ex. 23 at 183:13-185:3.

Before the sanctions motion was filed, Mazari supplemented his production with the archived letter and Apple Notes records reflecting its preservation in his archived files. Mazari Decl. ¶¶ 14-17. Those materials do not independently prove receipt by Flynet or resolve every issue concerning the letter's legal effect. They do, however, contradict an inference that Mazari fabricated the letter only after Defendants sought sanctions. A dispute about delivery, address, or legal effectiveness is not proof that Mazari knowingly lied about the document's existence.

**B. Defendants' Own Declarant Confirms a Concrete Legacy-Archive Attribution and Payment Dispute**

The Motion repeatedly characterizes the action as a manufactured dispute over a nominal sum. Kantif's sworn declaration presents a more complicated record. He states that BackGrid included old Flynet and FameFlynet archive photographs in its system so they would be available

for licensing. Kantif Decl. ¶ 5. BackGrid used placeholder contributor codes because the records received from the predecessor agencies did not clearly identify contributors, and it performed research before updating contributor information. Id.

Kantif further states that licensing money from disputed sets was held in a separate FameFlynet contributor account until BackGrid determined who should be paid. Kantif Decl. ¶ 6. Defendants' public declaration states that its spreadsheet records the identified set numbers and notes the license fees received for those sets, if any. Ardalan Decl. ¶ 2. The point is not that the spreadsheet conclusively adjudicates authorship or liability. It is that Defendants used the identified sets to research specific licensing activity while their own declarant acknowledged uncertainty in the legacy contributor records.

Kantif also acknowledges that BackGrid sent payments during the litigation. Kantif Decl. ¶ 8. The check sent to Mazari was dated March 17, 2026, for $488.60, and its memo line stated only "Commission." It was not accompanied by a settlement agreement or release, and Mazari did not endorse, cash, deposit, negotiate, or otherwise accept it. Mazari Decl. ¶¶ 46-53.

These facts support a concrete controversy concerning archive authority, contributor identification, attribution, accounting, and payment. BackGrid may have defenses and may contend that its use of placeholders and later payments was reasonable. But a defendant's competing explanation does not make Mazari's contrary position sanctionable.

**C. The Court-Authorized Portal Access and the February 25 Production**

At the December 11, 2025 informal discovery conference, the parties and Magistrate Judge Audero addressed identification of the photographs at issue. Dkt. 66 required BackGrid to provide

temporary access through January 9, 2026, for the purpose of searching for and identifying Plaintiffs' works. Dkt. 66 at 2. It permitted screenshots, prohibited downloading or otherwise saving or storing portal materials, and required materials created through access to be produced by January 12, 2026. Id. at 2-3.

During the authorized access period, Mazari used drag-and-drop to place identified photographs in a folder that he viewed through Photo Mechanic so he could identify the photographs and inspect IPTC and other embedded metadata. He identified 1,803 photographs as his own. Mazari Decl. ¶¶ 24-29. The method is disputed. The present record, however, does not show that Mazari used false credentials, altered BackGrid's server data, destroyed evidence, or disseminated the files outside this litigation. Id. ¶¶ 30-38.

Paragraph 5 of Dkt. 66 established a specific enforcement process. It stated that the order did not constitute a discovery order whose violation would be subject to Rule 37(b) sanctions and that a party could enforce the agreement through a Rule 37(a) motion to compel. Dkt. 66 at 3. Defendants did not obtain such a ruling before filing the sanctions motion. Instead, Ardalan states that Plaintiffs produced 7,508 JPEG files on February 25, 2026, and that Defendants first raised the alleged violation during Mazari's deposition on May 20, 2026. Ardalan Decl. ¶¶ 8, 28.

The February 25 production occurred after the January 12 date stated in Dkt. 66, and Defendants contend that it lacked a confidentiality designation. Ardalan Decl. ¶ 8. Those facts do not, without individualized evidence concerning Mazari's knowledge, intent, and resulting prejudice, establish subjective bad faith or justify dismissal. The files were openly produced to Defendants under Bates numbers, and

Defendants identify no public dissemination or destruction of their own portal records.

