FILED

CLERK, U.S. DISTRICT COURT

08/07/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____GSA_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**THIBAULT MAUVILAIN**

4605 Sylmar Avenue, Apt. 312

Sherman Oaks, California 91423

Email: tm@forceinaction.com

Telephone: 310.770.3612

Plaintiff, Pro Se

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIBAULT MAUVILAIN, an individual; HENRI MAZARI, an individual; et al., <br><br> Plaintiffs, <br><br> v. <br><br> FLYNET PICTURES, LLC; FAMEFLYNET INC.; BACKGRID INC.; BACKGRID USA, INC.; SHUTTERSTOCK, INC.; and DOES 1–10, inclusive, <br><br> Defendants. | **Case No. 2:25-cv-02757-FLA-MBK** <br><br> **Hon. Fernando L. Aenlle-Rocha** <br><br><br> **DECLARATION OF THIBAULT MAUVILAIN IN** <br><br> **SUPPORT OF OPPOSITION TO DEFENDANTS'** <br><br> **MOTION FOR SANCTIONS** <br><br><br> **Hearing Date: August 28, 2026** <br><br> **Time: 1:30 p.m.** <br><br> **Courtroom: 6B** |

I, Thibault Mauvilain, declare as follows:

1. I am a Plaintiff in this action and currently appear pro se. I submit this declaration in support of my opposition to Defendants BackGrid USA, Inc., BackGrid Inc., and Shutterstock, Inc.'s Motion for Sanctions. Except where I identify a document or testimony, the facts below are based on my personal knowledge, and I could and would testify competently to them.

2. I am a professional photographer. I contributed current photographs to BackGrid through my active contributor account under the code THMA. My dispute in this action concerns older Flynet and FameFlynet archive photographs, not the new works I continued to submit through BackGrid's current uploader.

3. Before this action was filed, counsel acting for photographers contacted BackGrid and Shutterstock concerning missing legacy works and suspected changes to attribution and CMI. I understood that the purpose of the inquiry was to identify what had happened to the legacy archive, determine how the works were being presented and licensed, and obtain an accounting.

4. I knew that large portions of my legacy archive were not visible to me through my contributor-facing account. I could not determine from that account alone whether a missing legacy work existed elsewhere in BackGrid's systems, how it was attributed, whether it was available to clients, or whether it had generated transactions under a different contributor or source code.

5. Before I sought client-portal access, counsel kept me informed of the written exchange with BackGrid. I understood that counsel had asked BackGrid and Shutterstock to investigate the legacy archive, identify affected works, and restore correct attribution. Defendants did not agree to conduct the requested audit. Instead, they rejected the premise that wrongdoing had occurred, required the photographers to identify the exact works and their locations within BackGrid's own library before Defendants would investigate further, and raised Rule 11 and sanctions. That response reinforced my concern that I could not determine what had happened to my legacy works from the contributor-facing account alone.

6. I requested a BackGrid client account using the name "Emily Carter" and information associating the request with Hollywood Uncovered and a contemplated documentary project. The name and project description were not my true identity and

were not literally accurate. I regret using that means of obtaining access, and I do not ask the Court to approve it.

7. BackGrid's sales personnel issued the account credentials and allowed the account holder to create a password. I did not steal another person's credentials, crack a password, or bypass a technological access control. I did not share the credentials with another Plaintiff. I used the account to investigate my own legacy photographs and did not alter, delete, or add information to BackGrid's systems.

8. My investigation identified 3,958 client-portal images associated with my work and attribution concerns. The 166 sets later identified for me in the Second Amended Complaint were a narrower, work-and-registration mapping. The two numbers should not be added together and do not mean that I claimed every image in the broader investigative universe as a separate pleaded work.

9. My July 2, 2026 errata clarified my deposition estimates. I estimated an affected legacy archive of approximately 25,000 images overall: approximately 10,000 Flynet-era images that I believed were missing from both my contributor-facing account and the client-facing system, plus approximately 15,000 FameFlynet-era images affected on the client-facing side by absence, misattribution, or ingestion issues. This is my good-faith estimate, not a claim that Defendants admitted the number or that every image has an adjudicated damages amount. Attached as Exhibit A is a true and correct copy of my July 2, 2026 errata.

10. In December 2025, the Court authorized temporary access to BackGrid's Client Portal for the purpose of searching for and identifying works. I understood that the portal did not provide us with a formal download entitlement and that screenshots were permitted.

11. During the authorized review, I discovered that dragging an image from the browser to the desktop allowed metadata associated with the client-portal image to be inspected through metadata software. I used the word "glitch" colloquially to describe unexpected browser functionality. I was attempting to inspect metadata connected to works I believed were mine; I did not intend to obtain access to a different system or to material outside the client-portal access that had been provided.

12. I did not hide the method. At my May 18, 2026 deposition, while Ms. Ardalan was examining me, I openly described dragging an image to the desktop to inspect metadata. My July 2 errata further clarified that I was referring to metadata

inspection during the authorized client-portal review, not separate access outside the portal.

13. I did not alter or destroy BackGrid's source records. The materials generated from the portal review were provided to former counsel and were later produced to Defendants. I did not disseminate the portal materials publicly or use them for a purpose unrelated to this litigation.

