Joanna Ardalan (SBN 285384)
Email: jardalan@onellp.com
Peter R. Afrasiabi (SBN 193336)
Email: pafrasiabi@onellp.com
David W. Quinto (SBN 106232)
Email: dquinto@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

Attorneys for Defendants,
BACKGRID INC., BACKGRID USA, INC., and
SHUTTERSTOCK, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

THIBAULT MAUVILAIN, an individual; HENRI MAZARI, an individual; JEREMY DUPLAQUET, an individual; ROBERT CHRISTIAN WOLF, an individual; MICHEL BOUTEFEU, an individual; STEPHANE KYNDT, an individual; and JOSEPH MEHDI, an individual,

Plaintiffs,

v.

FLYNET PICTURES, LLC, a California limited liability company; FAMEFLYNET INC., a California corporation; BACKGRID INC., a California corporation; BACKGRID USA, INC., a California corporation; SHUTTERSTOCK, INC., a Delaware corporation and DOES 1–10, inclusive,

Defendants.

Case No.: 2:25-cv-2757-FLA-MAA
Hon. Fernando L. Aenlle-Rocha

**DEFENDANTS BACKGRID USA, INC. BACKGRID INC., AND SHUTTERSTOCK INC.'S REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**

Date: August 28, 2026
Time: 1:30 p.m.
Crtrm: 6B

# TABLE OF CONTENTS

I. SERGENIAN, MU, AND CARREON EACH ENGAGED IN SANCTIONABLE CONDUCT UNDER § 1927 .......... 1

A. Sergenian, Mu, and Carreon Each Had Knowledge That This Case Should Not Proceed. .......... 1

B. Sergenian, Mu, and Carreon Make No Effort to Explain How "[t]he availability of statutory damages, the existence and scope of any license, conditions on that license, alleged CMI removal, and entitlement to nonmonetary relief remain disputed issues." .......... 5

C. The Ardalan Deposition Made in Connection with the Frivolous Termination Theory. .......... 6

D. Counsel Offers No Good Explanation for Its Three Joint Stipulations and Even Admits They Declined to Follow the Local Rules to Meet a Deadline. .......... 7

E. Counsel's Position on the Kyndt Visa Status Is Unsupported. .......... 8

II. PLAINTIFFS DUPLAQUET, WOLF, BOUTEFEU, KYNDT, AND MEHDI ("DISMISSED PLAINTIFFS") DO NOT OPPOSE THIS MOTION .......... 8

III. MAUVILAIN AND MAZARI'S OPPOSITIONS FAIL TO JUSTIFY THEIR CONDUCT .......... 9

IV. DEFENDANTS MEET THE *GOODYEAR* CAUSATION REQUIREMENT .......... 9

V. PARAGRAPH 5 OF THE DECEMBER 2025 ORDER DOES NOT SAVE COUNSEL OR PLAINTIFFS .......... 11

VI. DEFENDANTS DO NOT USE INHERENT AUTHORITY TO AVOID RULE 11'S SUBSTANTIVE SAFEGUARDS .......... 11

VII. THE RELIEF REQUESTED OF ATTORNEYS' FEES AND DISMISSAL WITH PREJUDICE IS PROPER .......... 12

A. There Is No Requirement That the Specific Amount Requested Be Contained in the Notice of Motion. .......... 12

B. The Entire Case Was Initiated In "Bad Faith." .................................... 13

C. Dismissal with Prejudice Is Supported and Appropriate Given That This Case Wholly Lacks Merit. .................................................... 13

VIII. CONCLUSION ........................................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337 (1995) .......... 13

*Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998) .......... 11

*Caputo v. Tungsten Heavy Powder*, 96 F.4th 1111 (9th Cir. 2024) .......... 4, 5

*Chambers v. NASCO*, 501 U.S. 32 (1991) .......... 11

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) .......... 8

*General Teamsters Local # 439 v. Leprino Foods Company*, 2022 WL 891278 (E.D. Cal. 2022) .......... 12