**D. Mazari's Conduct After Proceeding Pro Se Was Directed Toward Narrowing and Completing Discovery**

After former counsel withdrew and Mazari began appearing pro se, his documented conduct was directed toward narrowing disputes and completing discovery before the cutoff. On July 9, 2026, Mazari and Mauvilain sent a joint narrowed-discovery statement identifying seven remaining issues and expressly stating that they were not seeking duplicative production, expanding the pending dispute, or requesting a merits ruling. On July 10, they further narrowed RFP 49, the Boris Nizon issue, and RFPs 67 and 68. Mazari Decl. ¶¶ 54-61.

Mazari also continued attempting to schedule depositions within the existing discovery period. Continuing authorized discovery after counsel's withdrawal is not itself evidence of bad faith. Nor does a disagreement over the number, order, recording method, or cost of depositions establish that Mazari acted for an improper purpose. The sanctions motion must be evaluated by reference to Mazari's own identified conduct, not the mere fact that he declined to abandon the action when Defendants characterized it as meritless.

**III. LEGAL STANDARDS**

A court may impose inherent-power sanctions only after making a specific finding of bad faith or conduct tantamount to bad faith. Fink v. Gomez, 239 F.3d 989, 992-94 (9th Cir. 2001); Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648-50 (9th Cir. 1997). Mere recklessness is not enough unless accompanied by an additional factor such as frivolousness, harassment, or an improper purpose. Fink, 239 F.3d at 994. Because inherent powers are potent and not subject to the same direct controls as rules and statutes, they must be exercised with restraint and discretion.

Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980).

The bad-faith finding must be explicit and tied to the person sanctioned. Primus, 115 F.3d at 648-50. Sanctions may not rest on a generalized assessment that clients and counsel collectively pursued unsuccessful positions. Id. Zambrano likewise cautions that inadvertence, negligence, or technical noncompliance does not automatically justify inherent-power punishment and that sanctions must be proportionate to the culpability found. Zambrano v. City of Tustin, 885 F.2d 1473, 1478-85 (9th Cir. 1989).

A compensatory fee sanction under inherent authority may reimburse only fees caused by the misconduct. Goodyear, 581 U.S. at 108-10. The court must apply a but-for test: the award may include only fees the moving party would not have incurred absent the sanctioned conduct. Id. A flat or estimated award may be permissible only when a discrete course of misconduct so permeated the case that the court can explain why all listed fees were caused by it. Id. at 110-11. If the award is punitive rather than compensatory, additional procedural protections apply. Id. at 108.

Due process requires notice of the specific grounds and possible types of sanctions and a meaningful opportunity to be heard. Roadway Express, 447 U.S. at 767; Lasar v. Ford Motor Co., 399 F.3d 1101, 1110-12 (9th Cir. 2005). The notice must permit the respondent to address the conduct personally attributed to him, the legal source of sanctioning authority, and the potential relief.

Dismissal is a harsh sanction reserved for deliberate deception or conduct utterly inconsistent with the orderly administration of justice. Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006) (quoting Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995)). The Court considers: (1) expeditious resolution; (2) docket management; (3) prejudice; (4) the policy favoring disposition on the merits; and (5) less drastic sanctions. Leon, 464 F.3d at 958. A finding of willfulness, fault, or bad faith is required, and the most critical criterion is

a nexus between the misconduct and the matters in controversy sufficient to interfere with the rightful decision of the case. Halaco Eng'g Co. v. Costle, 843 F.2d 376, 381 (9th Cir. 1988).

For alleged loss of electronically stored information, Rule 37(e) supplies the governing framework. It requires proof that ESI that should have been preserved was lost because reasonable steps were not taken and cannot be restored or replaced. Fed. R. Civ. P. 37(e). Case-ending sanctions require a finding of intent to deprive another party of the information's use. Fed. R. Civ. P. 37(e)(2). Gregory holds that Rule 37(e)'s requirements cannot be avoided by invoking inherent authority for sanctions based on covered ESI loss. Gregory v. State of Montana, 118 F.4th 1069, 1077-81 (9th Cir. 2024).

## IV. ARGUMENT

### A. Defendants Did Not Notice or Brief a Section 1927 Claim Against Mazari

Defendants' Notice directs the Section 1927 request to former attorneys Sergenian, Mu, and Carreon. Notice at 2. As to Plaintiffs, including Mazari, Defendants invoke inherent authority. Id. The Court therefore should not impose Section 1927 liability on Mazari on a theory Defendants did not notice, brief, or support as to him.