14. I met Robert Christian Wolf for coffee shortly before his deposition. We discussed the case and the need for him to be prepared to explain his own experience, work, payment expectations, and copyrights. I did not instruct him to testify falsely, adopt facts he did not believe, conceal communications, or alter or destroy evidence.

15. I discussed with Mr. Wolf the sequence used to inspect information during the portal review. I did not tell him that he should violate a court order. I later told him that Defendants had concerns about the process. I had already disclosed the drag-and-drop process at my own deposition before that conversation.

16. I never instructed Jeremy Duplaquet or any other Plaintiff to change, add, remove, or "scrub" metadata in files produced in this action. I did not insert the Hans Castorp information into Mr. Wolf's files, and I do not know who did.

17. On or about March 19, 2026, BackGrid initiated an unsolicited ACH payment to me in the amount of ███████ through the ordinary ████████████████. payment mechanism. I did not negotiate that payment as a settlement and did not understand it to resolve my claims.

18. After later reviewing my contributor report, I discovered that the payment included two Patrick Schwarzenegger entries associated with FAFL source information. Each entry reflected ███████ in commission, for a disputed FAFL-coded component of ██████ FAFL is not my contributor code; my code is THMA.

19. I testified at deposition that I did not accept payment tied to the wrong contributor code, contacted Bank of America to ask whether the payment could be reversed or partially returned, and stated that Defendants could expect a refund of the disputed FAFL component.

20. I then served supplemental discovery expressly rejecting any characterization of the ACH as a cure, waiver, settlement, release, accord and satisfaction, correction, or limitation of my claims. I prepared a check for ██████ identifying the disputed BGUS_979019/FAFL funds and requested that Defendants

DECLARATION OF THIBAULT MAUVILAIN ISO OPPOSITION TO SANCTIONS | 4

confirm the correct payee and mailing address so I could return the money. Attached as Exhibit B is a true and correct copy of my July 6, 2026 supplemental discovery memorandum and exhibit index concerning the FAFL-coded payment and prepared return check.

21. On July 1, 2026, Rafael Ceribelli, identified as an Archive Producer at Renowned Films, contacted me concerning Kat Torres/138 Water campaign stills for a documentary. The inquiry sought a small number of images on an all-media, worldwide, in-perpetuity basis and included a sample image.

22. My audit identified twenty-three Kat Torres-related sets. Twenty-two appeared in my contributor-side records, sixteen appeared on the Client Portal, seven were absent from the Client Portal, and eight reflected disputed FAFL or missing/incorrect attribution while eight reflected correct TM/THMA attribution. The sample supplied by the producer appeared to correspond to a set reflected in my contributor records under THMA but absent from the commercial-facing Client Portal.

23. On July 3, 2026, I supplemented discovery to Defendants with the Renowned Films inquiry, sample image, audit, memorandum, and comparison material. I did not assign a fixed lost-dollar amount to the inquiry, and I do not claim that the inquiry by itself proves a completed lost sale. It demonstrates current third-party demand and the practical difficulty of identifying, clearing, and licensing a requested legacy image when the client-facing and contributor-facing records do not align. Attached as Exhibit C is a true and correct copy of the July 3 supplemental production memorandum, together with the Renowned Films inquiry and audit materials cited in that memorandum.

24. After former counsel withdrew and I began appearing pro se, Defendants forwarded their sanctions correspondence to me. I did not ignore it. I requested that Defendants identify, as to me personally, the sanctioning authority, conduct, evidence, mental state, prejudice, relief, and amount or good-faith estimate of fees sought. I participated in the July 16, 2026 telephone conference and afterward memorialized my understanding of the parties' positions.

25. I relied on former counsel to make legal judgments about pleading, motion practice, discovery stipulations, and filing procedure. I did not instruct former counsel to include a statement they knew was false or to conceal evidence. I was not present

for the pre-suit telephone call between Virginie Parant and Joanna Ardalan concerning alleged termination. Any information I received concerning what counsel said during that call necessarily came from counsel, not from my personal observation.

26. I continued to pursue the case because I believed unresolved issues remained concerning legacy attribution, CMI, contributor coding, royalty routing, accounting, portal visibility, and the scope of rights asserted to have moved through the Flynet/FameFlynet/BackGrid archive and the Shutterstock acquisition. I do not contend that the present sanctions record conclusively proves that my copyrights were sold in bulk or transferred in perpetuity. I contend that Defendants' selected license-fee spreadsheet did not resolve those archive-level questions or establish the maximum value of my claims.

27. I have attempted to comply with court procedures as a pro se litigant, to preserve the record, to narrow discovery issues, and to state my position professionally. I deny that I acted with the purpose of harassing Defendants, multiplying proceedings in bad faith, destroying evidence, influencing false testimony, or depriving Defendants of information needed to defend the action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 6, 2026, at Sherman Oaks, California.

/s/ Thibault Mauvilain

THIBAULT MAUVILAIN

Plaintiff, Pro Se

**EXHIBIT INDEX**

**Exhibit A:** Mauvilain July 2, 2026 Final Deposition Errata Sheet (Job No. 8175694)

**Exhibit B:** Mauvilain July 6, 2026 Supplemental Discovery Memorandum and Exhibit Index concerning FAFL-coded ACH / BGUS_979019

**Exhibit C:** Mauvilain July 3, 2026 Kat Torres / 138 Water Supplemental Production, including Renowned Films inquiry, audit, and comparison materials