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) .......... 9, 10, 13

*In re Keegan Mgmt.*, 78 F.3d 431 (9th Cir. 1996) .......... 10

*Lake v. Gates*, 130 F.4th 1054 (9th Cir. 2025) .......... 11

*Leon v. IDX Sys.*, 464 F.3d 951 (2006) .......... 14

*Porter v. Martinez*, 941 F.2d 732 (9th Cir. 1991) .......... 13

*RG Abrams Inc. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461 (C.D. Cal. 2022) .......... 13

## Statutes

17 U.S.C. § 203 .......... 1, 7

17 U.S.C. § 504 .......... 6

28 U.S.C. § 1927 .......... 4, 10, 12, 14

**Rules**

CACD Local Rule 37 .......... 7, 11, 13

CACD Local Rule 7-4 .......... 12

CACD Local Rule 83-2.3.2 .......... 8

CACD Local Rule 83-2.3.3 .......... 8

Cal. Rules of Professional Conduct 1.16(c) .......... 8

Cal. Rules of Professional Conduct 4.2 .......... 9

Fed. R. Civ. P. 7(b)(1) .......... 12

Fed. R. Civ. P. 11 .......... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SERGENIAN, MU, AND CARREON EACH ENGAGED IN SANCTIONABLE CONDUCT UNDER § 1927

### A. Sergenian, Mu, and Carreon Each Had Knowledge That This Case Should Not Proceed.

Sergenian, Mu, and Carreon personally participated in the multiplication of proceedings as each were on notice of the following, and continued to litigate despite knowledge thereof:

a. Each Defendant had a license to sublicense the work. Motion, 8:14-21; FAC ¶¶ 29-31; SAC ¶¶ 27-30, Dkt. 35-3. Sergenian, Mu, and Carreon were each on notice of this threshold defense since the beginning of the case. *Id.*

b. The "condition precedent" theory, which was critical to the copyright infringement and 1202 claims, was based on a manufactured "custom and practice" term, not a writing, and was not reflected by their own clients' testimony, which they ought to have inquired about before filing suit. Motion, 8:22-9:13, 9:24-11:14. As pleaded in the FAC, it was unclear whether the alleged "condition precedent" term was in writing, but by the SAC they conceded it was created through custom. Dkt. 84-1 at 7:24-9:4, *see also* Dkt. 35-1, 9:6-10:14. Certainly by the time Plaintiffs were confronted by the Court's Order on the FAC, and drafted a SAC, they were aware that this position was frivolous and that their clients' testimony would not support it. A cursory look at the allegations that were added to the SAC corroborates that there were no meaningful additions to the SAC. That too, was their notice that this entire case is frivolous.

c. The termination theory was always doomed under 17 U.S.C. §203. The law was outlined in the Motion to Dismiss the FAC, which was filed on June 9, 2025. Dkt. 35-1, 8:10-9:5. Sergenian, Mu, and Carreon continued to pursue

termination as a basis to argue infringement and even deposed BackGrid's litigation lawyer about termination. *See* SAC; Ardalan Decl. Ex. 13.

d. Sergenian, Mu, and Carreon were aware that their clients obtained evidence by fraud as early as December 11, 2025, when Defendants expressly disclosed the same to Counsel. Ardalan Decl., Ex. 10-1, 10-2, 10-3a, 10-3b, ¶12. Defendants shared the IP addresses associated with the fictitious "Emily Carter" as well as the IP addresses associated with Mauvilain's contributor account. *Id.* Sergenian, Mu, and Carreon contend that "Defendants admit that they 'cannot know whether Plaintiff's informed their counsel of the fraud.'" That is true—but Defendants informed counsel, and did so as early as December 11, 2025. *Id.* Moreover, the suggestion that Sergenian, Mu, and Carreon do not know about the fraud means that they brought this lawsuit without being able to identify infringement, which they do not address in their Opposition. Motion, 14:16-15:9. Both paths support sanctions.

e. Without question, Sergenian, Mu, and Carreon understood that the original, native files submitted to the Defendant Agencies were going to be critical to prove their CMI removal supporting their 1202 claim (assuming, arguendo, the claim could ever proceed considering the issues in proving infringement). Their clients testified that they had not produced those files or that they were spoliated. Pursuing this action, without that most basic of information from the very start, is sanctionable in its own right. Motion, 15:24-16:18. Defendants should not have to discover that these files were not produced by simply asking Plaintiffs in deposition. This information was accessible to Sergenian, Mu, and Carreon from the start of this litigation.