Section 1927 authorizes only excess costs caused by unreasonable and vexatious multiplication of proceedings and requires a culpable state of mind. 28 U.S.C. § 1927; In re Keegan Mgmt. Co., 78 F.3d 431, 436 (9th Cir. 1996). Even if Defendants attempted to extend the statute beyond the respondents identified in their Notice, they would have to identify the proceedings personally multiplied by Mazari, explain why his conduct was unreasonable and vexatious, and prove the excess fees caused by that conduct. They have not done so. The statutory issue should therefore remain limited to the former attorneys against whom it was actually presented.

**B. The Motion Does Not Make the Required Individualized Showing of Bad Faith by Mazari**

The Motion's central defect is its use of collective labels - "Plaintiffs," "counsel," or "Plaintiffs and counsel" - in place of individualized proof. It asks the Court to impose joint-and-several liability based on events that cannot fairly be attributed to Mazari.

The pre-suit Emily Carter communications and matching IP addresses are attributed to Mauvilain. Ardalan Decl. ¶¶ 3-6; Kantif Decl. ¶ 10. The Wolf meeting, alleged coaching, and "Hans Castorp" metadata concern Mauvilain and Wolf. Kantif's only specific post-filing metadata-date example concerns Duplaquet. Kantif Decl. ¶ 11. The Kyndt visa and deposition issue concerns Kyndt and former counsel. The drafting of complaints, formulation of legal theories, language in discovery responses, filing of Rule 37 joint stipulations, and decisions about registration allegations were acts of former counsel. None of those events establishes Mazari's personal bad faith.

Mazari's individual subjects are narrower: his Flynet relationship, his September 2011 letter, his court-authorized portal access and disputed drag-and-drop method, his deposition testimony, his rejected check, and his later pro se conduct. Defendants must prove bad faith as to those events. They cannot fill gaps in that proof by importing conduct involving other Plaintiffs or former lawyers.

Primus is directly instructive. It reversed inherent-power sanctions where the required bad-faith findings were inadequate and emphasized restraint and individualized responsibility. 115 F.3d at 648-50. The Motion offers no evidence that Mazari drafted the challenged pleadings, selected legal theories known to be false, directed counsel to make a knowingly false representation, used the Emily Carter identity, altered another Plaintiff's metadata, or instructed any witness to testify falsely.

> Mazari states that he did not personally draft the challenged pleadings or legal arguments, did not instruct former counsel to submit facts he knew were false, and did not control former counsel's drafting and filing decisions. Mazari Decl. ¶¶ 63-66.

The same defect defeats joint-and-several liability. Defendants do not identify one common act by all proposed sanctionees that caused a single indivisible fee injury. They combine different conduct, by different people, at different times, and seek one collective award. Primus and Goodyear require person-specific bad faith and conduct-specific causation, not guilt by association.

**C. Unresolved Merits and Evidentiary Disputes Do Not Establish Bad Faith**

*1. The Court did not hold that the claims were frivolous.*

Defendants repeatedly assert that every version of the complaint failed as a matter of law. The Court's prior order does not support that characterization. The Court dismissed the contract claim because the FAC did not plead the relevant terms with sufficient detail, granted leave to amend, and declined to decide remaining arguments because the other claims were intertwined with the contract allegations. Dkt. 79 at 3. That is a pleading ruling with leave to amend, not a finding that Mazari fabricated facts or pursued the action in subjective bad faith.

The operative pleading added allegations concerning course of dealing, royalties, attribution, metadata, accounting, the scope of any license, and later entities' handling of the archive. Dkt. 80 ¶¶ 27-32, 64, 67-68. Defendants may ultimately prevail on some or all claims. But inherent-power sanctions require more than a prediction that the opponent will lose.