f. Sergenian, Mu, and Carreon were on notice that new copyright registrations were filed after the lawsuit was filed and that those new registrations were added to the SAC, without leave to do so. *Cf.* Dkt. 50 (Oct. 24, 2025, leave to

amend deadline passed); Motion at 21:15-27. Mr. Mu filed the applications himself, so he knew when they were submitted. RJN, Ex. 2-49.

g. Sergenian, Mu, and Carreon each made the decision not to participate in Judge Audero's procedures. Ardalan Decl., Ex. 6; Motion 22:1-6.

h. Worst of all, Sergenian, Mu, and Carreon were each on notice that as of December 19, 2025, Plaintiffs' actual damages totaled $1,910 (Ardalan Decl. Ex. 10-2 at 26 (served 12/11/2025), Ex. 11, 25-29 (produced 12/10/2025); ¶12) and, after giving Plaintiffs and Sergenian, Mu, and Carreon three weeks of access to BackGrid's Confidential Client Portal, so that Plaintiffs could fully exhaust the identification of "Copyrighted Works," the actual damages totaled **$2,931.16 across all seven Plaintiffs**. Ardalan Decl., Exs. 1, 2. This notice was given on January 16, 2026. *Id.*

Sergenian, Mu, and Carreon litigated this case with subjective bad faith in spite of having knowledge of the facts contained in a-h above—i.e. this case is not a copyright case, there is no availability of statutory damages, the actual damages are $2,931.16, Plaintiffs have not given counsel the files they need to prove the case, even assuming everything else was viable, the evidence relied on was obtained through fraud, and, even in light of this, Counsel did not participate in the Court's procedures and did not dismiss five plaintiffs until after Defendants took six depositions.

That is an abuse of the Court and of Defendants and was explained to Sergenian, Mu, and Carreon on January 16, 2026, when Defendants provided the actual damages information (after Plaintiffs had a second shot with the Confidential Client Portal and fully exhausted their review of Backgrid's library available for license), in Ardalan Decl., Exhibit 1:

> On another note, should you continue pursuing this action, we will need to revisit our Rule 11 motion we discussed earlier with respect to BackGrid Inc. and a 1927 motion, unfortunately. As you probably know,

> 1927 provides that the attorney is personally responsible for fees and costs if they multiply proceedings in any case unreasonably and vexatiously. [**Quoted 1927 language omitted**]. Pursuing this case is not a good use of our time, but more importantly, it is not a good use of our judge's time, who has to divide it between the important habeas corpus issues he is inundated with now and this $3,000 case. Let's please have a sober look at what we are doing.

*Id.*

**<u>After having outlined why the claims fail and why Sergenian, Mu, and Carreon were exposed under §1927, as early as January 16, 2026, Plaintiffs were offered a walkaway</u>**. Ardalan Decl. Ex. 1.

They declined.

Sergenian, Mu, and Carreon do not address the equitable relief they were offered in terms of updating credit/contributor code information, as early as December 3, 2025. Ardalan Decl. Exs. 16, 17. Plaintiffs could have received the updated credit they claim they desire. Sergenian, Mu, and Carreon do not address the fact that their clients sent back to BackGrid the money BackGrid paid for the license fees identified in the course of discovery. In other words, Plaintiffs were offered everything they could possibly be entitled to (or more), but Sergenian, Mu, and Carreon and their clients continued to pursue this case, at least until Defendants finished taking depositions and endured lengthy discovery disputes.

Counsel's criticism that Defendants "do not identify the date on which each attorney supposedly acquired information" (Opp. at 12:16-17) ignores that the Motion cited to dates, the docket entries, and dated email messages, evidencing the date for each.

Moreover, Counsel's contention that Defendants have not shown how they each "possessed the client-specific knowledge held by the sanctioned attorneys", relying on *Caputo v. Tungsten Heavy Powder*, 96 F.4th 1111, 1157 (9th Cir. 2024),

ignores the extensive record in which each were given notice that this lawsuit should cease. *See* a-h above. *Caputo* is distinguishable because the appellate attorney who made frivolous arguments had no personal knowledge of the relevant communications (*id.*), which is a stark contrast from here, where each counsel was given notice.