*2. Defendants' admissions establish a genuine factual controversy.*

Kantif acknowledges unclear legacy contributor records, placeholder codes, licensing while the proper contributor was unresolved, segregated licensing proceeds, and payments during the litigation. Kantif Decl. ¶¶ 5-8. Ardalan's public declaration confirms that Defendants created a spreadsheet recording the set numbers Plaintiffs identified and the associated license fees, if any. Ardalan Decl. ¶ 2. Those facts support a reasonable basis to investigate archive authority, contributor coding, attribution, accounting, and payment. They may coexist with BackGrid's defenses,

but they are inconsistent with the claim that Mazari knowingly litigated an imaginary controversy.

Examples where BackGrid correctly recoded and paid other legacy sets do not disprove problems with disputed sets. They show that the system used placeholders and later correction, retained contributor-code history, and generated payment records - all subjects on which discovery was reasonably sought.

*3. The September 2011 letter dispute does not establish intentional deception.*

Defendants challenge the letter because Mazari no longer has the certified-mail receipt, they dispute the address, the SAC referred to an email, and Mazari did not follow up after sending it. Mot. at 12; Ardalan Decl. Ex. 23 at 183:13-185:3, 191:3-195:8. Those points may affect weight, delivery, or legal effectiveness. They do not establish that the letter was invented.

Mazari identified the document under oath and later produced archived materials supporting its preexisting electronic preservation before the sanctions motion was filed. A party does not act in bad faith merely because an old document lacks every piece of corroboration or because former counsel described the communication inaccurately in a pleading. The issue should be resolved on an evidentiary record, not converted into a personal finding of fraud without proof.

*4. Mazari's testimony concerning the 70/30 arrangement and byline does not waive his claims or prove bad faith.*

Defendants rely on Mazari's testimony that payment was more important to him than ego associated with a byline. Ardalan Decl. Ex. 23 at 57:16-22. That testimony does not establish consent for unknown successor entities to use, transfer, reclassify, or license the archive without limitation. Nor does saying that attribution

was not a matter of ego amount to a waiver of copyright-management information, source identification, accounting, or payment rights.

Mazari's uncertainty about internal contributor codes likewise does not prove bad faith. Kantif himself states that a contributor code identifies who is to be paid and does not necessarily identify the author or copyright owner. Kantif Decl. ¶ 2. A photographer's lack of knowledge about a later agency's internal coding system is consistent with, not fatal to, a dispute over how that system classified his historical works.

*5. Defendants' categorical Section 1202 premise is not the governing rule.*

Defendants argue that a Section 1202 claim could never prevail without proof of a completed infringement. Mot. at 12-13. Stevens v. CoreLogic explains that Section 1202's double-scienter requirement is written to include knowledge that removal or alteration will probably induce, enable, facilitate, or conceal future infringement; a plaintiff need not identify a specific infringement that already occurred as a categorical prerequisite. 899 F.3d 666, 673-75 (9th Cir. 2018). Whether Mazari can satisfy Stevens on the merits is a separate question. Defendants' overbroad legal premise cannot itself establish that pursuit of the claim was necessarily in bad faith.

*6. The $2,931.16 figure is not an adjudication of the action's value or proof of bad faith.*

The Motion repeatedly treats $2,931.16 as the value of the entire dispute. Mot. at 6, 13-14. The figure is Defendants' calculation based on sets and licensing records they selected; it is not a judicial finding resolving all uses, accounting, profits, attribution, CMI, or other requested relief. As to Mazari, Defendants sent a $488.60 check labeled "Commission," which he did not accept. A claimant does not act in bad faith merely by declining to treat an opponent's unilateral calculation or tender as full satisfaction of disputed claims.

**D. The Portal Issue Does Not Support Dismissal or a Litigation-Wide Fee Award Against Mazari**

*1. The December 17 order prescribed an enforcement process, and no violation finding was obtained.*

The Court should begin with Dkt. 66's complete text. Paragraph 3 imposed the access limitations. Paragraph 5 then stated that the order did not constitute a discovery order whose violation would be subject to Rule 37(b) sanctions and that an alleged violation could be enforced through a Rule 37(a) motion to compel. Dkt. 66 at 2-3. Defendants did not seek that adjudication or obtain a finding that Mazari committed 1,803 acts of contempt. This does not immunize proven intentional misconduct, but it prevents Defendants from presenting the violation label as an already adjudicated fact.