In sum, the sanctionable conduct was continuing this case after notice that the theories relied on are not supportable legally or factually. Sergenian, Mu, and Carreon were cced on every email providing notice of a-h. Sergenian and Mu each signed every court document and discovery response (e.g., Ardalan Decl. Exs. 9-1–9-7, 18), and Sergenian, Mu, and Carreon attended the court hearings, and Sergenian and Carreon participated in taking or defending the depositions and day-to-day case management. (*See* Dkt. 81 (Sergenian, Mu, and Carreon), Dkt. 94 (Sergenian, Carreon), Dkt. 98 (Sergenian, Mu, and Carreon), Dkt. 102 (Sergenian, Mu, Carreron); *see* Ardalan Decl. Ex. 11 (Sergenian, Mu, and Carreon participating in discovery meet and confer); Ex. 13 (Sergenian taking the Ardalan deposition); Ex. 16 (Carreon asking questions for the case in response to being offered equitable relief); Ex. 22 (Carreon, see page 179); Ex. 23 (Carreon, see page 272); Ex. 24 (Sergenian, see page 90); Ex. 25 (Carreon, see page 191); Ex. 26 (Sergenian, see page 143); Ex. 27 (Sergenian, page 143).)

### B. Sergenian, Mu, and Carreon Make No Effort to Explain How "[t]he availability of statutory damages, the existence and scope of any license, conditions on that license, alleged CMI removal, and entitlement to nonmonetary relief remain disputed issues."

Sergenian, Mu, and Carreon argue that damages are disputed because there is a factual issue about how Backgrid has accounted for archived photos. (Opp. 17:24-18:14.) This position ignores how Plaintiffs had open access to BackGrid's client portal—once through fraud for over 14 months, and a second time, through the discovery process, for three weeks. Therefore, Plaintiffs have had a full opportunity

to review the photos available for license and have exhausted the possibility that further photos may be at issue.

Sergenian, Mu, and Carreon make no effort to explain how they could ever have timely registration sufficient to support an award of statutory damages under 17 U.S.C. § 504, making this an actual damages case (at best). And, the actual damages were fully disclosed to Plaintiffs in January, 2026, after they had their second shot with the Confidential Client Portal.

Sergenian, Mu, and Carreon made no effort to explain that a "condition precedent" based on ***custom and practice*** was viable factually or legally.

Sergenian, Mu, and Carreon made no effort to explain how they could ever have a §1202 claim, given that Plaintiffs have pleaded licenses. Of course, 1202 also requires a double-scienter showing.

Given that Sergenian, Mu, and Carreon and Plaintiffs were on notice that their collective damages were $2,931.16, at best, in January 2026 and that they had a 1927 problem (Ardalan Decl. Ex. 1), long before their depositions and ongoing discovery disputes, largely caused by Plaintiffs pressing for discovery they did not need or their lack of participation in Defendants' discovery, it is an "abuse of the court processes" to have continued this expensive dispute.

### C. The Ardalan Deposition Made in Connection with the Frivolous Termination Theory.

In the Opposition, Sergenian, Mu, and Carreon represent that "Ardalan appeared voluntarily, on a date she provided, after agreeing that a subpoena was unnecessary." (Opp. 10, 7-11.) Sergenian's declaration disclosed that he had previously issued a subpoena to Ardalan on May 18, 2026, so it is a misstatement to represent that the subpoena was unnecessary—it was simply unnecessary to re-serve the subpoena with a new, agreed upon date. If a person receives a subpoena to appear, that is not a "voluntary" appearance.

Even so, the position that there was a factual dispute over termination and that somehow "termination [is a question] of credibility" (Opp. at 10:18-19) misses the point: What Plaintiffs' prelitigation counsel, Ms. Parant, stated on the phone to Defendants' counsel regarding whether the licenses were terminated—or not—changes nothing because under 17 U.S.C. § 203, such termination would be premature.

**D. Counsel Offers No Good Explanation for Its Three Joint Stipulations and Even Admits They Declined to Follow the Local Rules to Meet a Deadline.**

The three Joint Stipulations served by Plaintiffs were frivolous and sanctionable. Plaintiffs attempt to justify their position by representing that "the issues were successfully narrowed," (Opp. 9:2), which fails to address the fact that the stipulations violated Judge Audero's Orders/procedure and the Local Rules. The "narrowing of issues" occurred because Judge Audero did not give Plaintiffs permission to proceed with certain topics. (Dkts. 102, 112-22.)