*2. Defendants admit that Mazari was not warned before the May 20 questioning.*

Ardalan states that Defendants first raised the alleged Dkt. 66 violation at approximately 6:07 p.m. during Mazari's May 20 deposition and had not raised it previously with Plaintiffs or counsel. Ardalan Decl. ¶¶ 8, 28 & Ex. 28. That admission bears directly on intent. It contradicts any suggestion that Mazari continued the same method after Defendants had warned him that they viewed it as a violation.

*3. Open production is inconsistent with concealment or an intent to deprive.*

Ardalan states that the JPEG files were produced on February 25, 2026, under Bates ranges spanning several pages of her declaration. Ardalan Decl. ¶ 8. The files therefore were not discovered through forensic recovery of hidden or deleted evidence; they were delivered to Defendants in discovery. Defendants identify no destruction of BackGrid's own portal data, no public dissemination, and no inability to defend the case because of the method used.

The production was later than the order's January 12 date and allegedly lacked a confidentiality designation. Those matters may warrant explanation or a focused corrective remedy.

They do not, without individualized proof of willful bad faith and prejudice, justify dismissal of every claim or reimbursement of all fees incurred in the case.

***4. The file count does not establish thousands of separate intentional violations by Mazari.***

Ardalan states that the collective production contained 7,508 native files and "appears" to correspond to one file for each identified photograph. Ardalan Decl. ¶ 8. Mazari identified 1,803 photographs as his own. Mazari Decl. ¶ 26. Defendants do not establish that Mazari performed 1,803 separate acts, that each photograph was handled through a distinct decision, or that each act carried a separate intent to disobey. At most, the record describes one disputed method applied to a group of photographs. Multiplying a file count into thousands of contempts adds rhetoric, not individualized proof.

***5. The pre-suit Emily Carter issue cannot be attributed to Mazari.***

Defendants' own evidence identifies the Emily Carter account as associated with Mauvilain. Kantif Decl. ¶ 10; Ardalan Decl. ¶¶ 3-6. The fact that an account viewed sets later associated with Mazari does not establish that Mazari controlled the account, requested access, knew the identity used, or participated in the communications. Sanctions against Mazari cannot rest on conduct the declarants attribute to another person.

***6. Any remedy must be tied to the discrete portal issue.***

Even if the Court concludes that Mazari failed to follow the agreed portal procedure, Halaco requires a nexus between the conduct and a sanction that interferes with the merits. 843 F.2d at 381. The portal method did not create the legacy archive, placeholder contributor codes, licensing transactions, attribution conflicts, or post-suit check. Defendants already possessed the underlying portal and business data. A discrete procedural issue cannot justify dismissal of unrelated claims or reimbursement of the entire defense without proof that it prevented a rightful merits decision.

**E. Defendants Have Not Established Spoliation Under Rule 37(e) by Mazari**

The Motion uses "changed," "nonidentical," and "spoliated" as though they were interchangeable. They are not. Rule 37(e) requires proof that ESI was lost, should have been preserved, cannot be restored or replaced, and was lost because reasonable preservation steps were not taken. Fed. R. Civ. P. 37(e). Only after those threshold findings may a court consider prejudice, and dismissal requires intent to deprive. Id. Gregory confirms that those requirements cannot be bypassed through inherent authority. 118 F.4th at 1077-81.

Defendants do not identify what original Mazari ESI was lost. They do not state that Mazari deleted camera originals, wiped a drive, destroyed historical submissions, or made any item unavailable. BackGrid retained its portal, administrative, licensing, accounting, and activity records. Plaintiffs had produced photographer files and IPTC materials from other sources. A disputed copy or later metadata date does not establish that an original disappeared or cannot be restored or replaced.

Kantif does not identify a Mazari file that he claims Mazari altered after suit. His specific example concerns Duplaquet. Kantif Decl. ¶ 11. Nor does he provide a forensic methodology tying an intentional alteration to Mazari: no hashes, chain of custody, identification of the exact metadata fields, historical comparison file, software testing, or explanation of routine operations that may affect metadata dates. His photography and Lightroom experience does not convert an example concerning another Plaintiff into proof that Mazari destroyed evidence.

The contrast with Leon is decisive. Leon involved intentional deletion and wiping of more than 2,200 files after litigation began, files that could not be recreated, and resulting prejudice to the defense. 464 F.3d at 959-60. Here, Defendants identify produced copies and disputed metadata history, not intentional deletion of irreplaceable evidence by Mazari. The factual predicate for terminating spoliation sanctions is absent.