Counsel neither defend their First Joint Stipulation, which Defendants raised at an IDC, nor their decision to file the Second Joint Stipulation without Defendants' portion that arrived before midnight on the seventh day after service. (*See* Opp. at 9:7-11.) Apparently, Counsel made a decision to file it in violation of Local Rule 37 because if they had not done so it would be "too late to file in time to be heard by Magistrate Judge Audero" (*id.* at 9:10-11), and they made the decision to take it off-calendar and re-file it when the discovery period was extended. (*Id.* at 9:11-13.)

Sergenian, Mu, and Carreon also contend that Defendants "do not identify the misrepresentations they attribute to the second joint stipulation," but they do. (Motion 19:16-18 ("The Second Joint Stipulation contained numerous and substantial misrepresentations to the Court, all of which were outlined in Defendants' response (Dkt. 112-20 at 71-76).").) Plaintiffs do not address those misrepresentations.

The Third Joint Stipulation raised issues that Judge Audero expressly stated that she was "not convinced" any relief should be given, but permitted counsel to file the stipulation. Sergenian, Mu, and Carreon do not address why they waited five days to serve the joint stipulation after Defendants expressly asked for a meet-and-confer conference, which was declined because Sergenian, Mu, and Carreon apparently had concerns regarding timing. (Dkt. 112-23.)

**E. Counsel's Position on the Kyndt Visa Status Is Unsupported.**

The correspondence, including the email message, regarding Kyndt's visa is somehow undated, making it impossible to determine whether Counsel waited until the eve of the deposition to take it off calendar. (Carreron Decl., Exs. A, B; ***c.f.*** Sergenian Decl. Exs. A-E (each ***dated*** Gmail messages).)

## II. PLAINTIFFS DUPLAQUET, WOLF, BOUTEFEU, KYNDT, AND MEHDI ("DISMISSED PLAINTIFFS") DO NOT OPPOSE THIS MOTION

Sergenian, Mu, and Carreon have not opposed this motion on behalf of the Dismissed Plaintiffs. In footnote 1, Counsel contends that they are not authorized to accept service on behalf of the dismissed plaintiffs. However, this theory runs afoul of Local Rule 83-2.3.2, which requires that an attorney obtain leave of court to withdraw, Local Rule 83-2.3.3, which provides that when an attorney of record ceases to act for a party, the party must appear pro se or appoint another attorney. Neither withdrawal nor a pro se appearance happened on behalf of the Dismissed Plaintiffs. *See also* Rules of Professional Conduct 1.16(c) ("If permission for termination of a representation is required by the rules of a tribunal, *a lawyer shall not terminate a representation before that tribunal* without its permission."). Of course, dismissal does not deprive the Court of jurisdiction and the Opposition does not argue that. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending.").

Moreover, to require Defendants to give notice to the five dismissed plaintiffs directly would violate Rule of Professional Conduct 4.2 which prohibits attorney communications with a person known to be represented by a lawyer. Counsel was silent about their representation at the meet-and-confer conference and never stated that they do not represent their clients. Supp. Ardalan Decl. ¶ 1.

## III. MAUVILAIN AND MAZARI'S OPPOSITIONS FAIL TO JUSTIFY THEIR CONDUCT

Mauvilain's complaint about a "lost [licensing] fee" further demonstrates that Defendants had a license. (Mauvilain Opp. at 10:22-11:2.)

Neither Mauvilain nor Mazari ever take the position that the attribution condition existed by "custom or practice" or otherwise. This is critical because it demonstrates that the entire case is based on a term manufactured without any evidentiary basis.

Both Mauvilain and Mazari attempt to create a dispute in the licensing records. Mauvilain, by pointing to a photo set identified as BGUS_838717, which in Ex. 2 is in Boutefeu's column whereas "SAC identifies it as Mauvilain's and Exhibit 11 []." (Mauvilain Opp. 10:5-8.) However, the spreadsheet identifying set numbers with photographers was first created by Mauvilain's counsel and then populated with license fee information by Defendants. (*See* Ardalan Decl. Ex. 1, Jan. 12, 7:53 PM.) Ardalan Decl. Exhibit 2 simply identifies the license fee associated with each set. If any error occurred in the attributing a set to a photographer, it fell on Plaintiffs' counsel. (Supp. Ardalan Decl. ¶ 5, Ex. 2.)