**F. The September 2011 Letter and the Unaccepted Commission Check Are Inconsistent with Defendants' Bad-Faith Narrative**

Defendants may dispute the legal significance of the September 2011 letter and the amount due to Mazari. But his conduct concerning those documents is inconsistent with concealment. He identified the letter under oath, searched his archives, supplemented his production after locating supporting archived records, and preserved the underlying material. He did not destroy an unfavorable document or hide a contradictory version.

Similarly, Mazari preserved the original $488.60 check and envelope rather than cashing the instrument and later denying receipt. The check itself stated only "Commission." It was not accompanied by a settlement agreement or release, and Mazari did not negotiate it. Mazari Decl. ¶¶ 46-53. Those facts may not resolve the amount owed, but they undermine the claim that he knowingly accepted full payment and then continued the action dishonestly.

**G. Mazari's Own Pro Se Conduct Does Not Show Vexatious Multiplication or an Improper Purpose**

The Motion relies heavily on filings, discovery disputes, and litigation decisions made while Mazari was represented. It does not identify evidence that he directed former counsel to multiply proceedings for harassment or delay. After proceeding pro se, Mazari joined a written effort to narrow the remaining discovery disputes and avoid adding issues to the pending joint stipulation. That conduct is inconsistent with an intent to increase expense for its own sake.

Mazari's decision to continue scheduled discovery and request organizational and individual depositions does not, by itself, show bad faith. Rule 30 authorizes depositions, and the parties' disagreements over dates, recording methods, witnesses, and cost were discovery-management disputes. A litigant's refusal to abandon claims because the opposing party predicts dismissal is not

sanctionable without proof that the litigant knew the claims were baseless and pursued them for an improper purpose.

Zambrano cautions against using inherent authority to punish technical or negligent conduct without the required culpability and proportionality. 885 F.2d at 1478-85. Here, the record of Mazari's own pro se communications shows efforts to clarify, narrow, and complete discovery rather than a deliberate campaign to obstruct the Court.

**H. The Fee Request Fails the But-For Causation and Allocation Requirements**

Defendants seek attorneys' fees and costs against Mazari jointly and severally with former counsel and other Plaintiffs, yet their presentation does not identify a final amount in the proposed order. Ardalan identifies Exhibit 29 as timesheets and provides lawyer biographies and "typical" rates, but her declaration does not state the actual discounted rates charged for each timekeeper, a final requested sum, or a conduct-by-conduct calculation. Ardalan Decl. ¶¶ 29-31.

That presentation does not satisfy Goodyear. A compensatory fee sanction is limited to fees that would not have been incurred but for specifically identified misconduct by Mazari. 581 U.S. at 108-10. Defendants must separate ordinary merits defense from fees caused by a particular bad-faith act. Motions to dismiss, ordinary document review, depositions, licensing analysis, and discovery concerning the claims would have occurred regardless of Mazari's portal method, the 2011 letter dispute, or the rejected check.

Fees concerning Emily Carter cannot be charged to Mazari without proof that he participated in that conduct. Fees concerning Wolf, Duplaquet, Kyndt, dismissed Plaintiffs, or former counsel's filings cannot be assigned to Mazari merely because he remained a Plaintiff. Fees incurred before Defendants allegedly learned of Mazari's portal conduct cannot have been caused by that conduct. And fees incurred preparing the sanctions motion itself must be carefully tied to a compensatory purpose rather than used to enlarge an otherwise unsupported litigation-wide award.

The joint-and-several request compounds the defect. The Motion does not explain how different events involving different respondents caused one indivisible amount. Nor does it distinguish fees that would have been incurred in the ordinary defense of the action from expenses incurred solely to correct a proven act by Mazari. Exhibit 29 must therefore be examined for work predating the alleged conduct, ordinary merits work, work concerning other Plaintiffs or former counsel, duplicated timekeepers, vague or block-billed entries, unidentified actual rates, and sanctions-motion work not tied to a compensatory correction. Without that allocation, the Court cannot make the causal findings Goodyear requires or ensure that the award remains compensatory rather than punitive.