## IV. DEFENDANTS MEET THE *GOODYEAR* CAUSATION REQUIREMENT

Respondents admonish Defendants for not engaging in a "but for" analysis, citing to *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), but *Goodyear* explains that:

> If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award. And similarly, if a court finds that a lawsuit, absent litigation misconduct, would have settled at a specific time—for example, when a party was legally required to disclose evidence fatal to its position—then the court may grant all fees incurred from that moment on. In each of those scenarios, a court escapes the grind of segregating individual expense items (a deposition here, a motion there)—or even categories of such items (again, like expert discovery)—but only because all fees in the litigation, or a phase of it, meet the applicable test: They would not have been incurred except for the misconduct.

*Id.* at 110-111.

Here, Defendants ask the Court to assess that Counsel and Plaintiffs acted in bad faith from the start, from the manufactured, frivolous condition precedent theory, i.e., there is no infringement theory, which necessarily precludes a §1202 claim, to not having the actual files submitted to the agencies that form the CMI claims. *In re Keegan Mgmt.*, 78 F.3d 431, 435 (9th Cir. 1996) (filing of the complaint may be sanctioned under the court's inherent power). While §1927 cannot reach to the initial pleadings, under the inherent authority, it ought to reach at least to when Counsel was on notice that their manufactured legal theory was frivolous, which was at least on the motion to dismiss the FAC.

Should the Court not wish to pick that date, then the Court could also pick January 16, 2026, the date Sergenian, Mu, and Carreon were told that the total actual damages were under $3,000 and their legal theories would never provide statutory damages, and after they were offered equitable relief. Ardalan Decl. Ex. 16.

Finally, Sergenian, Mu, and Carreon argue that Defendants have not identified which attorney personally committed which challenged act, but the Ninth Circuit expressly rejected that the Court must determine attorney-by-attorney who caused

specific fees. *Lake v. Gates*, 130 F.4th 1054, 1059 (9th Cir. 2025) ("Because such [an attorney-by attorney] requirement [of who caused specific fees] as a precondition to applying for attorneys' fees would be impractical and in some cases would not be feasible, we decline to adopt this heightened causation analysis.")

## V. PARAGRAPH 5 OF THE DECEMBER 2025 ORDER DOES NOT SAVE COUNSEL OR PLAINTIFFS

Paragraph 5 of the December 2025 Order did not dissolve the important limitations imposed on the Parties. The December 2025 Order contained limitations because Plaintiffs and Sergenian, Mu, and Carreon were given limited permission to access a password protected, Confidential Client Portal. Respondents attempt to excuse the violations of this Order by pointing to Paragraph 5, but Paragraph 5 states that it is not "an order to permit or provide discovery such that its violation would be subject to [FRCP] 37(b) sanctions"—that does not mean the Order is not enforceable, only that it is not a discovery order under Rule 37. Afterall, their violation of saving, or "dragging and dropping" files and the violation of not designating the files as 'Confidential' is not "an order to permit or provide discovery."

## VI. DEFENDANTS DO NOT USE INHERENT AUTHORITY TO AVOID RULE 11'S SUBSTANTIVE SAFEGUARDS

Counsel rely primarily on *Chambers v. NASCO*, 501 U.S. 32 (1991), to support its position that "Defendants cannot obtain the practical equivalent of Rule 11 sanctions while avoiding the mandatory safe-harbor provision merely by relabeling an allegedly deficient pleading as inherent-power bad faith." (Opp. at 16:20-24.) *Chambers* does not stand for this proposition. *Chambers*, 501 U.S. at 50 ("But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules."). *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) is also

unhelpful to Counsel as the Court did not find subjective bad faith sufficient to support inherent authority or under the Section 1927.