**I. The Requirements for Dismissal With Prejudice Are Not Satisfied**

The Motion's legal-standard section does not perform the required dismissal analysis; its conclusion simply requests the sanction. Mot. at 7, 22. The record does not satisfy Leon, Halaco, Anheuser-Busch, or Rule 37(e).

First, there is no evidence requiring a finding that Mazari willfully deceived the Court or acted with intent to deprive Defendants of evidence. Defendants rely on collective terminology, disputed inferences, and selected deposition excerpts. Their own declarations attribute the pre-suit false identity to another Plaintiff and the specific post-filing metadata example to Duplaquet.

Second, Defendants have not shown prejudice to the rightful decision of Mazari's claims. The portal files were produced. Defendants possess their own portal, licensing, payment, account, archive, and activity records. No original Mazari evidence is identified as irretrievably lost. No trial has been distorted by missing evidence. Leon and Anheuser-Busch involved deliberate conduct that substantially undermined the integrity of adjudication; the present record does not establish comparable conduct by Mazari.

Third, public policy favors resolution on the merits while the operative pleading and discovery record remain contested. Mazari's continuation of discovery after counsel withdrew is not itself obstruction. It is use of procedures available to a pro se litigant before the discovery cutoff.

Fourth, numerous less drastic alternatives exist if the Court finds a discrete violation: a confidentiality order, supplemental production, a focused evidentiary hearing, exclusion of a specifically unreliable copy, an instruction concerning evidentiary weight, or fees limited to a particular corrective proceeding. Defendants did not pursue the Rule 37(a) enforcement path stated in Dkt. 66, and Mazari was not previously warned that his conduct would result in dismissal.

Finally, dismissal of all claims lacks a proportionate nexus to the alleged conduct. The merits concern archive licensing, contributor identification, attribution, ownership assertions, accounting, and payment. The portal method may affect admissibility or evidentiary weight, but Defendants do not show that it makes a rightful decision impossible. Halaco identifies that nexus as the most critical criterion for dismissal. 843 F.2d at 381. It is absent here.

**J. Due Process Requires Precise Notice and an Opportunity to Address Any Individual Credibility or Intent Finding**

The Motion seeks dismissal and personal monetary liability based on alleged fraud, contempt, spoliation, misrepresentation, and bad faith. Due process requires notice of the specific grounds and possible sanctions and a meaningful opportunity to respond. Roadway Express, 447 U.S. at 767; Lasar, 399 F.3d at 1110-12.

The collective presentation makes that protection especially important. Before imposing any sanction on Mazari, the Court should identify the precise conduct attributed to him, the legal authority governing that conduct, the claimed fees caused by it, and whether the issue turns on disputed credibility or intent. If material factual disputes remain, an evidentiary hearing would be more appropriate than resolving credibility and subjective intent solely from selected excerpts and attorney argument.

At minimum, Defendants should be required to provide a definite fee amount and but-for allocation before Mazari is required to answer an open-ended request. The Court should not impose punitive or case-ending relief on a record that does not distinguish Mazari from other respondents or disclose the monetary consequence claimed against him.

**V. CONCLUSION**

Mazari respectfully requests that the Court deny the Motion as to him. Defendants did not notice a Section 1927 claim against Mazari. Their inherent-authority request does not establish individualized bad faith, spoliation under Rule 37(e), but-for fee causation, or the requirements for dismissal with prejudice.

Alternatively, the Court should: (1) deny dismissal; (2) deny joint-and-several liability; (3) require Defendants to identify the precise amount and but-for causal basis of any claimed fee; (4) permit Mazari to respond to the completed fee presentation; (5) hold an evidentiary hearing before making any disputed credibility or intent finding; and (6) limit any relief to a proportionate remedy tied to specifically proven conduct by Mazari.

Dated: August 6, 2026

Respectfully submitted,

/s/ Henri Mazari
**HENRI MAZARI**
Plaintiff, Pro Se

**CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)**

The undersigned certifies that this memorandum contains approximately 6,103 words, excluding the caption, tables, and certificate, and complies with the applicable word limit under Local Rule 11-6.1.

/s/ Henri Mazari
**HENRI MAZARI**
Plaintiff, Pro Se