## VII. THE RELIEF REQUESTED OF ATTORNEYS' FEES AND DISMISSAL WITH PREJUDICE IS PROPER

### A. There Is No Requirement That the Specific Amount Requested Be Contained in the Notice of Motion.

Without citing to any legal authority, Counsel contends that they were not given notice of the amount of attorneys' fees sought, even though they were given true and correct time sheets for this matter and Defense counsels' typical billing rates. (Ardalan Decl. Ex. 29.) There is no requirement that the Notice of Motion disclose the actual amount sought. And, of course, FRCP 7(b)(1), requires only that a motion must state the relief sought; L.R. 7-4 ("The notice of motion shall contain a concise statement of the relief or Court action the movant seeks.")

Regardless, Defendants included in the Notice of Motion the authority under which they requested fees, 28 U.S.C. § 1927, and the inherent authority, against whom sanctions were requested, and that Defendants requested "attorneys' fees as outlined by Ardalan Decl., ¶¶ 29-31" and dismissal of all claims with prejudice. (Dkt. 128.) It noticed that this motion was based on, among other things, the Declaration of Joanna Ardalan, which include the basis for fees.

Moreover, Sergenian, Mu, and Carreon's criticism of providing Defendants counsels' typical rates is not well taken, considering Counsel has asked for sanctions **in this case** using Sergenian's "standard hourly billing rate." Dkt. 106-1 (¶ 57); 112-2 (¶ 33.) The *Lodestar* method contemplates a "reasonable hourly rate," and the relevant legal community for determining that reasonable rate is the "forum in which the district sits." *General Teamsters Local # 439 v. Leprino Foods Company,* 2022 WL 891278 (E.D. Cal. 2022). Significantly, Counsel offers no opposition to the reasonableness of the hourly rates presented by Defendants.

**B. The Entire Case Was Initiated In "Bad Faith."**

*Goodyear*, 581 U.S. at 110-111 acknowledges that sanctions under the inherent authority can be imposed on all fees incurred in a case "If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award." As discussed in I(a)-(e), there were multiple times in which Plaintiffs and their Counsel had knowledge that this case should not proceed, including from the very start of this case.

Counsel's reliance on *RG Abrams Inc. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461 (C.D. Cal. 2022) is misplaced because there, sanctions were issued under Rule 37, and there was an "absence of facts specifically pointing to counsel's misconduct." That is not the case here, as outlined in Section I, which counsel was expressly on notice and continued litigating this small claims case.

**C. Dismissal with Prejudice Is Supported and Appropriate Given That This Case Wholly Lacks Merit.**

Counsel cites to *Porter v. Martinez*, 941 F.2d 732 (9th Cir. 1991), but that case related to terminating sanctions under Rule 37. "It is well settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 355 (1995) (collecting cases on the same). "While the district court need not make explicit findings regarding each of [the following] factors, a finding of "willfulness, fault, or bad faith" is required for dismissal to be proper [:]" ": "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring

disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys.*, 464 F.3d 951, 959 (2006).

The Motion laid out the frivolous theories that infect every aspect of this case—after all, this should have been a small claims Superior Court case. There is no public policy or judicial interest policy that supports this case to continue on the merits.

And, while Counsel admonishes Defendants for inferences throughout their opposition, the Ninth Circuit has relied on inferences to support dismissal. *Id.* ("Beardslee's actionable misconduct consisted of falsely denying the existence of and suppressing information that was clearly relevant to Anheuser's defense. [] Thus, from Beardslee's deception regarding the documents "one may reasonably infer" that her 'case is lacking in merit.'")

## VIII. CONCLUSION

Defendants respectfully request that the Court grant the motion in full, award attorneys' fees against Counsel under Section 1927, and attorneys' fees against Counsel, their law firms, and Plaintiffs, and dismiss this lawsuit with prejudice under the Court's inherent authority.

Dated: August 14, 2026

**ONE LLP**

By: /s/ Joanna Ardalan
Joanna Ardalan
Peter R. Afrasiabi
David W. Quinto
Attorneys for Defendants BackGrid Inc., BackGrid USA, Inc., & Shutterstock, Inc.

## CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)

The undersigned, counsel of record for Defendants BackGrid Inc., BackGrid USA, Inc., & Shutterstock, Inc., hereby certifies that this brief contains 4,192 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ Joanna Ardalan
Joanna Ardalan